**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
PETER GRAZUL (SBN 342735)
*pgrazul@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>                         Plaintiffs,<br><br>              v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., ALPHABET INC., and NEXTROLL, INC.<br><br>                    Defendants. | Case No:  25-cv-2465<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, bring this action against Defendants ROMANTIX ONLINE, INC. ("Romantix"), INNOV8 SOLUTIONS, INC. ("Innov8"), ALPHABET INC. ("Google"), and NEXTROLL, INC. ("NextRoll"), and allege the following upon their own knowledge, or where they lack personal knowledge, upon information and belief, including the investigation of their counsel.

## INTRODUCTION

1.      Defendants Romantix and Innov8 own and operate the website located at https://www.romantix.com ("Romantix.com"), a website that sells adult products. Consumers like Plaintiffs visit Romantix.com to confidentially shop for such products. Unbeknownst to them, however, and constituting a significant violation of their privacy, Romantix and Innov8 allow undisclosed third-parties—Defendants Google and NextRoll (collectively the "Marketer Defendants")—to intercept, read, and utilize for commercial gain consumers' private information about their sexual practices and preferences, gleaned from their activity on Romantix.com.

2.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this action to enjoin Romantix and Innov8's disclosure and communication of consumers' private and confidential information, without their consent, to the Marketer Defendants, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

3.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendants. In addition, more than two-thirds of the members of the Class reside in a state other than the state in which Defendants are citizens, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

4.      The Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States (the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*).

5.      The Court has personal jurisdiction over Defendants Romantix and Innov8 because they have

purposely availed themselves of the benefits and privileges of conducting business activities within California by making Romantix.com, embedded with the Marketer Defendants' tracking tools, available to California consumers.

6.    The Court has personal jurisdiction over Google and NextRoll because they have purposely availed themselves of the benefits and privileges of conducting business activities within California by making Romantix.com, embedded with the Marketer Defendants' trackers, cookies, and pixels, available to California consumers.

7.    The Court also has personal jurisdiction over Google and NextRoll because the principal place of those entities' businesses are both in this district (in Mountain View and San Francisco, California, respectively).

8.    Venue is proper in this Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants reside in (*i.e.*, are subject to personal jurisdiction in) this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## **DIVISIONAL ASSIGNMENT**

9.    This civil action arises out of acts and omissions of Defendants that occurred, in part, in Santa Clara County. Pursuant to Civil Local Rule 3-2(c) and (e), this action is therefore correctly assigned to the San Jose Division.

## **PARTIES**

10.    Plaintiff Paul Perez is a California citizen over 18 years of age who resides in San Bernardino County, California.

11.    Plaintiff Henry Bradley is a California citizen over 18 years of age who resides in Los Angeles County, California.

12.    Defendant Romantix Online, Inc. is a Colorado corporation with its principal place of business in Denver, Colorado.

13.    Defendant Innov8 Solutions, Inc. is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

14.    Defendant Alphabet Inc. is a Delaware corporation with its principal place of business in Mountain View, California.

*Perez v. Romantix Online, Inc., et al.*
CLASS ACTION COMPLAINT

15.     Defendant NextRoll, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

### FACTS

**I.    The Romantix Website**

16.     Defendants Romantix and Innov8 sell adult toys and other adult products through Romantix.com.

17.     Defendant Innov8 provides eCommerce solutions to retailers wishing to sell online, and maintains a number of "partnerships" with adult e-commerce websites. Its role is to operate these websites.

18.     Innov8 identifies Romantix as one of its "partners" on its own website.[1]



19.     Romantix conducted "due diligence" with respect to Innov8's operations before partnering with Innov8. Romantix's Director of Special Projects has explained:

---

[1] https://innov8sol.com/partners.php.

3

We were originally approached by Innov8 Solutions at a trade show. Stating they could provide a better eCommerce solution. We were not entirely comfortable with our current provider and ***after some due diligence made the move to their platform***. After a year and half of [*sic*] working with them, we have seen consistent growth and positive additions to the site. The team at Innov8 Solutions is attentive, creative and forward thinking. We have been very happy with the move, and look forward to long successful relationship.[2]

20.     As partners in the online eCommerce business, Romantix and Innov8 are jointly responsible for protecting users' personal information. For example, Romantix.com includes a link to the company's privacy policy, which instructs customers to contact Innov8 with any issues relating to their "personal data" or with any questions about the privacy policy.[3]

## II.    Consumers Using Romantix.com Communicate Private and Protected Sexual Information

21.     When consumers browse Romantix.com to shop for and purchase sex toys, lingerie, and other adult products, including when clicking on items or using search queries in the built-in search function, they communicate private and extremely personal information to Romantix and Innov8, including sexual preferences, sexual orientation, sexual practices, and adult product preferences, all of which constitute Private and Protected Sexual Information ("PPSI").

22.     For example, on the homepage, Romantix.com users are presented with various product categories, including "vibrators," "dildos," "lube," "anal," "fetish," and "lingerie." Selecting among these categories reveals preferences and practices and has the capacity and tendency to reveal users' sexual orientation.

