James F. Monagle, SBN 236638
Edgar F. Navarrete, SBN 322662
MULLEN COUGHLIN LLC
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
Telephone: (267) 930-1529
Email: jmonagle@mullen.law;
enavarrete@mullen.law

Attorneys for Defendant
INNOV8 SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., ALPHABET INC., and NEXTROLL, INC.,<br><br>Defendants. | Case No.: 5:25-cv-02465-NW<br><br>*Assigned for all purposes to the Honorable Noël Wise, Courtroom 3*<br><br>**DEFENDANT INNOV8 SOLUTIONS, INC.'S NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>**Date**: October 8, 2025<br>**Time**: 9:00 am<br>**Location**: San Jose Courthouse, Courtroom 3, 280 South First Street, San Jose, CA 95113<br><br>Date Filed: March 11, 2025<br>Trial Date: None Set |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 8, 2025 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Noël Wise, in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 S. First Street, San Jose, CA 95113, Defendant, INNOV8 SOLUTIONS, INC. ("Innov8") will and hereby does move this Court,

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing Plaintiffs', PAUL PEREZ and HENRY BRADLEY (collectively "Plaintiffs"), claims against Innov8 as stated in their Class Action Complaint, ECF No. 1, for lack of subject matter jurisdiction based on lack of standing and for failure to state claims upon which relief may be granted.

The basis for this Motion is that it is clear from the face of the Complaint, and the documents referenced therein, that Plaintiffs failed to adequately plead a concrete injury-in-fact, thereby they do not have Article III standing, and Plaintiffs failed to adequately plead claims under Section 631(a) of the California Invasion of Privacy Act ("CIPA"); under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*; for unjust enrichment; and for negligence.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all other materials supporting the Motion or the Reply filed in support thereof, and such, evidence, arguments, and authorities which the Court may consider.

Date: June 2, 2025

**MULLEN COUGHLIN**

**By:** */s/ Edgar F. Navarrete*

James F. Monagle
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ISSUES TO BE DECIDED .......... 2

III. RELEVANT FACTUAL ALLEGATIONS .......... 2

A. Innov8 Discloses Its Use of Tracking Technologies on the Website .......... 2

B. Plaintiffs Vaguely Allege they Made Purchases on the Website and Allegations About their Activity on the Website are Partially Unsubstantiated .......... 3

C. Plaintiffs Allege in Conclusory Terms that Romantix.com "Collects" and "Discloses" their Website Browsing History to Google and NextRoll, All While Showing Factually that the Information in Question Is Meaningless .......... 3

IV. LEGAL CONTENTIONS .......... 4

A. Plaintiffs' Complaint Should be Dismissed Pursuant to Lack of Article III Standing .......... 4

1. Constitutional Requirements for Standing .......... 4

2. Plaintiffs Cannot Establish a Concrete Harm .......... 5

a) Plaintiffs Have Not Incurred an Economic Injury .......... 5

b) Alleged Disclosure of Plaintiffs' Website Button Clicks and Search Terms Does Not Create a Privacy Interest Injury .......... 6

B. Plaintiffs' Complaint Should be Dismissed for Failing to State a Claim .......... 9

1. Plaintiff's CIPA Cause of Action Against Innov8 is not Adequately Pled .......... 9

a) Plaintiffs' Website Browsing Activity Does Not Constitute the "Contents" of their Communications with Romantix .......... 10

b) Plaintiffs Allegations that Information Was "Disclosed" to Third Parties Show that there Was No Capture of Any Communication While "In Transit" .......... 11

c) Plaintiffs Fail to Allege they Did Not Consent to the Alleged Interceptions .......... 12

2. Plaintiff's Negligence Cause of Action Against Innov8 is Not Adequately Pled .......... 13

a) Innov8 Does Not Owe Plaintiffs a Duty Because they Have No Direct Relationship .......... 13

b) Plaintiffs Do Not Allege Actionable Damages in Support of their Cause of Action ..... 15

3. Plaintiffs' Complaint is Devoid of Any Indication they Lost "Money or Property" as is Required for their UCL Claim..... 16

4. Plaintiff's Unjust Enrichment Cause of Action is Not Adequately Pled ..... 18

V. CONCLUSION ..... 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 9

*B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024)..... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 9

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)..... 6

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)..... 5

*Claridge v. RockYou Inc.*, 785 F.Supp.2d 855 (N.D. Cal. 2011) ..... 16, 17

*Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80 (9th Cir. 1952)..... 18

*Corales v. Bennett*, 567 F.3d 554 (9th Cir. 2009) ..... 13

*D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024)..... 6

*Doe v. Eating Recovery Center LLC*, 2024 WL 2852210 (N.D. Cal. June 4, 2024) ..... 17, 18

*Gonzales v. Uber Techs, Inc.*, 305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..... 17

*Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112 (C.D. Cal. 2024) ..... 11

*Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ..... 15

*In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024) ..... 13, 14, 15

*In re Apple Processor Litig.*, 2023 WL 5950622 (9th Cir. Sept. 13, 2023)..... 18

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)..... 7, 8

*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 6

*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)........ 10

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023)........ 10, 17, 18

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (Cal. 2011)........ 16

*Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 8

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 15

*Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440 (2005) ........ 16

*Marina Tenants Assn. v. Deauville Marina Development Co.*, 181 Cal.App.3d 122 (1986) ... 18, 19

*Massie v. Gen. Motors LLC*, 2022 WL 534468 (D. Del. Feb. 17, 2022)........ 7

*McGarry v. Sax*, 158 Cal. App. 4th 983 (2008) ........ 13

*Mikulsky v. Noom, Inc.*, 2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ........ 5, 8

*Norman–Bloodsaw v. Lawrence Berkeley*, 135 F.3d 1260 (9th Cir. 1998) ........ 7

*Pom Wonderful LLC v. Welch Foods, Inc.*, 2009 WL 5184422 (C.D. Cal. Dec. 21, 2009) ........ 16

*Popa v. PSP Grp., LLC*, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023)........ 7, 8

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024)........ 15, 16, 17, 18

*Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607 (2018)........ 13

*Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 7, 8

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)........ 4

*Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ........ 15

*Scott v. Breeland*, 792 F.2d 925 (9th Cir. 1986) ........ 4

*Shah v. Cap. One Fin. Corp.*, 2025 WL 714252 (N.D. Cal. Mar. 3, 2025) ........ 13, 14, 16, 17, 18

*Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. 2021)........ 12

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)........ 18

*Spokeo v. Robins*, 578 U.S. 330 (2016) ... 4, 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ... 5

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) ... 9, 10

*Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ... 11

*Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ... 4

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) ... 5

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ... 10

**Statutes**

Cal. Bus. & Prof. Code § 17200 ... 2, 1, 16

Cal. Penal Code § 631(a) ... 1, 9, 10, 12

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ... 2, 9, 19

Federal Rule of Civil Procedure Rule 12(b)(1) ... 2, 4, 19

## I. INTRODUCTION

Plaintiffs seek to create a never before recognized category of protected information they call "Private and Protected Sexual Information." Plaintiffs treat this contrived category of information as sacrosanct akin to statutorily defined categories of protection information – but without having any such statutory support themselves. However, a close reading of Plaintiffs' factual allegations demonstrates that their claims are all based on the contention that their button clicks and search terms executed on the Romantix website – which is not a medical provider, financial institution, or other such entity, but rather simply a retailer of adult novelties and goods - became known to third parties. Plaintiffs claim this information was alternatively "intercepted" or "disclosed" or "shared" – with their terminology varying as it suits them in different contexts. Whatever spin they put on it, Plaintiffs' allegations about their browsing activity on a retail website simply do not establish they suffered any Article III injury or plead a cognizable claim.

First, Plaintiffs do not allege an injury that would provide them standing to bring this suit in federal court. They do not even feign having suffered any actual compensable damages, apparently relying entirely on the statutory damages available under their California Invasion of Privacy Act ("CIPA") cause of action for any potential recovery. Presumably Plaintiffs will assert a general "privacy injury" to demonstrate standing here. However, that ignores the fact that the only "private" information Plaintiffs claim was captured was their browsing of products on a retail website, information which in any event cannot be identifiably connected to them personally.

Plaintiffs' actual claims against Innov8 fare no better. Plaintiffs raise the following causes of action against Innov8: (1) negligence; (2) violation of CIPA, Cal. Penal Code § 631(a); (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*; and (4) unjust enrichment. None of these bear any merit. Among other things, Plaintiffs concede that the Romantix website contained a privacy policy revealing that certain information might be shared with third parties and thus cannot show they did not consent to the alleged "interception." They also do not establish that Innov8, as an e-commerce solutions and service provider, owed them any common law duty of care. Finally, they do not offer even vague factual

allegations supporting any contention that they incurred any loss of money or property that would support a claim under the UCL or an unjust enrichment claim, or any other claim for that matter

Therefore, Innov8 respectfully requests the Court dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction as Plaintiffs fail to allege an injury-in-fact or causation sufficient to establish Article III standing. In the alternative, Plaintiffs' Complaint should be dismissed on the basis that Plaintiffs' Complaint fails to state a claim for the reasons discussed in more detail below.

## II. ISSUES TO BE DECIDED

Whether Plaintiffs fail to (1) allege Article III standing or (2) adequately state a claim for relief.

## III. RELEVANT FACTUAL ALLEGATIONS

Innov8 offers its business partners eCommerce services which allow its business partners to market and sell their merchandise online. Comp. ¶ 17. Romantix is one such business partner. Comp. ¶ 20.

