COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
ASHLEY CORKERY (301380)
(acorkery@cooley.com)
KELTON N. MURPHY (340366)
(kbasirico@cooley.com)
JINYOUNG LEE (359885)
(jinyoung.lee@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,<br><br>Defendants. | Case No. 5:25-cv-02465-NW<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**<br><br>Date: October 8, 2025<br>Time: 09:00 a.m.<br>Dept.: 3<br>Judge: Hon. Noël Wise<br><br>Trial Date: Not Yet Set<br>Date Action Filed: March 11, 2025 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 2
II. BACKGROUND ..... 3
A. Parties ..... 3
B. Factual Allegations ..... 4
C. The Relevant Disclosures ..... 5
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 6
A. Plaintiffs' Claims All Fail Because They Consented to the Alleged Conduct. ..... 6
B. Plaintiffs Fail to State a Claim Under CIPA (Count I). ..... 9
1. Google Is Not a Third-Party Eavesdropper and Cannot Be Held Liable Under CIPA. ..... 9
2. Plaintiffs' CIPA Claims Have Other Defects ..... 13
C. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act (Count II) ..... 15
D. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion Under California Common Law and Invasion of Privacy Under the California Constitution (Counts III & IV) ..... 16
1. Plaintiffs Did Not Have a Reasonable Expectation of Privacy. ..... 16
2. The Alleged Invasion Is Not "Highly Offensive." ..... 19
E. Plaintiffs' Claim Under the UCL Fails Because They Did Not Adequately Allege Statutory Standing or an Inadequate Legal Remedy (Count VI). ..... 20
F. Plaintiffs' Unjust Enrichment Claim Fails For the Same Reason as the UCL Claim Because They Did Not Identify Any Gains by Google at Plaintiffs' Expense (Count VII). ..... 22
V. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

**Page**

**Cases**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 5

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .... 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 5

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .... 20

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .... 10

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 12, 14

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .... 18

*Doe I v. Google*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .... *passim*

*Edwards v. MUBI, Inc.*,
2025 WL 985130 (N.D. Cal. Mar. 31, 2025) .... 21

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .... 22

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 16, 19

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .... 7, 8

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir.2008) .... 8

*Good Meat Project v. GOOD Meat, Inc.*,
716 F. Supp. 3d 783 (N.D. Cal. 2024) .... 5, 13

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 15, 21

*Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 9, 10, 11, 13

*Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022) .......... 21

*Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192 (N.D. Cal. Mar. 29, 2022) .......... 21

*Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 20

*Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 6, 7, 8, 17

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 17

*Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 21

*Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812 (E.D. Pa. 2025) .......... 18

*Heiting v. Athenahealth, Inc.*, 2024 WL 3761294 (C.D. Cal. July 29, 2024) .......... 12

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 19

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 11, 12, 13

*Johnson v. Blue Nile, Inc.*, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 10

*Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989 (S.D. Cal. July 5, 2024) .......... 12

*Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 10

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 15, 16, 17, 22

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025) .......... 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 5, 13

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 16

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 20

*Lakes v. Ubisoft, Inc.*,
2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .......... 8, 9, 17

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......... 5

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 10

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .......... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 16, 19

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 10

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 14, 15

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 20

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 18

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*,
221 F. Supp. 2d 1090 (N.D. Cal. 2002) .......... 6

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) .......... 22

## TABLE OF AUTHORITIES
(continued)

**Page**

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 14

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 18

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 18

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 6, 8

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 21

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 9

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 6

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 12, 14, 20

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 18

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 11

*In re Vizio Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 14

*Williams v. What If Holdings*,
*LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 10

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. April 15, 2021) .......... 10

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 12

**Statutes**

18 U.S.C.
§ 2511 .......... 6, 13, 15

**TABLE OF AUTHORITIES**
(continued)

**Page**

Cal. Bus. & Prof. Code
§ 17204 .......... 20

Cal. Pen. Code
§ 631 .......... *passim*

Cal. Pen. Code
§ 632 .......... 6

Federal Wiretap Act .......... 6

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, on October 8, 2025 at 9:00 a.m., in Courtroom 3, 5th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California, pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Google LLC ("Google") will and hereby does move to dismiss the Class Action Complaint (ECF No. 1) filed by Plaintiffs Paul Perez and Henry Bradley ("Plaintiffs"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Ashley Kemper Corkery ("Corkery Decl."), the concurrently filed Request for Judicial Notice and Incorporation by Reference, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and arguments as may be presented in connection with the hearing of the motion.

## STATEMENT OF RELIEF SOUGHT

Google seeks an order dismissing with prejudice all causes of action in the Complaint for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

Whether Plaintiffs' Complaint should be dismissed because they have failed to state a claim for all causes of action under Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"This is another pixel case." *Doe I v. Google*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024). Plaintiffs Paul Perez and Henry Bradley ("Plaintiffs") recycle claims that other parties have alleged against analytics technology providers and that federal courts often dismiss for failure to state a claim. The same outcome follows here. Plaintiffs allege that, when they visited an adult product website owned and operated by other defendants Romantix Online, Inc. and Innov8 Solutions, Inc. (collectively, "Romantix"), defendant Google LLC ("Google") supposedly violated their right to privacy under various federal and state statutes and common law by receiving certain limited data that Plaintiffs consented Romantix could send. These claims cannot withstand dismissal: Courts in this Circuit have set clear pleading thresholds for Plaintiffs to advance challenges to pixel technology, and the allegations in Plaintiffs' Complaint do not clear those hurdles. Specifically, each of Plaintiffs' claims against Google must be dismissed for multiple reasons.

***First***, all claims fail because Plaintiffs unambiguously consented to the alleged conduct when they visited the challenged website, because Romantix's terms and conditions—which were prominently displayed on its cookie banner presented immediately to every website visitor and in its linked Privacy Policy—disclosed the challenged data collection.

