1    **FITZGERALD MONROE FLYNN PC**
     JACK FITZGERALD (SBN 257370)
2    *jfitzgerald@fmfpc.com*
     MELANIE R. MONROE (SBN 275423)
3    *mmonroe@fmfpc.com*
     TREVOR FLYNN (SBN 253362)
4    *tflynn@fmfpc.com*
     ALLISON FERRARO (SBN 351455)
5    *aferraro@fmfpc.com*
     2341 Jefferson Street, Suite 200
6    San Diego, California 92110
     Phone: (619) 215-1471
7    Fax: (619) 331-2943

8    ***Counsel for Plaintiffs***

9               **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
10                     **SAN JOSE DIVISION**

11

12   PAUL PEREZ and HENRY BRADLEY, on behalf
     of themselves, all others similarly situated, and the    Case No. 5:25-cv-02465-NW
     general public,

13
            Plaintiffs,                                        **PLAINTIFFS' OPPOSITION TO GOOGLE**
                                                              **LLC'S MOTION TO DISMISS THE**
14          v.                                                **COMPLAINT [DKT. NO. 41]**

15   ROMANTIX ONLINE, INC., INNOV8                           Judge:    Hon. Noël Wise
     SOLUTIONS, INC., GOOGLE LLC, and                        Date:     October 8, 2025
16   NEXTROLL, INC.,                                         Time:     9:00 a.m.
                                                             Dept.:    3
17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .....................................................................................................................2

    I.      PLAINTIFFS DID NOT CONSENT TO THE SURREPTITIOUS COLLECTION, DISSEMINATION, AND USE OF THEIR PPSI ........................................................2

    II.     PLAINTIFFS PLAUSIBLY ALLEGE GOOGLE VIOLATES CIPA ..............................6

          A.     Google is an Unauthorized Third-Party Eavesdropper that Independently Uses Plaintiff's PPSI for its Own Financial Gain ........................................7

          B.     Google's Actions Were "Willful" and "Intentional" ................................. 10

          C.     Plaintiffs Communications Were Intercepted in Transit ......................... 12

          D.     Plaintiffs' PPSI Was Used by Google ...................................................... 13

    III.    PLAINTIFFS PLAUSIBLY ALLEGE GOOGLE VIOLATES THE FEDERAL WIRETAP ACT .........................................................................................13

    IV.    PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THEIR CALIFORNIA COMMON LAW AND CONSTITUTIONAL PRIVACY RIGHTS ...................................................................................................15

          A.     Plaintiffs Had a Reasonable Expectation of Privacy ................................. 15

          B.     The Invasion of Plaintiffs' Privacy is Highly Offensive to the Reasonable Person ......................................................................................... 20

    V.     PLAINTIFFS PLAUSIBLY ALLEGE GOOGLE VIOLATED THE UCL ......................21

    VI.    PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR UNJUST ENRICHMENT ............23

    VII.   PLAINTIFFS HAVE STANDING TO SEEK EQUITABLE RELIEF ..............................23

CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024)............................................................5

*Ahringer v. LoanDepot, Inc.*,
2024 WL 1135683 (C.D. Cal. Feb. 6, 2024) ............................................................6

*Ambriz v. Google LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025)............................................................7, 9

*Augustine v. Lenovo (U.S.), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023)............................................................3

*Bliss v. CoreCivic, Inc.*,
580 F. Supp. 3d 924 (D. Nev. 2022) ............................................................10

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................................................1

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)............................................................14, 16, 19, 21

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)............................................................2, 14, 19, 24

*Calhoun v. Google LLC*,
113 F.4th 1141 (9th Cir. 2024)............................................................4, 6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)............................................................23

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ............................................................15

*D'Angelo v. PennyOpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)............................................................13

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ............................................................10

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)............................................................22

*Doe v. Call-On Doc*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ............................................................9

*Perez v. Romantix et. al.*, 5:25-cv-02465-NW
PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS THE COMPLAINT

*Doe v. County of Santa Clara*,
  2024 WL 3346257 (N.D. Cal. July 8, 2024) ................................................................5

*Doe v. Eating Recovery Ctr. LLC*,
  2024 WL 2852210 (N.D. Cal. June 4, 2024) ..............................................................12

*Doe v. FullStory, Inc.*,
  712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................5, 11, 17

*Doe v. GoodRx Holdings, Inc.*,
  2025 WL 2052302 (N.D. Cal. Jul. 22, 2025) ......................................1, 4, 21

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................................2, 5, 14

*Doe v. Microsoft Corp.*,
  2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........................................................9

*Doe v. Tenet Healthcare Corp.*,
  2025 WL 1635956 (E.D. Cal. June 9, 2025) .............................................................12

*Esparza v. UAG Escondido A1 Inc.*,
  2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .............................................................12

*Frasco v. Flo Health, Inc.*,
  2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ...........................................................5

*Friedman v. MedJet Assistance, LLC*,
  2010 WL 11463109 (C.D. Cal. May 13, 2010) .........................................................18

*Gladstone v. Amazon Web Servs., Inc.*,
  739 F. Supp. 3d 846 (W.D. Wash. 2024) ..............................................7, 10, 11

*Graham v. Noom*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................................................7

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................................................................20

*Gutierrez v. Converse Inc.*,
  2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .............................................................3

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................................23

*Hammerling v. Google LLC*,
  2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ..........................................................21

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1061 (N.D. Cal. 2022)................................................................17, 18

*Hazel v. Prudential Fin., Inc.*,
   2023 WL 3933073 (N.D. Cal. June 9, 2023) .........................................................12

*Heaven v. Prime Hydration LLC*,
   761 F. Supp. 3d 812 (E.D. Pa. 2025) ....................................................................18

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009)....................................................................................15, 21

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020)...........................................................................15, 16

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019).........................................................2, 21, 23

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020)...................................................................15

*In re Google Location Hist. Litig.*,
   428 F. Supp. 3d 185 (N.D. Cal. 2019).....................................................................2

*In re Google RTB Consumer Privacy Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022)...................................................................19

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022).....................................................................5

*In re Meta Pixel Healthcare Litig.*,
   713 F. Supp. 3d 650 (N.D. Cal. 2024)...................................................................21

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d 987 (N.D. Cal. 2024).......................................................22, 23, 24

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016)...........................................................................16, 20

*In re Toys R Us, Inc., Priv. Litig.*,
   2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .......................................................14

*In re Tracht Gut, LLC*,
   836 F.3d 1146 (9th Cir. 2016).................................................................................3

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)..................................................................20

iv

*Jackson v. LinkedIn Corp.*,
  744 F. Supp. 3d 986 (N.D. Cal. 2024)....................................................................................9

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. 2021)........................................................................................2

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022)..........................................................................3

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023)....................................................................................7

*Johnson v. Trumpet Behav. Health, LLC*,
  2022 WL 74163 (N.D. Cal. Jan. 7, 2022) ............................................................................24

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)................................................................................................11

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011).........................................................................................................22

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025)..................................................................................6

*Licea v. Old Navy, LLC*,
  669 F. Supp. 3d 941 (C.D. Cal. 2023)..............................................................................7, 12

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021)..................................................................................10

*M.G. v. Therapymatch, Inc.*,
  2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)..................................................................1, 21

*Matera v. Google Inc.*,
  2016 WL 5339806 (N.D. Cal. Sept. 23, 2016).....................................................................13

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021)............................................................................2

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019)................................................................................20

*Mirkarimi v. Nev. Prop. 1 LLC*,
  2013 WL 3761530 (S.D. Cal. July 15, 2013)........................................................................15

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016)..................................................................................2

*People v. Stewart*,
   113 Cal. App. 4th 242 (2003) ..................................................................................23

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*,
   214 F. Supp. 3d 808 (N.D. Cal. 2016) .....................................................................14

*Price v. Carnival Corp.*,
   712 F. Supp. 3d 1347 (S.D. Cal. 2024) ......................................................................3

*R.C. v. Sussex Publishers, LLC*,
   2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......................................................16, 21

*Rabin v. Google LLC*,
   725 F. Supp. 3d 1028 (N.D. Cal. 2024) ...................................................................24

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) ...............................................................................................7

