**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1471
Fax: (619) 331-2943

***Counsel for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,

Defendants.

Case No. 5:25-cv-02465-NW

**PLAINTIFFS' OPPOSITION TO GOOGLE LLC'S MOTION TO DISMISS THE COMPLAINT [DKT. NO. 41]**

Judge: Hon. Noël Wise
Date: October 8, 2025
Time: 9:00 a.m.
Dept.: 3

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. PLAINTIFFS HAVE ARTICLE III STANDING ..... 1

A. Plaintiffs Allege an Economic Injury ..... 1

B. Plaintiffs Allege Injuries to Traditional Privacy Interests ..... 2

II. PLAINTIFFS PLAUSIBLY STATE CLAIMS ..... 7

A. Plaintiffs Plausibly Allege Innov8 Violates CIPA ..... 7

i. Innov8 Aided and Abetted the Interception of the "Contents" of Plaintiffs' Communications ..... 7

ii. Plaintiffs Alleged Their Communications Were Captured While in Transit ..... 10

iii. Plaintiffs Allege they Did Not Consent to the Privacy Violations at Issue ..... 11

B. Plaintiffs Plausibly Allege Innov8 Was Negligent ..... 14

C. Plaintiffs Plausibly Allege Innov8 Violated the UCL ..... 16

D. Plaintiffs Plausibly Allege Claims for Unjust Enrichment ..... 18

CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Group, Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ..... 18, 19

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ..... 6, 13

*Aid for Women v. Foulston*,
441 F.3d 1101 (10th Cir. 2006) ..... 3

*Augustine v. Lenovo (U.S.), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ..... 11, 12

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..... 14

*Bates v. UPS Inc.*,
511 F.3d 974 (9th Cir. 2007) ..... 5

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ..... 2

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) ..... 3

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 4

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) ..... 5

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 17

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ..... 2

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ..... 14

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ..... 8, 9

*D'Angelo v. PennyOpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .................... 10

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) .................... 14

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) .................... 6

*Doe v. Call-On Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .................... 6

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) .................... 13

*Doe v. Eating Recovery Center LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) .................... 10, 18

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................... 13

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .................... 9, 13

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .................... 14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................... 9, 13

*Doe v. Tenet Healthcare Corp.*,
--- F. Supp. 3d ----, 2025 WL 1635956 (E.D. Cal. June 9, 2025) .................... 10, 19

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .................... 8

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .................... 10

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .................... 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................... 9

*Griswold v. Conn.*,
381 U.S. 479 (1965) .................... 3

*Gutierrez v. Converse Inc.*,
2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) .......... 11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 8

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 10

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 8

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013) .......... 2

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) .......... 15

*In re Adobe Sys., Inc. Privacy Litig.*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) .......... 2

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 12

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 12

*In re Google RTB Consumer Privacy Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) .......... 9

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 16, 17, 18

*In re San Francisco 49ers Data Breach Litig.*,
2024 WL 3849336 (N.D. Cal. Aug. 15, 2024) .......... 14

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 16

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 8

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......... 2

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) .......... 14

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 12

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 11

*John B. v. Super. Ct.*,
38 Cal. 4th 1177 (2006) .......... 3

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 2, 16, 17

*Licea v. Old Navy LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 10

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 16

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 12

*Nguon v. Wolf*,
517 F. Supp. 2d 1177 (C.D. Cal. 2007) .......... 3

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 12

*People v. Stewart*,
113 Cal. App. 4th 242 (2003) .......... 17

*Popa v. PSP Grp., LLC*,
2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) .......... 4, 5

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 8, 12

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 16

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 4, 5

*Roman Catholic Bishop of San Diego v. Super. Ct.*,
42 Cal. App. 4th 1556 (1996) .......... 3

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 7, 8

*Shulman v. Group W Prods., Inc.*,
18 Cal. 4th 200 (1998) ........ 17

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 9

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 9, 10

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........ 9

*Thorne v. City of El Segundo*,
726 F.2d 459 (9th Cir. 1983) ........ 3

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 10

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 9

**Statutes**

Cal. Penal Code § 631(a) ........ 7

**Other Authorities**

Cal. Const., art. I, § 1 ........ 3

**Rules**

Fed. R. Civ. P. 15(a) ........ 7

## INTRODUCTION

Innov8's Motion, Dkt. No. 40 ("Mot."), provides no salient reason to dismiss Plaintiffs' claims. Plaintiffs have Article III standing because they allege Defendants captured and invaded information revealing their sexual preferences, practices, and orientation (referred to herein as "private and protected sexual information," or "PPSI"), which is private and historically protected. Innov8's CIPA arguments should be rejected because Plaintiffs' interactions with Romantix.com (the "website") revealed their PPSI, constituting "communications," and they expressly allege Innov8 allowed Google and NextRoll (the "Marketer Defendants") to intercept and read those communications while in transit. Plaintiffs state a claim for negligence because they have demonstrated Innov8 owed them a duty which it then breached, causing damages. Plaintiffs have UCL standing because they paid money for the products they purchased from the website and would have paid less or not purchased them had Plaintiffs known about the collection and use of their protected information. Plaintiffs also state a claim for unjust enrichment because Defendants unjustly retained a benefit at their expense. Additionally, because Plaintiffs never affirmatively agreed to the Romantix Privacy Policy—which further promises to never share users' personal information with anyone—Innov8 cannot show Plaintiffs consented to the challenged conduct. Accordingly, the Court should deny Innov8's Motion.

## ARGUMENT

### I. PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs allege Innov8's wrongful behavior caused them both an economic injury in the form of overpayment for goods, and a concrete dignitary injury, by invading their privacy. Both give them standing to pursue their claims.

