James F. Monagle, SBN 236638
Michael Jervis, *in Pro Hac Vice*
Edgar F. Navarrete, SBN 322662
MULLEN COUGHLIN LLC
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
Telephone: (267) 930-1529
Email: jmonagle@mullen.law;
mjervis@mullen.law;
enavarrete@mullen.law
Attorneys for Defendant
INNOV8 SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., ALPHABET INC., and NEXTROLL, INC.,<br>Defendants. | Case No.: 25-cv-2465<br><br>*Assigned for all purposes to the Honorable Noël Wise, Courtroom 3*<br><br>**DEFENDANT INNOV8 SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLANTIFFS' COMPLAINT**<br><br>Date: October 8, 2025<br>Time: 9:00 am<br>Judge: Hon. Noël Wise<br>Dept.: 3<br><br>Date Filed: March 11, 2025<br>Trial Date: None Set |

**TABLE OF CONTENTS**


I. **INTRODUCTION** ..... 1

II. **ARGUMENT** ..... 1

A. Plaintiff Does Not Allege Sufficient Facts to Show Standing ..... 1

i. Plaintiffs Did Not Have a Reasonable Expectation of Privacy Regarding their Interactions on the Website ..... 3

ii. Plaintiff has not demonstrated an economic injury ..... 6

B. Plaintiffs' CIPA Cause of Action Is Not Adequately Pled and Warrants Dismissal ..... 8

C. Plaintiffs' Negligence Cause of Action Is Not Adequately Pled and Warrants Dismissal . 10

D. Plaintiffs' UCL Cause of Action Is Not Adequately Pled and Warrants Dismissal ..... 11

E. Plaintiffs' Unjust Enrichment Cause of Action Is Not Adequately Pled and Warrants Dismissal ..... 11

III. **CONCLUSION** ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) ........ 12

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967,n.2 (S.D. Cal. July 18, 2024) ........ 9

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ........ 7

*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ 7

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ 5

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 9

*Czerniak v. City of Milwaukee*,
669 F. Supp. 247 (E.D. Wis. 1987) ........ 5

*Delong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. August 25, 2025) ........ 2, 3

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 12

*Gonzalez v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 9

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ........ 11

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ........ 8

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........ 9

*John B. v. Superior Ct.*,
38 Cal. 4th 1177 (2006) .......... 4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 10

*Lowe v. Clift*,
2007 WL 2112672 (E.D. Tenn. July 19, 2007) .......... 4

*Nguon v. Wolf*,
517 F. Supp. 2d 1177 (C.D. Cal. 2007) .......... 4

*Paris Adult Theatre I v. Slaton*,
413 U.S. 49 (1973) .......... 4

*Popa v. Microsoft Corp.*,
2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 2, 3, 4, 6

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 .......... 9

*Roman Catholic Bishop of San Diego v. Super. Ct.*,
42 Cal. App. 4th 1556 (1996) .......... 4

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 5

*Sallie Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) .......... 10

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) .......... 9

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 2, 6

*United States v. Taylor*,
935 F.3d 1279 (11th Cir. 2019) .......... 5

*Walgreen*,
733 F. Supp. 3d .......... 10

*Wilkinson v. Times Mirror Corp.*,
215 Cal. App. 3d 1034 (Ct. App. 1989) ..... 4

*Zebulon Enters., Inc. v. DuPage Cnty.*,
438 F. Supp. 3d 881 (N.D. Ill. 2020) ..... 4

**Statutes**

Cal. Bus. & Prof. Code § 17204 ..... 11

Cal. Penal Code § 631(a) ..... 8

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..... 6

## I. INTRODUCTION

Much like their Complaint, Plaintiffs' PAUL PEREZ and HENRY BRADLEY (collectively "Plaintiffs") Opposition [Doc. 46] ("the Opposition") to Defendant's, INNOV8 SOLUTIONS, INC. ("Innov8") Motion to Dismiss [Doc. 40] ("the Motion") relies on legal arguments that cannot withstand scrutiny. First, as noted in the Motion, Plaintiffs have not alleged an injury in fact that demonstrate they have Article III standing to bring this lawsuit. Plaintiffs' Opposition raises improper legal arguments and relies on case law that is clearly distinguishable from the facts alleged in the Complaint.