23.     Romantix.com also features a "Love Expert" blog, which contains articles covering a variety of adult topics such as explaining different types and materials of sex toys, erectile dysfunction, BDSM tips, masturbation, level of sexual experience, expert advice, and sexual health, all of which, when a user browses that information, further reveals the PPSI of the user.[4]

## III.    Users of the Website Have a Reasonable Expectation of Privacy in their PPSI

24.     When consumers communicate their PPSI to Romantix and Innov8, they reasonably believe Defendants will maintain the confidentiality of that information, due to both the extremely sensitive and

---

[2] https://innov8sol.com/partners.php (emphasis added).

[3] *See* https://www.romantix.com/privacy-policy.

[4] https://www.romantix.com/love-expert.

private nature of the information involved, and due to Defendants' affirmative representations, including in FAQs and the privacy policy, found on Romantix.com.

25.    The Romantix.com FAQ states, "We are committed to protecting your privacy. We NEVER share our customers' personal information with anyone," and links users directly to the privacy policy.[5]

26.    The privacy policy also prominently states, "Your Data is Important: It is important to note that, as an eCommerce site, we do collect, use and store data in order to deliver the goods and services you request from us. While we are required to share some data with vendors in order to process credit cards, deliver packages and stream video, we DO NOT resell any data to third parties FOR ANY REASON."

27.    Romantix and Innov8 also assure consumers that any information they disclose to third parties is only generalized, "aggregated" data, and "other information about our users that does not identify any individual," which according Romantix.com's privacy policy, "does not constitute Personal Data."

## IV.    Trackers on Romantix.com Allow the Marketer Defendants to Collect and Profit From Romantix.com Users' PPSI

28.    When users visit Romantix.com, trackers embedded in the website activate and begin collecting data about the users' activity. These cookies[6] or pixels[7] collect unique identifiers and other data, including browsing patterns and product interests, and ultimately, consumers' PPSI. This data is transmitted to the trackers' owners, usually in real time. The trackers use this data to build detailed user profiles for analytics, targeted advertising, and other marketing purposes. Since several trackers are used across multiple websites, data from different sites is combined to enhance the user profile. When a user enters any website that utilizes the same tracker(s), those cookies or pixels continue to share and gather data.

---

[5] https://www.romantix.com/help.

[6] Cookies refers to "HTTP cookies" or "internet cookies," which are built specifically for web browsers (like Chrome, Edge, Safari, etc.) to track, personalize and save information about each user's session. A "session" is the word used to identify the user and to define the amount of time that user spends on a site. The web server—which stores the website's data—sends a short stream of identifying information to the user's web browser and identifying data is processed and read by "name-value" pairs. These pairs tell the cookies where to be sent and what data to recall.

[7] A pixel (often called a tracking pixel) is a small piece of code embedded on a website that helps track user behavior. Despite the name, it is not a visible pixel on the screen. Rather, it is a 1x1 transparent image, or small snippet of JavaScript that loads when someone visits a webpage or opens an email. For websites that use tracking pixels, marketers can see if a user completed a specific action, like clicking a link, typing in a search query, making a purchase, or filling out a form.

29.     Romantix and Innov8 use two trackers that are the subject of this lawsuit: Google Analytics and NextRoll's AdRoll Pixel. Each is operated by one of the Marketer Defendants. And each allows the Marketer Defendants to eavesdrop on, collect, and use for pecuniary gain the PPSI of Romantix.com visitors, including Plaintiffs and other Class Members.

30.     Each of these trackers is free in that no money is exchanged between Romantix and Innov8 on one hand and the Marketer Defendants on the other hand for their use on Romantix.com. But each of the Defendants benefit, nonetheless. Romantix and Innov8 use the insights gained from the trackers to optimize content, deliver targeted ads, and generate more site traffic, all of which increase sales. For the Marketer Defendants, the primary advantage lies in capturing user data to optimize ad performance and increase ad spend—the cornerstone of their revenue, which amounts to tens of billions of dollars annually.

**A.     Google Analytics**

31.     Google Analytics is a web analytics service that allows website owners to track visitors' actions, via cookies.

32.     Some of these cookies, including those used on Romantix.com, include unique identifiers that can link the browsing data collected to an individual's various Google accounts (e.g. YouTube, Gmail), provided the user is logged in to one of those accounts. This allows Google to recognize returning users and track their behavior across different websites. Using embedded scripts in the website's code, every interaction on Romantix.com is logged and transmitted to Google servers.

33.     Google's unique identifiers and cookies can be seen in the red box in the screenshot below.

///
///
///
///
///
///

34.    As the screenshot above shows, the unique identifying information for a user is sent, without the user's permission, from Romantix.com to Google's servers, where Google can associate that unique ID with a specific individual.

35.    As the following screenshot shows, Google can associate that individual (through the unique Google ID) with their specific shopping activity on Romantix.com, what parts of the website they visited, and even what they purchased—meaning, in the case of Romantix.com, learn that user's sexual orientation, preferences, kinks, and other PPSI.