### A. Innov8 Discloses its Use of Tracking Technologies on the Website

As Plaintiffs concede, the Website utilizes a cookie consent banner to inform visitors of tracking software present on the Website. Compl. ¶ 48. The consent banner states the Website "uses cookies to improve user experience." *Id.* It also informs users that use of the website requires "consent to all cookies in accordance with our Cookie Policy." *Id.* Moreover, the consent banner gives visitors the option to configure their cookie preferences and informs visitors about what cookies are, their function on the Website, and what cookies are present on the Website. *Id.* The consent banner also contains a link directing visitors to the Website's privacy policy. The Website's privacy policy,[1] which Plaintiffs also incorporate by reference in their Complaint, informs website visitors that it collects website visitors' personal information including personal information such as names, email addresses, IP addresses, and credit card numbers, in addition to "sensitive information related to your purchases, including data about your preferences for adult products".

---

[1] https://www.romantix.com/privacy-policy

As referenced in Plaintiffs' Complaint, the Website's privacy policy informs visitors that Romantix does not sell visitors' personal information to third parties, however Plaintiffs' Complaint fails to disclose that the privacy policy informs visitors that "we may share your information with trusted service provides who assist us in the operation of our website and business." Moreover, contrary to what is alleged in Plaintiffs' Complaint, the Websites' privacy policy also discloses the identity of service providers present on the Website, provides a brief description of their duties on the Website, and includes links to these service providers' privacy policies. One of the identified service providers is Google, who is a defendant in this lawsuit.

**B. <u>Plaintiffs Vaguely Allege they Made Purchases on the Website and Allegations About their Activity on the Website are Partially Unsubstantiated</u>**

Both Plaintiffs allege they visited the Website, browsed its contents, and made purchases over the course of several months. Compl. ¶ 77, 79. Plaintiff Bradley alleges he "visited Romantix.com on several occasions over the last several years", last visiting in October 2024, and that "[d]uring these visits, Mr. Bradley both browsed certain categories of adult products, and typed specific search queries into the website's search bar." Compl. ¶ 79. Plaintiff Bradley alleges he last made a purchase from Romantix on Website on November 30, 2021. *See Id.*

Plaintiff Perez alleges he "visited the website in approximately October 2024 and purchased adult products from the website in March or April 2024." Compl. ¶ 77. Vaguely, he claims he purchased "at least seven separate items." Comp. ¶ 77.

**C. <u>Plaintiffs Allege in Conclusory Terms that Romantix.com "Collects" and "Discloses" their Website Browsing History to Google and NextRoll, All While Showing Factually that the Information in Question is Meaningless</u>**

Plaintiffs' claims are all based on their contention that information is sent from Romantix.com to Co-Defendants Google and NextRoll (collectively "Marketing Defendants"). *See* Compl. ¶ 34 (stating information sent "from Romantix.com to Google's servers"). Though attempting to frame these contentions in the context of "eavesdropping" and "interception", Plaintiffs' limited factual allegations describe it as being "collect[ed]" by Romantix.com and then "disclosed" to third parties. *See, e.g.,* Compl. ¶¶ 36, 50. More pertinent perhaps than the

inconsistencies in how they describe the metrics tools in question are Plaintiffs' own demonstrations that the information they claim is "personal" and sensitive is nothing of the sort. Plaintiffs included screenshots they allege show what was supposedly "transmitted" or "intercepted." Compl. ¶¶ 33-35, 43. Those images clearly demonstrate that what Plaintiffs allege was improperly obtained by Google and NextRoll contain nothing more than meaningless strings of letters and numbers. *Id.* Indeed, Plaintiffs recognize that what little portion of the information actually could potentially be readable and have meaning is so indecipherable that they felt the need to highlight a small portion for the reader. Compl. ¶¶ 33, 35. Finally, Plaintiffs' offer detail as to how they believe this information is valuable to Google and NextRoll. Compl. ¶¶ 28-30, 37-38, 41, 45. Tellingly, these irrelevant allegations dwarf Plaintiffs' assertions as to how they were supposedly harmed, which boil down to a claim that they would not have purchased products from Romantix had they known about the cookies (even though, as discussed below and above, they did or at least should have known). Compl. ¶ 91.

## IV. LEGAL CONTENTIONS

### A. Plaintiffs' Complaint Should be Dismissed Pursuant to Lack of Article III Standing

Federal Rule of Civil Procedure Rule 12(b)(1) allows litigants to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiffs, as "the party seeking to involve the jurisdiction of the federal court[,] has the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "A jurisdictional challenge under to Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

#### 1. Constitutional Requirements for Standing

To establish Article III standing, Plaintiffs must allege they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Spokeo v. Robins,* 578 U.S. 330, 338 (2016). The burden falls on the Plaintiffs to demonstrate that these three requisite elements are fulfilled. *Id.* Furthermore, to allege an injury in fact, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks omitted).