***Second***, Plaintiffs' California Invasion of Privacy Act ("CIPA") claim fails because Google is a mere analytics service provider that receives information for Romantix's own benefit. Even setting aside this deficiency, Plaintiffs' allegations are also far too conclusory to establish that Google willfully obtained the alleged communications and attempted to read or learn their contents while in transit.

***Third***, Plaintiffs' claim under the Electronic Communications Privacy Act ("ECPA" or the "Federal Wiretap Act") fails, among other reasons, because the statute requires only one-party consent, and Romantix willingly embedded Google Analytics on its website and therefore provides the requisite statutory consent.

***Fourth***, Plaintiffs' claims for intrusion upon seclusion and violation of right to privacy under the common law and California Constitution fail because Plaintiffs have no reasonable

expectation of privacy over information about the goods they browse and purchase on an eCommerce website—especially when they have consented to the website's Privacy Policy and the alleged intrusion is not "highly offensive."

***Fifth***, Plaintiffs' Unfair Competition Law ("UCL") claim fails for lack of statutory standing because they did not sufficiently plead that they suffered economic harm as a result of Google's allegedly unlawful and unfair conduct. The claim also fails because Plaintiffs have not shown an inadequate remedy at law.

***Lastly***, Plaintiffs' unjust enrichment claim fails for the same reason as their UCL claim—that is, they do not identify any gains by Google at Plaintiffs' expense.

Accordingly, this Court should dismiss Plaintiffs' claims with prejudice, as Plaintiffs' shortcomings are fatal and cannot be remedied with an amended pleading.

## II. BACKGROUND

### A. Parties

Google LLC[1] is a Delaware corporation headquartered in Mountain View, California. (ECF No. 1 ("Compl.") ¶ 14.) Defendants Romantix Online, Inc. and Innov8 Solutions Inc. are corporations registered and headquartered in Denver, Colorado and Las Vegas, Nevada, respectively, that own and/or operate Romantix.com—the challenged eCommerce website at the center of this lawsuit, that sells adult products, and features blog articles covering a variety of adult sexual topics. (*Id.* ¶¶ 1, 12–13, 16, 21–23.)[2] Plaintiffs Paul Perez and Henry Bradley are California citizens who reside in San Bernardino County and Los Angeles County, respectively, who allege they visited and made purchases on Romantix.com on several occasions between November 2021 and October 2024. (*Id.* ¶¶ 10, 11, 77–79.)

---

[1] In the Complaint, Plaintiffs incorrectly named as a defendant Alphabet Inc., a mere holding entity for Google LLC. Pursuant to Google and Plaintiffs' joint stipulation that was entered by the Court on April 3, 2025, (ECF No. 25), Google LLC was substituted as the proper defendant in place of Alphabet Inc.

[2] Defendant NextRoll, Inc. is another service provider identified in the Complaint. The Complaint alleges it is a Delaware corporation headquartered in San Francisco, California. (Compl. ¶ 15.)

### B. Factual Allegations

Google Analytics is a web analytics service provided by Google that allows website owners like Romantix to analyze visitors' behavior on their website. (Compl. ¶¶ 28, 31–32.) This service provides insights that "allow[] Romantix and Innov8 to improve their marketing" and target advertisements to potential customers. (*Id.* ¶¶ 28, 32, 37, 39.)

According to Plaintiffs, when users browse and make purchases on Romantix's website ("Romantix.com"), the Google Analytics code, which Romantix willingly embedded on its website, transmits information about users' sexual practices and preferences to Romantix and to Google, allowing Google to allegedly "eavesdrop on, collect, and use for pecuniary gain" the information for targeted advertising. (*Id.* ¶¶ 29, 66.) Plaintiffs attempt to shift blame on Google for Romantix's choice to embed Google Analytics on Romantix.com, by claiming that Romantix unlawfully discloses Plaintiffs' and other users' data to Google through the use of cookies and pixels embedded on Romantix's website, which allegedly collects information about a user's browsing patterns and product interests. (*Id.* ¶¶ 21–23, 28.) Specifically, Plaintiffs allege that when they visited the website owned and operated by Romantix, Google learned information regarding Plaintiffs' sexual practices and preferences in violation of their right to privacy under CIPA, ECPA, the California Constitution, and common law. Plaintiffs also claim that Google engaged in unlawful, unfair, and fraudulent conduct in violation of the California UCL and was unjustly enriched by the challenged conduct. (*See generally id.* ¶¶ 103–135, 149–167.)

According to the Complaint, Plaintiff Paul Perez purchased at least seven separate adult products from Romantix.com in March or April 2024 and last visited the website in October 2024. (*Id.* ¶ 77.) He alleges that he "transmitted to [Romantix] (and thus, unwittingly to [Google]), not only the searches he ran and items he browsed, but also his personally identifying information[.]" (*Id.* ¶ 78.) Similarly, Plaintiff Henry Bradley alleges to have visited Romantix.com over the last several years, made at least one purchase in November 2021 and possibly more thereafter, and alleges that he transmitted the same personal information to Romantix and Google. (*Id.* ¶¶ 79, 80.) Neither Plaintiff states whether they have received targeted advertising based on alleged data transmissions to Google, or describes sustaining any concrete injury whatsoever.

### C. The Relevant Disclosures

Every user who visits Romantix.com sees a cookie banner prominently displayed on its website, which discloses to the user that the site uses cookies to improve user experience. (Declaration of Ashley K. Corkery ("Corkery Decl.") **Ex. A**.) By continuing to use the website, the user consents to the cookies, even if they do not click "Accept All." (*Id.*) The cookie banner also links to the Privacy Policy when the user clicks "Read more," which further discloses Romantix's use of "[c]ookies and other Automatic Data Collection Technologies," as well as its use of Google Analytics. (*Id.* **Ex. B**.)