*Rodriguez v. Aquatic Sales Sols. LLC*,
   735 F. Supp. 3d 1208 (C.D. Cal. 2024) ......................................................................9

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................................................2

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   2019 WL 4859099 (N.D. Cal. Oct. 2, 2019) ............................................................12

*Shah v. Cap. One Fin. Corp.*,
   768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...................................................................14

*Shapiro v. AT&T Mobility, LLC*,
   2020 WL 11763591 (C.D. Cal. Dec. 23, 2020) ........................................................15

*Shulman v. Group W Prods., Inc.*,
   18 Cal. 4th 200 (1998) .............................................................................................23

*Smith v. Google, LLC*,
   735 F. Supp. 3d 1188 (N.D. Cal. 2024) ...........................................................1, 9, 11

*Smith v. Rack Room Shoes, Inc.*,
   2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......................................................1, 2, 21

*Smith v. YETI Coolers, LLC*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024) ...............................................................18, 19

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................................24

vi

*St. Aubin v. Carbon Health Tech., Inc.*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ................................................................. 12, 21

*Sussman v. Am. Broad. Cos., Inc.*,
  186 F.3d 1200 (9th Cir. 1999) ..................................................................................... 14

*Thomas v. Papa Johns Int'l, Inc.*,
  2024 WL 2060140 (S.D. Cal. May 8, 2024) ................................................................. 18

*Turner v. Nuance Commc'ns, Inc.*,
  735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......................................................................... 7

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) ....................................................................................... 10

*Videckis v. Pepperdine Univ.*,
  100 F. Supp. 3d 927 (C.D. Cal. 2015) .......................................................................... 16

*Weizman v. Talkspace, Inc.*,
  705 F. Supp. 3d 984 (N.D. Cal. 2023) .......................................................................... 24

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................................ 21

*Wilson v. Google LLC*,
  2025 WL 901941 (N.D. Cal. Mar. 25, 2025) ............................................................. 1, 11

*Yockey v. Salesforce, Inc.*,
  688 F. Supp. 3d 962 (N.D. Cal. 2023) ............................................................................ 7

*Yockey v. Salesforce, Inc.,*
  745 F. Supp. 3d 945 (N.D. Cal. 2024) .......................................................................... 13

**Statutes**

18 U.S.C. § 2511(2)(d) ...................................................................................................... 13

Cal. Bus. & Prof. Code § 17204 ....................................................................................... 21

Cal. Penal Code § 631(a) .................................................................................................... 6

*Perez v. Romantix et. al.*, 5:25-cv-02465-NW
PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS THE COMPLAINT

**INTRODUCTION**

"This *is* another Pixel case," and for good reason. *See* Google LLC's ("Google") Motion to Dismiss, Dkt. No. 41 ("Mot.") (quotation omitted and emphasis added). Through use of its tracking technology, called Google Analytics, Google's data collection practices have vastly overreached, routinely collecting private and traditionally protected information, including health, sexual, and financial information, from people's interactions with websites that employ this hidden technology, even when reassured their communications are being kept private.[1] Here, Plaintiffs challenge the use of Google Analytics on an adult website, Romantix.com (the "website"), to surreptitiously gather and, without their consent, use for commercial gain—in the form of better targeted advertising and increased advertising revenue—their private and protected sexual information ("PPSI").

Google's Motion provides no salient reason to dismiss Plaintiffs' claims. Plaintiffs did not consent to Google's interception and use of their PPSI for financial gain because even if they had seen and affirmatively agreed to the Privacy Policy on which Google relies, Google's conduct far exceeded the bounds of any disclosed data collection and use. Moreover, Romantix affirmatively promised *not* to share Plaintiffs' PPSI. Google's CIPA arguments should be rejected because Plaintiffs have sufficiently pleaded Google was not a party to communications between Plaintiffs and the website, Plaintiffs' communications were in transit when intercepted, and Google willfully intercepted them. Defendants' arguments against Plaintiffs' claims under the Wiretap Act fail because surreptitious eavesdropping and use of Plaintiffs' PPSI are a tortious violation of their privacy rights. Plaintiffs state a UCL claim because they have alleged economic injuries sufficient to confer standing. Plaintiffs also allege Google's unjust retention of a benefit at Plaintiffs' expense and therefore state a claim for unjust enrichment. Finally, Plaintiffs have properly alleged standing for injunctive relief by alleging they have an inadequate remedy at law. Accordingly, the Court should deny Google's motion.

---

[1] *See*, *e.g.*, *Smith v. Google, LLC*, 735 F. Supp.3d 1188 (N.D. Cal. 2024); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302 (N.D. Cal. Jul. 22, 2025) ["*GoodRx Holdings*"]; *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ["*Rack Room Shoes*"]; *Wilson v. Google LLC*, 2025 WL 901941 (N.D. Cal. Mar. 25, 2025); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ["*Therapymatch*"]; *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021).

**ARGUMENT**

## I.    PLAINTIFFS DID NOT CONSENT TO THE SURREPTITIOUS COLLECTION, DISSEMINATION, AND USE OF THEIR PPSI

Google argues "all of Plaintiffs' privacy-related causes of action" fail because they "unambiguously consented" to the collection of their PPSI just by visiting the website. *See* Mot. at 2, 6-9. Not so.

Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).[2] "In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Rack Room Shoes*, 2025 WL 1085169, at *1 (citation omitted). Consent is "generally limited to the specific conduct authorized." *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. 2021); *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) ("Consent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." (quoting *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016) (citation and quotation marks omitted))).

For Plaintiffs' consent to be actual, disclosures must "explicitly notify" users of the practice at issue. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ["*Meta Platforms*"] (quoting *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. 2023) ["*Brown II*"]. Thus, "if a reasonable . . . user could have plausibly interpreted the contract language as *not* disclosing that [the Defendant] would engage in particular conduct, then [the Defendant] cannot obtain dismissal of a claim about that conduct . . . . based on the issue of consent[]." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789-90 (N.D. Cal. 2019) ["*Facebook*"]; *see also McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (If "the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor at the motion to dismiss stage." (quoting *Facebook*, 402 F. Supp. 3d at 789)). Because consent is a fact-intensive and case-specific inquiry, it often involves "factual

---

[2] Plaintiffs address their claims for violation of their common law and constitutional rights of privacy, including Google's argument that consent bars these claims, below, in Section IV.

disputes [that] are not suitable for resolution at this stage in the proceedings." *See Augustine v. Lenovo (U.S.), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) (citing *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016)).

The Privacy Policy Google references is hyperlinked in fine print within a small popup at the bottom right-hand corner of the website, representing that the "'website uses cookies *to improve user experience*,'" Compl., Dkt. No. 1, ¶ 48 (emphasis added); *see also* Decl. of Ashley Kemper Corkery Ex. A, Dkt. No. 41-2 at 7 (the phrase "Read more" at the end of the fine print within the popup is hyperlinked). Due to its size and placement, "Romantix.com browsers can easily disregard [the popup window] and continue engaging with the website without interacting with [it] at all." Compl. ¶ 48.

Even for those that see the popup, "consumers may 'Decline All'" cookies or "continue to browse Romantix.com without choosing" to either "'Decline All'" or "'Accept All'" cookies. *Id.* Thus, Google's "consent defense turns on the outcome of multiple factual disputes such as whether Plaintiff[s] actually saw and interacted with the pop-up and whether Plaintiff[s] viewed the privacy policy," which "are not suitable for resolution at this stage in the proceedings." *Augustine*, 2023 WL 4938050, at *2 (citation and footnote omitted); s*ee also Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1357 (S.D. Cal. 2024) (rejecting defendant's argument that "Plaintiffs constructively assented to the terms of th[e] [privacy] policy through their continued use of the site" because they "allege[d] that the website d[id] not put Plaintiffs on notice of recording, and that 'users can interact with [the] website without ever reviewing or agreeing to the terms of any purported privacy policy,'" which "the Court must take as true," making defendant's "consent defense . . . premature" (record quotation omitted)).