#### A. Plaintiffs Allege an Economic Injury

Plaintiffs allege they "did not consent to their" PPSI being shared by Innov8, and "reasonably believed their . . . PPSI . . . w[as] private." Compl., Dkt. No. 1, ¶¶ 89-90. Plaintiffs' belief was "due to both the extremely sensitive and private nature of the information" and "Defendants' affirmative representations, including in FAQs and the privacy policy, found on Romantix.com," *id.* ¶ 24, that Innov8 "NEVER share[s] [its] customers' personal information with anyone," and "DO[ES] not resell any data to third parties FOR ANY REASON," *id.* ¶¶ 25-26 (quotations omitted). *See also id.* ¶¶ 27, 51-52. However, "if they knew

Innov8 shared information that personally identified them and the kinds of adult products they were interested in buying," Plaintiffs "would not have . . . purchased any products from the website," *id.* ¶ 91, or "would not have been willing to pay what they did for the products they purchased had they known Romantix and Innov8's promises to 'never' sell their personal information were false and misleading, or if Romantix and Innov8 had revealed the truth," *id.* ¶ 92. *See also id.* ¶ 93 ("Plaintiffs paid more for their adult products than they would otherwise have been willing to pay in reliance on . . . Innov8's promises" to "keep Plaintiffs' information private."); *id.* ¶ 144 ("Innov8[] . . . made affirmative misrepresentations regarding the security of Plaintiffs' . . . private information, which induced Plaintiffs' purchase, caused them to pay more for the goods they purchased, and caused them to lose money[.]"). These allegations are sufficient to establish injury-in-fact under Article III. *See Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *12 (W.D. Wash. Nov. 14, 2024) ("Plaintiffs also satisfy Article III standing . . . because they allege that they would not have purchased prescriptions from Costco's pharmacy had they known about the company's data collection practices." (citations omitted)); *cf. Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 876-77 (N.D. Cal. 2024) ("District courts have held that plaintiff's allegations 'that he expected to receive secure [ ] services and that he would not have signed up for the services in the absence of such assurances' confers an injury upon the plaintiff given that 'he lost the benefit of the bargain.'" (quoting *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018), and citing *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) ("The [c]ourt finds plausible [p]laintiffs' allegations that they relied on Adobe's representations regarding security to their detriment."))).

Innov8's unsupported assertion that Plaintiffs must "allege the existence of alternative vendors that could have offered [them] a less expensive alternative then [sic] services offered by the Website," Mot. at 6, deserves short shrift. *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013) ("There is no requirement . . . [to] separately plead how much [plaintiff] would have paid for the merchandise had he known its true market value." (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 330 n.15, 336 (2011) ("Because the issue here is only the threshold matter of standing, not whether and how much to award in restitution, a specific measure of the amount of [the alleged] loss is not required."))).

**B. Plaintiffs Allege Injuries to Traditional Privacy Interests**

"Privacy is a fundamental liberty implicitly guaranteed by the federal Constitution and is explicitly

guaranteed under the California Constitution as an inalienable right." *Roman Catholic Bishop of San Diego v. Super. Ct.*, 42 Cal. App. 4th 1556, 1567 (1996) (internal citation omitted) (citing *Griswold v. Conn.*, 381 U.S. 479, 484-86 (1965); Cal. Const., art. I, § 1). "The right encompasses privacy in one's sexual matters . . . ." *Id.* (citation omitted); *see also John B. v. Super. Ct.*, 38 Cal. 4th 1177, 1198 (2006) ("the right to privacy" under "the California Constitution . . . . extends to sexual relations" (citation omitted)); *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal. 2007) (recognizing "a legally protected privacy interest under the California Constitution in information about [one's] sexual orientation" (citation omitted)); *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983) ("The interests [the plaintiff] raises in the privacy of her sexual activities are within the zone protected by the constitution."); *cf. Aid for Women v. Foulston*, 441 F.3d 1101, 1110 (10th Cir. 2006) (where there was a "risk that Plaintiffs will be prosecuted . . . should they fail to report . . . sexual activity, they have sufficiently alleged a concrete injury-in-fact"). This is because decisions and activities related to human sexuality are among the most private aspects of a person's life. *See Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) (

> Our sexuality and choices about sex . . . are interests of an intimate nature which define significant portions of our personhood. Publicly revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private. Indeed, for many of these reasons, a number of our sister circuits have concluded that information regarding private sexual matters warrants constitutional protection against public dissemination. (collecting cases)).

Here, Plaintiffs allege "Innov8 installed trackers to disclose users' personally-identifying information and PPSI to Google and NextRoll without the users' consent," Compl. ¶ 66. Plaintiffs further allege they "visited Romantix.com on several occasions and . . . browsed certain categories of adult products, and typed specific search queries into the website's search bar," and "[w]hen purchasing these items . . . transmitted to Romantix and Innov8 (and thus, unwittingly to the Marketing Defendants), not only the searches [they] ran and items [they] browsed, but also [their] personally-identifying information, including [their] full name, home address, email address, and credit card information," *id.* ¶¶ 77-80. "When consumers browse Romantix.com to shop for and purchase sex toys, lingerie, and other adult products, including when clicking on items or using search queries in the built-in search function, they communicate private and extremely personal information to . . . Innov8, including sexual preferences, sexual orientation, sexual practices, and adult product preferences . . . ." *Id.* ¶ 21. Thus, "[e]ach time Plaintiffs used

Romantix.com, . . . Innov8 allowed the Marketer Defendants to intercept[] [and] learn the contents of" Plaintiffs' PPSI. *See id.* ¶ 84. "Plaintiffs did not know that their PPSI . . . would be shared, used, sold, or otherwise disclosed to the Marketer Defendants," *id.* ¶ 88, did not consent to it, *id*. ¶ 89, and "reasonably believed" their "PPSI . . . w[as] private," *id*. ¶ 90.