Plaintiffs' arguments in support of their causes of action fare no better. Plaintiffs cannot argue their CIPA claims are viable because they have not pled facts demonstrating that the "contents" of their communications were intercepted *and learned* "while in transit." Furthermore, Plaintiffs' claim under California's Unfair Competition Law ("UCL") fails because they cannot claim they suffered any monetary damages resulting from Innov8's conduct. The rest of Plaintiffs' causes of action equally fall by the way side. For the reasons elaborated in detail below, as well as in Defendant's Motion, Plaintiffs' Complaint should be dismissed.

## II. ARGUMENT

### A. Plaintiff Does Not Allege Sufficient Facts to Show Standing

Plaintiffs' claims in this matter rest entirely upon their assertion that private information they allegedly provided to Romantix when browsing the Romantix.com website was shared with third parties. Their standing to bring those claims is contingent on that supposed privacy injury, i.e. that Romantix shared something private about them with third-parties, without their consent. Plaintiffs' confirm this in their opposition, doubling down on their argument that Defendants here breached the privacy of their newly-invented category of "private and protected sexual information." Taking their Complaint at face value, as we must at this stage, here is the information they claim was private:

POST /g/collect?v=26tid=G-EH4TW7TE77&gtm=45je46c0v9114525211za20ßzb8765408816_p=17187211395836gCd=1313131311&npa=0&dma=@&tag_exp=0&c1d=1149587772.17186297056U[=en-us&sr=1728×1117&Uāa=ārmãuab=64&uafv\=GoogLe%2520Chrome%3B125.0.6422.142%7CChromiums3B125.0.6422.142%7CNot.A%252FBrand%3B24.0.0.85uamb=B5uam=Suap=macOS&uapv=14.5.0Suaw=06are=1&frm=85pscd

1=noap1&_s=1&cu=USD&sid=1718720359&sct=3&seg=1&dl=https$3A%2F2Fwww.romantix.com%2Fsex-toys%2Fck2Fst44%2/sex-toys*2Fbdsmfetish%2Fcock-ball-play%3Fsort&3D-relevancesdr=https&3A%2F%2Fwww.romantix.Com%2F6dt=Cock420%26%20Ba11%28Torture420Toys\2C4285hop&20CBT\28Toys\200nLine%20at%28Romantix&en=page_view6_ee=1&ep.src=x6ep.ref=x&ep-mref=noref&ep-sref=nosref&ep.securityStatusText=ANONYMOUS&up.src=rnx6up.ref=rax&up.mref=nomref@up.sref=nosrefSup.securityStatusText=ANONYMOUS&tfd=14577&_z=fetch HTTP/2

Comp. ¶ 35.

However, just a few weeks ago, the Ninth Circuit expressly held that a website visitor does not have an expectation of privacy in this kind of information, and therefore its alleged disclosure does not create a privacy injury. *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *3 (9th Cir. Aug. 26, 2025). The plaintiff's allegations in *Popa* were essentially identical to those here, claiming that all of her website browsing activity was captured by Microsoft's tool and shared with Microsoft. *Id.* at *1. She alleged, just as Plaintiffs do here, the tool captured her mouse movements, clicks, keystrokes, URLs of the web pages visited, and communications. *Id.* She also alleged the tool collected "over 30 different categories" of information. *Id.* at *2. With respect to her own browsing, she specifically claimed that the tool captured the fact that she viewed certain products offered for sale on the subject website – pet supplies. *Id.* Much like Plaintiffs here, the plaintiff there argued she had standing to bring her wiretap and related claims because she suffered a general privacy injury analogous to one traditionally recognized as actionable. *Id.* at *4. In addressing that argument, the Ninth Circuit stated that a court must "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail to a *specific* common-law tort." *Id.* Applying that analysis, the Court held the plaintiff had not identified any information that was disclosed which would create a privacy injury, finding the plaintiff's the allegations were "most similar to a store clerk's observing shoppers" to identify popular items or spot problems. *Id.* In reaching that conclusion, the Court rejected the plaintiff's "broad theory that the common law protected privacy rights" finding that theory "does not align with the analysis adopted" by the Supreme Court in *TransUnion*. *Id.* at *6. To the contrary, "there existed no free-roaming privacy right at common law." *Id.* Notably, the day before the *Popa* decision, another Court reached the same conclusion in another case involving a website selling adult toys and novelties. *Delong v. PHE, Inc.*, 2025 WL