*Perez v. Romantix Online, Inc., et al.*
CLASS ACTION COMPLAINT

36.    The information Romantix.com discloses, without permission, to Google can be used to identify a specific consumer, track their online activity, and then monetize that information in the form of advertising. This happens as follows: if an online shopper is logged into a Google account, Google Analytics includes a user login session cookie within the tracker's requests to Google's site. This makes any such information personally identifiable because the cookie value can be associated by Google with the user's account identity.

37.    A recent study, for example, found that Google links patients' visits to MyChart portals with user identities using these cookies, demonstrating that the data sent to Google is personally identifiable.[8] Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize, and improve, targeted advertising. Then, by tracking user behavior across different websites, Google can improve its targeted advertising, leading to higher click-through rates and, thus, more ad revenue.

38.    Even if users are not logged into their Google accounts, their PPSI is still tracked, collected, and tied to a unique profile through Google's NID, 1P_JAR, and ANID cookies. While these cookies may not allow Google to identify a user by name, the unique identifier tied to that user allows Google to track a user's preferences and activities across all of its services (and other websites). Thus, even if a user is not logged into their Google account, Google can, and does, still track a user's browsing behavior, including, for example in the case of someone shopping on Romantix.com, their PPSI, for pecuniary gain in the form of targeted ads.

39.    Romantix and Innov8 also directly benefit from sharing user PPSI. Google Analytics allows Romantix and Innov8 to improve their marketing, by permitting them to track Romantix.com visitors when they go to other websites or open their email, at which time Romantix and Innov8 can send direct, targeted ads.

---

[8] Huo, M., et al., *All Eyes On Me: Inside Third Party Trackers' Exfiltration of PHI from Healthcare Providers' Online Systems*, WPES'22: Proceedings of the 21st Workshop on Privacy in the Electronic Society, at 197-211 (Nov. 7, 2022).

**B.    NextRoll's AdRoll**

40.    AdRoll utilizes both a pixel and cookies to monitor user activity, including what pages users view, what products they click on, what they search for, whether they add items to their cart, and what they buy.

41.    AdRoll assigns a unique identifier to each user, which allows NextRoll to track activity across other websites that also embed AdRoll's pixel. In doing so, AdRoll can generate and show personalized ads to the same user on other sites. AdRoll also offers email marketing features within its platform. Websites can create and send emails directly through AdRoll, using the same data from targeted web ad campaigns.

42.    Because AdRoll functions primarily as an advertising tracker, it is not directly connected to personal user profiles. However, it consistently identifies the same user, and on the same device. Thus, when a user provides personally-identifying information, like their name, email address, home address, or credit card information, when creating an account or purchasing items, AdRoll will track that person on any other website embedded with AdRoll. This data is sometimes used to send emails to those users, which can also link PPSI to a specific individual.

43.    The below screenshot shows AdRoll's identifiers as an alphanumeric string, coupled with the user's search for a specific category of adult products.



44.    NextRoll uses this data to create personalized ad experiences, analyze ad performance to refine ad targeting strategies, and associate user activity across different websites.

*Perez v. Romantix Online, Inc., et al.*
CLASS ACTION COMPLAINT

45.    In fact, NextRoll's entire business model is selling its advertising services to third parties, framed as enhancing online advertising strategies. By using cookies and tracking pixels, like AdRoll Pixel, NextRoll gathers this information, including the PPSI associated with unique individuals, for its own pecuniary gain.

46.    Romantix and Innov8 also directly benefit from the use of AdRoll for the same reasons they benefit from the use of Google Analytics: they are able to track user interaction with Romantix.com and improve and broaden their own marketing, including through targeted ads on other websites, and direct emails.

**V.    Romantix and Innov8 did not Disclose the Transmission of Users' PPSI to Google and NextRoll**

47.    The Romantix.com Privacy Policy falsely represents that the website's use of cookies does not "contain any information that personally identifies a user," and falsely represents that Romantix only discloses personal information in an aggregated, unidentifiable manner, or for purposes such as payments, legal obligations, or fulfilling shipments. The Privacy Policy states that for all other purposes of using cookies, consent is required.

48.    Although, upon entering Romantix.com, users are presented with a popup window stating "This website uses cookies to improve user experience," consumers may "Decline All," and may also continue to browse Romantix.com without choosing "Accept All" or "Decline All." Moreover, because the popup window is in small font at the bottom-right corner of the screen, Romantix.com browsers can easily disregard it and continue engaging with the website without interacting with the popup at all.

49.    In addition, nowhere on Romantix.com, including in the Privacy Policy, does Romantix or Innov8 disclose the specific tracking technologies Romantix.com visitors are subjected to. Nor do Romantix or Innov8 tell visitors that, generally, Romantix.com uses trackers, or disclose the purpose of those trackers. Worst, Romantix and Innov8 never disclose to visitors that they permit unidentified third-parties, including Google and NextRoll, to eavesdrop on their PPSI-revealing communications—communications Romantix and Innov8 elsewhere ensure users they would "never" share for any reason.[9]

---

[9] *See, supra*, n.5

**VI.    The Marketer Defendants' Undisclosed Eavesdropping on Romantix.com Users Violates the Site's Privacy Policy and those Users' Privacy Rights**

50.    The trackers discussed herein track users, collect their data (including PPSI), and transmit that information to the Marketer Defendants, in real time. Thus, the Marketer Defendants are eavesdropping on Romantix.com visitors.