The injury-in-fact requirement, requires "a plaintiff [to] show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171, at *3 (S.D. Cal. Jan. 22, 2024) (citing *Spokeo*, 578 U.S. at 339). For an injury to be imminent, the threat of future injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 416 (2013). In *TransUnion*, the Supreme Court noted that "[a]n injury in law is not an injury in fact" and that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis included). Indeed, the US Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 426 (*quoting Spokeo*, 578 U.S. at 341).

Moreover, "[t]hat a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo,* 578 U.S. at 338, n.6 (internal quotation marks omitted); *see also Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("named plaintiffs who represent a class 'must allege and show that they personally have been injured.")

**2. Plaintiffs Cannot Establish a Concrete Harm**

*a) Plaintiffs Have Not Incurred an Economic Injury*

Monetary harms are traditional tangible harms that readily qualify as concrete injuries for purposes of establishing Article III standing. *TransUnion LLC*, 594 U.S. at 425. In order to plead

an "economic injury", a plaintiff may: "(1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1195 (S.D. Cal. 2024)

Here, the Plaintiffs' Complaint does not allege an actual or impending economic injury as a result of the tracking software on the Website. Instead, the Plaintiffs' Complaint relies on conclusory allegations of speculative injuries allegedly sustained by Plaintiffs. Plaintiffs generally allege they suffered "injury in fact and lost money" and "damages in a sum to be determined at trial" without any factual allegations demonstrating these damages. Comp. ¶¶ 147, 170.

The only other assertions that might suggest some form of economic harm are Plaintiffs' allegations that they would not have paid as much (or possibly anything) to purchase products if they had known about the use of the tracking tools on the Website. Compl. ¶¶ 91-93; 144. Aside from these conclusory claims, Plaintiff's Complaint is devoid of factual allegations alleging Plaintiff suffered an economic injury-in-fact. For example, Plaintiffs do not allege the existence of alternative vendors that could have offered Plaintiffs a less expensive alternative then services offered by the Website.

Accordingly, Plaintiffs alleged injury-in-fact rests entirely on their statutory claims and the attendant statutory damages provisions, which as discussed above, on their own do not establish an injury-in-fact for Article III standing.

*b) Alleged Disclosure of Plaintiffs' Website Button Clicks and Search Terms Does Not Create a Privacy Interest Injury*

In order to establish standing based on an alleged privacy injury, a plaintiff must demonstrate that the purportedly disclosed information is sufficiently sensitive to implicate a protectable privacy interest. *Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). Courts determine if impacted information implicates a protectable privacy interest "based on the nature of the information at issue." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d

1016, 1040 (N.D. Cal. 2014); *see also Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1271 n. 17 (9th Cir. 1998) ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed.") Therefore, "'[e]avesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury." *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022).

In the recent case *Rodriguez v. Autotrader, Inc.*, the plaintiff alleged third-party tracking software on the defendant's website collected her website activity, including her search queries which she alleged contained "'confidential' and 'private' information." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 925 (C.D. Cal. 2025). The Court found plaintiff's descriptions of her queries as "confidential" and "private" information were conclusory, and therefore failed to establish the information was sufficiently sensitive to create an injury-in-fact. *Id.* at 926. The Court further noted that "[w]hether the right to privacy is implicated depends on the sort of information revealed", and thus, because the plaintiff failed to allege the contents of her query and why this information was sensitive, she therefore lacked standing. *Id.* at 926-27.

As a result, courts have concluded that data pertaining to an individual's product preferences "is not the type of private information that the law has historically protected." *Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023). In *Popa*, the plaintiff alleged the defendant allowed third-party tracking software to be embedded on its website and that this software "intercept[ed] and record[ed] the website visitor's electronic communications with the [defendant's] website" including merchandise viewed. *Popa*, 2023 WL 7001456, at *1. The court dismissed the claims for lack of standing because it determined that the information "reveal[ed] nothing more than the products that interested [the plaintiff] and thus is not the type of private information that the law has historically protected." *Id* at *4 (citation omitted).

In addition to pleading that the relevant information is sensitive in nature, the privacy interest involves an individual's control over information "concerning his or her person" and therefore a plaintiff must show that disclosed information is actually connected to him or her. *In re Facebook*,

*Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Therefore, in addition to requiring some level of sensitivity, information must also be "personal" information capable of identifying the plaintiff. *See Mikulsky*, 2024 WL 251171, at *4 (finding lack of standing due to a lack of "identifiable information that would allow" the allegedly disclosed health information to identify the plaintiff); *Popa v. PSP Grp., LLC*, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) (finding lack of standing where there were no allegations the defendants could connect the information in question to the plaintiff's identity). Accordingly, for purposes of demonstrating standing, information must be "sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez*, 762 F. Supp. 3d at 927. Where a Plaintiff fails to allege that the defendant disclosed any sensitive or personal information, such allegations are "insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy." *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023)

Here, Plaintiffs' allegations, do not establish either that sensitive information about them was captured or that any of the information can be attributed to them. Plaintiffs allege only that Google and NextRoll "intercepted" information about the buttons and links they clicked on and search terms they entered on the Romantix website. That is, if anything was revealed to those third parties, it was only the products that Plaintiffs browsed. Thus, the information is the same as what was deemed insufficient in *Rodriguez* and *Popa* – different in kind but not degree. Plaintiffs attempt to gloss over this reality by asserting various conclusions they believe *could* be made based on their product browsing. Compl. ¶¶ 21-23. However, they do not assert that any such conclusions were actually made – and therefore fail to demonstrate that they suffered an actual injury. Moreover, they do not bolster their speculative and conclusory assertion that such determinations could be reached. For example, there are various reasons why an individual might browse particular products on the Romantix Website unrelated to their own preferences, such as purchasing a gift for another person or simply out of curiosity.