Google requires all website owners, including Romantix, to read and accept the Google Analytics Terms of Service ("GA TOS") before they can install Google Analytics on their websites. Pursuant to that GA TOS agreement, Romantix agreed not to "pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information" and that it would "comply with all applicable laws, policies, and regulations relating to the collection of information from Users." (*Id.* **Ex. C** § 7.) In a similar vein, Google's Help Center page explicitly states that "no data be passed to Google that Google could use or recognize as personally identifiable information . . . such as email addresses, personal mobile numbers, and social security numbers." (*Id.* **Ex. D**.)

## III. <u>LEGAL STANDARD</u>

A complaint must be dismissed under Rule 12(b)(6) where the plaintiff fails to state a cognizable legal theory or allege sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive dismissal, "a complaint . . . may not simply recite the elements of a cause of action"; rather, it must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 796 (N.D. Cal. 2024) (quoting *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)). In evaluating the sufficiency of a complaint, courts do not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation

omitted), or "statements in a complaint contradicted by supporting documentation incorporated therein." *In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*, 221 F. Supp. 2d 1090, 1098 (N.D. Cal. 2002) (citing *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295–96 (9th Cir. 1998)).

## IV. ARGUMENT

Plaintiffs bring six causes of action against Google. All claims should be dismissed under Rule 12(b)(6) for multiple independent reasons. First, all claims fail because Plaintiffs consented to the alleged conduct. Second, Plaintiffs' claims under CIPA fail under the party exception and because Plaintiffs fail to allege various other requisite elements to support such a claim. Third, Plaintiffs' Federal Wiretap Act claim fails because the statute is a single-party consent paradigm, and Romantix consented to the alleged interception by embedding Google Analytics on its website. Fourth, Plaintiffs' privacy claims under the California Constitution and common law fail because Plaintiffs did not have a reasonable expectation of privacy when they consented to Romantix's Privacy Policy and while choosing to shop on an e-Commerce website, and because the alleged intrusion of privacy is not "highly offensive." Fourth, Plaintiffs' UCL claim fails for lack of statutory standing and failure to allege inadequate legal remedy. Finally, their unjust enrichment claim must be dismissed because they failed to identify any gains by Google at Plaintiffs' expense.

### A. Plaintiffs' Claims All Fail Because They Consented to the Alleged Conduct.

As a threshold matter, Plaintiffs' claims all fail because they consented to the alleged conduct as disclosed through Romantix.com's cookie banner and Privacy Policy. Consent is a defense to all of Plaintiffs' privacy-related causes of action. *See* Cal. Pen. Code §§ 631–632 (CIPA) (imposing liability only for interception "without the consent of all parties"); 18 U.S.C. § 2511(2)(d) (ECPA) (interception of communication "shall not be unlawful . . . where one of the parties to the communication has given prior consent to such interception"); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of claims for invasion of privacy under common law and the California Constitution because plaintiffs had no reasonable expectation of privacy where the Privacy Policy disclosed tracking and collection of data).

The Ninth Circuit has consistently affirmed the dismissal of privacy claims where terms of service, privacy policies, or related disclosures disclose the practices at issue. *See, e.g.*, *Smith v.*

*Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (affirming dismissal of California state law claims where the plaintiffs consented to the conduct at issue through "their acceptance of Facebook's Terms and Policies"); *Hammerling*, 2024 WL 937247, at *3 (affirming dismissal due to defendant's disclosure of challenged conduct); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136–37 (N.D. Cal. 2015) (dismissing CIPA claim for failure to adequately allege lack of consent and noting that plaintiff consented to challenged conduct covered by the privacy policy).

Here, at all relevant times, Romantix.com showed a persistent cookie banner on the first landing page of the website, which disclosed to visitors that "[t]his website uses cookies to improve user experience. By using our website you consent to all cookies in accordance with our Cookie Policy," with a hyperlink to Romantix's Privacy Policy. (Corkery Decl. **Ex. A**.) Plaintiffs concede the presence of this cookie banner and never assert that they declined to accept cookies. Moreover, Plaintiffs' continued use of the website confirms their agreement to the Romantix Privacy Policy, and nowhere do Plaintiffs claim that they did not consent—to the contrary, they admit that they used the website. (Compl. ¶ 48; Corkery Decl. **Ex. B** ("By accessing or using this Website, you agree to this privacy policy.").)

In addition, at all relevant times, Romantix's Privacy Policy disclosed to its users that, "as an eCommerce site, we do collect, use and store data in order to deliver the goods and services you request from us," and that "[b]y accessing or using this Website, you agree to this privacy policy." (Corkery Decl. **Ex. B**.) Romantix's Privacy Policy also explicitly stated the following:

> ***Through our provider, Google Analytics, data is collected about use of our Website***. We will not provide Google Analytics with your name, phone number, email address or credit card information. We assign a random number to your usage ***so that Google Analytics can identify a unique user of our Website*** although Google Analytics does not associate that number with your personally identifiable information.

(*Id.* (emphasis added).) Further, the Privacy Policy disclosed that "data is collected automatically as you enter and navigate through the site . . . including cookies and other tracking technologies." *Id.* Plaintiffs allege to have relied on the Privacy Policy. (*See* Compl. ¶¶ 24–26, 47–49.)