"Moreover, Plaintiff[s] sufficiently plead[] that [they] did not consent to the recording [at issue]." *See Augustine*, 2023 WL 4938050, at *2  (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (plaintiff met his pleading burden by alleging "he did not provide express prior consent")); Compl. ¶ 89 (alleging Plaintiffs "did not consent to their messages, reports, or communications on Romantix.com being shared with" Google); *see also id.* ¶¶ 2, 65-66, 72, 75, 112, 114-15, 122, 127, 133, 165. Google is thus wrong that "nowhere do Plaintiffs claim that they did not consent," *see* Mot. at 7. "[E]ven when a website contains privacy clauses, a plaintiff's pleading that she did not consent to the recording of private communications is sufficient to survive a motion to dismiss." *Gutierrez v. Converse*

1   *Inc.*, 2023 WL 8939221, at *2 (C.D. Cal. Oct. 27, 2023) (citations omitted).

2          Further, because the Privacy Policy does not expressly notify viewers of the precise challenged

3   conduct—the interception and use for profit of Plaintiffs' personally identifiable PPSI—and readers of the

4   Privacy Policy could reasonably believe that their PPSI would *not* be shared with Google based on

5   reassurances within the Privacy Policy itself, Plaintiffs' claims are not barred by consent. The Privacy Policy

6   language Google points to states some "data is collected" "[t]hrough . . . Google Analytics," but then

7   promises users Google "will not [be] provide[d] with your name, phone number, email address or credit

8   card information"; and that, while Google "can identify a unique user of [the] website," it "does not associate

9   that number with your personally identifiable information." Mot. at 7.

10         In language ignored by Google, the Privacy Policy also reassures visitors the information Romantix

11  discloses to third parties "does not 'contain any information that personally identifies a user,'" Compl. ¶ 47,

12  and the website's FAQ further promises "'[w]e are committed to protecting your privacy. We NEVER share

13  our customers' personal information with anyone,'" *id.* ¶ 25; *see also id.* ¶ 27. Elsewhere, the Privacy Policy

14  says Romantix shares data *only* "'with vendors in order to process credit cards, deliver packages and stream

15  video,'" but states that "for all other purposes of using cookies, consent is required," *id.* ¶ 47, and again

16  reassures visitors it "'DO[ES] NOT resell any data to third parties FOR ANY REASON,'" *id.* ¶ 26. Despite

17  these promises, "the unique identifying information for a [Romantix.com] user is sent, without the user's

18  permission, from Romantix.com to Google's servers, where Google can associate that unique ID with a

19  specific individual" and "with their specific shopping activity on Romantix.com," thereby "learn[ing] that

20  user's sexual orientation, preferences, kinks, and other PPSI." *Id.* ¶¶ 34-35.

21         Plaintiffs thus adequately allege that, as reasonably prudent users, even if they had noticed and read

22  the Privacy Policy, they would not have been adequately informed of Google's challenged conduct and so

23  could not (and did not) consent to it. *See GoodRx Holdings*, 2025 WL 2052302, at *9-10 (

24         A reasonable user reading these broad disclosures[] . . . about the general use of the tracking
25         technologies on the GoodRx Platform, when reading them together with the portions . . .
           that specifically state that GoodRx will not share that data, and . . . promises . . . that
26         GoodRx would not share its users' health information . . . would reasonably think they
           were not consenting to the sharing and interception of sensitive medical information."
27

28  (citing *Calhoun v. Google LLC*, 113 F.4th 1141, 1150 (9th Cir. 2024) (Reasonable users reviewing Google's

general privacy policy, broadly stating Google collects data about users' activity on third-party sites and apps that use its services, together with a Chrome-specific privacy notice that states Google will not receive certain information, "would not necessarily understand that they were consenting to the data collection at issue."))); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (Meta did not establish consent where its "policies notify Facebook users that Meta collects and uses their personal data, . . . at least in part for targeted advertising," but did "not . . . . specifically indicate that Meta may acquire health data obtained from Facebook users' interactions with their medical providers' websites" (record citations and emphasis omitted)); *Doe v. County of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (although "disclosures may . . . indicate that some personally identifiable information might be disclosed 'typically' in aggregated form for defendant's purposes[,] . . . nothing in the provisions . . . disclose the disclosure of PII, much less [personal health information], to third parties for those third parties' own use" (citing *Meta Platforms*, 690 F. Supp. 3d at 1078)).

At most, Google's arguments establish a question of fact regarding consent, since Plaintiffs allege they were reassured of their privacy by statements in the Privacy Policy and elsewhere on the website and that the challenged conduct was outside the bounds of anything disclosed in the Privacy Policy. *See A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (privacy policy that the defendant argued "clearly informs visitors that [defendant] uses analytics technologies to collect users' information," and "that their information may be shared with third parties for various purposes," but "also promis[ing] that its site and [plaintiff's] entries are '100% secure' and that it will 'never sell your information,'" created "a question of fact that cannot be resolved at th[e] [motion to dismiss] stage" (record quotations omitted)); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) ["*FullStory*"] (CIPA "claims will not be dismissed for any defendant based on consent" where the "Privacy Policy disclosed some use of some tracking features," but other "disclosures and assertions indicate[d] that [defendant] would not disclose (or sell or use for marketing) users' personal information"); *cf. Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *2 (N.D. Cal. Sept. 23, 2024) (at summary judgment, finding "consent is typically a fact-bound inquiry, and the record before the Court demonstrates a number of factual disputes that preclude summary judgment" where the parties "highlight different portions of various privacy policies . . . to disagree about the scope of plaintiffs' consent to sharing data with Google").

Google's cases, *see* Mot. at 8-9, are inapposite. In *Lakes v. Ubisoft, Inc.*, the plaintiffs "had to create an account prior to making any purchase," "had to check the box next to 'I accept Ubisoft's Terms of Use . . . and Privacy Policy,'" and "every time Plaintiffs made a purchase, they were again presented with the Privacy Policy during the . . . checkout process." 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025). Here, by contrast, website visitors "can easily . . . engag[e] with the website without interacting with the popup at all." Compl. ¶ 48. Nor does *Lakes* involve the reassurance against sharing personally identifiable information present here. *Compare Lakes*, 777 F. Supp. 3d at 1054-57 *with* Compl. ¶¶ 24-27, 127. Similarly, "*Smith*, and [the] recent unpublished decision in *Hammerling v. Google, LLC* . . . are inapposite, because plaintiffs in those cases had not argued" the defendant made an "affirmative statement that it would not receive [the] information" plaintiffs were concerned about. *See Calhoun*, 113 F.4th 1141, 1149 (9th Cir. 2024).

## II.    PLAINTIFFS PLAUSIBLY ALLEGE GOOGLE VIOLATES CIPA

Plaintiffs allege Google violates CIPA § 631(a), which makes liable any person, *inter alia*:

[2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or

[3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]

*See Ahringer v. LoanDepot, Inc.*, 2024 WL 1135683, at *2 (C.D. Cal. Feb. 6, 2024) (quoting Cal. Penal Code § 631(a)); *see also* Compl. ¶ 54 (citing Cal. Penal Code § 631(a)); *id.* ¶ 65 (Google "violated § 631 each time [it] read, attempted to read, or learned from or utilized Romantix.com users' personally-identifying information or PPSI without their consent."); *id.* ¶¶ 103-17. Google argues "Plaintiffs' CIPA claims are not viable" because (1) "Google is a 'party' to Plaintiffs' alleged communications with Romantix, not a third-party 'eavesdropper,'" Mot. at 9 (citation omitted); (2) "Plaintiffs do not allege that Google's conduct was 'willful[],'" *id.* at 13; (3) Plaintiffs do not sufficiently allege that Google intercepted Plaintiff's communications "in transit," *id.* at 14; and (4) Plaintiffs "did not plausibly allege any facts showing how Google 'used' any of the allegedly intercepted information," *id.* at 15. Google is wrong on all points.

A.    **Google is an Unauthorized Third-Party Eavesdropper that Independently Uses Plaintiff's PPSI for its Own Financial Gain**

CIPA prohibits eavesdropping on online communications. *See Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023) ("Section 631(a) applies to internet communications."). There are two lines of cases addressing how to determine whether a software vendor such as Google is a third-party eavesdropper on online communications under CIPA. "Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the 'extension test,'" because its aim is to determine whether an entity was "acting as an extension of [a party to the communication], and not as a third party." *Ambriz v. Google LLC*, 2025 WL 830450, at *3 (N.D. Cal. Feb. 10, 2025).