Innov8 cannot genuinely dispute Plaintiffs have a reasonable expectation of privacy in matters relating to their sexuality, so it contests their allegations that they communicated the contents of their PPSI at all, arguing Plaintiffs "do not establish either that sensitive information about them was captured or that any of the information can be attributed to them." *See* Mot. at 8. Innov8 is wrong on both points.

First, it is self-evident that "[s]electing among" "product categories "reveals sexual preferences and practices and has the capacity and tendency to reveal users' sexual orientation" *Id.* ¶ 22. "Romantix.com also features . . . articles covering a variety of adult topics such as explaining different types and materials of sex toys, erectile dysfunction, BDSM tips, masturbation, level of sexual experience, expert advice, and sexual health, all of which, when a user browses that information, further reveals the PPSI of the user." *Id.* ¶ 23. Further, Plaintiffs filed under seal attachments to the Complaint showing the precise products purchased and categories searched and browsed, a review of which demonstrates that category, search, and purchase data does in fact reveal a users' sexual preferences, practices, and orientation. *See* Compl. Exs. A-C (filed under seal); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) ("the data collected [via Google Analytics] was at least disputably sensitive," including "search[es] on sensitive topics," such "that browsing data may reveal their sexual orientation, political or religious views, or upcoming big purchases").

The extremely private and sensitive nature of the information revealed here distinguishes this case from those on which Innov8 relies, Mot. at 7, which deal with shopping online for vehicles, *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025), and pet supplies, *Popa v. PSP Grp., LLC*, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023). Indeed, in evaluating the plaintiff's standing, the *Rodriguez* court explained that "[w]hether the right to privacy is implicated depends on 'the sort of information revealed.'" 762 F. Supp. 3d at 926 (quotation omitted). The plaintiff there had failed to allege the information she revealed while shopping was "sufficiently personal" because she "merely state[d] in a conclusory manner that her query contained 'confidential' and 'private' information" and, critically, did "not dispute that she

describe[d] her query in a conclusory manner." *Id.* And in *Popa*, the plaintiff *only* "brow[s]ed for pet supplies," without making any purchases that required her personal information, so she "reveal[ed] nothing more than the products that interested" her, which was "not the type of private information that the law has historically protected." 2023 WL 7001456, at *4 (citations omitted)).

Innov8 contests that browsing and shopping on Romantix reveals users' PPSI, arguing that "there are various reasons why an individual might browse particular products . . . unrelated to their own preferences, such as purchasing a gift for another person or simply out of curiosity." Mot. at 8. But that is counter to Plaintiffs' allegations regarding their purchases, Compl. ¶¶ 77-80, and they need not allege absent class members' standing, *see*, *e.g.*, *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("In a class action, standing is satisfied if 'at least one named plaintiff meets the requirements.'" (quoting *Bates v. UPS Inc.*, 511 F.3d 974, 985 (9th Cir. 2007))). If anything, this issue is one for class certification or the merits, at which time the Court can determine if a *de minimis* number of people browsing for gifts would require induvial inquiries rendering the case unsuitable for class treatment. *See id.* at 533 ("where the class representative has established standing and defendants argue that class certification is inappropriate because unnamed class members' claims would require individualized analysis of injury or differ too greatly from the plaintiff's, a court should analyze these arguments through Rule 23 and not by examining the Article III standing of the class representative or unnamed class members").

Plaintiffs also demonstrate, through screenshots of Google Analytics code, that, "the unique identifying information for a user is sent, without the user's permission, from Romantix.com to Google's servers, where Google can associate that unique ID with a specific individual." *See* Compl. ¶ 34; *see also id.* ¶¶ 31-38. "The information Romantix.com discloses, without permission, to Google can be used to identify a specific consumer, [and] track their online activity," which "makes any such information personally identifiable because the cookie value can be associated by Google with the user's account identity." Compl. ¶ 36; *see also id.* ¶¶ 37 ("A recent study . . . found that Google links patients' visits to MyChart portals with user identities using these cookies, demonstrating that the data sent to Google is personally identifiable."). Further, in making their purchases, both Plaintiffs conveyed "personally-identifying information, including [their] full name, home address, email address, and credit card information." *Id.* ¶¶ 78, 80. Thus, contrary to Innov8, Plaintiffs *have* alleged the information disclosed by

Innov8 is "'personal' information capable of identifying the [P]laintiff[s]," Mot. at 8 (citations omitted). *See Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at *4 (S.D. Cal. June 13, 2025) (in case involving the use of Google Analytics on defendant's website, finding plaintiff had alleged standing where she alleged "she was seeking medical treatment on Defendant's website," which "create[d] [a] reasonable inference that Plaintiff provided her [Personally Identifiable Information ("PII")] and [Protected Health Information ("PHI")], including" information about "sexually transmitted infections," and further alleged that "her right to privacy was violated when her PII and PHI were intercepted by third parties on Defendant's website, an injury that is concrete and particularized" (record citations omitted; citing *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024) ["*SelectQuote*"] ("Because each named plaintiff has alleged the interception of personal or sensitive information, including his or her name, date of birth, gender, email address, and health information . . . the class plaintiffs have alleged facts sufficient to establish standing at this stage."))); *see also Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("certainly it would be reasonable to infer that Google, out of anyone, would be able to use an IP address to connect information to an identifiable person" since "Google has access to vast amounts of information through its various products, and because the range of information collected by those products is so broad").[1]

Further, contrary to Innov8, the Complaint does *not* allege that associating PPSI with individuals "requires individuals be logged in to their Google affiliated accounts," Mot. at 9. Rather, "[e]ven if users are not logged into their Google accounts, their PPSI is still tracked, collected, and tied to a unique profile through Google's NID, 1P_JAR, and ANID cookies." Compl. ¶ 38. That "unique identifier tied to that user allows Google to track a user's preferences and activities across all of its services (and other websites)," such that "even if a user is not logged into their Google account, Google can, and does, still track a user's browsing behavior, including . . . their PPSI," *id.* Accordingly, it is irrelevant whether "Plaintiffs were