2447787 (E.D. Pa. August 25, 2025). Just as here, the plaintiff in *Delong* alleged that the online adult product retailer Adam & Eve used the Google Analytics tool and therefore claimed it had disclosed "information about his sexual activities and preferences." *Id.* at *3. Applying much of the same reasoning as *Popa* the *Delong* court concluded that the plaintiff had no expectation of privacy in this information when browsing the website, finding it "widely understood that most online activity is not entirely private." *Id.* at *5. The Court rejected the plaintiffs' argument that the analysis should be any different than in other cases involving retail websites due to the supposedly more sensitive nature of the adult products being sold there. *Id.* at *6. Rather, "preference for certain products, including those sexual in nature, is not private information." *Id.* Additionally, the website's use of Google Analytics was not meaningfully different than the act of a store employee or another customer observing the plaintiff's browsing and shopping in a physical store. *Id.* at *7. Thus, the plaintiff lacked standing to bring his claims. *Id.*

The Ninth Circuit in *Popa* generally agreed with and adopted the logic and argument laid out by Innov8 in its Motion. Simply put, an individual's browsing and shopping activity on a retail website is not sufficiently private such that its alleged disclosure gives rise to an Article III injury. Plaintiffs' allegations that the products they browsed were adult toys they apparently find embarrassing or sensitive does not change the result. Moreover, Plaintiffs' own allegations, and in particular their images showing what was allegedly "disclosed" to Google are only that – names and categories of products. Plaintiffs' conclusory allegations and argument in their opposition that this information is especially sensitive or private is not only unsupported by their factual allegations, but directly contradicted by what is put right before us in the Complaint – that the supposedly "sensitive" information is a generally unintelligible alphanumeric string that contains product names buried therein.

*i. Plaintiffs Did Not Have a Reasonable Expectation of Privacy Regarding their Interactions on the Website*

In addition to predating the Ninth Circuit's clear guidance on these issues in *Popa*, Plaintiffs' Opposition relies entirely on case law that is simply irrelevant in the context at issue or otherwise distinguishable from the alleged facts. First, Plaintiffs' general reliance on broad privacy rights and

the California Constitution are directly contradicted by *Popa*'s admonishment that there is "no free-roaming privacy right." *Popa*, 2025 WL 2448824, at *6; *See also, Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1046 (Ct. App. 1989) ("Not every act which has some impact on personal privacy invokes the protections of the state's Constitution and requires such justification . . . a court should not play the trump card of unconstitutionality to protect absolutely every assertion of individual privacy.").

Plaintiffs also cite cases involving the wildly different context of a church's sexual abuse investigations to support their proposition that there is some level of privacy interest in sexual matters. *Roman Catholic Bishop of San Diego v. Super. Ct.*, 42 Cal. App. 4th 1556, 1567 (1996); *John B. v. Superior Ct.*, 38 Cal. 4th 1177, 1199 (2006). Even in *Roman Catholic Bishop* and *John B*, however, the Courts acknowledge that the alleged privacy right is not absolute. *Id.* Plaintiffs also cite to a case involving Equal Protection and First Amendment Claims arising out of a school's discipline against a high school student. *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal. 2007). The Court in *Nguon* held that the plaintiff's constitutional rights were not violated even where the defendants had explicitly disclosed the plaintiff's sexual orientation to her parents. *Id.* Thus, not only did the case find a lack of a privacy injury, it also is apposite given that Innov8, as discussed above, is only alleged to have disclosed a URL string containing a product name – and is not even alleged to have known the Plaintiffs' sexual orientation.