51.    Romantix and Innov8 allow this undisclosed eavesdropping, purposely sharing the personally-identifying information and PPSI of Romantix.com visitors with the Marketer Defendants in contravention of their promises to protect user privacy.

52.    The Marketer Defendants' interception of Romantix.com users' PPSI exemplifies the utmost invasion of privacy and would be highly offensive to any reasonable person. These invasions of privacy are particularly offensive given that the Marketer Defendants intentionally intercept users' PPSI with the intent to use it for financial gain through better targeting of advertisements; and Romantix and Innov8 allow these invasions of privacy for their own financial gain, through more and better targeted advertising of Romantix products to increase sales.

**A.    California Invasion of Privacy Act (CIPA)**

53.    The California State Legislature passed CIPA "to protect the right of privacy of the people of this state." Cal. Penal Code § 630.

54.    Section 631(a) of CIPA prohibits, *inter alia*:

    a.    Aiding or permitting a third party to read or learn the contents of any message, report, or communication that is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California, without the consent of all parties to the message, report, or communication;

    b.    Reading or attempting to read or to learn the contents of any message, report or communication while the same is in transit or passing over any wire line, or cable without the consent of all parties to the message, report or communication;

    c.    Using or attempting to use, in any manner or for any purpose, any information obtained from any message, report or communication read while the same is in transit or passing over

any wire line, or cable without the consent of all parties to the message, report or communication; and

        d.     Aiding, agreeing with, employing or conspiring with any person or persons to unlawfully do, or permit, or cause the disclosure, learning, reading, and usage of any communications set by wire in California without the consent of all parties to the message, report or communication.

55.     In sum, under Section 631 of CIPA ("§ 631"), it is prohibited to aid or permit another person to willfully and without the consent of all parties to a communication, read, attempt to read, or learn the content or meaning of any message, report, or communication, while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

56.     Using a website and entering information on a website constitutes messages, reports, and/or communications between the website user and website developer, owner and/or operator. Internet communications pass over a wire, line, or cable. Users' messages, reports, and/or communications on the website are thus transmitted and passed over a wire, line, or cable.

57.     Where, as here, a website user is based in California, the message, report, or communication is received in California.

58.     When someone uses a website and enters information on that website, the sole parties to that message, report, or communication are the website user and the website developer, owner, or operator.

59.     It is a violation of § 631 to allow someone other than the website user or website developer, owner, or operator to read or learn the contents of messages, reports, or communications between those parties without the consent of all parties.

60.     It is a violation of § 631 to read, attempt to read, or learn the contents of messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

61.     It is a violation of § 631 to use information contained in messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

62.     It is a violation of § 631 to aid, agree with, employ, or conspire with another to unlawfully read, learn, or use information contained in messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

63.     When someone violates § 631, the aggrieved party may bring a civil action for $5,000 per violation, pursuant to section 637.2(a)(1). Pursuant to section 637.2(b), the aggrieved party may also seek injunctive relief to enjoin and restrain the violative conduct. Pursuant to section 637.2(c), "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

64.     By using the trackers discussed herein on the Romantix.com, Romantix and Innov8 violated and continue to violate § 631 each time they allow the Marketer Defendants to read users' online communications through use of Romantix.com, without notifying users, and without obtaining their consent.

65.     The Marketer Defendants violated § 631 each time they read, attempted to read, or learned from or utilized Romantix.com users' personally-identifying information or PPSI without their consent.

66.     Each Defendant violated § 631 by operating under an agreement whereby Romantix and Innov8 installed trackers to disclose users' personally-identifying information and PPSI to Google and NextRoll without the users' consent, in exchange for access to and the ability to use the personally-identifying information and PPSI of Plaintiffs and other Romantix.com users for their own commercial purposes.

**B.     Federal Wiretap Act**

67.     "[T]he Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (quoting S. Rep. No. 90-1097, *reprinted in* 1986 U.S.C.C.A.N. 2112, 2154, 2182).

68.     The Federal Wiretap Act prohibits, with specified exceptions, both: (1) the intentional interception of "any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a); and (2) the intentional disclosure or use of the contents of any such illegally intercepted communication if the persons who disclose or use it did so "knowing, or having reason to know," the communication was intercepted in violation of the Federal Wiretap Act, *id.* §§ 2511(1)(c), (d).

69.     "Intercept" is defined in the statute as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4).

70.     Under the Federal Wiretap Act, conduct is intentional when it, or the results thereof, are the person's conscious objective.