Additionally, Plaintiffs do not provide any allegations demonstrating how the information in question is identifiable to them personally. First, Plaintiffs directly concede that NextRoll does

not and cannot identify them, stating the AdRoll pixel "is not directly connected to personal user profiles." Compl. ¶ 42. Plaintiffs allege that Google assigns unique identifiers which, according to Plaintiffs, Google uses to "associate" to an individual. However, the Complaint does not allege that Google actually ever did so either in general or with respect to either Plaintiff. Compl. ¶ 34 – 35. The Complaint also alleges that this association requires individuals to be logged in to their Google affiliated accounts, however it does not allege that either Plaintiffs were logged in to such accounts or even had such accounts when they visited the Website. Moreover, Plaintiffs' own allegations undermine their conclusory assertion that that the browsing information "can" be associated with an individual. Purportedly in support of this claim, Plaintiffs provide screenshots which they allege show Google can associate browsing information with an individual. Compl. ¶ 33-35. Plaintiffs' assertions aside, these images clearly show that no one could reasonably use the information to connect information to Plaintiffs. The part of the image Plaintiffs themselves highlight is a long string of meaningless numbers and letters. They make no effort to explain how a person could look at those numbers and use them to determine that either Plaintiff was the person who browsed the items on the website – and even less as to how the information could be used to make an inference about what they are truly trying to say is private, such as sexual orientation.

### B. Plaintiffs' Complaint Should be Dismissed for Failing to State a Claim

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring more than a "sheer possibility," "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must allege a factual basis for each element of each cause of action. *Id.* at 678-79.

#### *1. Plaintiffs' CIPA Cause of Action Against Innov8 is not Adequately Pled*

Cal. Penal Code § 631(a) is generally treated as having four distinct subparts or "clauses" which are independent bases for liability. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp.

3d 969, 975 (C.D. Cal. 2023). The first three prohibited behaviors are (1) intentional wiretapping, (2) attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in activities prohibited under (1) or (2). *Id.* The fourth prohibited behavior under section 631(a) is aiding or conspiring with any person in violating one of three previous clauses. *Id.* Here, Plaintiff alleges that Innov8 "aided and abetted" the Marketing Defendants in violating section 631(a).

*a) Plaintiffs' Website Browsing Activity Does Not Constitute the "Contents" of their Communications with Romantix*

Section 631(a)'s second clause prohibits "read[ing], or attempt[ing] to read, or to learn the contents or meaning" of a communication. Cal. Penal Code § 631(a). The Electronic Communications Privacy Act ("ECPA"), CIPA's federal counterpart, has a content requirement which is considered similar to CIPA. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023). The Ninth Circuit has determined that "content" under the ECPA refers to "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey'" but "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Courts have determined that information such as "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions" are not content information. *Katz-Lacabe*, 668 F. Supp. at 945 fn. 9; *See also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("'keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device'" are "record information" and not content under section 631(a).)

Here, Plaintiffs' allegations fail to demonstrate that their activity on Website created anything more than mere "record information," much less that Innov8 allowed the Marketing Defendants to eavesdrop on the "content" of their communications with the website. Plaintiffs

allege that "trackers embedded in the website activate and begin collecting data about the users' activity. These cookies or pixels collect unique identifiers and other data, including browsing patterns and product interests, and ultimately, consumers' PPSI." Comp. ¶ 28. Plaintiffs also allege that in their interactions with the Website, they provided their names, home addresses, email addresses, and credit card information. *See* Comp. ¶ 78, 80. Most, if not all of the categories of information Plaintiffs' Complaint alleges was captured by the tracking software constitute "record information" according to several rulings in this district. Accordingly, Plaintiffs' Complaints fails to demonstrate that Innov8 aided and abetted the Marketing Defendants in viewing the "content" of their communications with the Website.