Despite these plain disclosures stated in Romantix's Privacy Policy, Plaintiffs falsely allege that "nowhere on Romantix.com, including in the Privacy Policy, does Romantix or Innov8 disclose

the specific tracking technologies Romantix.com visitors are subjected to" and claim that Romantix does not inform visitors about its use of web tracking technologies or the purpose of such use. (*Id.* ¶¶ 49–50.) The Court need not accept as true these misleading allegations of lack of consent because they are contradicted by an exhibit properly subject to judicial notice that shows otherwise. *Garcia*, 78 F. Supp. 3d at 1136 (citing *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.2008)).

Romantix's cookie banner and Privacy Policy, to which Plaintiffs are undeniably bound because they continued to access and use Romantix.com, clearly disclosed to visitors Romantix's use of cookies, the type of data it collects, and its use of Google Analytics to collect information about visitors' use of the website. (*See* Corkery Decl. **Exs. A–B**.) Specifically, Romantix disclosed to Plaintiffs that "data is collected about ***use of*** our Website" by "Google Analytics." (*Id.* **Ex. B** (emphasis added).) Yet Plaintiffs here claim not to have known that Google would receive information about their use of the Romantix website. Moreover, the Romantix Privacy Policy disclosed that Romantix "assign[s] a random number to your usage ***so that Google Analytics can identify a unique user*** of our Website although Google Analytics does not associate that number with your personally identifiable information." (*Id.* (emphasis added).) Yet Plaintiffs purport to be surprised by the transmission of information about their use of the website along with an identifier. (*See*, *e.g.*, Compl. ¶ 34 (complaining about "unique identifying information for a user" going to Google).) The Policy also informed Plaintiffs that they may opt-out of Google Analytics and instructed them to review the relevant information about Google Analytics. (Corkery Decl. **Ex. B.**)

Courts have repeatedly found this same level of disclosure sufficient to warrant dismissal of an action. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *5 (N.D. Cal. Apr. 2, 2025) (dismissing ECPA and invasion of privacy claims without leave to amend based on plaintiffs' consent); *Smith*, 745 F. App'x at 8–9 (dismissing the complaint in part because Facebook's terms and policies contained numerous disclosures related to information collection on third-party websites); *Hammerling*, 2024 WL 937247, at *3 (finding no privacy claim where the policy expressly disclosed Google's intention to track their activity on third-party apps). The recent decision in *Lakes* is particularly instructive. There, a court in this district dismissed the complaint on the ground that "a reasonable user would understand from the Privacy Policy that he or she is

consenting to the use of cookies including by third parties." 2025 WL 1036639, at *6. The court emphasized that there was no support in the case law for the high standard of specificity that the plaintiffs had urged. *See id*. (rejecting the plaintiffs' claims that consent required some sort of "highly granular disclosure"). Plaintiffs here cannot argue that Romantix's disclosures failed to inform them that Romantix "will collect their information and share it with third parties"; indeed, Romantix's disclosures are ***more*** robust than those at issue in *Lakes*, since they disclose the particular technology deployed.

Accordingly, this Court should adopt the sound reasoning of the *Lakes* court and hold that because Plaintiffs consented to the very conduct that they criticize in the Complaint, their claims against Google under CIPA, the Federal Wiretap Act, and California law must be dismissed.

### B. <u>Plaintiffs Fail to State a Claim Under CIPA (Count I).</u>

Plaintiffs in this action allege two theories of liability under Section 631(a) of CIPA—willfully reading or attempting to "read or to learn the contents or meaning of any message, report, or communication" (clause two); or using or attempting to use the obtained information (clause three). *See* Cal. Pen. Code § 631(a); (Compl. ¶¶ 112, 115).[3] Plaintiffs allege that Google engaged in the prohibited conduct through Romantix's use of Google Analytics. (Compl. ¶¶ 103–123.) As explained below, Plaintiffs' CIPA claims are not viable for various independent reasons.

#### 1. Google Is Not a Third-Party Eavesdropper and Cannot Be Held Liable Under CIPA.

As an initial matter, Plaintiffs' claims are barred by the party exception because Google is a vendor that merely provided an analytics tool to assist Romantix with its marketing and advertising efforts. Thus, Google is a "party" to Plaintiffs' alleged communications with Romantix, not a third-party "eavesdropper," and there can be no CIPA violation. *Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021).

[3] Plaintiffs do not appear to plead a claim under CIPA's first clause, which prohibits "intentionally tap[ping] or mak[ing] any unauthorized connection[.]" Cal. Pen. Code § 631(a). In any event, such a claim would be barred in this action, because this provision "prohibits telephonic wiretapping, which does not apply to the internet." *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (citation omitted).

Courts in this district widely recognize that the party exception, which allows a "party to a communication" to record or intercept its own communications, to apply to third-party vendors like Google that provide analytics tools. *See, e.g.*, *id.* (holding that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself."); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims where "Plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (applying *Graham* to dismiss wiretapping claims against third party vendor).[4]

One of the leading cases on this topic, *Graham v. Noom*, analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d 832, 832 (N.D. Cal. 2021). Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data***." *Id.* (emphases added). Numerous other courts have endorsed this reasoning. *See, e.g.*, *Love*, 2024 WL 2104497, at *1; *Williams*, 2022 WL 17869275, at *3.

The same analysis necessitates dismissal here. Plaintiffs have not pled that Google acted as anything more than an extension of Romantix. Indeed, their pleading establishes that Google Analytics is ***embedded by website owners***. (Compl. ¶ 66 ("Each Defendant violated § 631 by operating under an agreement ***whereby Romantix and Innov8 installed trackers*** to disclose users'

[4] *See also Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 946 (S.D. Cal. 2024) (dismissing CIPA claim where third-party vendor "acts as an extension of Peloton, providing a tool that allows Peloton to 'record and analyze its own data in aid of [Peloton's] business'"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (third-party software provider was subject to party exception because software functioned more like a tape recorder, given it was not alleged to have harvested data for its own use); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. April 15, 2021) (vendor providing "Event Triggered Recorder" software was not a third-party eavesdropper since it "allows its clients to monitor their website traffic"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (similar); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (vendor not a third-party eavesdropper because it acted "as an extension of the company"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar).

personally-identifying information and PPSI to Google and NextRoll without the users' consent." (emphasis added)).) Further, their Complaint focuses on the benefits that this tool provides to website owners such as Romantix—*i.e.*, by ***allowing Romantix and Innov8*** to "use the insights gained from the trackers to optimize content, deliver targeted ads, and generate more site traffic" and "directly benefit from sharing [their] PPSI." (*Id.* ¶¶ 30, 39 (emphasis added).)