These cases include *Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), on which Google primarily relies. *See* Mot. at 9-11. *Graham*, however, has been heavily criticized because "[t]here are two problems with . . . reading . . . Section 631" to require independent use of the intercepted information by a software vendor. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

> The first is that it interprets the second prong of the statute . . . based on the intentions and usage of the prospective third party. But the third prong of the statute already penalizes "use"— "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Thus, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process). The second problem with this view is that it was not the California Supreme Court's stated rationale in *Ribas*: The *Ribas* Court did not consider the [eavesdropping] wife's friend's intentions or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an "unannounced second auditor" listening in on the call, when Section 631 concerns "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Ribas* [*v. Clark*], 38 Cal. 3d [355,] [ ] 360-61 [(1985).]

*Id.* (internal citations omitted); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) ("*Graham* and its progeny are based on a misinterpretation of Section 631 and [the California Supreme Court's decision in] *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the use of the collected information are irrelevant.").

A "'growing number of district courts . . . have reached the same conclusion,'" *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (quoting *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024) (collecting cases)), and "require only that plaintiff allege the

7

software vendor has the *capability* to use the data for its own purposes." *Ambriz*, 2025 WL 830450, at *3. This "capability test is the better application of the statute and the California Supreme Court's precedent . . . and the Court [should] apply it here." *Id.*; *see also*, *e.g.*, *Rack Room Shoes*, 2025 WL 1085169, at *3 ("The Court will follow the capability test for reasons described in *Ambriz*"); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 954-55 (E.D. Cal. 2025) (agreeing with the reasoning in *Javier* and applying the capability test); *Rodriguez v. Ford Motor Co.*, 2024 WL 4957566, at *8-9 (S.D. Cal. Dec. 3, 2024) (same). Regardless of which test is used, however, Plaintiffs plausibly allege Google's liability as a third-party eavesdropper.

Plaintiffs plead not only that Google had the capability to use Plaintiffs' PPSI, but that it does in fact use and independently benefit from it. *See* Compl. ¶¶ 28-38, 66, 109, 164. Plaintiffs allege "[t]he information Romantix.com discloses, without permission, to Google can be used to identify a specific consumer, track their online activity, and then monetize that information in the form of advertising." *Id.* ¶ 36; *see also id.* ¶ 28 (

> The trackers use this data to build detailed user profiles for analytics, targeted advertising, and other marketing purposes. Since several trackers are used across multiple websites, data from different sites is combined to enhance the user profile. When a user enters any website that utilizes the same tracker(s), those cookies or pixels continue to share and gather data.).

Thus, Google "captur[es] user data to optimize ad performance and increase ad spend—the cornerstone of their revenue, which amounts to tens of billions of dollars annually." *Id.* ¶ 30. To facilitate this, Google "formed agreements to install cookies and trackers onto Romantix.com in exchange for access to and use of the PPSI of Plaintiffs and other California Subclass Members, for [its] . . . financial benefit, and at the expense of consumers' privacy and data." *Id.* ¶ 109. In short, "Google can, ***and does*** . . . track . . . user[s'] browsing behavior, including[] . . . their PPSI, for pecuniary gain in the form of targeted ads." *Id.* ¶ 38 (emphasis added); *see also id.* ¶ 37 ("Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize, and improve, targeted advertising. Then, by tracking user behavior across different websites, Google can improve its targeted advertising, leading to higher click-through rates and, thus, more ad revenue.").[3]

---

[3] Google's assertion that Plaintiffs' allegations are too "generic" and "conclusory" because they do not "describ[e] how [Google] 'benefit[s]'" Mot. at 11 (quoting Compl. ¶ 30), or too "speculative and hypothetical" because they "rely on generic descriptions regarding what [the collected] data . . . 'can be used' to do, without adequately alleging . . . that Google actually does do," *id.* at 12-13, ignores these and

Accordingly, even if Plaintiffs must allege Google independently used Plaintiffs' intercepted PPSI, they have done so, and Google's motion should be denied, as another Northern district court considering the use of Google Analytics has concluded. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1197-98 (N.D. Cal. 2024) ("the complaint alleges that Google *does* read and use Google Analytics data" because "[i]t asserts . . . that Google 'benefits (and profits from)' the use of Google Analytics and 'can use the data it gleans . . . to power its algorithms[,]' . . . compile a 'detailed dossier, or digital fingerprint' for each of its users," and the fact that "Google Analytics is free[] suggest[s] that Google derives some benefit when websites use the tool").[4]

Google does not dispute its capability to use Plaintiffs' PPSI in the manner alleged. *See generally* Mot.; *cf. Ambriz*, 2025 WL 830450, at *3 ("Google does not dispute that it is technologically capable of using the call data for an independent purpose, and this is what the capability test measures."). Instead, it tries to render *Javier*'s capability test identical to *Graham*'s extension test by (incorrectly) insisting that even "applying *Javier* . . . a plaintiff must plead specific facts to demonstrate that a vendor **independently**

---

other well-pleaded allegations regarding Google's tracking behavior on the website. *See, e.g.*, Compl. ¶ 84 ("Each time Plaintiffs used Romantix.com, Romantix and Innov8 allowed the Marketer Defendants to intercept, learn the contents of, and use for commercial gain Plaintiffs' messages, reports and communications."); *id.* ¶ 112 (Google "willfully obtained the messages, reports and communications of Plaintiffs and other California Subclass Members" that used the website); *id.* ¶ 115 (Google "read, attempted to read, learned from, and used the messages, reports, and communications of Plaintiffs and other California Subclass Members made on Romantix.com via the cookies and trackers discussed herein, which informed [Google] of [Plaintiffs'] identities and PPSI, without their knowledge or consent.").

[4] Courts have likewise found allegations regarding use of data gathered via other website pixels for purposes of targeting advertising to be sufficient. *See, e.g., Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (where plaintiffs challenged use of defendant's pixel on the DMV website, finding defendant's argument that "it was merely the third-party vendor of a recording service" "fails because [plaintiff] alleges . . . that LinkedIn received [her] sensitive data and read and used it for its own marketing services"); *Doe v. Call-On Doc*, 2025 WL 1677632, at *14 (S.D. Cal. June 13, 2025) (allegations regarding a Tikok Pixel were sufficient where plaintiff "claim[ed] that TikTok has the ability to use the intercepted information for its own purposes to . . . aggregate[] intercepted information with data collected from other websites that can be used to offer to other companies seeking targeted advertising" (record citation omitted)); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1227 (C.D. Cal. 2024) ("plaintiff . . .plausibly alleged that Zendesk is a third party under Section 631" by "alleg[ing] that Zendesk 'profit[s] from secretly exploiting the chat data through targeted social media advertising' in partnership with Meta" (record citation omitted)); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *7 (W.D. Wash. Dec. 19, 2023) ("even if the Court were to adopt the *Graham* approach . . . Plaintiff adequately alleges that Qualtrics used her data for its own benefit" by alleging "'[Defendants'] benefits include . . . the revenue and profits resulting from the targeted advertising and other uses of such data by Defendants.'").

*used* the underlying 'communication.'" Mot. at 12 (Google's emphasis omitted and emphasis added). But even if Google were correct, Plaintiffs have done so. *See supra* pp. 7-9.

Google is also wrong that "Plaintiffs plead no plausible facts to support their contention that Google has capabilities to 'identify a specific consumer' using the data received from Romantix," Mot. at 12. *See* Compl. ¶¶ 31-38. Plaintiffs' detailed allegations include "screenshot[s] show[ing] [that] Google can associate [an] individual (through the unique Google ID) with their specific . . . PPSI," and explain that Google Analytics "makes [a user's] information personally identifiable because the cookie value can be associated by Google with the user's account identity." *See id.* ¶¶ 35-36; *see also id.* ¶ 37 ("Google links patients' visits to MyChart portals with user identities using these cookies, demonstrating that the data sent to Google is personally identifiable."); *id.* ¶¶ 78, 80 (Plaintiffs both "transmitted . . . not only the searches [they] ran and items [they] browsed, but also [their] personally-identifying information, including [their] full name, home address, email address, and credit card information"); *cf. Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("[C]ertainly it would be reasonable to infer that Google, out of anyone, would be able to use an IP address to connect information to an identifiable person" since:

> Google has access to vast amounts of information through its various products, and because the range of information collected by those products is so broad, it's plausible that Google would know enough about the activity of an IP address to be able to tie it to an identifiable person, say, through the information that person provides while setting up a Google account or shopping on another website. (citation omitted)).