[1] Despite Innov8 acknowledging that the intercepted data need only be "*capable of* identifying the plaintiff," Mot. at 8 (citing cases evaluating whether the information "would *allow*" or "*could*" be used to identify the plaintiff (citations omitted and emphasis added)), on the following page and without support, Innov8 faults Plaintiffs for supposedly "not alleg[ing] that Google actually ever did so either in general or with respect to either Plaintiff." Mot. at 9. Innov8 is mistaken. *See* Compl. ¶ 38 ("Google can, ***and does***, . . . track a [website] user's browsing behavior, including . . . PPSI" (emphasis added)); *id.* ¶¶ 77-88 & Exs. A-C (alleging Plaintiffs conveyed PPSI and other "personally identifying information" through their interactions with the website and "did not know that their PPSI combined with their individual identifiers would be shared, used, sold, or otherwise disclosed to the Marketer Defendants").

logged in to [their Google] accounts or even had such accounts when they visited the Website," Mot. at 9, since Google was receiving personally identifiable information about website users irrespective of their use of a Google account.[2]

## II. PLAINTIFFS PLAUSIBLY STATE CLAIMS

### A. Plaintiffs Plausibly Allege Innov8 Violates CIPA

It is a violation of CIPA to "aid[], agree[] with, employ[], or conspire[] with any person or persons to," "without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . ." Cal. Penal Code § 631(a); *see also* Compl. ¶ 62. Plaintiffs allege "Innov8 willfully disclosed [Plaintiffs'] . . . communications with Google and NextRoll through the [challenged] cookies and trackers" and "[b]y doing so . . . Innov8 willfully aided and permitted the Marketer Defendants, each a third-party, to read and learn of . . . [the] communications between . . . Innov8, on the one hand, and California Subclass Members, including Plaintiffs, on the other," *id.* ¶ 111, "while the messages, reports and communications were in transit," *id.* ¶ 85. Plaintiffs thus adequately allege that Innov8 aided and abetted the Marketer Defendants in violating CIPA.

Innov8 advances three arguments in opposition to Plaintiffs' CIPA claims: (1) "Plaintiffs' website browsing activity does not constitute the 'contents' of their communications with Romantix," Mot. at 10 (header formatting omitted), (2) "there was no capture of any communication while 'in transit,'" *id.* at 11 (same), and (3) "Plaintiffs fail to allege they did not consent to the alleged interceptions," *id.* at 12 (same). All three arguments fail.

#### i. Innov8 Aided and Abetted the Interception of the "Contents" of Plaintiffs' Communications

"[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021) (quoting *In re Zynga*

[2] If the Court concludes Plaintiffs must allege whether they have a Google account or were logged in at the time they browsed or made purchases from the website, Plaintiffs respectfully request leave to do so. *See* Fed. R. Civ. P. 15(a) ("leave shall be freely given when justice so requires").

*Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ["*Zynga*"]); *see also Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1360 (S.D. Cal. 2024) ("'Contents' means 'information concerning the substance, purport, or meaning of [a] communication.'" (quoting 18 U.S.C. § 2510(8))).[3] While content generally "does not include record information, such as the name, address, and subscriber number or identity of a subscriber or customer, when such information is merely generated in the course of the communication," "record information may constitute contents where the record is the subject of a communication . . . ." *Price*, 712 F. Supp. 3d at 1360 (quoting *Zynga*, 750 F.3d at 1107) (internal quotations and record citation omitted). In making the determination, "[c]ourts employ a contextual 'case-specific' analysis hinging on 'how much information would be revealed' by the information's tracking and disclosure." *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (quoting *Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022)).

Plaintiffs allege "everything [they] browsed or searched on the website was tracked and disclosed without notice or permission to Google and NextRoll," Compl. ¶ 83, including "their specific shopping activity . . . what parts of the website they visited, and even what they purchased," *id.* ¶ 35; *see also id.* ¶ 40 ("AdRoll utilizes both a pixel and cookies to monitor user activity, including what pages users view, what products they click on, what they search for, whether they add items to their cart, and what they buy."). Due to the nature of the website, these recorded activities reveal consumers' "sexual preferences, sexual orientation, sexual practices, and adult product preferences," *id.* ¶ 21; *see also id.* ¶¶ 22-23. Further, in completing their purchases, Plaintiffs conveyed their "personally identifying information, including [their] full name[s], home address[es], email address[es], and credit card information." *Id.* ¶¶ 78, 80.

Plaintiffs' "[s]earch terms constitute 'contents' of a communication." *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) (citing *Zynga*, 750 F.3d at 1108-109). "Similarly, URLs . . . are contents" when "they reproduce a person's personal search engine queries," *Cousin*, 702 F. Supp. 3d at 976 (quoting *Hammerling*, 615 F. Supp. 3d at 1093 (citations omitted))), or are "descriptive of the content" of the webpage by, for example, "show[ing] that the user watched a specific video" or viewed a particular "section" of the webpage, *see Yoon v. Meta Platforms, Inc.*, 2024 WL

[3] "Courts analyzing CIPA claims apply the same definitions for the federal Wiretap Act," *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) (citing *Saleh*, 562 F. Supp. 3d at 517).

5264041, at *5 (N.D. Cal. Dec. 30, 2024); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication." (citing, *inter alia*, *In re Google RTB Consumer Privacy Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022) ("referrer URL that caused navigation to the current page" and "details about the content within the site or app" constituted "content"))).