Further, even if Plaintiffs actually alleged explicit disclosure of sexual information rather than simply product browsing history – which again, they do not - any right to privacy does not extend to commercial activities simply because they involve sexual content. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973) (holding "it is unavailing to compare a theater, open to the public for a fee, with the private home of Stanley v. Georgia and the marital bedroom of Griswold v. Connecticut." (internal citations omitted). Adult businesses still have clerks, security cameras, and other patrons—just like any other business— such that there is no expectation of privacy therein. *See Zebulon Enters., Inc. v. DuPage Cnty.*, 438 F. Supp. 3d 881, 896 (N.D. Ill. 2020) ("Even the so-called secluded areas of a public adult entertainment establishment do not provide a reasonable expectation of privacy."); *Lowe v. Clift*, 2007 WL 2112672, at *4 (E.D. Tenn. July 19, 2007) (patrons

do not have a reasonable expectation of privacy in an adult bookstore); *Czerniak v. City of Milwaukee*, 669 F. Supp. 247, 249 (E.D. Wis. 1987) (no reasonable expectation of privacy in adult-movie viewing booths open to any adult member of the public).

As a general matter, "[g]iven the inherent nature of the internet, … consumers do not have a reasonable expectation of privacy over their activity" on a public website. *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024) (collecting cases); *Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) ("Data and information that has been found insufficiently personal includes mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities."); *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65 (W.D. Pa. 2023) (collection of "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time" insufficient for standing); *see also United States v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019) (browsing the internet is like "traveling along the equivalent of 'public highways'"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private.")

Plaintiffs' argument that adult websites are more private than adult brick-and-mortar stores (or for that matter, retail websites selling other kinds of goods) therefore ring hollow. Plaintiffs' contrived category of "PPSI" is not a protected category of information recognized by any case law or statutory authority. More fundamentally, Plaintiffs' own allegations show that the information allegedly disclosed was not sexual information at all, but merely URL strings which contained names of adult toys and products – if one squints hard enough to see them amidst all of the other meaningless letters and numbers contained therein. Plaintiffs' Opposition offers nothing to the contrary beyond unsupported speculation and extrapolation.

Moreover, Plaintiffs have not adequately alleged that their browsing activity on the Website could be used to identify them and reveal information regarding their own sexual preferences. Although Plaintiffs submitted exhibits under seal which they allege demonstrate search terms used

and products purchased on the Website, Comp. ¶¶ 77, 78; Ex. A - C, these do not necessarily reveal either of the Plaintiffs' sexual preferences, identity, orientation, or activity. Although Plaintiffs' Motion state that this position is counter to the allegations contained in their Complaint, Oppo. Br. 5:5-9, the Complaint or Motion do not indicate that the Plaintiffs bought or browsed these products for themselves or someone else. Accordingly, Plaintiffs have failed to demonstrate that Innov8 has violated a traditional privacy interest that grants them standing to bring this lawsuit.

Based on the foregoing, Innov8 requests that the Court dismiss the Plaintiffs' complaint on the basis of Federal Rule of Civil Procedure 12(b)(1).

*ii. Plaintiff has not demonstrated an economic injury*

Plaintiffs' assertion of a supposed economic injury does not save their claim when, as discussed above, they had no expectation of privacy in the information in question and thus no economic injury. Economic injuries are generally "tangible harms that readily qualify as concrete injuries for purposes of establishing Article III standing." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 427 (2021).

Plaintiffs' opposition argues they "lost the benefit of their bargain" because they supposedly bargained for the protection of the URL and metadata allegedly shared as discussed above when making their product purchases. Oppo. Br. Pg. 1:28 – 2:7. This argument fails for two key reasons. First, as discussed above, following *Popa* and other agreeing precedent, Plaintiffs could have had no general expectation, as a matter of law, that this information would be kept private. Without such an expectation, there is no way such an expectation could have been part of their "bargain" that they supposedly did not receive, their own legal conclusions notwithstanding. That alone is sufficient to find Plaintiffs' standing lacking, and thus is all the analysis needed.