71.     One exception to the Act's prohibition against interception of communications is the "one-party consent" rule. *See id.* § 2511(2)(d). Under this exception, interception of a communication by or with the consent of one party to the communication is not unlawful, unless the interception is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

72.     The Marketer Defendants violated the Federal Wiretap Act by employing trackers and cookies on Romantix.com with the conscious objective of intercepting users' private communications, including PPSI, and by using that intercepted information for financial gain. Moreover, the Marketer Defendants cannot rely on the one party consent rule exception because, although Romantix and Innov8 consented to the data interception, the interception was for the purpose of violating Romantix.com *users'* right to privacy, and they did not consent.

### C.    Common Law Invasion of Privacy

73.     "Invasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 198 (1890).

74.     The Restatement (Second) of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965).

75. The Marketer Defendants violate Romantix.com users' right to privacy every time they eavesdrops and intercept users' PPSI and private communications with Romantix.com, without the users' knowledge or consent.

**D. California Constitution**

76. California amended its constitution in 1972 to specifically enumerate a right to privacy in its first section, and courts have recognized this affords individuals a private right of action for invasions of their privacy. *See* CAL. CONST. ART. I, § 1. The California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right of privacy, independent of the common rights to property, contract, reputation and physical integrity . . . . In short, it is the right to be let alone." (internal quotation marks omitted)).

**VII. Plaintiffs' Use of Romantix.com**

77. Plaintiff Perez visited Romantix.com on several occasions over the last few years. He last visited the website in approximately October 2024, and purchased adult products from the website in March or April 2024. During that time, Mr. Perez has purchased at least seven separate items from Romantix.com. These items are pictured in <u>Exhibit A</u> hereto, which is being filed under seal to protect Mr. Perez's privacy.

78. When purchasing these items, Mr. Perez transmitted to Romantix and Innov8 (and thus, unwittingly to the Marketing Defendants), not only the searches he ran and items he browsed, but also his personally-identifying information, including his full name, home address, email address, and credit card information.

79. Plaintiff Bradley visited Romantix.com on several occasions over the last several years, and last visited the website in approximately October 2024. During these visits, Mr. Bradley both browsed certain categories of adult products, and typed specific search queries into the website's search bar. The specific

categories of products Mr. Bradley browsed and the search queries he ran are identified in <u>Exhibit B</u> hereto, which is being filed under seal to protect Mr. Bradley's privacy. On November 30, 2021, Mr. Bradley made a purchase from Romantix.com, and believes he may have made additional purchases thereafter. Evidence of Mr. Bradley's 2021 purchase is attached hereto as <u>Exhibit C</u>, which is being filed under seal to protect Mr. Bradley's privacy.

80.    Like Mr. Perez, Mr. Bradley transmitted to Romantix and Innov8 (and thus, unwittingly to the Marketing Defendants), not only the searches he ran and items he browsed, but also his personally-identifying information, including his full name, home address, email address, and credit card information.

81.    Plaintiffs' uses of Romantix.com constitute internet messages, reports, and communications between them, on one hand, and Romantix and Innvo8 on the other, which were transmitted and passed over a wire, line, or cable.

82.    Plaintiffs' messages, reports, and communications were sent from California.

83.    Plaintiffs' messages, reports, and communications on Romantix.com were instantly available to Google and NextRoll; everything Plaintiffs browsed or searched on the website was tracked and disclosed without notice or permission to Google and NextRoll instantly and automatically as it occurred.

84.    Each time Plaintiffs used Romantix.com, Romantix and Innov8 allowed the Marketer Defendants to intercept, learn the contents of, and use for commercial gain Plaintiffs' messages, reports and communications.

85.    Because Plaintiffs' messages, reports and communications were intercepted simultaneously as they were being communicated, the Marketer Defendants' interceptions occurred while the messages, reports and communications were in transit.

86.    The Marketer Defendants were never a party to the messages, reports or communications between Plaintiffs, on one hand, and Romantix and Innov8 on the other.

87.    Plaintiffs did not know that their messages, reports, or communications on Romantix.com would be intercepted by the Marketer Defendants.

88.    Plaintiffs did not know that their PPSI combined with their individual identifiers would be shared, used, sold, or otherwise disclosed to the Marketer Defendants.

*Perez v. Romantix Online, Inc., et al.*
CLASS ACTION COMPLAINT

89.    Plaintiffs did not consent to their messages, reports, or communications on Romantix.com being shared with the Marketer Defendants.

90.    Plaintiffs reasonably believed their messages, reports, or communications on Romantix.com, including the PPSI therein, were private.

91.    Plaintiffs would not have visited Romantix.com, interacted with it, or purchased any products from the website, if they knew Romantix and Innov8 shared information that personally identified them and the kinds of adult products they were interested in purchasing.

92.    Plaintiffs would not have been willing to pay what they did for the products they purchased had they known Romantix and Innov8's promises to "never" sell their personal information were false and misleading, or if Romantix and Innov8 had revealed the truth.

93.    Plaintiffs paid more for their adult products than they would otherwise have been willing to pay in reliance on Romantix and Innov8's promises that they would keep Plaintiffs' information private.