*b) Plaintiffs' Allegations that Information Was "Disclosed" to Third Parties Show that there Was No Capture of Any Communication While "In Transit"*

Plaintiffs also must plead that the alleged communications were viewed while "in transit." To do so, a plaintiff must show the defendant "read or learned the contents of a communication while the communications were in transit, or in the process of being sent or received." *Valenzuela v. Super Bright LEDs Inc.*, No. EDCV2301148JAKSPX, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (citation omitted). The "in transit" requirement means the interception must occur "in real time," meaning that the third party must intercept the communication the instant the Plaintiff transmitted their communication on the Website. *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024). *See also B.K. v. Eisenhower Med. Ctr.*, 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) (holding allegation that service "intercepted, viewed, analyzed, and used" health information was too "vague" to establish anyone actually viewed data).

Here, Plaintiffs' Complaint alleges that their communications were made "instantly available" and "disclosed" to third parties. Compl. ¶ 83-84. However, they do not allege the communications were intercepted and read by a third party while they were in transit. Notwithstanding that conclusory allegation, much of the rest of the Complaint actually undermines the conclusion that anything was "intercepted" while "in transit." For example, in the very same

paragraph, they assert that their browsing activity was "tracked" and then disclosed. Compl. ¶ 83. They also repeatedly make references to Romantix's alleged "disclosure" of information, rather than an interception by a third party. Plaintiffs also repeatedly focus on what they believe Google "can" do with the information at some unspecified later time – i.e. demonstrating that it does ***not*** view or read the information "in real time" while it is "in transit." *E.g.* Compl. ¶¶ 34, 36. Therefore, Plaintiffs' have not adequately alleged the Marketing Defendants intercepted the communications while these were "in transit" and for this reason too their claim should be dismissed.

*c) Plaintiffs Fail to Allege they Did Not Consent to the Alleged Interceptions*

To plead a section 631(a) claim, a plaintiff must show the communications was intercepted "without the consent of all parties to the communication." *See* Cal. Penal Code § 631(a). Courts have deemed consent to have been given under section 631(a) when "a reasonably prudent user would have been aware" of the recording. *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. 2021).

Here, Plaintiffs expressly acknowledge the Romantix website contains a privacy and a "consent banner" which points to that policy, which they infer they were aware of. Compl. ¶ 20, 24-27, 48. Also, Plaintiffs both allege they visited the website on multiple occasions and therefore had numerous opportunities to peruse the privacy policy and FAQs. Compl. ¶¶ 77, 79. Plaintiffs were therefore aware of Romantix's information sharing practices and despite this continued using the Website. Plaintiffs "cherry pick" pieces of the policy to make it seem as though Romantix was not following it. However, they cannot avoid admitting that the policy informs them that information is "disclose[d] to third parties" in "generalized" form. Therefore, because Plaintiffs concede the privacy policy informed them about the information sharing, and they continued to use the Romantix Website, their consent defeats their claim.

### ***2. Plaintiff's Negligence Cause of Action Against Innov8 is Not Adequately Pled***

To state a claim for negligence, a plaintiff must plausibly allege: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (*quoting McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

#### *a) Innov8 Does Not Owe Plaintiffs a Duty Because they Have No Direct Relationship*

In determining whether a duty of care exists between a defendant and a plaintiff, California courts consider "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 628, (2018).

This position is supported by a recent ruling in the Northern District of California which found that *website owners* owe website visitors a duty of care in the context of tracking software installed on websites. *See Shah v. Cap. One Fin. Corp.*, No. 24-CV-05985-TLT, 2025 WL 714252, at *5 (N.D. Cal. Mar. 3, 2025) (emphasis added). In *Shah*, plaintiffs were credit card customers or applicants who brought a class action against Capital One, alleging Capital One unlawfully disclosed their personal and financial information to third parties through tracking technologies on its website. *Id.* at *1. The Court determined that pursuant to Plaintiffs' allegations which alleged they "placed trust in [Capital One] to protect their personal information" were sufficient to demonstrate Capital One owed Plaintiffs a duty of care. *Id.* at *5.

Though in the slightly different context of a data breach, the Northern District has indicated that a third-party owes a duty with respect to protection of personal information only in the context of a "special relationship." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024). *Accellion* involved a class action lawsuit against Accellion, Inc., a cloud software company which developed a file sharing transfer software "used by hundreds of companies, private organization, and government entities," following two data breaches. *Id.* at 630. The plaintiffs alleged their personal information was exposed as a result of the breaches. *Id.* The plaintiffs alleged Accellion owed them a duty of care in large part "ar[ising] from Accellion's commitments to its clients." *Id* at 631. In addressing whether a duty existed, the court emphasized that Accellion's "entire business model was built on promising its clients that it provided a platform to securely transfer files." *Id.* at 633. Thus, due to that business model and the fact the plaintiffs and Accellion's customers specifically relied on it to safeguard personal information, the Court found a "special relationship" existed between Accellion and the plaintiffs. *Id.* at 633. Therefore, it held a duty existed. *Id. Cf. Shah*, __ F. Supp. 3d __, 2025 WL 714252 (N.D. Cal. March 3, 2025) (finding that a consumer lending company owed a duty to its direct customers who used its website).