None of Plaintiffs' allegations suggest that Google acts as anything but a service provider. Indeed, documents incorporated by reference into the Complaint confirm that Google "***act[s] as a data controller/processor*** in relation to data that they obtain or receive[.]" (Corkery Decl. **Ex. B** (emphasis added).) Plaintiffs allege, in a generic manner, that the "Marketer Defendants"—which includes NextRoll—nonetheless "benefit" from "capturing user data to optimize ad performance and increase ad spend" without describing how the "benefit" occurs. (Compl. ¶ 30.) But Plaintiffs' conclusory allegations that Google "monetize[s] that information in the form of advertising" fall flat, given that they never once allege that Plaintiffs received targeted advertising from Google stemming from Google's unlawful collection of Plaintiffs' information. (*See id.* ¶ 36.) At most, Plaintiffs hypothetically allege that the Google "***can*** associate [an] individual . . . with their specific shopping activity on Romantix.com"—without ever alleging that Google ever did so, let alone that it did so in relation to the Plaintiffs. (*Id.* ¶ 35 (emphasis added).) Thus, just as in *Graham* and other cases in this Circuit, Google cannot be held liable under the party exception because it only provided "a tool . . . that allows [Romantix] to record and analyze its own data in aid of [Romantix's] business." *Graham*, 533 F. Supp. 3d at 832.

Plaintiffs may invoke another line of cases holding that an analytics provider is not an extension of a defendant if it has the "capability to use" alleged communications for any other purpose than supporting a website operator. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Plaintiffs' claims fail under this rubric as well, because even under *Javier*, Plaintiffs' mere allegations that the information "can be used" to "identify a specific consumer" and "track their online activity" are insufficient. (Compl. ¶ 36.) *See, e.g.*, *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (finding an allegation that a chat vendor had "capability to use its record of [w]ebsite users' interaction[s]" for data analytics and

marketing/advertising to consumers was "conclusory and insufficient"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 737–38, 745 (N.D. Cal. 2023) (holding that allegations that defendant "analyz[ed] the data and provid[ed] [] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use).

Instead, as courts applying *Javier* have held, a plaintiff must plead ***specific facts*** to demonstrate that a vendor independently used the underlying "communication." In *Heiting v. Athenahealth, Inc.*, for example, allegations that Salesforce "may record, store, and use" the underlying data and "use[d] chat data to enhance its own business" were "too general and conclusory to support a reasonable inference that Salesforce had the capability to use the communications for any purpose beyond providing it to Defendant." 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024). Likewise, here, Plaintiffs plead no plausible facts to support their contention that Google has capabilities to "identify a specific consumer" using the data received from Romantix.[5]

Finally, even if Plaintiffs had pled capability of use under *Javier*, their claims would still fail. None of their allegations regarding Google Analytics are ***tethered to Romantix***, let alone their interactions with Romantix's website. In *Cody v. Ring LLC*, the court found allegations of use "conclusory" where they were based on public reporting that the analytics provider "exploited" chat data for "targeted advertising" but said "nothing about Ring [the defendant website] or about Meta or Kustomer using Ring data to create targeted advertising." 718 F. Supp. 3d 993, 1003 n.3 (N.D. Cal. 2024); *see also Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (dismissing CIPA claims where the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to the use of Google Analytics by the healthcare websites at issue); *Heiting*, 2024 WL 3761294, at *4 (rejecting reliance on marketing materials as a basis for

[5] By contrast, those courts that have denied dismissal based on *Javier* have done so based on allegations that are far more robust than those pled by Plaintiff. *See, e.g.*, *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 951 (N.D. Cal. 2024) (finding capability of personal use where plaintiff alleged Salesforce fed chat communications into its "data intelligence platform" to "train the AI models that form the basis of some of [Salesforce's] services"); *Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989, at *4 (S.D. Cal. July 5, 2024) (capability of personal use adequately alleged where plaintiff alleged that "Drift analyzes and uses the chat conversations it intercepts [to improve its machine learning technologies] all of which ***independently benefits and serves***" Drift).

finding capability of use under *Javier* because "[n]one of these materials relate to Salesforce's use of Defendant's data specifically"). Here, Plaintiffs rely on generic descriptions regarding what data Google collects from unspecified websites "can be used" to do, without adequately alleging facts that Google actually does so in connection with the challenged website. (Compl. ¶ 36.) Such speculative and hypothetical allegations are not sufficient to state a claim.

Therefore, irrespective of whether the Court applies *Graham* or *Javier*, Plaintiffs fail to allege specific facts showing that Google was a third-party eavesdropper that has used or is capable of using Romantix's data for Google's own purposes.

**2. Plaintiffs' CIPA Claims Have Other Defects.**

Plaintiffs further fail to state many requisite elements of their claims under CIPA. Specifically, the Complaint is devoid of factual allegations establishing that (1) Google "willfully" obtained the "messages, reports and communications" of Plaintiffs, and (2) "read, attempted to read, learned from, and used" the "messages, reports, and communications" of Plaintiffs "while the same is in transit" without their consent. (Compl. ¶¶ 112, 115.) Mere conclusory allegations as to these requisite elements are insufficient to survive a motion to dismiss. *Khoja*, 899 F.3d at 1008.