## B.   Google's Actions Were "Willful" and "Intentional"

Google argues "Plaintiffs do not allege that Google's conduct was 'willful[]' as required under clause two of" CIPA or "that the alleged interception was 'intentional' as required under" the Federal Wiretap Act because they "merely recite the statutory language," but "fail to plead [supporting] facts," Mot at 13. But Plaintiffs meet this "not . . . stringent" requirement, *see Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021),[5] by alleging that the entire business purpose of Google's Pixel is to gather data for the purpose

---

[5] The bar for alleging intentional conduct under the Wiretap Act is, if anything, even lower than under CIPA. *See Lopez*, 519 F. Supp. 3d at 689 (noting "CIPA may have a slightly higher intent requirement" than the Wiretap Act). "The intent element in the Federal Wiretap Act is met if the act is 'done on purpose,' even if that purpose was not nefarious and the actor was unaware that the use was unlawful. In other words, the actor's motive is irrelevant to a finding of intentionality; the plaintiff need only plead that the act was not a mistake. And FRCP 9(b) permits plaintiffs to plead intent and malice generally." *Bliss v. CoreCivic, Inc.*,

of monetizing it, Compl. ¶¶ 30, 52, 72. *See Gladstone*, 739 F. Supp. 3d at 860 ("Plaintiff has adequately pled that Defendant acted intentionally and willfully" where the complaint "alleges that [the challenged software] is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities." (record citation omitted)); *FullStory*, 712 F. Supp. 3d at 1260 (plaintiff "plausibly alleged that TikTok designed and provided its Pixel to sites like Favor *in order* to intercept the information that she alleges TikTok received," which "is sufficient" to "adequately allege TikTok willfully intercepted communications" (citations omitted)).

Further, Plaintiffs' PPSI was "instantly available to Google" since "everything Plaintiffs browsed or searched on the website was tracked and disclosed . . . instantly and automatically as it occurred," *id.* ¶ 83— meaning Google was well aware of the type of data it was collecting as the collection was occurring and nevertheless continued to "intentionally intercept users' PPSI with the intent to use it for financial gain through better targeting of advertisements," *id.* ¶ 52.

Google argues its conduct cannot be willful or intentional because it states in its Terms of Service and Help Center page—which it asks the Court to judicially notice, *see* Google's RJN, Dkt. No. 41-1, at 1— that it "does not want to receive personally identifiable information," Mot. at 13. But that does not mean, as Plaintiffs allege and must be accepted as true, Google does not receive it anyway. *See, e.g.*, Compl. ¶¶ 28-32. And "the Court cannot take judicial notice of disputed facts in Google's terms of service for the purpose of creating a defense against the well-pleaded allegations in the complaint.'" *See Wilson*, 2025 WL 901941, at *6 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (rejecting Google's "argu[ment] that its terms of service required the [website] not to share 'personally identifiable information' with Google, thus proving that Google did not intend to obtain Plaintiff's personal information.")); *see also Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."); *Gladstone*, 739 F. Supp. 3d at 860 ("Defendant points out that it 'contractually requires companies that use Amazon Connect to provide notice and obtain consent from

---

580 F. Supp. 3d 924, 929 (D. Nev. 2022) (citing *United States v. Christensen*, 828 F.3d 763, 774-75 (9th Cir. 2015)).

their customers' . . . but 'the Court is not convinced that [Defendant's] inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations' under CIPA." (quotation omitted)).[6]

### C.     Plaintiffs Communications Were Intercepted in Transit

"'[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the "in transit" requirement.'" *Doe v. Tenet Healthcare Corp.*, --- F. Supp. 3d ----, 2025 WL 1635956, at *13 (E.D. Cal. June 9, 2025) (quoting *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)); *see also St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024) (explaining that "they key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous"). Plaintiffs allege "everything [they] browsed or searched on the website was tracked and disclosed without notice or permission to Google . . . instantly and automatically as it occurred." Compl. ¶ 83; *see also id.* ¶¶ 28, 122. "Because Plaintiffs' messages, reports and communications were intercepted simultaneously as they were being communicated, the Marketer Defendants' interceptions occurred while the messages, reports and communications were in transit." *Id.* ¶ 85.

Contrary to Google's assertion that Plaintiffs' allegations are an insufficient "rote recitation of the statute's elements," *see* Mot. at 14, many courts have found such "allegations, . . . sufficiently ple[a]d that [the defendant] intercepted . . . communications 'in transit' as required under § 631(a)." *See Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) ("multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous'" were sufficient to allege communications were intercepted in transit); *see also Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) ("in transit" requirement met where "Plaintiffs allege[d] that [defendant's] software 'records consumer interactions with a website in real time'"); *Licea v. Old Navy LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) (rejecting Defendant's "argu[ment] that Plaintiff's allegations are conclusory and require more

---

[6] Plaintiffs thus oppose Google's Request for Judicial Notice with respect to Exhibits C and D. Even if the Court does judicially notice Exhibits C & D, however, it can only take notice that the documents exist and contain particular statements, not that the statements therein are in fact true. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, at *7 (N.D. Cal. Oct. 2, 2019) (noting "defendants use the exhibits to improperly ask for judicial notice of the truth of the matter asserted" and "tak[ing] judicial notice of the existence of the documents and the fact that such statements were made, but not the truth of the matter").

factual support" where plaintiff alleged "'at least one third party . . . secretly intercept[ed] in real time, eavesdrop[ped] upon, and retain[ed] transcripts of Defendant's chat communications with unsuspecting website visitors'" because "allegations are to be taken as true and all reasonable interferences are to be in Plaintiff's favor" at the motion to dismiss stage (record citation omitted)); *Yockey v. Salesforce, Inc.,* 745 F. Supp. 3d 945, 953 (N.D. Cal. 2024) ("in transit" requirement met when "[t]he reasonable inference here, because Salesforce 'apparently receives the chat messages either before or simultaneously with' its clients— the intended recipients, is that Salesforce intercepts these messages" (quoting *D'Angelo v. PennyOpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023))).

### D.    Plaintiffs' PPSI Was Used by Google

Google argues Plaintiffs' claims under the third prong of CIPA fail because (1) the "claim . . . must be predicated on a violation of either of the first two clauses" and "Plaintiffs do not . . . state a viable claim under its second clause," Mot. at 15 (citation omitted), and (2) "Plaintiffs . . . did not plausibly allege any facts showing how Google 'used' any of the allegedly intercepted information," *id.* Both arguments fail because, as already explained, Plaintiffs plausibly allege Google violated the second prong of CIPA and used Plaintiffs' PPSI for its own financial gain. *See supra* pp. 6-13.

## III.    PLAINTIFFS PLAUSIBLY ALLEGE GOOGLE VIOLATES THE FEDERAL WIRETAP ACT

Google argues Plaintiffs' Wiretap Act claim fails because "Plaintiffs' own allegations and judicially noticeable documents establish that . . . []Romantix[] voluntarily installed Google Analytics on its website," and "no claim can withstand dismissal where 'one of the parties to the communication has given prior consent to such interception,'" Mot. at 15 (citations omitted). But there is an exception to this one-party consent rule, which allows a claim to proceed where "the interception is 'for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *See* Compl. ¶ 71 (quoting 18 U.S.C. § 2511(2)(d)).

The tortious purpose exception applies here because Google "employ[ed] trackers and cookies on Romantix.com with the conscious objective of intercepting users' private communications, including PPSI," Compl. ¶ 72, and "[i]nvasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) (citation omitted).