Further, where, as here, plaintiffs allege that the website activity being intercepted reveals "PII, [protected] information, [or] other sensitive data" they shared with the website, courts have found they sufficiently alleged that the contents of their communications were intercepted. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *15 (N.D. Cal. July 22, 2025) ["*GoodRx Holdings*"] (record citation omitted); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) ("sensitive financial information about tax filings [transmitted] to Google" constituted "content"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023) (finding allegations "fall on the 'contents' of communication side of the line," where plaintiff "allege[d] that Defendant monitors and intercepts communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices, amongst others." (record quotation, quotation marks, and alterations omitted)); *Cousin*, 702 F. Supp. 3d at 976 ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content[.]" (citations omitted)); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) (plaintiffs sufficiently alleged "contents" were communicated by alleging the "Pixel [wa]s embedded on and throughout the DMV website" and that "Meta obtained information showing that [plaintiff] communicated with the DMV in order to apply for a disability parking placard," since "[t]his type of information is substantive and personal").

Moreover, "[t]he boundaries of what transferred information is content under the Act is better determined on a full evidentiary record," making dismissal at this stage inappropriate. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023) ["*Meta Platforms*"]; *see also Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (finding allegations "more than sufficient for pleading purposes" where "[a]lthough perhaps not all of th[e] [captured] information is 'content' under CIPA, much of what is captured certainly is").

**ii. Plaintiffs Alleged Their Communications Were Captured While in Transit**

"[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Doe v. Tenet Healthcare Corp.*, --- F. Supp. 3d ----, ----, 2025 WL 1635956, at *13 (E.D. Cal. June 9, 2025) ["*Tenet*"] (quoting *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)); *see also St. Aubin*, 2024 WL 4369675, at *7 ("they key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous"). Plaintiffs allege "everything [they] browsed or searched on the website was tracked and disclosed without notice or permission to Google . . . instantly and automatically as it occurred." Compl. ¶ 83; *see also id.* ¶¶ 28, 122. "Because Plaintiffs' messages, reports and communications were intercepted simultaneously as they were being communicated, the Marketer Defendants' interceptions occurred while the messages, reports and communications were in transit." *Id.* ¶ 85.

Contrary to Innov8's assertion that Plaintiffs' allegations are "conclusory" *see* Mot. at 11, many courts have found such "allegations . . . sufficiently ple[a]d that [the defendant] intercepted . . . communications 'in transit' as required under § 631(a)." *See Doe v. Eating Recovery Center LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) ["*Eating Recovery Center*"] (finding "multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous'" sufficient to allege communications were intercepted in transit); *see also Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) ("in transit" requirement met where "Plaintiffs allege[d] that [defendant's] software 'records consumer interactions with a website in real time'" (record citation omitted)); *Licea v. Old Navy LLC*, 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023) (rejecting "argu[ment] that Plaintiff's allegations are conclusory and require more factual support" where plaintiff alleged "'at least one third party . . . secretly intercept[ed] in real time, eavesdrop[ped] upon, and retain[ed] transcripts of Defendant's chat communications with unsuspecting website visitors'" (record citation omitted)); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953 (N.D. Cal. 2024) ("in transit" requirement met when "[t]he reasonable inference here, because Salesforce 'apparently receives the chat messages either before or simultaneously with' its clients—the intended recipients, is that Salesforce intercepts these messages" (quoting *D'Angelo v. PennyOpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023))).

None of the allegations Innov8 cites "undermine[] the conclusion that [Plaintiffs' data] was

'intercepted' while 'in transit,'" as it claims, Mot. at 11. Data being "tracked," *see id.* at 12, does not preclude it from simultaneously being disclosed as it is communicated. The Marketer Defendants are tracking the data in real time, as it is being transmitted. Moreover, that the website owner and operator are "disclos[ing]" the data to the Marketer Defendants, is a reference to their role in installing the offending Google Analytics and AdRoll on the website, *i.e.* in aiding and abetting the Marketer Defendants' eavesdropping, not a reference to the timing or order of events, as Innov8 argues, *see* Mot. at 12.

**iii. Plaintiffs Allege they Did Not Consent to the Privacy Violations at Issue**

Plaintiffs repeatedly allege they "did not consent to their messages, reports, or communications on Romantix.com being shared with the Marketer Defendants." Compl. ¶ 89; *see also id.* ¶¶ 2, 65-66, 72, 75, 112, 114-15, 122, 127, 133, 165. Plaintiffs thus "sufficiently plead[] that [they] did not consent to the recording [at issue]." *See Augustine v. Lenovo (U.S.), Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (plaintiff met his pleading burden by alleging "he did not provide express prior consent")). Indeed, "even when a website contains privacy clauses," such as those Innov8 points to here, "a plaintiff's pleading that she did not consent to the recording of private communications is sufficient to survive a motion to dismiss." *See Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *2 (C.D. Cal. Oct. 27, 2023) (citations omitted).

Further, Plaintiffs' Complaint containing allegations regarding the Privacy Policy does not mean, as Innov8 implies, that Plaintiffs were aware of its terms at the times they browsed the website and made their purchases. *See* Mot. at 12 (arguing that "acknowledg[ing] the Romantix website contains a privacy policy . . . infer[s] they were aware of" it). Its mention in the Complaint demonstrates only that, after investigating their claims, Plaintiffs were aware of the policy when they filed this case in March 2025, well after their alleged use of and purchases from the website, *see* Compl. ¶¶ 77, 79 (alleging conduct through "approximately October 2024").

Instead, Plaintiffs allege "Romantix.com browsers can easily disregard [the popup window in which the Privacy Policy is hyperlinked] and continue engaging with the website without interacting with the popup at all." Compl. ¶ 48. Notably, the hyperlink is in fine print within a small popup at the bottom right-hand corner of the Website. *See* Dkt. No. 41-2 at ECF p.7 of 36, Decl. of Ashley Kemper Corkery ("Corker Decl.") Ex. A (the phrase "Read more" at the end of the fine print within the popup is hyperlinked). And

even for those that see the popup, "consumers may 'Decline All'" cookies or "continue to browse Romantix.com without choosing" to either "Decline All" or "Accept All" cookies. *Id.* Thus, Innov8's "consent defense turns on the outcome of multiple factual disputes such as whether Plaintiff[s] actually saw and interacted with the pop-up and whether Plaintiff[s] viewed the privacy policy," which "are not suitable for resolution at this stage in the proceedings." *Augustine*, 2023 WL 4938050, at *2 (citation omitted); *see also Price*, 712 F. Supp. 3d at 1357 (rejecting defendant's argument that "Plaintiffs constructively assented to the terms of th[e] [privacy] policy through their continued use of the site" because they "allege[d] that the website d[id] not put Plaintiffs on notice of recording, and that 'users can interact with [the] website without ever reviewing or agreeing to the terms of any purported privacy policy'" (record quotation omitted)).