Nevertheless, Plaintiffs' Opposition argues they had a subjective belief that the URL data would be kept private based on the privacy policy found on Romantix's website ("the Website") and they would have not purchased products from the Website had they known the URL's would be shared. Oppo. Br. Pg. 1:28 – 2:19. However, that assertion of a subjective belief is directly contradicted by the express allegations and arguments made in Plaintiffs' Complaint and Opposition. In short, for Plaintiffs to have relied on the assurances contained in the privacy policy,

both Plaintiffs would have had to review the privacy policy prior to their purchases. Although both Plaintiffs allege they visited and purchased products from the Website over the course of several years, neither actually allege that they reviewed the privacy policy prior to making these purchases. *See* Comp. ¶¶ 77 – 93. In fact, Plaintiffs ***affirmatively state*** in their opposition that they were not aware of the privacy policy at the time they browsed the Website. *See,* Oppo Br. Pg. 11:17-23. The Plaintiffs could not have acted on reliance of a privacy policy they had not read, or were even aware of for that matter. Therefore their "lost benefit of bargain" claim is unsupported by the facts alleged.

Plaintiffs' cited case law is equally unavailing and demonstrates why their arguments fail. For example, *Castillo v. Costco Wholesale Corp*. discussed privacy of statutory protected PHI, rather than Plaintiffs' self-invented category of "URLs from websites selling adult products." *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024). the plaintiffs there alleged Costco used Meta's Pixel on its pharmacy website and encouraged its customers to input their PHI on the website, including personal information such as "prescriptions and immunizations, order prescriptions, request refills of prescriptions, and search for health insurance." *Id.* at *1. The Court determined Plaintiffs had standing because they reasonably expected that the PHI they disclosed on Costco's pharmacy website would remain confidential and not be disclosed to third parties. *Id.* at *12. Also, in evaluating Costco's standing argument, the Court emphasized a distinction between internet browsing activity, which is not an intrusion into a person's privacy, from "personal health data that could be linked" to a person's identity. *Id.*

Another case cited by Plaintiffs involved the sale of a "hardware wallet," which essentially is a pin-protected USB drive used to safely store cryptocurrency assets. *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 866 (N.D. Cal. 2024). That is, the security aspects of the wallet were essentially a key reason for the plaintiffs purchasing the product. *Id.* at 867 ("Ledger wallets offer the best possible protection for crypto-assets . . . Ledger's slogan is: 'If you don't want to get hacked, get a Ledger wallet.'"). When the security of the defendants' security measures was breached by a cybercriminal and exposed customers' cryptocurrency to theft, the Court determined the Plaintiffs sustained an economic injury because they did not receive the benefit they bargained for. *Id* at 877.

A similar scenario was involved where the plaintiffs paid Yahoo an extra $19.95 per year to purchase a "premium email service" which specifically offered secure email services. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018). Despite Plaintiff paying the monthly premium, Plaintiff's PII was exposed following a data breach. *Id.* at 1126. The Court determined the plaintiffs had standing because the plaintiffs specifically paid more for premium services, including extra security, and they did not receive the security they bargained for. *Id.* at 1130.

Thus, in privacy-related cases where a court has found standing under a "lost benefit of the bargain" theory, the privacy bargained for security was a clear and direct aspect of that product itself, e.g. a secure digital wallet for storing funds or a premium version of an email service that specifically included enhanced security. That is exactly what Plaintiffs here ***do not*** allege, where the products were physical toys and novelties having nothing to do with data privacy or security, and Plaintiffs received those toys and novelties as purchased. Therefore, Plaintiffs' own cases demonstrate their allegations do not meet the threshold of alleging a lost benefit of the bargain injury, and they have not demonstrated that they sustained any form of economic injury resulting from Innov8's conduct that would provide them standing here.

### B. Plaintiffs' CIPA Cause of Action Is Not Adequately Pled and Warrants Dismissal

Plaintiff's CIPA claim is premised on the theory that Innov8 violated Cal. Penal Code § 631(a) by aiding third-parties' violations of CIPA. However, Plaintiffs do not present sufficient allegations that third-parties intercepted *and* learned the "contents" of any communications while these were "in transit." Cal. Pen. Code § 631(a).