## CLASS ACTION ALLEGATIONS

94.    While reserving the right to redefine or amend the class definitions prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to represent a class of all persons in the United States who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), interacted with Romantix.com while it was embedded with Google Analytics or NextRoll AdRoll (the "Class"); and a subclass of all persons in California who, at any time during the Class Period, interacted with Romantix.com embedded with Google Analytics or NextRoll Adroll (the "California Subclass").

95.    The members in the proposed Class (including its Subclass) are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class in a single action will provide substantial benefits to the parties and Court.

96.    Questions of law and fact common to Plaintiffs and the Class include but are not limited to:

      a.    Whether Romantix.com, through embedded trackers and cookies, collected information about Class Members;

      b.    Whether that information constitutes PPSI;

c.      Whether that information constitutes messages, reports, or communications under CIPA § 631;

d.      Whether Romantix and Innov8 disclosed to any of the Marketer Defendants the PPSI and/or messages, reports or communications between Class Members who accessed Romantix.com on the one hand, and Romantix and Innov8 on the other;

e.      Whether Romantix and/or Innov8, on the one hand, and any of the Marketer Defendants on the other, had an agreement whereby trackers and cookies were utilized on Romantix.com to collect and disclose the Class Members' search history and other information in exchange for consideration;

f.      Whether any of the Marketer Defendants read, attempted to read, learned, or used the information they obtained from their trackers and cookies on Romantix.com;

g.      Whether any of the Marketer Defendants intentionally intercepted Class Members' wire or electronic communications;

h.      Whether any of the Marketer Defendants invaded Class Members' privacy by intercepting their PPSI;

i.      How Class Members' messages, reports, communications, and PPSI were disclosed, and to whom; and

j.      Whether Romantix or Innov8 obtained consent or authorization before disclosing to the messages, reports, communications, or PPSI of Class Members.

97.     These common questions of law and fact predominate over questions that affect only individual members of the Class.

98.     Plaintiffs' claims are typical of the Class's claims because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct. Specifically, all Class Members, including Plaintiffs, were subjected to the same violation of privacy and other unlawful and unfair business practices as a result of using Romantix.com.

99.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced

in class action litigation, who will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and the Class.

100.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for each Class Member to redress the wrongs done to them.

101.    Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

102.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act (CIPA)

### (Against all Defendants, on behalf of the California Subclass)

103.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

104.    Plaintiffs and other California Subclass Members are located in California.

105.    Google is the owner and operator of Google Analytics, a web analytics service that allows website owners to track visitors' actions, via cookies, and which collects data from websites to create reports that provide insights into a website's business.

106.    NextRoll is the owner and operator of AdRoll, a service that utilizes both a pixel and cookies to monitor user activity, and which collect data from websites to create reports that provide insights into a website's business.

107.    Romantix and Innov8, through Romantix.com, are engaged in the business of selling adult products to Plaintiffs and other California Subclass Members.

108.    Plaintiffs and other California Subclass Members used Romantix.com to browse, search for, and purchase adult products.

109.    Romantix and Innov8, on the one hand, and the Marketer Defendants and the other hand, formed agreements to install cookies and trackers onto Romantix.com in exchange for access to and use of

the PPSI of Plaintiffs and other California Subclass Members, for their mutual financial benefit, and at the expense of consumers' privacy and data.

110.    When Plaintiff and other California Subclass Members used Romantix.com, they were messaging, reporting, and communicating with Romantix and Innov8. Those messages, reports and communications were transmitted or passed over a wire, line, or cable, and were sent and/or received within California.

111.    Romantix and Innov8 willfully disclosed the messages, reports and communications with Google and NextRoll through the cookies and trackers discussed herein. By doing so, Romantix and Innov8 willfully aided and permitted the Marketer Defendants, each a third-party, to read and learn of messages, reports and communications between Romantix and Innov8, on the one hand, and California Subclass Members, including Plaintiffs, on the other.

112.    The Marketer Defendants willfully obtained the messages, reports and communications of Plaintiffs and other California Subclass Members via the cookies and trackers discussed herein, without their knowledge or consent.

113.    Plaintiffs and other California Subclass Members were not aware Romantix or Innov8 were disclosing their messages, reports and communications to the Marketer Defendants.

114.    Plaintiff and other California Subclass Members did not consent to Romantix and Innov8 sending or permitting the Marketer Defendants to read or learn about the messages, reports, and communications they made on Romantix.com.

115.    The Marketer Defendants read, attempted to read, learned from, and used the messages, reports, and communications of Plaintiffs and other California Subclass Members made on Romantix.com via the cookies and trackers discussed herein, which informed the Marketer Defendants of their identities and PPSI, without their knowledge or consent.

116.    Romantix and Innov8 are liable to Plaintiff and other California Subclass Members for statutory damages of $5,000 for each time they disclosed without consent a California Subclass Member's message, report, or communication to any of the Marketer Defendants.

117.    The Marketer Defendants are liable to Plaintiff and other California Subclass Members for statutory damages of $5,000 for each time they, without consent, read, learned from, or used a message, report, or communication originated from Romantix.com.