Plaintiffs' allegations here do not substantiate a relationship with Innov8 at all, let alone a "special relationship." Plaintiffs cleverly try to treat Romantix and Innov8 as the same entity – despite suing and serving them separately. Plaintiffs assert the legal conclusion that "Romantix and Innov8 own and operate the website" but their actual factual allegations do not explain how they reached that conclusion or provide a support for it. Plaintiffs concede they browsed and brought products from a website called "Romantix." Compl. ¶¶ 1, 77, 79, 81, 83-84, 91-93. Plaintiffs also concede that "Innov8 provides eCommerce solutions to retailers" – i.e. that Innov8 itself is not a retailer. Compl. ¶ 17. While Plaintiffs accurately assert that Romantix is identified as one of Innov8's "partners" on its website, they agree that Innov8 has several such partners and identifies two other such partners in the image embedded right in their Complaint – both of which also sell adult toys and are therefore clearly competitors of Romantix. Compl. ¶¶ 17-18. That is, Plaintiffs' own factual allegations demonstrate that Innov8 is an "eCommerce solutions" provider and

Romantix is a retailer with whom they have a relationship as consumers and purchasers of products. Equally as relevant is what Plaintiffs do ***not*** allege. They do not assert, as was the case in *Accellion* that Innov8's business is specially built on protecting the security of personal information. Nor do they allege that Romantix was specifically relying on Innov8 to provide it with privacy protections, the way *Accellion*'s customers were relying on it to provide security. Plaintiffs also do not assert that Innov8 ever had possession of information about them or played a role in "disclosing" it to third parties as alleged. For example, in their screenshots purportedly showing that their information was sent to Google, those images clearly show the information originated from "romantix.com." Compl. ¶¶ 33-35.

*b) Plaintiffs Do Not Allege Actionable Damages in Support of their Cause of Action*

Negligence claims must result in actual damages from the complained-of conduct." *Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *3 (C.D. Cal. Oct. 21, 2020). A plaintiff must allege an "appreciable, nonspeculative, present injury" in order to state a negligence claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). A Central District Court concluded the alleged disclosure of information by a website owner does not result in a compensable injury with respect to a negligence claim. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024). There, the plaintiffs' claims were essentially the same as here – that the defendant disclosed information (in *Walgreen* medical information) about their prescriptions and medical conditions by using metrics tools on its website. *Id.* The plaintiffs alleged a variety of injuries, most notably the loss of privacy itself, being subjected to targeted advertisements, and loss of benefit of the bargain (in the form of purported) overpayment for services obtained from the defendant). *Id.* at 897-98. Looking at each of the plaintiffs' alleged harms in turn, the Court held they were insufficient to support a negligence claim at the pleadings stage. *Id.* at 899. Therefore, the Court dismissed the claim. *Id.*

Plaintiffs here similarly offer next to nothing as to their supposed damages, seemingly conceding that they have suffered no real harm outside of their amorphous and conclusory privacy injury, and are simply relying on the statutory damages provisions of their other causes of action.

In their negligence cause of action, Plaintiffs only state generically that "Plaintiffs . . . sustained damages in a sum to be determined at trial." Compl. ¶ 170. Plaintiffs' only other allegation even close to alleging cognizable harm is the assertions they would not have paid as much for their purchases if they knew their information would be "disclosed." Compl. ¶¶ 91-93. At best, these are the same kind of "loss of benefit of the bargain" allegations that were rejected in *Walgreen*. Accordingly, Plaintiffs have not adequately pled the damages element in support their negligence cause of action and for this reason too, this Count should be dismissed.

#### 3. *Plaintiffs' Complaint is Devoid of Any Indication they Lost "Money or Property" as is Required for their UCL Claim*

Plaintiffs fail to state a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"). The UCL prohibits an entity from engaging in any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To pursue a claim under the UCL, a plaintiff must have suffered an "injury-in-fact" and "lost money or property" as a result of the alleged unfair competition. *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (Cal. 2011); *Claridge v. RockYou Inc.*, 785 F.Supp.2d 855, 862 (N.D. Cal. 2011). This requirement means that a Plaintiffs must have "parted, deliberately or otherwise" with some identifiable sum or particular item of property formerly belonging to them or subject to their control. *Claridge*, 785 F.Supp.2d at 862. "Remedies for private individuals bringing suit under the UCL are limited to restitution and injunctive relief." *Pom Wonderful LLC v. Welch Foods, Inc.*, No. 09-567, 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009) (citing *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452 (2005)).

The Northern District very recently concluded in a similar context that "personal information does not constitute property" and therefore disclosure of that information was not a loss of money or property that would allow a claim under the UCL. *Shah*, 2025 WL 714252, at *7. As here, the plaintiffs in *Shah* asserted various claims arising from the defendant's use of tools like Google Analytics on its website. *Id.* With respect to their UCL claim, the plaintiffs asserted they had suffered a requisite injury under the statute because they had a property interest in their personal

information and thus lost money and property when that information was disclosed to third parties. *Id.* at *7. The court rejected that argument, finding that such information was not "property", and also, that plaintiffs did not contend they attempted or intended to participate in a market for such information. *Id.* The court also rejected the plaintiffs' additional arguments that alleged profit made by the defendant by disclosing the information, or a supposed reduction in value of the information, were sufficient to create the kind of economic loss necessary to sustain a UCL claim. *Id.*

The Northern District has also reached the same conclusion in the context when the information involved was allegedly medical information. *Doe v. Eating Recovery Center LLC*, 2024 WL 2852210, *1 (N.D. Cal. June 4, 2024). The court there noted that "the complaint includes some vague and dubious allegations about a market for individual medical data" but the plaintiff had not offered any allegations that she could no longer engage in such markets if she so desired. *Id.* Therefore, the UCL claim was dismissed. *Id.* A Central District Court similarly rejected arguments that both alleged "loss of benefit of the bargain" and "diminution in value" injuries constituted a loss of money or property which could support a UCL claim. *Walgreen*, 733 F. Supp. 3d at 903-04. Several other Northern District Courts have reached the same conclusion. *See, e.g., Katz-Lacabe*, 668 F. Supp. 3d at 943-44 (collecting cases and noting that the weight of authority in the district "point[s] in the … direction that the mere misappropriation of personal information does not establish compensable damages" supporting a UCL claim); *Gonzales v. Uber Techs, Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (holding "the sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes."); *Claridge*, 785 F. Supp. 2d at 862 (holding that theft of personal information does not constitute loss of money or property for purposes of the UCL).

Plaintiffs' allegations here are directly in line with those rejected in the various cases discussed above. Plaintiffs claim they "would not have visited Romantix.com, interacted with it, or purchased any products from the website," if they knew information was being shared with third parties. Compl. ¶ 91. As a corollary they claim they "would not have been willing to pay what they did for the products they purchased" had they known about the alleged information sharing. As

*Shah*, *Eating Recovery Center*, and *Walgreen* – cases directly on point for this issue – all found, those allegations simply do not give rise to the "loss of money or property" required to establish a UCL claim. In several respects, Plaintiffs' allegations here fall short of even those substandard facts. For example, Plaintiffs here do not even assert in "vague and dubious" terms that there is a "market" for their adult novelty browsing history, as the plaintiffs in *Eating Recovery Center* (unsuccessfully) did. In short, Plaintiffs' allegations here fall well short of establishing a loss of money or property as is required to state a UCL claim and therefore should be dismissed.

**4. *Plaintiff's Unjust Enrichment Cause of Action is Not Adequately Pled***

Because Innov8 has not retained a benefit to Plaintiff's detriment whatsoever—let alone inequitably—Plaintiff's unjust enrichment claim must fail. "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. "There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected." *Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952). Additionally, because the available remedy for a successful unjust enrichment claim is restitution, a plaintiff is required to allege that the Court has equitable jurisdiction over this claim, including a showing that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). To do so, a plaintiff must "allege that they had no adequate legal remedy" and the claim should be dismissed where they "fail to explain how the money they seek through restitution is any different than the money they seek as damages". *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (internal quotation marks omitted). In short, "the 'mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.'" *Marina Tenants Assn. v. Deauville Marina Development Co.*, 181 Cal.App.3d 122, 134 (1986).

Here, Plaintiffs allege they conferred an economic benefit on the Defendants because they provided their information to Romantix. Compl. ¶ 164. As a result, Plaintiffs allege they and other Class Members are entitled to equitable relief including restitution and/or disgorgement of all

revenues, earnings, profits, compensation, and benefits which may have been obtained by Innov8. Compl. ¶167. However, Plaintiffs received the benefit of their bargain. They placed orders on Romantix's Website and received what they purchased. Plaintiffs do not claim there was anything substandard about the products they purchased, or that they received something lesser or different than what they thought they purchased. Plaintiffs also do not claim they provided Romantix with any information additional or different from what was required to make a purchase – i.e. what they would have provided whether or not Romantix was using the Google Analytics or NextRoll tools. In short, beyond Plaintiffs' conclusory allegations that the defendants "enjoyed financial benefits" from their "inequitable conduct" Plaintiffs fail to substantiate this claim with factual allegations. Plaintiffs have demonstrated that "the mere fact that [they] benefited" the defendants, which does not itself justify restitution, as the California Court of Appeals made clear in *Marina Tenants*.

## V. <u>CONCLUSION</u>

For all the foregoing reasons, Innov8 respectfully requests that the Court grant the motion to dismiss Plaintiffs claims against Innov8 pursuant to Fed. R. Civ. P. 12(b)(1), as Plaintiffs lack standing to bring this lawsuit, or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Date: June 2, 2025

**MULLEN COUGHLIN**

**By:** */s/ Edgar F. Navarrete*

James F. Monagle
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.