***Intent***. Plaintiffs do not allege that Google's conduct was "willful[]" as required under clause two of Section 631(a) and that the alleged interception was "intentional" as required under 18 U.S.C. § 2511(1). Plaintiffs merely recite the statutory language, stating that "[Google] willfully obtained the messages, reports and communications of Plaintiffs . . . without their knowledge or consent" and that Google "read, attempted to read, learned from, and used" the messages. (Compl. ¶¶ 54, 112, 115.) To survive dismissal, "a complaint . . . may not simply recite the elements of a cause of action"; rather, Plaintiffs must make "sufficient allegations of underlying facts[.]" *Good Meat Project*, 716 F. Supp. 3d at 796. Here, Plaintiffs fail to plead facts supporting either willfulness or an intent to intercept, especially in light of Google's policies that show the opposite—that Google does not want to receive personally identifiable information and expressly prohibits websites from transmitting such data to Google as stated in the GA TOS and Google Help Center pages. (Corkery Decl. Exs. C–D.) Stated simply: "There is nothing inherently unlawful about Google offering its source code" to Romantix—"at least [given Google's] . . . admonitions" to Romantix that it "must

avoid transmitting" health, medical, or other sensitive data. *Doe I*, 741 F. Supp. 3d at 841. *Doe*'s reasoning is apt. There, Judge Chhabria found "plaintiffs have not adequately alleged that Google intentionally obtained patients' private health information" via Google Analytics, *inter alia*, because "Google repeatedly told developers not to send personally identifiable information" and thus "purposefully acted so as ***not*** to receive any personal health information." *Id*. at 840. Plaintiffs' claim here fails under the same reasoning.

***In Transit***. "[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); Cal. Pen. Code § 631(a). This means that to state a claim under CIPA's second clause, the plaintiff must allege specific facts including "***when*** the interception occurs." *Swarts*, 689 F. Supp. 3d at 746 (emphasis in original). "While Plaintiff[] need not prove [his] theory of interception on a motion to dismiss, Plaintiff[] must provide fair notice to Defendant[] of when [he] believe[s] [Defendant] intercepts [his] communications." *In re Vizio Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *see also Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims involving pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place"). Here, the Complaint offers a single allegation regarding this "in transit" requirement, which simply parrots the statutory language: "[b]ecause Plaintiffs' messages, reports and communications were intercepted simultaneously as they were being communicated, [Google's] interceptions occurred while the messages, reports and communications were in transit." (Compl. ¶ 85.) The Court should not credit such a rote recitation of the statute's elements when Plaintiffs fail to provide additional explanation of how Google "simultaneously" intercepted Plaintiffs' communication. *Cody*, 718 F. Supp. 3d at 1001 ("Cody's conclusory allegations restating the pleading requirement of real-time interception . . . fail to explain how the software works or how the interception occurs"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough" to "make it plausible Google is intercepting [Plaintiffs'] data in transit").

***Use***. A claim brought under CIPA's third clause for "use" of unlawfully obtained data must be predicated on a violation of either of the first two clauses. The claim fails because Plaintiffs do not assert a claim under CIPA's first clause or state a viable claim under its second clause. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish . . . a violation of the first or second clauses. Because Plaintiffs have not done so, they [] have failed to plead a violation of the third clause[.]"); *Mastel*, 549 F. Supp. 3d at 1137 (finding no derivative liability under third clause without predicate). Even if Plaintiffs' claim under clause two was adequate, Plaintiffs still did not plausibly allege any facts showing how Google "used" any of the allegedly intercepted information. The Complaint only speculates on how the information Romantix.com discloses "***can*** be used to identify a specific consumer, track their online activity, and then monetize that information in the form of advertising," and explains how cookie data can make certain information "personally identifiable"; but there are no specific factual statements related to Google's use of any data allegedly obtained from Romantix—let alone whether Plaintiffs ever received targeted advertising from Google. (Compl. ¶ 36 (emphasis added).)

Accordingly, Plaintiffs' claims under CIPA should be dismissed for these reasons as well.

### C. Plaintiffs Fail to State a Claim Under the Federal Wiretap Act (Count II).

Plaintiffs' claim under the Federal Wiretap Act easily fails. The Federal Wiretap Act is a one-party consent statute: no claim can withstand dismissal where "one of the parties to the communication has given prior consent to such interception[.]" 18 U.S.C. § 2511(2)(d). Plaintiffs' own allegations and judicially noticeable documents establish that the alleged recipient of the Plaintiffs' communications (Romantix) voluntarily installed Google Analytics on its website. (Compl. ¶ 66.) As "[Google's] customers must have chosen to deploy [Google's] tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (collecting authorities); *see also Doe I*, 741 F.Supp.3d at 842 (dismissing Federal Wiretap Act claims based on one-party consent; "[t]he alleged interception of private health information only occurs because the health care providers choose to install Google

source code on their web properties. This must mean the providers consented to the operation of Google source code.").

Finally, Plaintiffs fail to adequately plead the other elements of their Federal Wiretap claim, including that Google acted intentionally, that the alleged interception took place while "in transit," and that Google acted as a party to the underlying communication. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (finding the Federal Wiretap Act requires interception to occur during "transmission"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."). For these reasons as well, Plaintiffs' Federal Wiretap Act claim should be dismissed.

### D. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion Under California Common Law and Invasion of Privacy Under the California Constitution (Counts III & IV).