13

Google "cannot rely on the one party consent rule exception because . . . [Google's] interception was for the purpose of violating Romantix.com users' right to privacy, and they did not consent." Compl. ¶ 72. Plaintiffs therefore state a Federal Wiretap Act claim based on Google's spying on them to collect their personally identifying information and PPSI without their consent. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) ["*Brown I*"] ("consent is not a defense to Plaintiffs' Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal or tortious act in violation of the Constitution"); *Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) ("defendants' subsequent disclosure of the contents of the intercepted conversations for the alleged purpose of further invading the privacy of plaintiffs' staff satisfies" the exception (emphasis omitted)); *In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001) (tortious purpose exception applied where defendant "intercepted plaintiffs' communications . . . 'to spy' on plaintiffs and collect their personal information without consent or compensation, and to misappropriate plaintiffs' 'personalty [sic], thereby obtaining detailed, free market research and consumer analysis'" (record citation omitted)); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (recording "pillow talk" "could be for both a legitimate purpose (news gathering) and also an unlawful or tortious purpose (airing private intimate conduct)" but "[t]he existence of the lawful purpose would not sanitize a tape that was also made for an illegitimate purpose").

Further, courts in this district have emphasized that "[b]ecause consent is a factual determination, it cannot be determined on the pleadings." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (denying motion to dismiss Federal Wiretap claims (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (whether actual consent was given is an "evidence-bound" determination that is "inappropriate to reach on this motion"); *Brown II*, 685 F. Supp. 3d at 934 (denying summary judgment on the consent issue where a "triable issue exist[ed] relative to the scope of [defendant's] consent"))).

Google's next two arguments—that Plaintiffs supposedly did not sufficiently allege the intent and "in transit" requirements of the Wiretap Act, Mot. at 16—repeat those it made regarding CIPA, *see id.* at 13-14, and should be rejected for reasons already discussed. *See* Mot. at 16; *supra* Sections II.B-II.C.

14

Google's one novel argument is that "Plaintiffs fail to adequately plead" that "Google acted as a party to the underlying communication." Mot. at 16. But the Wiretap Act requires precisely the opposite: that Google *not* be a party to the underlying communication, and instead act as a third-party eavesdropper, which Plaintiffs sufficiently allege. *See* Compl. ¶¶ 86, 122 (alleging Google "w[as] never a party" to the underlying communications); *supra* Section II.A (discussing Google's roles as a third-party eavesdropper).

## IV.  PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR VIOLATIONS OF THEIR CALIFORNIA COMMON LAW AND CONSTITUTIONAL PRIVACY RIGHTS

As Google acknowledges, due to the similarity in elements between common law intrusion upon seclusion and California constitutional invasion of privacy claims, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) ["*Facebook Tracking*"] (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)); *see also* Mot. at 16 (citations omitted). "Whether the Plaintiff has an objectively reasonable expectation is generally a question of fact." *Mirkarimi v. Nev. Prop. 1 LLC*, 2013 WL 3761530, at *3 (S.D. Cal. July 15, 2013) (alteration and quotation omitted). Similarly, "[w]hether an alleged intrusion is highly offensive to a reasonable person . . . . 'requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.'" *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973-74 (S.D. Cal. 2023) (quoting *Facebook Tracking*, 956 F.3d at 606). This fact-intensive inquiry is generally "not capable of resolution . . . at the motion to dismiss stage." *Id.* at 973; *see also Shapiro v. AT&T Mobility, LLC*, 2020 WL 11763591, at *2 (C.D. Cal. Dec. 23, 2020) ("determining whether an intrusion is 'highly offensive' requires a fact-intensive inquiry . . . which 'cannot be conducted at the motion to dismiss stage.'" (quoting *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020))). Nevertheless, Plaintiffs have plausibly pleaded a reasonable expectation of privacy and highly offensive intrusion.

### A.  Plaintiffs Had a Reasonable Expectation of Privacy

Plaintiffs allege that "[w]hen consumers communicate their PPSI to Romantix and Innov8, they reasonably believe Defendants will maintain the confidentiality of that information, due to both the extremely sensitive and private nature of the information involved, and due to Defendants' affirmative representations,

15

including in FAQs and the privacy policy, found on Romantix.com." Compl. ¶ 24. Romantix's FAQ and Privacy Policy reassure website users that Romantix is "committed to protecting [their] privacy," "NEVER share[s] [its] customers' personal information with anyone," "DO[ES] NOT resell any data to third parties FOR ANY REASON," and "any information . . . disclose[d] to third parties is only generalized, 'aggregated' data" that "'does not identify any individual,'" *id.* ¶¶ 25-27. Thus, while Plaintiffs' "reasonable expectation of privacy in their PPSI is intrinsic," it "further stems from and is reinforced by [these] representations," *id.* ¶ 125.

These allegations are sufficient to allege a reasonable expectation of privacy in using Romantix.com. *See Brown I*, 525 F. Supp. 3d at 1076-79 (plaintiffs "alleged that they have a reasonable expectation of privacy in their data" where Google collected data regarding "users' Internet activity, while in 'private browsing mode,'" that "may reveal[] a user's dating history, [and] a user's sexual interests and/or orientation," among other things, and "Google made representations that could suggest to a reasonable user that the data would not be shared with Google while the user was in private browsing mode" (record quotation and citation omitted)); *Facebook Tracking*, 956 F.3d at 604 n.7 ("individuals have a reasonable expectation of privacy in collections of information that reveal 'familiar, political, professional, religious, and sexual associations'" and "maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent" (quotation and citations omitted)); *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 934 (C.D. Cal. 2015) ("Plaintiffs had a reasonable expectation of privacy as to their sexual orientation and their intimate activities."); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *9 (N.D. Cal. Mar. 28, 2025) ["*Sussex Publishers*"] ("Plaintiffs sufficiently plead a privacy interest and a reasonable expectation of privacy in the information Google Analytics collected through Defendant's site" where they alleged "the dissemination of personally identifying information"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269, 294 (3d Cir. 2016) ["*Nickelodeon*"] (where Viacom's website stated, "HEY GROWN-UPS: We don't collect ANY personal information about your kids. Which means we couldn't share it even if we wanted to!," but plaintiffs alleged Viacom nevertheless "used cookies to track children's web browsing and video-watching habits on Viacom's websites," a "reasonable factfinder could conclude that Viacom's promise . . . created an expectation of privacy with respect to browsing activity").

None of Google's three arguments warrant a different conclusion. ***First***, Google's argument that "Plaintiffs did not have a reasonable expectation of privacy because they consented to Romantix's Privacy Policy," Mot. at 17, fails for reasons already discussed, *supra* Section I (explaining Plaintiffs did not consent to the challenged conduct and distinguishing *Hammerling* and *Lakes*). *See FullStory*, 712 F. Supp. 3d at 1257 (finding defendant's "argu[ment] that an intrusion on seclusion claim" failed "because plaintiff could not have had a reasonable expectation of privacy, given her agreement to the disclosure of the information at issue in agreeing to [the relevant] Privacy Policy," was "a gloss on the consent argument addressed above and . . . reject[ing] [it] for the same reasons").

***Second***, Google is wrong "Plaintiffs allege nothing demonstrating how Google could infer characteristics such as 'sexual orientation' . . . from their online shopping habits," Mot. at 17 (emphasis omitted). "When consumers browse Romantix.com to shop for and purchase . . . adult products, including when clicking on items or using search queries in the built-in search function, they communicate private and extremely personal information . . . including sexual preferences, sexual orientation, sexual practices, and adult product preferences," Compl. ¶ 21. For example, "Romantix.com users are presented with various product categories, including 'vibrators,' 'dildos,' 'anal,' [and] 'fetish,'" among other terms. *Id.* ¶ 22. It almost goes without saying that "[s]electing among these categories reveals sexual preferences and practices and has the capacity and tendency to reveal users' sexual orientation" *Id.* The website also features "articles covering a variety of adult topics such as explaining different types and materials of sex toys, erectile dysfunction, BDSM tips, masturbation, level of sexual experience, expert advice, and sexual health, all of which, when a user browses that information, further reveals the PPSI of the user." *Id.* ¶ 23. And Plaintiffs have alleged what they searched for and browsed, demonstrating that category, search, and purchase data *does* reveal a users' sexual preferences, practices, and orientation. *See* Compl. Exs. A-C (filed under seal).