Further, even if read and agreed to, the Privacy Policy here does not establish consent because it does not expressly notify viewers of the precise challenged conduct—the interception and use for profit of Plaintiffs' personally identifiable PPSI—and readers of the Privacy Policy could reasonably believe that their PPSI would *not* be intercepted based on reassurances within the Privacy Policy itself. Consent is "generally limited to the specific conduct authorized." *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) (citations omitted); *see also In re Google Location History Litig.*, 428 F. Supp. 3d 185, 190 (N.D. Cal. 2019) ("Consent is only effective if the person alleging harm consented to 'the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." (quoting *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016))). Thus, "if a reasonable . . . user could have plausibly interpreted the contract language as *not* disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct . . . based on the issue of consent[]." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789-90 (N.D. Cal. 2019) ["*Facebook*"]; *see also McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (If "the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendant's] favor at the motion to dismiss stage." (quoting *Facebook*, 402 F. Supp. 3d at 789)).

The Privacy Policy language Innov8 relies on states only that some "information is 'disclose[d] to third parties' in 'generalized' form." *See* Mot. at 12. Even if Plaintiffs agreed to that provision, however, it does not come close to disclosing the challenged conduct, *i.e.* that Plaintiffs' personally identifiable and extremely private sexual information would be intercepted and used for financial gain by multiple third party marketers. *See Doe v. County of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (although "disclosures may . . . indicate that some personally identifiable information might be disclosed 'typically' in aggregated form for defendant's purposes[,] . . . nothing in the provisions . . . disclose the disclosure of PII, much less [personal health information], to third parties for those third parties' own use" (citing *Meta Platforms*, 690 F. Supp. 3d at 1078)). Innov8 is thus wrong that "Plaintiffs concede the privacy policy informed them about the [challenged] information sharing," Mot. at 12, particularly in light of Plaintiffs' allegations that "they reasonably believe[d] Defendants w[ould] maintain the confidentiality of [their] information, due" in part to "affirmative representations . . . in FAQs and the privacy policy . . . on Romantix.com," *see* Compl. ¶ 24, and that Defendants claim they "NEVER share [their] customers' personal information with anyone," *id.* ¶ 25, and "DO NOT resell any data to third parties FOR ANY REASON," *id.* ¶ 26; *see also id.* ¶¶ 27, 47; *GoodRx Holdings*, 2025 WL 2052302, at *9 (

> A reasonable user reading these broad disclosures . . . about the general use of the tracking technologies on the GoodRx Platform, when reading them together with the portions . . . that specifically state that GoodRx will not share that data, and . . . promises . . . that GoodRx would not share its users' health information . . . would reasonably think they were not consenting to the sharing and interception of sensitive medical information.

(citations omitted)).

At most, Innov8's argument establishes a question of fact regarding consent, since Plaintiffs allege Defendants reassured them of their privacy and that the challenged conduct was outside the bounds of anything disclosed in the Privacy Policy. *See SelectQuote*, 2024 WL 3881850, at *4 (privacy policy that the defendant argued "clearly informs visitors that [Defendant] uses analytics technologies to collect users' information," and "that their information may be shared with third parties for various purposes," but "also promis[ing] that its site and [plaintiff's] entries are '100% secure' and that it will 'never sell your information,'" created "a question of fact that cannot be resolved at th[e] [motion to dismiss] stage" (record quotations omitted)); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (CIPA "claims

will not be dismissed for any defendant based on consent" where the "Privacy Policy disclosed some use of some tracking features," but other "disclosures and assertions indicate[d] that [defendant] would not disclose (or sell or use for marketing) users' personal information").

**B. Plaintiffs Plausibly Allege Innov8 Was Negligent**

"For negligence, a plaintiff must plausibly allege: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *In re San Francisco 49ers Data Breach Litig.*, 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024) (quoting *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)). Innov8 challenges only the first and fourth elements—duty and damages.[4]

"As for the first element, '[a] duty of care may arise through statute or by contract,'" or "may also be based on 'the general character of the activity in which the defendant engaged.'" *Dent v. Nat'l Football League*, 902 F.3d 1109, 1118 (9th Cir. 2018) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979)). Here, as discussed above, *supra* Section II.A, CIPA establishes Innov8's duty not to aid another in reading, attempting to read, using, or attempting to use the contents or meaning of any communication in transit. *See* Cal. Penal Code § 631(a); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *22-23 (N.D. Cal. Apr. 11, 2024) (denying motion to dismiss negligence claim based on violation of "state wiretapping laws").

Additionally, the character of the activity in which Innov8 is engaged—operating a website that sells adult products and offering adult content that implicate consumers' sexual preferences, relationships, health, and orientation—gives rise to a duty to safeguard the sensitive, highly-personal, and constitutionally-protected information it collects. *See supra* Section I.B. (describing the private and protected nature of the information at issue); Compl. ¶ 18 (showing Innov8 is aware of the nature of Romantix.com); *Facebook*, 402 F. Supp. 3d at 799 ("Facebook had a responsibility to handle its users' sensitive information with care." (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2019) (finding plaintiff "plausibly plead[ed] duty of care" because "the information . . . was private," "plaintiff plausibly placed trust in Facebook to employ appropriate data security" and "[t]he lack of reasonable care in the handling of personal

[4] Although not challenged, Plaintiffs also sufficiently allege breach and causation. *See* Compl. ¶¶ 169-70; *supra* Section I.A.

information can foreseeably harm the individuals providing the information”))). Innov8 further assumes and acknowledges this duty when it promises to “NEVER share [its] customers’ personal information with anyone,” Compl. ¶ 25 (quotation omitted); *see also id.* ¶¶ 24-27, 49, 51, 92-93.