As is more fully explained in the Motion, the facts alleged in the Complaint (which are - at most - mouse movements, clicks, scrolls, page navigation, and product views and purchases) constitute nothing more than record information that cannot support a CIPA claim. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (holding "information, which include webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions, are conceded to be record information that

does not constitute 'content'"). None of the information indicates a substantive message that a user "intended to communicate." *Gonzalez v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1085 (N.D. Cal. 2018). Instead, the information reflects, at most, "data about [a] communication" – not the contents of the communication itself. *Id.* at 1084.

In contrast, Plaintiff's cited cases each addressed specific allegations that *plaintiffs themselves* sent contents of communications—not record information—to the defendant website. *See, e.g., Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (search queries for "specialty healthcare providers and treatment for medical conditions"); *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 136061 (S.D. Cal. 2024) (substantive travel and location details). Plaintiff also cites *Tanner v. Acushnet Co.*, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023), which other courts have found "unpersuasive . . . because [it] do[es] not explain *why* the alleged captured data in each case are 'contents' of communications." *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 n.2 (S.D. Cal. July 18, 2024). Again, Plaintiffs' allegations as to what was captured are clear: they concern a URL string containing largely meaningless strings of letters and numbers. Plaintiffs physically highlight the portions they want the reader to focus upon because they know these are undiscernible without the highlights, thus implicitly conceding these "communications" are undecipherable and unintelligible. If these alphanumeric strings were the "content" of a communication, that requirement in the status would lose all meaning.

Even if Plaintiffs' interactions with the Website could be considered "content," Plaintiffs do not adequately allege that third parties attempted to *read or learn* the contents of any of their communications while these were *in transit.* Mot. 11:12-21. All the Plaintiffs points to is their allegations that their website interactions were "intercepted simultaneously." Opp. Br. 10:7-11. But it is not enough to simply allege simultaneous interception – Plaintiffs must allege that third parties attempted to *read and learn* the contents of these communications simultaneously as well. *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ("Plaintiff's allegation that 'this data is stored or can be accessed by Heap' is insufficient to support a plausible interference Heap attempted to read or learn the contents of the communication while in transit."). Plaintiffs simply do not do so here, in even the most conclusory terms.

Moreover, Plaintiffs' consent argument undermines their own standing argument because they admit that they were not aware of the Website's privacy policies at the time they purchased products from the website. Opp. Br. Pg. 11:17-23. If Plaintiffs' consent argument is accepted, the Plaintiffs cannot claim they sustained economic damages pursuant to their reliance on the privacy assurances contained on the Website. Plaintiffs cannot have it both ways.

### C. Plaintiffs' Negligence Cause of Action Is Not Adequately Pled and Warrants Dismissal

First, Plaintiffs' only answer to Innov8's argument that it did not owe them a duty with respect to their personal information is simply that they allege that Innov8 and Romantix are business "partners" and are "jointly responsible" for protecting user information. These, of course, are quintessentially the kind of legal conclusion allegations that must be ignored when determining the adequacy of Plaintiffs' pleadings. Neither Plaintiffs Complaint nor Opposition offer a basis for concluding Innov8 owed them any duty while purchasing products from Romantix on the Romantix.com website.

Second, under California law, "negligence claims must result in actual damages from the complained-of conduct." *Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *3 (C.D. Cal. Oct. 21, 2020). Indeed, in cases involving data privacy claims such as the matter at issue plaintiff must allege an "appreciable, nonspeculative, present injury." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). Here, Plaintiffs' Complaint admits they do not actually know what their damages are and hopes a jury will do that work for them, alleging only damages "to be determined at trial." Comp. ¶ 170. Such incredibly vague and speculative allegations are insufficient to demonstrate the damages element of a negligence claim. *See Walgreen*, 733 F. Supp. 3d at 898 (Plaintiffs alleged losses included "'ascertainable losses of money or property, and monetary and nonmonetary damages, as described herein, including but not limited to: loss of value of their Private Information; overpayment for Defendant's services; and loss of the value of access to their Private Information' which the Court determined were "too vague and conclusory to survive."). Plaintiffs' only response is to point out that the allegations in *Walgreen* included *more* specificity than they offer here and still were deemed insufficient, somehow believing that admitting

their allegations are even more deficient saves them from the same outcome. Accordingly, Plaintiffs have failed to demonstrate they sustained the requisite damages in support of their negligence cause of action.