## SECOND CAUSE OF ACTION

### Violation of the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq*.

### (Against the Marketer Defendants on behalf of the Class)

118.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

119.    The Wiretap Act prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

120.    By designing and programming the cookies and pixel trackers described herein to contemporaneously monitor, intercept, and transmit the contents of electronic communications that Plaintiffs and Class Members sent to Romantix.com, including those containing PPSI, the Marketer Defendants intentionally intercepted or endeavored to intercept the contents of electronic communications, in violation of 18 U.S.C. § 2511(1).

121.    Further, the Marketer Defendants intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

122.    Plaintiffs and other Class Members did not consent to the Marketer Defendants' interception of their private communications with Romantix.com. Nor could they have, as they were unaware of the Marketer Defendants' interceptions, which occurred concurrently as they used Romantix.com. Moreover, the Marketer Defendants were never a party to any of the communications sent and received by Plaintiffs and other Class Members.

123.    Plaintiffs and the Class suffered harm as a result of the Marketer Defendants' violations of the Wiretap Act, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by the Marketer Defendants as a result of their unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

1

2

3

**THIRD CAUSE OF ACTION**

**Intrusion Upon Seclusion**

**(Against the Marketer Defendants on behalf of the Class)**

4       124.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth

5   fully herein.

6       125.     Plaintiffs and other Class Members have reasonable expectations of privacy in using

7   Romantix.com and in their PPSI, generally. The reasonable expectation of privacy in their PPSI is intrinsic

8   and further stems from and is reinforced by representations in Romantix.com's Privacy Policy and FAQs.

9       126.     Plaintiffs and other Class Members also have a reasonable expectation that their PPSI will not

10   be captured by the Marketer Defendants without their consent and subsequently used for the Marketer

11   Defendants' economic gain.

12       127.     The Marketer Defendants' intrusions, by viewing and utilizing for economic gain Class

13   Members' PPSI, are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Romantix and

14   Innov8 making clear efforts to assure Romantix.com users that their personally-identifying information and

15   PPSI will not be shared. It is also self-evident from the highly personal and protected nature of the

16   information being taken and utilized without consent, including users' sexual orientation and preferences.

17       128.     Plaintiffs, other Class Members, and the public were harmed by the intrusion of the Marketer

18   Defendants into their private affairs as detailed herein. The Marketer Defendants' actions and conduct

19   complained of were a substantial factor in causing the harm suffered by Plaintiffs, other Class Members, and

20   the general public.

21       129.     As a result, Plaintiffs seek injunctive relief prohibiting any further intrusions into their privacy

22   by the Marketer Defendants, the destruction of any information obtained as a result of their past intrusions,

23   and damages in a sum to be determined at trial.

24

25

26

**FOURTH CAUSE OF ACTION**

**Violation of California's Constitutional Right to Privacy, Cal. Const. Art. 1, § 1**

**(Against the Marketer Defendants on behalf of the California Subclass)**

27       130.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth

28   fully herein.

131.   Plaintiffs and other California Subclass Members' private affairs include their PPSI that the Marketer Defendants capture from eavesdropping on Plaintiffs and California Subclass Members' private communications with Romantix.com.

132.   The Marketer Defendants, with the cooperation of Romantix and Innov8, intentionally intruded on and into Plaintiffs' and other California Subclass Members' private affairs by intentionally capturing their PPSI as described herein. These intrusions are highly offensive to a reasonable person.

133.   Societal expectations and laws created a duty the Marketer Defendants owed to Plaintiffs and other California Subclass Members, to protect and respect their privacy. The Marketer Defendants breached that duty by implementing a system that eavesdrops on private communications and captures the PPSI of Plaintiffs and other California Subclass Members without their consent, and without legitimate justification, as described herein.

134.   The Marketer Defendants' conduct described herein violated Plaintiffs' and other California Subclass Members' right to privacy, as guaranteed by ART. 1, § 1 of the California Constitution. The Marketer Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and other California Subclass Members.

135.   As a result, Plaintiffs seek injunctive relief prohibiting any further intrusions into their privacy by the Marketer Defendants, destruction of any information obtained as a result of past intrusions, and damages in a sum to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**(Against Romantix and Innov8 on behalf of the California Subclass)**

136.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

137.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

138.   The acts, omissions, practices, and non-disclosures of Defendants Romantix and Innov8 alleged herein constitute business acts and practices.

139.    The acts of Romantix and Innov8 alleged herein are "unlawful" under the UCL in that, as alleged herein, they constitute negligence, violations of the California Invasion of Privacy Act, and unjust enrichment.

140.    Plaintiffs reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

141.    Defendants' conduct was "unfair" because it was immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of their conduct, if any, did not outweigh the gravity of the harm to consumers.

142.    Defendants' conduct was also "unfair" because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to California's Constitution and Invasion of Privacy Act.

143.    Defendants' conduct was also "unfair" because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

144.    Defendant Romantix and Innov8's conduct was "fraudulent" because they made affirmative misrepresentations regarding the security of Plaintiffs' and other Class Members' private information, which induced Plaintiffs' purchase, caused them to pay more for the goods they purchased, and caused them to lose money

145.    Defendants' conduct was also "fraudulent" because Defendants omitted material information from Plaintiffs and other Class Members, as described herein.