The tests for an intrusion upon seclusion under California common law and invasion of privacy under the California Constitution "involve[ ] similar elements"—as a result, "courts consider the claims together" with one test, "and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Katz-Lacabe*, 668 F. Supp. 3d at 941 (quoting *Facebook Tracking*, 956 F.3d at 601). The inquiry about the offensiveness of an intrusion involves examining "all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's motives and objectives." *Doe I*, 741 F. Supp. 3d at 844. The California Constitution "set[s] a high bar for an invasion of privacy claim." *Id.* (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)). Here, Plaintiffs fail to meet this high bar.

#### 1. Plaintiffs Did Not Have a Reasonable Expectation of Privacy.

A reasonable expectation of privacy can exist where a defendant gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d 589, 601–02 (9th Cir. 2020). This determination entails a consideration of the customs, practices, and circumstances surrounding the data collection, such as "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's

representations to its customers." *Katz-Lacabe*, 668 F. Supp. 3d at 941 (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022)).

***First***, Plaintiffs did not have a reasonable expectation of privacy because they ***consented to*** Romantix's Privacy Policy when browsing and purchasing products on its website. (*See supra* Section IV.A.) Romantix explicitly represented to website visitors that it uses Google Analytics to collect data about its website usage, along with unique identifiers. Where the Privacy Policy "expressly disclosed Google's intention to track their activity on third-party apps," Plaintiffs have no reasonable expectation of privacy in that data. *Hammerling*, 2024 WL 937247, at *3; *see also Lakes*, 2025 WL 1036639 at *8 (dismissing plaintiffs' invasion of privacy claims under common law and the California Constitution because consent represents a defense to those claims).

***Second***, Plaintiffs' allegation that visitors reveal "extremely personal information . . . including sexual preferences, sexual orientation, sexual practices, and adult product preferences" when searching online for products is predicated on assumptions about the amount and manner of data that is transmitted to Google. (Compl. ¶¶ 21–22.) Plaintiffs generally allege that users' information is transmitted to Romantix and to Google when they "browse Romantix.com," "click[] on items," or "us[e] search queries in the built-in search function[.]" (*Id.*) But since Plaintiffs allege ***nothing*** demonstrating how Google could infer characteristics such as "sexual orientation" (*id.*) from their online shopping habits—let alone that it does in fact make such inferences—Plaintiffs' allegations about what their online shopping reveals are conclusory, without factual support, and not entitled to a presumption of truth. *See, e.g.*, *Hammerling*, 615 F. Supp. 3d at 1091 (absent allegations about how Google inferred the information, a "conclusory claim that Google collects general information about a user's . . . sexual preference does not suffice"). Thus, the question before the Court is not whether Plaintiffs have a reasonable expectation of privacy in their sexual proclivities, but whether Plaintiffs have a reasonable expectation of privacy in their online shopping behavior. As discussed below, they do not.

In addition, Plaintiffs allege that other information, such as their "full name, home address, email address, and credit card information," is also transmitted to Romantix and Google. (Compl. ¶¶ 78, 80.) However, Plaintiffs do not allege that Romantix installed Google Analytics tags on

Plaintiffs' "Your Account" or "Order History" pages where those types of personal information would be potentially visible. Because Plaintiffs provide no information about which pages on Romantix.com Google Analytics is installed, "there is no way to understand the nature of the intrusion[.]" *Doe I*, 741 F. Supp. 3d at 844 (N.D. Cal. 2024) (dismissing plaintiffs' invasion of privacy claim due to their flawed assumptions about the nature of data collected). This Court should therefore give no weight to Plaintiffs' vague suggestion that this information was transmitted, as nothing pled with the requisite specificity renders that suggestion plausible.

***Third***, the customs, practices, and circumstances surrounding data collection on a public eCommerce website show that Plaintiffs do not have a reasonable expectation of privacy on those websites, regardless of the type of product that Plaintiffs have browsed and purchased. "Product preference information is not personal information," because such information would be plainly observable were Plaintiffs to have shopped in the physical world rather than online. *See, e.g.*, *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819–20 (E.D. Pa. 2025) (holding that because plaintiff "certainly doesn't have a reasonable expectation of privacy in this kind of public shopping behavior in the physical world . . . she doesn't have it in the digital world, either.") Further, virtually all consumer-facing websites selling products track the conduct of web visitors. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *3 (S.D. Cal. May 8, 2024) (noting that the proliferation of litigation in this area "suggest[s] Defendant is not alone in this practice," and finding that this is "a factor to consider"). Generally speaking, "consumers do not have a reasonable expectation of privacy over their activity" on publicly accessible websites, because we "understand that what we do on the Internet is not completely private." *Id.* at *2 (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 266 (3d Cir. 2016)); *see also D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10–11 (S.D. Cal. Oct. 24, 2023) (no reasonable expectation of privacy on public website owned and operated by a private company); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524–25 (C.D. Cal. 2021) (same); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (stating that, *inter alia*, "URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and

website browsing activities" are not the types of information in which plaintiffs could have "a reasonable expectation of privacy"). Given that the challenged practices are nearly universal on consumer-facing websites, users cannot reasonably expect that the websites they visit, and the information they provide on those websites, are completely private.

For these reasons, Plaintiffs fail to allege any reasonable expectation of privacy.

### 2. The Alleged Invasion Is Not "Highly Offensive."

Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *Facebook Tracking*, 956 F.3d at 606 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 298 (2009)). Plaintiffs claim that the alleged invasion is particularly offensive given that Google "intentionally intercept[s] users' [private and protected sexual information] with the intent to use it for financial gain through better targeting of advertisements[.]" (Compl. ¶ 52.) These conclusory statements do not establish a highly offensive disclosure of information to meet the high bar required in an invasion of privacy claim under California law.

As argued, Plaintiffs have not alleged specific facts showing what type of information Google receives from Romantix, how the information is monetized, and whether it is even feasible to use the information received to identify a user's "sexual preferences," let alone, their "sexual orientation." (Compl. ¶ 21.) But the minimal information that is disclosed to Google, even if plausibly pleaded, would not meet the high standard set by California courts. *See Low*, 900 F. Supp. 2d at 1025 (dismissing plaintiffs' invasion of privacy claims because although "[p]laintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not clear that anyone has actually done so, or what information, precisely, these third parties have obtained"). Courts within the Ninth Circuit have often found that the disclosure of information statutorily recognized as highly sensitive, such as individually identifiable health information as defined by the Health Insurance Portability & Accountability Act (HIPAA), may be "highly offensive."

By contrast, data collected from a person's shopping searches on a website is not sufficiently egregious to be characterized as highly offensive because this is "routine commercial behavior." *Compare, e.g.*, *In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 654 (N.D. Cal. 2024) (allowing invasion of privacy claims involving disclosure of "patient status—which falls within the ambit of information protected under HIPAA" to survive a motion to dismiss), *and id.*, No. 3:22-cv-03580-WHO, First Amended Compl., ECF No. 22, ¶¶ 32–35 (alleging, *inter alia*, disclosure of patient portal logins, patient-physician communications, lab results, and medical records via the Meta Pixel); *with Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022) (finding Google's tracking of the plaintiffs' commercial searches on third-party apps for "a foot massager, slippers, meal subscriptions, coconut oil, and use of a photo editor" to be "routine commercial behavior"), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024).

Accordingly, Plaintiffs have not stated a claim for an invasion of privacy violation under the California Constitution and common law.

### E. Plaintiffs' Claim Under the UCL Fails Because They Did Not Adequately Allege Statutory Standing or an Inadequate Legal Remedy (Count VI).

Plaintiffs' UCL claim fails for two independent reasons.

***First***, Plaintiffs fail to plead facts sufficient to support standing. To meet their pleading burden, Plaintiffs must allege facts establishing that they "suffered an injury in fact and lost money or property because of the unfair competition." *Doe I*, 741 F. Supp. 3d at 844 (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009)); *see also* Cal. Bus. & Prof. Code § 17204. Specifically, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., ***economic injury***, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Swarts*, 689 F. Supp. 3d at 747 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011)).

Plaintiffs have not done so. Instead, at most, they allege in an incoherent and conclusory manner that "Google and NextRoll profited from Class Members suffered injury in fact and lost money" and demand "restitution of all monies Google and NextRoll unjustly acquired through acts

of unlawful competition." (Compl. ¶¶ 161–162.) Such highly generic allegations do not come close to meeting their pleading burden as to standing under the UCL. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 840 (granting Google's motion to dismiss plaintiffs' UCL claims in part because plaintiffs "are not absolved of their burden to plead economic injury by their conclusory assertion that they are entitled to restitution").

Moreover, courts in this district have held that "simply because a plaintiff's information 'is valuable in the abstract,' and simply because a company 'might have made money from it,' that does not mean that the plaintiff has 'lost money or property as a result.'" *Doe I*, 741 F. Supp. 3d at 845 (quoting *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023)). Therefore, even if Plaintiffs made sufficient allegations that their data has a measurable monetary value (and to be clear, they did not), this would not confer Plaintiffs' economic injury under the UCL.

***Second***, Plaintiffs do not and could not demonstrate an inadequate remedy at law, as required to maintain an equitable claim such as the UCL in federal court. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020) (affirming dismissal of UCL claim when plaintiff had adequate legal remedy); *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (vacating the district court's grant of summary judgment on plaintiffs' UCL claim and remanding with instructions to dismiss this claim for failure to show that plaintiffs lacked an adequate legal remedy); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311 (9th Cir. 2022) (holding plaintiff could not bring his UCL claim "because he had an adequate legal remedy"). Here, Plaintiffs affirmatively seek legal claims for money damages based on allegations that are coextensive with their UCL claims. (Compl. ¶ 171(e) (seeking in the prayer for relief section "compensatory damages"); *id.* ¶¶ 129, 135 (seeking damages for alleged invasions of privacy).). Where, as here, "the availability of an adequate legal remedy is clear from the face of the" Complaint, it "dictates dismissal." *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022); *see Edwards v. MUBI, Inc.*, 2025 WL 985130, at *9 (N.D. Cal. Mar. 31, 2025) (dismissing plaintiffs' UCL claim because the complaint fails to allege that plaintiffs lack an adequate legal remedy).

Accordingly, Plaintiffs' UCL claim should be dismissed for each of these reasons.

### F. Plaintiffs' Unjust Enrichment Claim Fails For the Same Reason as the UCL Claim Because They Did Not Identify Any Gains by Google at Plaintiffs' Expense (Count VII).

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (quoting *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). Unjust enrichment is "synonymous with restitution" and describes "the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Doe I*, 741 F. Supp. 3d at 849 (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).

Here, Plaintiffs allege that Google has unjustly conferred economic benefit in the form of profits resulting from the use of information about Plaintiffs' sexual practices and preferences in Romantix's and Google's marketing efforts. (Compl. ¶ 164.) But that claim must fail for the same reasons described above as to Plaintiffs' UCL claim—*i.e.*, Plaintiffs fail to allege the receipt of a benefit by Google; and the unjust retention of the benefit at Plaintiffs' ***expense***. *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593–94 (2008) (rejecting argument that plaintiffs "need not allege any actual damage to state an unjust enrichment claim" and holding that "[t]he 'mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor'" (citation omitted)).

Therefore, Plaintiffs' unjust enrichment claim should likewise be dismissed.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety without leave to amend.

///

///

///

///

///

Dated: June 2, 2025

COOLEY LLP

By: /s/ *Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
Google LLC