These allegations are a far cry from those in *Hammerling*, the only case Google cites. *See* Mot. at 17. There, plaintiffs alleged Google collected information across various apps concerning "a user's religion, political affiliation, or sexual preference," but did not even "allege the specific apps from which Google inferred this information," *see Hammerling v. Google LLC*, 615 F. Supp. 3d 1061, 1091 (N.D. Cal. 2022). For example, the plaintiffs did "not allege that Google infers the sexual identity of closeted queer users from those users' usage of a given dating app," *id.* at 1091 n.12; *compare* Compl. ¶¶ 21-23 & Exs. A-C. Further,

Google's reliance on *Hammerling* to argue "Plaintiffs have [no] reasonable expectation of privacy in their online shopping behavior," *see* Mot. at 17, is misplaced since that court found "consumers plausibly have a reasonable expectation of privacy in general app usage data," even though the plaintiffs had not alleged the data collection was highly offensive in that case, due to the missing allegations regarding how private information could be gleaned from any particular app. *See Hammerling*, 615 F. Supp. 3d at 1091. That is not an issue here.

Although Google acknowledges "Plaintiffs allege that other information, such as their 'full name, home address, email address, and credit card information,' is also transmitted to . . . Google," it asks the Court to "give no weight to" these allegations because "Plaintiffs do not allege that Romantix installed Google Analytics tags on Plaintiffs' 'Your Account' or 'Order History' pages where" that "personal information would be potentially visible." *See* Mot. at 17-18 (quoting Compl. ¶¶ 78, 80). Google's resort to extraneous facts is improper, and its unsupported attorney argument does not establish that a user needs to visit one of these pages to convey this information. A review of the website indicates they do not.[7] Regardless, Plaintiffs allege—and the Court must accept as true—that "[u]sing embedded scripts in the website's code, *every interaction* on Romantix.com is logged and transmitted to Google servers," Compl. ¶ 32 (emphasis added), including purchases.

***Third***, Google is wrong that "Plaintiffs do not have a reasonable expectation of privacy on th[e] website[], regardless of the type of product that Plaintiffs have browsed and purchased." Mot. at 18; *see also id.* (arguing that "all [p]roduct preference information is not personal information'" (quoting *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819-20 (E.D. Pa. 2025))). The case law does "not reflect a blanket presumption that no reasonable expectation of privacy exists when engaging in commercial transactions over the Internet." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024) (citing *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) ("This is not to say there can never be a reasonable expectation of privacy over internet activity.")); *cf. Brown II*, 685 F.

---

[7] For example, you can purchase products by simply clicking "Buy Now" and proceeding to checkout where you can, but are not required, to "Sign In," thus demonstrating that a user need not visit the pages Google mentions in order to enter their personal and financial information. *See* https://www.romantix.com/purchase. Because Plaintiffs' Complaint extensively references the website, which is central to their claims, it is incorporated by reference and can be considered by the Court. *See Friedman v. MedJet Assistance, LLC*, 2010 WL 11463109, at *4 (C.D. Cal. May 13, 2010).

Supp. 3d at 937 (In evaluating the plausibility of a claim under CIPA, finding "Google's narrower argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications, fails on examination.").

Instead, courts have found consumers have reasonable expectations of privacy while browsing online when the tracked activity reveals traditionally protected information, such as "a user's sexual interests and/or orientation," *see Brown I*, 525 F. Supp. 3d at 1055, 1075-79, or "sensitive financial information," *Smith*, 754 F. Supp. 3d at 945.[8] *See also In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) (denying motion to dismiss privacy claim where Google "s[old] sensitive personal information such as plaintiff's . . . web-browsing information, search terms, and sensitive websites that plaintiffs visited relating to race, religion, sexual orientation, and health"); *Brown II*, 685 F.Supp.3d at 941 ("Ninth Circuit law indicates that users . . . have a reasonable expectation of privacy . . . over URLs that disclose either unique 'search terms' or the 'particular document within a website that a person views.'" (quotation omitted)). Further, that "such information would be plainly observable were Plaintiffs to have shopped in the physical world rather than online," Mot. at 18, ignores that consumers may visit the website precisely because they are opting for a private experience that cannot be observed by others, as the Privacy Policy and FAQ promise, *see* Compl. ¶¶ 24-27, 125.

Finally, Google's assertion that "the challenged practices are nearly universal," Mot. at 19, serves not as a defense, but rather an indictment. The ubiquity of a practice does not render it lawful, ethical, or immune from judicial scrutiny, especially where, as here, it involves the surreptitious harvesting of personal and sensitive sexual information without Plaintiffs' consent. That this misconduct is "nearly universal" underscores the systemic nature of the violations and the need for judicial intervention, and Google's flippant treatment amounts to little more than a cynical request that the courts normalize inescapable privacy violations on the basis that "everyone else is doing it." Courts do not—and should not—endorse widespread wrongdoing simply because it is widespread. Contrary to Google's position, common and constitutional

---

[8] Although *Smith* found the plaintiffs had not sufficiently alleged a claim for invasion of privacy against the website operator (rather than the third party eavesdropper, as Google is here), that was because they had not alleged that the operator "was aware of [the third party's] usage of the personal information for additional purposes," which the court nevertheless noted, if present, "may present a plausible allegation that Defendant's conduct was sufficiently egregious to survive a motion to dismiss." *See Smith*, 754 F. Supp. 3d at 946.

privacy law exists to safeguard individuals from precisely this kind of technological overreach, not to ratify it under the guise of inevitability. Further, that data tracking more generally may be widespread does not mean tracking users' *PPSI* is. Internet users can plausibly understand that some data is tracked, while still expecting privacy in the treatment of their PPSI.

### B.    The Invasion of Plaintiffs' Privacy is Highly Offensive to the Reasonable Person

Plaintiffs have also alleged Google's "intrusions, by viewing and utilizing for economic gain Class Members' PPSI, are highly offensive to a reasonable person" as "evidenced by, *inter alia*, Romantix and Innov8 making clear efforts to assure Romantix.com users that their personally-identifying information and PPSI will not be shared," and "self-evident from the highly personal and protected nature of the information being taken and utilized without consent, including users' sexual orientation and preferences." Compl. ¶ 127; *see also id.* ¶ 52 (Google's "invasions of privacy are particularly offensive given that" it "intentionally intercept[s] users' PPSI with the intent to use it for financial gain").

Moreover, courts have recognized that "an affirmative misrepresentation" about the privacy of information collected is "significant," and acts as a "'plus' factor . . . in establishing an expectation of privacy or making a privacy intrusion especially offensive," *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019) (citing *Nickelodeon*, 827 F.3d at 295, 269). Given the highly sensitive nature of the information collected, particularly in light of representations on the website promising it is not, the Court should find Plaintiffs plausibly allege Google's intrusion is highly offensive to a reasonable person. *See id.* at 1034-35 (plaintiffs "adequately alleged . . . the offensiveness element" where they alleged defendants "surreptitiously gathered user-specific information . . . continue[d] to gather information and track individual users in real time," and "share[d] . . . this information with other third-party companies . . . result[ing] in the minor users being shown targeted advertisements"); *Nickelodeon*, 827 F.3d at 294.

As the two cases Google cites demonstrate, "[i]ntrusions on privacy exist on a spectrum: 'Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications,'" whereas "'collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion.'" *See Greenley v. Kochava, Inc.* 684 F. Supp. 3d 1024, 1046 (S.D. Cal. 2023) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017)); *see also In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 654 (N.D. Cal.

2024) (allowing invasion of privacy claims involving disclosure of data that revealed "patient status" and other health information)); *cf. Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022) (dismissing invasion of privacy claims where Google was tracking plaintiffs' searches for "a foot massager, slippers, meal subscriptions, coconut oil, and use of a photo editor").

Plaintiffs' PPSI, which includes information about sexual orientation and health, is more akin to patient and medical information than searches for innocuous products like slippers, and its disclosure is plausibly highly offensive to a reasonable person. *See Brown I*, 525 F. Supp. 3d at 1077 (finding Google's tracking and collection of user data while in private browsing mode highly offensive because users "often enable [it] in order to visit especially sensitive websites," "[f]or example, user's Internet activity . . . may reveal: . . . 'a user's sexual interests and/or orientation'" (record quotation omitted)); *Sussex Publishers*, 2025 WL 948060, at *9 (Allegations "Defendant implemented a system that surreptitiously allowed third parties . . . to track, record, and intercept [their] and other online patients' confidential communications, personally identifiable information, and [Personal Health Information], and use that information for marketing and other purposes" were "'sufficient to allege that Defendant's conduct was highly offensive.'" (quoting *St. Aubin*, 2024 WL 4369675, at *13)).

Further, many cases, including those involving the same Google Analytics tracking technology at issue here, find that "whether an intrusion is 'highly offensive' requires a fact-intensive inquiry that 'examine[s] all of the surrounding circumstances,'" and is therefore "not susceptible to determination at the pleadings stage." *See Rack Room Shoes*, 2025 WL 1085169, at *3 (quoting *Hernandez*, 47 Cal. 4th at 295); *GoodRx Holdings*, 2025 WL 2052302, at *15 (in case involving Google Analytics, finding "highly offensive" element could not be resolved at the pleading stage); *Therapymatch*, 2024 WL 4219992, at *6 (same); *see also Facebook*, 402 F. Supp. 3d at 797 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (Whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury." (citation and quotation omitted)).

## V.    PLAINTIFFS PLAUSIBLY ALLEGE GOOGLE VIOLATED THE UCL

For standing under the UCL, a plaintiff must allege he "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "There are innumerable

ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011). As relevant here, "[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL" and "there are several ways to conceptualize these kinds of injuries as injuries to money or property." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024) ("'California courts have . . . acknowledged that users have a property interest in their personal information'" (quotation omitted)).

> The first is a "transactional" or "benefit-of-the-bargain" theory. Users may choose to share data with businesses and other entities. When they do so, they have certain expectations about how the data will be used and protected. If a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have. This constitutes an injury to money or property under *Kwikset.* This is true if the user originally paid for the business's service as part of the transaction . . . [but] applies with equal force to free services, because a user willing to provide certain information with expectations of security in exchange for a free service may not have been willing to do so without compensation if they realized what would actually happen to their information. And just as it applies to transactions where a user provides data with an understanding that it will be protected but the data is in fact not protected, it can also apply to transactions a user enters with an understanding that certain data will not be collected or shared but the data is in fact collected or shared. Any time a user transacts with a business or other entity and their expectations regarding their personal data are not met as a result of conduct alleged to violate the UCL, they can establish UCL standing by showing that they had to "surrender . . . more, or acquire . . . less" than they otherwise would have.

*Id.* (citation omitted; quoting *Kwikset*, 51 Cal. 4th at 323). Here, Plaintiffs expected their PPSI to remain private, but it was instead shared with and used by Google for profit. *See* Compl. ¶¶ 37-39, 47, 52, 72, 84, 90, 126-27. "Plaintiffs would not have visited Romantix.com, interacted with it, or purchased any products from the website, if they knew Romantix and Innov8 shared information that personally identified them and the kinds of adult products they were interested in purchasing." *Id.* ¶ 91; *see also id.* ¶¶ 92-93. Plaintiffs thus acquired less (protection of their data) and surrendered more (of their PPSI) than they otherwise would have absent the challenged conduct, and so have sufficiently alleged injury under the UCL.

"The second [way to establish lost money or property] is a 'diminished value' theory," which Plaintiffs are not alleging here, making Google's case inapposite. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp at 1024; Mot. at 21 (citing *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024) (discussing allegations regarding the "monetary value" in the "market for such data")).

"The third is a 'right to exclude' theory," under which "'California courts have . . . acknowledged that users have a property interest in their personal information,' . . . so kinds of personal data may directly constitute property under the UCL." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024 (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (collecting cases)). "And '[o]ne of the main rights attaching to property is the right to exclude others.'" *Id.* (quoting *People v. Stewart*, 113 Cal. App. 4th 242, 250 (2003)); *see also* Compl. ¶ 76 ("[A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity" (quoting *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998))). Here, "[i]n challenging the unlawful disclosure of their sensitive [PPSI] to [Google], [P]laintiffs effectively contend that they were deprived of their right to exclude [Google] from that intangible property." *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1025. This "constitute[s] the diminishment of a 'present or future property interest' for purposes of *Kwikset*'s second prong." *Id.*

## VI.  PLAINTIFFS PLAUSIBLY ALLEGE CLAIMS FOR UNJUST ENRICHMENT

Google's only argument against Plaintiffs' unjust enrichment claim is that the "claim must fail for the same reasons" as "Plaintiffs' UCL claim," Mot. at 22 (citation omitted). Google argues, in essence, that Plaintiffs have not sufficiently alleged they were injured by its conduct. Because Plaintiffs have alleged injury under multiple theories, however, the Court should reject Google' argument against unjust enrichment. *See GoodRx Holdings*, 2025 WL 2052302, at *16 (in action involving Google Analytics, plaintiffs "adequately alleged facts to support a claim for unjust enrichment" by "alleg[ing] that the Moving Defendants unlawfully intercepted their sensitive health data . . . without [their] consent, and . . . unjustly retained the proceeds of monetizing the illegal[ly] obtained data" (record citation omitted)); *Facebook*, 402 F. Supp. 3d at 803 ("[E]ven if the plaintiffs suffered no economic loss from the disclosure of their information, they may proceed at this stage on a claim for unjust enrichment to recover the gains that Facebook realized from its allegedly improper conduct." (citing *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1113 (N.D. Cal. 2018) (Koh, J.))).

## VII.  PLAINTIFFS HAVE STANDING TO SEEK EQUITABLE RELIEF

Google argues "Plaintiffs do not and could not demonstrate an inadequate remedy at law, as required to maintain an equitable claim such as the UCL in federal court" because they "seek legal claims for money

damages based on allegations that are coextensive with their UCL claims." Mot. at 21 (citing, *inter alia*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020)). Plaintiffs, however, allege they "and other Class Members have been injured because they have not been compensated for the benefits they conferred on Defendants," and allege their "legal remedies are inadequate to address this injury," Compl. ¶ 165. "Under *Sonner*, a plaintiff 'need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough.'" *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023 (quoting *Weizman v. Talkspace, Inc.*, 705 F. Supp. 3d 984, 990-91 & n.3 (N.D. Cal. 2023)). "*Sonner* will rarely (if ever) require more this early in the case," *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022)).

Plaintiffs' Complaint nevertheless *does* explain why legal remedies are inadequate. Plaintiffs seek restitution in the amount that Google has profited in the form of increased advertising revenue. *See* Compl. ¶¶ 37, 162, 167. Plaintiffs' legal remedies, by contrast, include statutory damages, which compensate Plaintiffs via a fixed sum for the wiretapping itself, *see id.* ¶¶ 116, 123, or actual damages, which compensate Plaintiffs for the intrusions into their seclusion and invasions of their privacy, *id.* ¶¶ 129, 135, rather than compensation for the economic benefits Google obtained from its obtrusive use of Plaintiffs' data. *See, e.g., Brown II*, 685 F. Supp. 3d at 926 ("Plaintiffs have sufficiently shown that Google profited from their personal browsing histories and thus a remedy based upon unjust enrichment may lie."). Accordingly, Plaintiffs do not seek "the same amount of money for the exact same harm," *Sonner*, 971 F.3d at 844, "establish[ing] that this Court has equitable jurisdiction to consider plaintiffs'" equitable claims. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023; *see also Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1032 (N.D. Cal. 2024). Even if there were some overlap in the claims, however, Plaintiffs are entitled to plead in the alternative. Fed. R. Civ. P. 8.

## **CONCLUSION**

The Court should deny Google's motion, but if the Court is inclined to grant the motion in any respect, Plaintiffs request dismissal be without prejudice and with leave to amend.

Dated: August 22, 2025

Respectfully Submitted,

/s/ Melanie R. Monroe
**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471

***Counsel for Plaintiffs***

*Perez v. Romantix et. al.*, 5:25-cv-02465-NW
PLAINTIFFS' OPPOSITION TO GOOGLE'S MOTION TO DISMISS THE COMPLAINT