Citing only a single data breach case, Innov8 argues Plaintiffs’ negligence claim fails because “a third-party owes a duty with respect to protection of personal information only in the context of a ‘special relationship,’” and “Plaintiffs’ allegations here do not substantiate a relationship with Innov8 at all, let alone a ‘special relationship.’” *See* Mot. at 14-15 (quoting and discussing *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024) [“*Accellion*”]). But as the operator of the website with which Plaintiffs communicated, Innov8 has not established it even *is* a “third party” to begin with, and Plaintiffs allegations, which must be accepted as true, are to the contrary. *See*, *e.g.*, Compl. ¶ 20 (“[a]s partners in the online eCommerce business, Romantix and Innov8 are jointly responsible for protecting users’ personal information. For example, Romantix.com includes a link to the company’s privacy policy, which instructs customers to contact *Innov8* with any issues relating to their ‘personal data’ . . . .” (footnote omitted and emphasis added)); *id.* ¶ 81 (“Plaintiffs’ uses of Romantix.com constitute . . . communications between them . . . and . . . Innov8”); *see also* Dkt. No. 41-2 at ECF p.9 of 36, Corkery Decl. Ex. B (“We at Innov8 . . . respect your privacy and are committed to protecting it . . . .”).

Yet, even if, contrary to the privacy policy, Innov8 is considered a “third party,” Innov8’s reliance on *Accellion* is still misplaced. As Innov8 acknowledges, the “third party” in *Accellion* was found to have plausibly “owed [the plaintiffs] a duty of care in large part ‘ar[ising] from Accellion’s commitments to its clients,’” including “‘promising its clients that it provided a platform to securely transfer files.’” Mot. at 14 (quoting *Accellion*, 713 F. Supp. 3d at 631, 633). Here too, as already discussed, Innov8 “promises to protect user privacy,” Compl. ¶ 51, and “NEVER share [its] customers’ personal information with anyone,” *id.* ¶ 25 (quotation omitted); *see also id.* ¶¶ 24-27, 49, 92.

Innov8’s only other argument against Plaintiffs’ negligence claims is that “Plaintiffs . . . offer next to nothing as to their supposed damages, seemingly conceding that they have suffered no real harm outside of their . . . privacy injury, and are simply relying on the statutory damages provisions of their other causes of action.” Mot. at 15. Not so. *See supra* Section I.A (explaining Plaintiffs’ economic injury); *infra* Section II.C (explaining how Plaintiffs lost money and property as a result of Defendants’ conduct). *R.C. v.*

*Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) ["*Walgreen*"], on which Innov8 relies, *see* Mot. at 15-16, discusses "emotional distress" and "diminished [value]" theories of damages in the context of its negligence analysis, neither of which Plaintiffs advance here. *See Walgreen*, 733 F. Supp. 3d at 898-99.

**C. Plaintiffs Plausibly Allege Innov8 Violated the UCL**

For standing under the UCL, a plaintiff must allege she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "There are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp.*, 51 Cal. 4th at 323. Here, Plaintiffs allege they have lost money or property as a result of Innov8's conduct in three distinct ways.

First, Plaintiffs "paid more for their adult products than they would otherwise have been willing to pay in reliance on . . . Innov8's promises that they would keep Plaintiffs' information private." Compl. ¶ 93; *see also id.* ¶¶ 91-92 ("Plaintiffs would not have . . . purchased any products from the website[] if they knew . . . Innov8 shared information that personally identified them and the kinds of adult products they were interested in purchasing" and "would not have been willing to pay what they did for the products they purchased had they known . . . Innov8's promises to 'never' sell their personal information were false and misleading, or if . . . Innov8 had revealed the truth."). These allegations are sufficient to confer UCL standing. *See, e.g.*, *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) ("plaintiffs were denied the benefit of their bargain with these retailers because of AddShoppers's actions" because they alleged "plaintiffs would not have purchased products from these retailers had they known that it would subject them to the alleged scheme"); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017) (plaintiffs alleged they had lost money or property under the UCL where they "plausibly allege[d] that they would not have purchased or would have paid less for their Vizio Smart TVs had Vizio properly disclosed its consumer data collection and disclosure practices").

Second, Plaintiffs did not receive the benefit of their bargain because they acquired less protection of their data and surrendered more of their PPSI than they otherwise would have absent the challenged conduct. "Privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL," including under "a 'transactional' or 'benefit-of-the-bargain' theory." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024). Under this theory,

> [u]sers may choose to share data with businesses and other entities. When they do so, they have certain expectations about how the data will be used and protected. If a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have. This constitutes an injury to money or property under *Kwikset.* This is true if the user originally paid for the business's service as part of the transaction . . . [but] applies with equal force to free services, because a user willing to provide certain information with expectations of security in exchange for a free service may not have been willing to do so without compensation if they realized what would actually happen to their information. And just as it applies to transactions where a user provides data with an understanding that it will be protected but the data is in fact not protected, it can also apply to transactions a user enters with an understanding that certain data will not be collected or shared but the data is in fact collected or shared. Any time a user transacts with a business or other entity and their expectations regarding their personal data are not met as a result of conduct alleged to violate the UCL, they can establish UCL standing by showing that they had to "surrender . . . more, or acquire . . . less" than they otherwise would have.

*Id.* (citation omitted; quoting *Kwikset Corp.*, 51 Cal. 4th at 323). Here, Plaintiffs expected their PPSI to remain private, but Innov8 instead shared it with the Marketer Defendants. *See* Compl. ¶¶ 1, 24-27, 29, 47, 50-52, 88-90, 127. "Plaintiffs would not have visited Romantix.com, interacted with it, or purchased any products from the website, if they knew . . . Innov8 shared information that personally identified them and the kinds of adult products they were interested in purchasing." *Id.* ¶ 91. Plaintiffs thus acquired less (protection of their data) and surrendered more (of their PPSI) than they otherwise would have absent the challenged conduct, and so have sufficiently alleged injury under the UCL.

Third, Plaintiffs were deprived of their right to exclude the Marketer Defendants from their PPSI. Under the "'right to exclude' theory[,] California courts have . . . acknowledged that users have a property interest in their personal information,' . . . so certain kinds of personal data may directly constitute property under the UCL." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024 (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (collecting cases)). "And '[o]ne of the main rights attaching to property is the right to exclude others.'" *Id.* (quoting *People v. Stewart*, 113 Cal. App. 4th 242, 250 (2003)); *see also* Compl. ¶ 76 ("[A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity[.]" (quoting *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998))). Here, "[i]n challenging the unlawful disclosure of their sensitive [PPSI] to [the Marketer Defendants], [P]laintiffs effectively contend that they were deprived of

their right to exclude [the Marketer Defendants] from that intangible property." *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1025. This is sufficient to establish UCL standing. *See id.*

Because Plaintiffs do not advance a "diminished value" theory—which evaluates whether the value of personal data has diminished in a marketplace in which the plaintiff intended to participate, *see id.* at 1024—one of Innov8's primary cases, *Eating Recovery Center*, is inapposite. *See* Mot. at 17-18 (citing 2024 WL 2852210, at *1 (discussing allegations about "a market for individual medical data," an element of a diminished value theory)). It is thus irrelevant that Plaintiffs "do not . . . assert . . . there is a 'market' for their" PPSI, Mot. at 18, since that is an aspect of a theory not advanced here.

### D. Plaintiffs Plausibly Allege Claims for Unjust Enrichment

Innovate argues the Court should dismiss Plaintiffs' unjust enrichment cause of action because it "has not retained a benefit to Plaintiff's [sic] detriment . . . ." Mot. at 18. It asserts this is because "Plaintiffs received the benefit of their bargain," since "[t]hey placed orders on Romantix's Website and received what they purchased," and "do not claim they provided Romantix with any information additional or different from what was required to make a purchase[.]" *Id.* at 19.[5]

But Plaintiffs allege Innov8 "benefited from their information by exchanging it without their consent to third parties for enhanced advertising services and more cost-efficient marketing," which states an unjust enrichment claim. *See A.J. v. LMND Med. Group, Inc.*, 2024 WL 4579143, at *4 (N.D. Cal. Oct. 25, 2024) ["*LMND Med. Group*"] (quotation marks and record citation omitted). Specifically, they allege "Innov8 use[s] the insights gained from the trackers to optimize content, deliver targeted ads, and generate more site traffic, all of which increase sales." Compl. ¶ 30; *see also id.* ¶ 164 ("Plaintiffs and the Class conferred an economic benefit on Defendants in the form of profits resulting form the use of Plaintiffs' and Class

[5] Innov8 also asserts that *Sonner* applies to Plaintiffs' unjust enrichment claim, *id.* at 18, but does not seem to contest Plaintiffs satisfy *Sonner* here, nor could it. *See* Compl. ¶ 165 ("Plaintiffs and other Class Members' legal remedies are inadequate to address this injury."). Similarly, Innov8 asserts Plaintiffs must "explain how the money they seek through restitution is any different than the money they seek as damages," Mot. at 18 (quoting *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023)), but again does not seem to contest they do so. Nor could it. *Compare* Compl. ¶ 116 *with id.* ¶ 167. However, to the extent Innov8 *is* making an argument for dismissal of Plaintiffs' unjust enrichment claim under *Sonner*, the Court should reject it for the reasons discussed in opposing Google's Motion to Dismiss. *See* Pls.' Opp. to Google's Mot. to Dismiss at 23-24 (explaining why Plaintiffs do not seek the same amount of money for the exact same harm under their equitable and legal claims).

Members' personal information and PPSI to improve Defendants' marketing efforts, including targeted advertising.").

Plaintiffs also allege they "would not have visited Romantix.com, interacted with it, or purchased any products from the website, if they knew Romantix and Innov8 shared information that personally identified them and the kinds of products they were interested in purchasing." Compl. ¶ 91. They allege they "would not have been willing to pay what they did for the products they purchased had they known Romantix and Innov8's promises to 'never' sell their personal information were false . . . ." *Id.* ¶ 92. And they allege they "paid more for their adult products than they would otherwise have been willing to pay in reliance on Romantix and Innov8's promises that they would keep Plaintiffs' information private." *Id.* ¶ 93. These allegations also state an unjust enrichment claim. *See LMND Med. Group*, 2024 WL 4579143, at *4 (Permitting unjust enrichment action to proceed where, *inter alia*, plaintiffs "alleged that they paid money for [defendant's] services with the expectation that their valuable and confidential medical information would not be disclosed, and therefore failed to receive the benefit of their bargain." (record citation omitted)); *see also Tenet*, 2025 WL 1635956, at *20 (Permitting unjust enrichment claim where "[p]laintiffs allege that their payments for medical services constitutes benefits Defendants received and unjustly retained.").

## CONCLUSION

The Court should deny Innov8's motion, but if the Court is inclined to grant the motion in any respect, Plaintiffs request dismissal be without prejudice and with leave to amend.

Dated: August 22, 2025

Respectfully Submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110

Phone: (619) 215-1471

***Counsel for Plaintiffs***