**D. <u>Plaintiffs' UCL Cause of Action Is Not Adequately Pled and Warrants Dismissal</u>**

Plaintiffs' attempt to establish UCL statutory standing relies on facts they failed to plead. Critically, Plaintiffs do not allege facts showing they "suffered injury in fact and lost money or property as a result of the unfair competition" as required under the statute. Cal. Bus. & Prof. Code § 17204. Their opposition argues they sustained an economic injury because they "paid more for their adult products than they would otherwise have been willing to pay *in reliance on* . . . Innov8's promises that they would keep Plaintiffs' information private." Oppo. Br. Pg. 16:10-11 (emphasis added). Yet, as discussed above, Plaintiffs do not allege they reviewed the privacy policy prior to purchasing products from the Website. *See* Comp. ¶ 77 – 93. Rather, Plaintiffs appear to admit they only became aware of the privacy policy when they began investigating their claims while preparing their Complaint. Oppo Br. Pg. 11:17-23. Plaintiffs, of course, could not have relied on statements they never saw.

Plaintiffs' right to exclude argument relies on the assumption that personal data is property under the UCL. However, courts have determined that personal information does not constitute property for purposes of making a UCL claim unless the individual specifically paid for the privacy and security of the services and their information was subsequently disclosed. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) ("a plaintiff who is a *consumer* of certain services (i.e., who 'paid fees' for those services) may state a claim under certain California consumer protection statutes when a company, in violation of its own policies, discloses personal information about its consumers to the public.") Here, the only thing Plaintiffs paid for were the products purchased from the Website – not privacy protections. Accordingly, their right to exclude argument is inapplicable to the facts at issue.

**E. <u>Plaintiffs' Unjust Enrichment Cause of Action Is Not Adequately Pled and Warrants Dismissal</u>**

Plaintiffs fails to offer any response to Innov8's pointing out that to assert an unjust enrichment claim, they must show they have no adequate legal remedy and cannot survive if they fail to explain how the restitution they seek is different than the money they seek in damages. Mot. at 18. Plaintiffs decline to directly address this issue at all, which alone is enough to conclude they concede this issue. Moreover, the supposed restitution injuries they point to in their Opposition are the same "overpayment" damages they rely on in support of their other causes of action, such as their UCL claim and negligence claim. *Compare* Opp. at 19 (discussing unjust enrichment) *with* Opp. at 15-17 (citing the same damages allegations in support of Plaintiffs negligence and UCL claims). Thus Plaintiffs "fail to explain how the restitution they seek is different from the money they seek in damages" and their unjust enrichment claim should be dismissed.

Moreover, the only case Plaintiffs cite in their Opposition with respect to this claim contains distinguishable facts, and involved a health care provider who Plaintiffs allege had disclosed their PHI without their consent. *A.J. v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL, 2024 WL 4579143, at *1 (N.D. Cal. Oct. 25, 2024). The Plaintiffs alleged they "paid money for [the health provider's] services with the expectation that their valuable and confidential medical information would not be disclosed, and therefore failed to receive the benefit of their bargain." *Id.* at *4. The case at issues does not pertain to sensitive health information and as discussed above, the Plaintiffs fail to demonstrate they did not receive the benefit they bargained for. Moreover, it is evident that they did not rely on privacy assurances contained in privacy policy when they purchased products from the Website.

Absent any allegation of unlawful conduct by Innov8, Plaintiffs have not stated a claim that Innov8 has unjustly obtained any benefit. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024) (dismissing unjust enrichment claim along with privacy claims).

/ / /

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

For the reasons stated above, Innov8 respectfully requests the Court dismiss Plaintiffs' claims against Innov8 in their entirety and deny leave to amend their defective Complaint.

Date: September 19, 2025

**MULLEN COUGHLIN**

**By: /s/** Edgar F. Navarrete

James F. Monagle
Michael Jervis
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 19, 2025, I electronically filed the foregoing **DEFENDANT INNOV8 SOLUTIONS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** with the United States District Court for the Northern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

Date: September 19, 2025

**MULLEN COUGHLIN**

**By: /s/** Edgar F. Navarrete

James F. Monagle
Michael Jervis
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.