146.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

147.    Defendants profited from, and Plaintiffs and other California Subclass Members suffered injury in fact and lost money as a result of Defendants' unlawful, unfair, and fraudulent conduct.

148.    In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through unlawful or unfair acts and practices, and for the restitution of all monies Defendants unjustly acquired through acts of unlawful competition.

24

*Perez v. Romantix Online, Inc.*, et al.
CLASS ACTION COMPLAINT

**SIXTH CAUSE OF ACTION**

**Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**(Against the Marketer Defendants on behalf of the Class)**

149.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

150.    Google and NextRoll are headquartered in California and engage in substantial business activities within the state, including directing and controlling their business operations from California.

151.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

152.    The acts, omissions, practices, and non-disclosures of Google alleged herein constitute business acts and practices.

153.    The UCL applies broadly to business conduct that occurs within California or emanates from California, even when it affects consumers outside the state.

154.    The acts of Google and NextRoll alleged herein are "unlawful" under the UCL in that, as alleged herein, they constitute intrusions upon seclusion, violations of the California Invasion of Privacy Act, Federal Wiretap Act, and California Constitution, and unjust enrichment.

155.    Plaintiffs reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

156.    Google and NextRoll's conduct was "unfair" because it was immoral, unethical, unscrupulous, and substantially injurious to consumers, and the utility of their conduct, if any, did not outweigh the gravity of the harm to consumers.

157.    Google and NextRoll's conduct was also "unfair" because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to California's Constitution, California's Invasion of Privacy Act, and the Federal Wiretap Act.

158.    Google and NextRoll's conduct was also "unfair" because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

*Perez v. Romantix Online, Inc., et al.*
CLASS ACTION COMPLAINT

159.    Google and NextRoll's conduct was "fraudulent" because they omitted material information from Plaintiffs and other Class Members, as described herein.

160.    There were reasonably available alternatives to further Google's legitimate business interests, other than the conduct described herein.

161.    Google and NextRoll profited from Class Members suffered injury in fact and lost money as a result of, Google and NextRoll's unlawful, unfair, and fraudulent conduct.

162.    In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Google and NextRoll from continuing to conduct business through unlawful or unfair acts and practices, and for the restitution of all monies Google and NextRoll unjustly acquired through acts of unlawful competition.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants on behalf of the Class)

163.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

164.    Plaintiffs and the Class conferred an economic benefit on Defendants in the form of profits resulting from the use of Plaintiffs' and Class Members' personal information and PPSI to improve Defendants' marketing efforts, including targeted advertising.

165.    Defendants' financial benefits resulting from their unlawful and inequitable conduct are economically traceable to Plaintiffs' and Class Members' personally-identifying information and PPSI being obtained without their consent. Plaintiffs and other Class Members have been injured because they have not been compensated for the benefits they conferred on Defendants. Plaintiffs and other Class Members' legal remedies are inadequate to address this injury.

166.    It would be inequitable, unconscionable, and unjust for Defendants to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

167.    As a result, Plaintiffs and other Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of their inequitable business practices.

**EIGHTH CAUSE OF ACTION**

**Negligence**

**(Against Romantix and Innov8 on behalf of the Class)**

168.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

169.    Romantix and Innov8 owed Plaintiffs and other Class Members a duty of care. In violation of that duty, Romantix and Innov8 negligently, carelessly, recklessly or unlawfully transmitted to and permitted the Marketer Defendants to access Plaintiffs' and other Class Members' personally-identifying information and PPSI.

170.    As a direct and legal result of Romantix's and Innov8's wrongful conduct and omissions, Plaintiffs and other Class Members have sustained damages in a sum to be determined at trial.

**PRAYER FOR RELIEF**

171.    Wherefore, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

a.    An Order declaring this action to be a proper class action, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' undersigned counsel as Class Counsel;

b.    An Order requiring Defendants to bear the cost of Class Notice;

c.    An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

d.    An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice;

e.    An Order requiring Defendants to pay statutory, compensatory and punitive damages as permitted by law;

f.    An Order enjoining the Marketer Defendants from intercepting, learning the contents of, and profiting from private communications between Romantix and Innov8 and users of Romantix.com without the users' consent;

g.      An Order enjoining Romantix and Innov8 from allowing the Marketer Defendants to intercept, learn the contents of, and profit from private communications between users and Romantix.com without the users' consent;

h.      An Order compelling the Marketer Defendants' destruction of all data obtained from communications made by Class Members on Romantix.com without Class Members' consent;

i.      A judgment awarding any and all further equitable, injunctive, and declaratory relief as may be appropriate;

j.      Pre- and post-judgment interest, as permitted by law;

k.      An award of attorney fees and costs; and

l.      Such further relief as the Court deems necessary, just, or proper.

## **JURY DEMAND**

172.    Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: March 11, 2025                    /s/ Trevor Flynn

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
PETER GRAZUL
*pgrazul@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiffs***