COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
ASHLEY CORKERY (301380)
(acorkery@cooley.com)
JINYOUNG LEE (359885)
(jinyoung.lee@cooley.com)
JULIA IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAUL PEREZ and HENRY BRADLEY, on behalf of themselves, all others similarly situated, and the general public,

Plaintiffs,

v.

ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,

Defendants.

Case No. 5:25-cv-02465-NW

**DEFENDANT GOOGLE LLC'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Date: October 8, 2025
Time: 9:00 a.m.
Dept.: 3
Judge: Hon. Noël Wise

Trial Date: Not Yet Set
Date Action Filed: March 11, 2025

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1
II. ARGUMENT .......... 1
- A. All Claims Fail Because Plaintiffs Consented to the Alleged Conduct. .......... 1
- B. Count I: Plaintiffs' CIPA Claim Cannot Survive Dismissal. .......... 3
  - 1. Plaintiffs' Analysis of the Party Exception Is Erroneous. .......... 3
  - 2. Plaintiffs' Allegations Fail Even Under *Javier*. .......... 5
  - 3. Plaintiffs Fail to Allege Intent. .......... 6
  - 4. Plaintiffs Do Not Allege That Their Data Was Intercepted in Transit. .......... 7
  - 5. Absent a Viable Clause Two Claim, the Clause Three Claim Fails. .......... 8
- C. Count II: The Crime-Tort Exception Does Not Save the Wiretap Act Claim. .......... 8
- D. Counts III and IV: Plaintiffs Cannot State a Claim for Invasion of Privacy .......... 9
  - 1. Plaintiffs Fail to Rebut Google's Argument That There Is No Reasonable Expectation to Privacy in Online Shopping .......... 10
  - 2. Plaintiffs Fail to Establish Any Highly Offensive Intrusion. .......... 13
- E. Count VI: None of Plaintiffs' Theories of Harm Confer UCL Standing. .......... 13
- F. Count VII: Plaintiffs' Unjust Enrichment Claim Fails. .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AS v. SelectQuote Insurance Services*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 3

*Augustine v. Lenovo (United States) Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ........ 2

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 9, 12, 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 12

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 5

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 5, 10

*DeLong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ........ 12, 13

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ........ 6, 7

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 5, 7, 15

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 6

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ........ 3

*Doe v. Fullstory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 3

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 2

*Doe v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 5, 7, 16

## TABLE OF AUTHORITIES
(continued)

**Page**

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 11

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 7

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 4, 5, 6

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 13

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 4

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 9

*Heiting v. Athenahealth, Inc.*,
2024 WL 3761294 (C.D. Cal. July 29, 2024) .......... 5, 6

*Hubbard v. Google LLC*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025) .......... 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 13

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 3, 4, 5, 6

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 15

*Kolender v. Lawson*,
461 U.S. 352 (1983) .......... 4

*Lakes v. Ubisoft*
777 F.Supp.3d 1047 (N.D. Cal. 2025) .......... 2

*Lau v. Gen Digit. Inc.*,
2023 WL 10553772 (N.D. Cal. Sep. 13, 2023) .......... 14

**TABLE OF AUTHORITIES**
(continued)

**Page**


*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........ 14

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ........ 9

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ........ 4

*Massel v. Successfulmatch.com*,
2025 WL 2452371 (9th Cir. Aug. 26, 2025) ........ 1

*McDonald v. Kiloo ApS v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........ 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 3

*In re Meta Pixel Healthcare Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ........ 13

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 15

*Mirkarimi v. Nevada Property 1 LLC*,
2013 WL 3761530 (S.D. Cal. July 15, 2013) ........ 10

*Morrison v. Yippee Ent., Inc.*,
2025 WL 2389424 (9th Cir. Aug. 18, 2025) ........ 1

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 10, 13

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ........ 9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ........ 9

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 8

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 8, 10, 13

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) ........ 11

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Rodriguez v. ByteDance, Inc.*, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ........ 14

*Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ........ 15

*Roe v. Amgen Inc.*, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ........ 14

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 9

*Shapiro v. AT&T Mobility, LLC*, 2020 WL 11763591 (C.D. Cal. Dec. 23, 2020) ........ 10

*Smith v. Google LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 7

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 12

*Sussman v. Am Broad. Co.*, 186 F.3d 1200 (9th Cir. 1999) ........ 9

*Swartz v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 5

*Torres v. Prudential Fin., Inc.* 2025 WL1135088 (N.D. Cal. Apr. 17, 2025) ........ 8

*Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ........ 14

*In re Toys R Us, Inc. Priv. Litig.*, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........ 9

*Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........ 5

*Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927 (C.D. Cal. 2015) ........ 11

*Wesch v. Yodlee, Inc.*, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ........ 14

*Williams v. What If Holdings, LLC*, 2023 WL 3451053 (N.D. Cal. Feb. 13, 2023) ........ 4

## TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

Cal. Pen. Code § 631 ..... 4

Federal Wiretap Act, 18 U.S.C. § 2511 ..... 1, 8, 9

## I. INTRODUCTION

Plaintiffs' Opposition confirms that dismissal is appropriate. To begin, Plaintiffs do not deny that they voluntarily visited Romantix's website, notwithstanding its explicit disclosure of how it used the precise technology at issue, which is dispositive of each claim. Even putting that aside, Plaintiffs' claims cannot proceed. ***First***, Plaintiffs fail to rebut that their CIPA claims are barred by the party exception and deficient allegations of intent or interception in transit. Ignoring Google's case law, Plaintiffs invoke authorities that only underscore the inadequacy of their allegations. ***Second***, Plaintiffs' attempt to invoke the crime-tort exception to defend their Wiretap Act claim fails given the absence of any crime or tort beyond the interception itself. ***Third***, Plaintiffs' invasion of privacy case law only confirms that disclosure of shopping data does not clear the high bar for that claim. ***Finally***, Plaintiffs' attempt to salvage their UCL and unjust enrichment claims rests on outlier authorities, and most courts refuse to find economic injury based on the same allegations advanced here. For these reasons, Plaintiffs' claims should be dismissed.

## II. ARGUMENT

### A. <u>All Claims Fail Because Plaintiffs Consented to the Alleged Conduct.</u>

Plaintiffs proffer three arguments purportedly refuting consent: (1) Romantix's cookie banner is not reasonably conspicuous; (2) consent turns on "factual disputes"; and (3) the language of Romantix's privacy policy is inadequate. (Opp. at 2–6.) None of these assertions persuade.

***First***, Plaintiffs contend that Romantix's privacy policy was not reasonably conspicuous because it was "hyperlinked in fine print within a small popup," (Opp. at 3), but fail to cite cases ascribing legal significance to this or rebut Google's authorities. Romantix's cookie banner stated, "By using our website you consent to all cookies in accordance with our Cookie Policy," followed by a clearly clickable "Read more" hyperlink to Romantix's privacy policy. (Declaration of Ashley K. Corkery ("Corkery Decl."), **Ex. A**). Recent Ninth Circuit decisions make clear that this is sufficient to find reasonably conspicuous notice. *Morrison v. Yippee Ent., Inc.,* 2025 WL 2389424, at *1 (9th Cir. Aug. 18, 2025) (hyperlink displayed in a font size and format that "indicate[d] it was clickable" adjacent to statement disclosing that certain further actions would manifest assent was reasonably conspicuous); *see also Massel v. Successfulmatch.com*, 2025 WL 2452371, at *1 (9th

Cir. Aug. 26, 2025) (same). As Google's Motion demonstrated, Romantix's hyperlinked Privacy Policy clearly disclosed its use of cookies, the type of data collected, and its use of Google Analytics to collect information to visitors. (Mot. at 8.) That Romantix linked its policy in a banner does not change that it was reasonably conspicuous, and, again, Plaintiffs cite no contrary authority. *See, e.g.*, *Lakes v. Ubisoft* 777 F.Supp.3d 1047, 1052 (N.D. Cal. 2025) (finding consent from banner.)

***Second***, Plaintiffs contend that there are "factual disputes" regarding whether they "actually saw and interacted with the pop-up and . . . viewed the privacy policy." (Opp. at 3.) This misunderstands Plaintiffs' burden. Lack of consent is an affirmative element of Plaintiffs' CIPA claim. To sufficiently plead their claim, Plaintiffs must allege that ***they*** actually declined consent (*e.g.*, via the cookie banner). They do not. Instead, Plaintiffs allege that unspecified users "can easily disregard it." (Compl. ¶ 48.) Plaintiffs' cited case law does not reject consent for that type of allegation. *See Augustine v. Lenovo (United States) Inc.*, 2023 WL 4938050, at *2 (S.D. Cal. Aug. 2, 2023) (CIPA claim sufficiently alleged where plaintiff pled that defendant "failed to present a pop-up disclosure or consent form"). Plaintiffs' allegations that they "did not consent to their messages, reports, or communications on Romantix.com being shared with [Google]" is carefully worded to elide their consent under the privacy policy. (*See* Compl. ¶¶ 89, 114, 122.) Those allegations are wholly conclusory and do not create a plausible inference that consent is lacking.

***Third***, Plaintiffs incorrectly contend that Romantix's privacy policy does not specifically disclose the conduct at issue. Unlike cases finding general disclosures insufficiently specific to the challenged conduct, here Plaintiffs concede (as they must) that the privacy policy specifically discloses that "data is collected," including unique user identifiers, through Romantix's use of Google Analytics. (Opp. at 4.) Romantix told Plaintiffs and all visitors that its website "assign[s] a random number to your usage ***so that Google Analytics can identify a unique user*** of our Website," that "***data is collected about use of our Websites***" by "Google Analytics," and provided an option to "Opt-out." (Corkery Decl. Ex. B.) Accordingly, Plaintiffs' case law addressing failure to disclose the specific collection technology or the type of information collected has no application here. *Cf. Augustine*, 2023 WL 4938050, at *2 (no mention of third party's pixel technology in privacy policy); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (N.D. Cal. July 22, 2025)

(inadequately disclosing that the website "***may*** use other companies' analytics [tools]" which "***may*** use technology such as cookies, tags, pixels, SDKs, and similar technologies" (emphasis added)); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (no consent to disclosures specifically for health data as a result of users' interactions with medical providers' websites); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (finding no consent due to lack of disclosures regarding ***healthcare***-related data). Romantix's disclosures are clear, specific, and sufficient to provide full notice of the alleged disclosures challenged.

Likewise, Plaintiffs' contention that Google ignored certain language in the Romantix privacy policy that allegedly "reassured [users] of their privacy" (Opp. at 4–5) has no bearing on consent here. As Plaintiffs acknowledge, that separate section of the privacy policy pertains to privacy assurances for a very different type of third-party data used to "process credit cards, deliver packages and stream video," not Google Analytics. (*See* Opp. at 4.) Tellingly, Plaintiffs omit the first part of Romantix's disclosure that "as an eCommerce site, we do collect, use and store data in order to deliver the goods and services[.]" (Corkery Decl. Ex. B.)[1]

Because the cookie banner on Romantix's website was reasonably conspicuous and its privacy policy specifically disclosed the website's use of Google Analytics and the data it collected, Plaintiffs have consented to the alleged conduct. Therefore, all claims must fail on this basis alone.

### B. Count I: Plaintiffs' CIPA Claim Cannot Survive Dismissal.

Plaintiffs urge the Court to apply *Javier*, which endorses an unworkable legal standard. But even under *Javier*, Plaintiffs' claims are doomed by the party exception and their failure to sufficiently allege intent, interception in transit, or a viable Clause Three claim.

#### 1. Plaintiffs' Analysis of the Party Exception Is Erroneous.

Plaintiffs never allege that Google independently uses the challenged data, as required to

[1] This is different from the types of disclosures made in *AS v. SelectQuote Insurance Services*, where the defendant's website made broad promises that the site is "100% secure" and that it will "never sell your information," without providing a clear notice to the disclosure regarding its use of analytical technologies. 2024 WL 3881850, at *1 (S.D. Cal. Aug. 19, 2024). Plaintiffs' other case in support, *Doe v. Fullstory, Inc.*, is also inapplicable because it specifically dealt with disclosures regarding personal health information. 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (focusing on the lack of defendant's disclosure specifically regarding "the privacy of [user's] healthcare information," and whether it was properly disclosed in the provisions pertaining to third party analytics vendors).

maintain a CIPA claim. To cover, Plaintiffs now urge the Court to adopt the *Javier* framework instead of *Graham*'s, finding mere capability of use sufficient to establish that an analytics provider is a third-party eavesdropper immune from the party exception. *Compare Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (endorsing capability of use framework), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (requiring allegations that third-party independently used the data). The Court should decline this invitation.

While Plaintiffs cite several decisions purportedly endorsing *Javier* (Opp. at 7–8), each pre-dates the Ninth Circuit's recent ruling in *Gutierrez v. Converse.* There, the Court affirmed summary judgment in favor of the defendant analytics provider because Plaintiffs had merely adduced evidence that the defendant was ***capable*** of using the underlying data, not that it actually did so:

> [T]his evidence is insufficient to defeat summary judgment on the second clause, which requires that Salesforce read or attempted to read ***her*** chat message. At best, this evidence shows that Salesforce ***could*** read messages[.]

*Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025). Accordingly, the capability of use framework is improper here. This is particularly so because *Javier* is based on a misunderstanding that *Graham*'s framework would "swallow [CIPA's] third prong" by requiring use. *Javier*, 949 F. Supp. 3d at 900. The statute's third prong penalizes "use" of "any information ***so obtained***." Penal Code § 631(a) (emphasis added). It therefore introduces a distinct, broader prohibition penalizing a party's use of information obtained in violation of the statute's first two prongs, ***regardless*** of whether that party directly violated either.

Further, the notion of being "capable of using the recording for other ends" is exceedingly vague. Such an interpretation raises more questions than answers—*e.g.*, does the ability to transmit a recording qualify or does converting a recording from one format to another qualify? This standardless construction offends the constitutional requirement that "a penal statute define the criminal offense with sufficient definiteness[.]" *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Accordingly, absent "any allegations beyond mere recordation," Google "functioned as a recorder, not an eavesdropper." *Williams v. What If Holdings, LLC*, 2023 WL 3451053, at *2 (N.D. Cal. Feb. 13, 2023); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1–2 (N.D. Cal. May 8, 2024).

**2. Plaintiffs' Allegations Fail Even Under *Javier*.**

Regardless of whether the Court applies *Graham* or *Javier*, Plaintiffs' claims fail under the party exception because Plaintiffs allege neither use nor capability of use. To avoid dismissal, Plaintiffs point to allegations leveled generally against "Marketer Defendants" (*see, e.g.*, Opp. at 8, 9 (citing Compl. ¶¶ 28–30, 84, 109, 112, 115)). The Court should ignore these boilerplate allegations, which are untethered to ***Google's*** alleged misconduct. Similarly, Plaintiffs' attempt to substantiate vague allegations that Google uses the challenged data to "improve its targeted advertising" by "tracking user behavior across different websites" cites a study about ***healthcare*** data from websites not at issue here. (Compl. ¶ 37.) Allegations untethered to the challenged website are irrelevant. *See, e.g.*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002–03 n.3 (N.D. Cal. 2024) (allegations of use based on public reporting that analytics provider "exploited" chat data for "targeted advertising" that said "nothing about [defendant website] or . . . us[e] of [its] data [for] targeted advertising" were conclusory); *Doe v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (dismissing CIPA claims that relied solely on generic product descriptions).

While Plaintiffs elsewhere purport to describe Google Analytics, those allegations are either entirely speculative or merely parrot the statute. (*See, e.g.*, Compl. ¶¶ 34, 36 (speculating that Google "can associate" a "unique ID" with a specific individual, "track their online activity, and then monetize that information in the form of advertising"); *id.* ¶¶ 112, 115 (alleging Google "willfully obtained" Plaintiffs' data and "read, attempted to read, learned from, and used" that data "without their knowledge or consent).) Tellingly, Plaintiffs ignore Google's cases, which demonstrate their allegations do not satisfy *Javier*'s capability of use framework.[2]

Generic allegations that Google "financial[ly] benefit[s] . . . at the expense of consumers' privacy and data" do not help Plaintiffs. (*Id.* ¶¶ 109, 30.) Plaintiffs fail to refute that allegations that a defendant "used the [challenged] data to enhance [defendant's] own business" are "too general

---

[2] (*Compare* Mot. at 11-12 (citing these allegations and demonstrating they are inadequate under *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023); *Swartz v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 737-38, 745 (N.D. Cal. 2023); *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 n.3 (N.D. Cal. 2024); *Doe I v. Google LLC*, 742 F. Supp. 3d 828, 839 (N.D. Cal. 2024)), *with* Opp. at 7-10 (failing to addresses any of these authorities).)

and conclusory" to plead capability of use. *Heiting*, 2024 WL 3761294, at *4. Indeed, Plaintiffs' cited authorities (*Smith*, *Call-On DOC*, and *Rodriguez*), only underscore the paucity of their own allegations. (Opp. at 8–9.) Each relied on specific allegations as to ***how*** the analytics defendant used the challenged data, including to compile "a detailed dossier, or digital fingerprint . . . [for] the benefit of Google," Compl. ¶ 29, *Smith v. Google, LLC*, No. 23-cv-3527-PCP (N.D. Cal. Oct. 9, 2023), ECF No. 35, or to "develop new business products and services, and [] aggregate[] intercepted information with data collected from other websites that can be used to offer ***to other companies*** seeking targeted advertising," *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *14 (S.D. Cal. June 13, 2025) (emphasis added). Similarly, the *Rodriguez* plaintiff alleged that defendant leveraged integrations with other advertising technology providers "allow[ing] various software sub-systems to share data to operate as a unified system." Am. Compl. ¶ 14, *Rodriguez v. Aquatic Sales Solutions LLC*, 2:23-cv-5198 (C.D. Cal. Aug. 14, 2023), ECF No. 10. In stark contrast, Plaintiffs vaguely allege Google used Google Analytics data to "improve targeted advertising" "for pecuniary gain," without offering any specific facts that render those allegations plausible. (Compl. ¶¶ 37–38.) This is insufficient under either *Graham* or *Javier.*

**3. Plaintiffs Fail to Allege Intent.**

Plaintiffs seek to avoid dismissal by misquoting their own boilerplate allegations as to Google's intent—*i.e.*, that "the entire business purpose of Google's Pixel is to gather data for the purpose of monetizing it." (Opp. at 10–11 (citing Compl. ¶¶ 30, 52, 72).) But the paragraphs they cite do not even specifically pertain to Google, and instead indiscriminately apply to the "Marketer Defendants." Further, nowhere does the Complaint allege that Google intended to capture the ***specific*** data at issue here (so-called "PPSI"), as is required. *See Doe I v. Google*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ("[T]he question is not whether Google intended to collect any old communication. The question is whether Google intended to collect the kinds of communications at issue in this lawsuit."). And while Plaintiffs point to their allegation that online shopping information was allegedly "instantly available to Google," that allegation is irrelevant to Google's "aware[ness] of the type of data it was collecting[.]" (Opp. at 11 (citing Compl. ¶ 83).)

Plaintiffs urge this Court to ignore judicially noticeable documents showing that Google

specifically instructed advertisers not to send it personally identifiable information via Google Analytics, offering no rebuttal whatsoever to Judge Chhabria's finding that Plaintiffs failed to plead intent based on these very same policies.[3] *Doe I v. Google*, 741 F. Supp. 3d at 840–41 (cited in Mot. at 13). Instead, Plaintiffs invoke Judge Pitts' finding in *Smith* that the plaintiffs adequately alleged intent. *Smith v. Google*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024). But that decision involved specific allegations of intent not pled here—*i.e.*, "that Google never enforced these policies against any of [the websites] and that it 'would have known' of or 'at best ... turned a blind eye to'" the challenged conduct. Likewise, in *Doe v. FullStory, Inc.*, Plaintiffs alleged that "TikTok did not take any steps to prevent Favor from using its technology on the Favor Platform or to prevent its interception and use of Favor users' sensitive data" notwithstanding the publication of an article "specifically highlighting the TikTok Pixel's presence on the Favor Platform." Am. Compl. ¶¶ 41, 43, *Doe v. FullStory, Inc.*, 3:23-cv-59 (N.D. Cal. July 31, 2023), ECF No. 85; *see Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 860 (W.D. Wash. 2024) (alleging Amazon "feature[d] Capital One as a 'case study' on its website, demonstrating specific awareness of the nature of Capital One's business."). These allegations are worlds away from the generic allegations pled here that the "Marketer Defendants" "optimize[d] ad performance and increase[d] ad spend[.]" (Compl. ¶ 30.) As in *Doe I*, "[P]laintiffs offer no support for their assertions that Google's instructions are just a ruse to mask the company's true objective." 741 F. Supp. 3d at 841.

#### 4. Plaintiffs Do Not Allege That Their Data Was Intercepted in Transit.

To survive dismissal, Plaintiffs must do more than "merely restate[] the pleading requirement of real time interception[.]" *Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024). As argued, Plaintiffs' cursory recitations of CIPA's elements do not pass muster, especially given their hedging that the "data is transmitted . . . ***usually*** in real time." (Compl. ¶ 28 (emphasis added).) Further, Plaintiffs must do more than allege mere ***interception*** in

[3] Judge Chhabria later allowed allegations in a repleaded complaint to survive the defendant's motion to dismiss, but only based on more robust allegations. *See Doe I v. Google*, 2025 WL 1616720, at *2-3; Second Am. Compl. ¶ 4, *Doe I v. Google LLC*, No. 3:23-cv-02431 (N.D. Cal. Aug. 12, 2024), ECF No. 158 (alleging that Google specifically "targeted the healthcare industry for expanding Google Analytics" though it "knew that Health Care Providers could not use [Google Analytics] . . . without disclosing Health Information to Google").

transit; they must allege that Google "***reads, or attempts to read, or [] learn[s]*** the contents or meaning of any message . . . ***while the same is in transit***[.]" § 631(a) (emphasis added). That is, Plaintiffs must allege that Google undertook "some effort at understanding the substantive meaning of the" communications while they were in transit. In *R.C. v. Sussex Publishers, LLC*, the Court dismissed Plaintiff's Section 631 claim for this reason, holding that "Plaintiffs do not plausibly allege Google views or reads the information while it is in transit; instead, they allege information is sent to Google for processing and later, once Google Analytics receives, views, reads, and processes the data, it aggregates and organizes" it. 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (citation modified); *see also Torres v. Prudential Fin., Inc.* 2025 WL1135088, at *5–6 (N.D. Cal. Apr. 17, 2025) (granting summary judgment because "[w]hether Defendants access or even analyze inputs . . . after they have been transmitted to the server and reassembled has no bearing on whether Defendants read the communications while they were in transit"). Because Plaintiffs' Complaint includes ***no*** allegations of in-transit reading or learning, their flimsy allegations that the challenged communications are "usually" transmitted in "real time" do not suffice.

**5. Absent a Viable Clause Two Claim, the Clause Three Claim Fails.**

Plaintiffs do not contest, and thus concede, that their Clause Three claim fails absent a viable Clause Two claim. And Plaintiffs do not plausibly allege Google's use of their data (or any data from Romantix) for any advertising purposes. Thus, Plaintiffs' Clause Three claim fails.

**C. <u>Count II: The Crime-Tort Exception Does Not Save the Wiretap Act Claim.</u>**

Plaintiffs attempt to save their Federal Wiretap Act claim by invoking the crime-tort exception, alleging that "[Google's] interception was for the purpose of violating Romantix.com users' right to privacy[.]" (Opp. at 14.) However, the Ninth Circuit has rejected this type of circular reasoning, making it clear that the crime-tort exception fails where there is no "further impropriety" that is "separate and independent" from the alleged interception. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (crime or tort exception did not apply when the purpose of the recording was the same as the purpose of the criminal or tortious act).

Here, even assuming *arguendo* that Google intercepted Plaintiffs' communications because it wanted to violate privacy laws (it did not), this purpose alone does not show a "further

impropriety" for purposes of the crime-tort exception. As Plaintiffs' string cites prove: those plaintiffs, unlike Plaintiffs here, all alleged a separate and independent purpose to support a criminal or tortious act. *See e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (applying crime tort exception on allegations that "Google intercepted their communications for the purpose of associating their data with preexisting user profiles"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (defendant's subsequent "public release of the videos" constitute[d] a tortious act); *In re Toys R Us, Inc. Priv. Litig.*, 2001 WL 34517252, at *8 (N.D. Cal. Oct. 9, 2001) (finding tortious purpose where defendant intercepted communications "to misappropriate plaintiffs' 'personalty [sic], thereby obtaining detailed, free market research and consumer analysis'"); *Sussman v. Am Broad. Co.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) (no wrongful purpose beyond the recording, so no viable ECPA claim). Because Plaintiffs fail to allege a "further impropriety," or a criminal or tortious purpose beyond "the purpose of violating Romantix.com users' right to privacy" (Opp. at 14), the claim fails.

Additionally, Plaintiffs' two other bases for maintaining the Wiretap Act claim—that consent is a factual determination and that Plaintiff adequately alleged the elements of CIPA—should be rejected for the reasons discussed above. *See* Sections A–B, *supra*.

**D. <u>Counts III and IV: Plaintiffs Cannot State a Claim for Invasion of Privacy.</u>**

Plaintiffs' allegations fail to support any reasonable expectation of privacy or highly offensive intrusion, and thus their invasion of privacy claims must be dismissed. *See, e.g.*, *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022) (dismissing claim as there is no reasonable expectation of privacy to tracked browsing history being shared with a third-party where disclosed); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (dismissing complaint alleging disclosure of employment and financial information for failure to allege a highly offensive intrusion); *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022 (dismissing claim where "the data collected from these particular intrusions is not sufficiently egregious to be characterized as highly offensive"); *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6–7 (C.D. Cal. Nov. 29, 2022) (dismissing claim for failure to allege a highly offensive intrusion even where "private medical information" was at issue).

Plaintiffs' contention that invasion of privacy claims implicate factual questions not suitable for resolution on a motion to dismiss is untenable, and their cited cases do not show otherwise. *Mirkarimi v. Nevada Property 1 LLC* discusses reasonable expectations of privacy only in the context of a CIPA Section 632 claim and does not address this element in the context of invasion of privacy. 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013). *Cousin v. Sharp Healthcare* found that whether the defendant's conduct was highly offensive was a question of fact only on allegations implicating disclosure of medical conditions and patient information—far more sensitive information than is at issue here. 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023). And *Shapiro v. AT&T Mobility, LLC* held that factual disputes ***specific to that case*** made the dispute not resolvable on a motion to dismiss. 2020 WL 11763591, at *2 (C.D. Cal. Dec. 23, 2020) (finding amended allegations about plaintiff's efforts to password-protect "AT&T account information and CPNI, and . . . personal, business, legal, and financial information" was sufficient to survive dismissal).

**1. Plaintiffs Fail to Rebut Google's Argument That There Is No Reasonable Expectation to Privacy in Online Shopping.**

To distract from the express disclosure of Google Analytics, Plaintiffs search for ways to frame Romantix's disclosures as misleading. (*See* Opp. at 15–16 (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269, 294 (3d Cir. 2016) (direct contradictions between representations and practices may ground a reasonable expectation of privacy).) Beyond the obvious fact that none of these statements were made by Google, read in context, the statements are not misleading. For example, Plaintiffs' Complaint contains no allegation that Romantix ***sells*** user data to Google Analytics, consistent with Romantix's representation that it "do[es] not resell" data to third parties. (Compl. ¶ 26.) And while Plaintiffs suggest that a reasonable expectation of privacy arises where a plaintiff alleges "dissemination of personally identifying information," (Opp. at 16), their cited authority, *Sussex Publishers*, does not stand for that proposition. *See* 2025 WL 948060, at *3, *9 (addressing the disclosure of highly sensitive medical information including insurance information, type of therapy, and mental health conditions). No such information is at issue here.[4]

[4] Plaintiffs' assertion that their "reasonable expectation of privacy in their PPSI is intrinsic" is unsupported, not least because the novel concept of "PPSI" was fashioned by the plaintiffs' bar.

***No Inference of Sexual Orientation.*** In response to Google's statement that Plaintiffs "allege ***nothing*** demonstrating how Google could infer . . . sexual orientation . . . from their online shopping habits" (Mot. at 17), Plaintiffs state that it "almost goes without saying" that selecting among categories including "vibrators," "dildos," "anal," and "fetish" and reading articles about "sex toys, erectile dysfunction, BDSM tips, masturbation, level of sexual experience, expert advice, and sexual health" have "the capacity and tendency to reveal users' sexual orientation." (Opp. at 17.) But the notion that only persons of a particular sexual orientation would be interested in certain product categories is intuitively false, and that Plaintiffs have declared it to be true does not enhance its plausibility. As such, Plaintiffs' case law concerning the disclosure of information revealing sexual orientation or dating habits is inapposite. (*See, e.g.*, Opp. at 16–17 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 n.7 (9th Cir. 2020) (addressing sexual associations); *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 934 (C.D. Cal. 2015) (addressing sexual orientation).) Not only have Plaintiffs failed to explain how Google ***could*** infer sexual orientation from the information it allegedly received, they fail to allege that Google ***in fact*** endeavors to make these inferences. The paragraphs Plaintiffs cite to rebut this are puzzling, as they contain no allegation about Google's actual inferences. (*See* Opp. at 17 (citing Compl. ¶¶ 21–23 & Exs. A–C).) [5]

***No Plausible Allegation of Contact or Credit Card Information.*** Plaintiffs continue to claim that Google supposedly collects their "full name[s], home address[es], email address[es], and credit card information" based solely on the fact that Plaintiffs have alleged, and thus the Court must accept as true, that embedded scripts log every interaction. (Opp. at 18.) Yet Plaintiffs do not specifically allege where Romantix installed Google Analytics tags, and in any event, Google never sought to "establish that a user needs to visit one of these pages to convey this information."[6] (*Id.*) It argued only that Plaintiffs' cursory allegations were implausible and suggested, by way of

---

[5] For example, in *Riganian v. LiveRamp Holdings, Inc.*, LiveRamp allegedly inferred characteristics from analytics data to make "available for sale segments of people with cancer, union members, Muslims, Jewish people, African Americans, poor people, payday loan prospects, online gamblers, unemployed individuals who were 'seen at clinics/hospitals' and users of the LGBT dating app Grindr." 2025 WL 2021802, at *6 (N.D. Cal. July 18, 2025). There is no such allegation here.

[6] It is ***Plaintiffs***, not Google, who attempt to import extraneous facts into their opposition. (Opp. at 18 n.7 (newly alleging that "a user need not visit the pages Google mentions in order to enter their personal and financial information").)

example, that allegations concerning the placement of the tags—absent here—might elevate Plaintiffs' claims into the realm of plausibility. (Mot. at 17–18.)

***No Reasonable Expectation of Privacy in Online Shopping.*** Plaintiffs counter that they have a reasonable expectation of privacy in their online shopping because some tracked activity reveals traditionally protected information. (Opp. at 18–19.) But a closer look at the cases Plaintiffs cite concern more sensitive, and more expansive, information than here. (*See id.* (citing *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024) (sensitive financial information); *Brown I*, 525 F. Supp. 3d at 1079 (alleging all the personal information that could be revealed in "private browsing mode"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (same); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946–47 (N.D. Cal. 2022) (alleging disclosure of a user's entire web browsing histories and device information).) Notably, none of Plaintiffs' cases find a reasonable expectation of privacy based solely on product purchases.

Nor is the sensitivity of adult products enough to support a reasonable expectation of privacy. The recent decision in *DeLong v. PHE, Inc.*, analyzing parallel allegations of privacy violations by another online adult products retailer is squarely on point. 2025 WL 2447787, at *1, *5, *6 (E.D. Pa. Aug. 25, 2025). There, the court held that "[w]ithout more, ***preference for certain products, including those sexual in nature, is not private information***," observing that such preference "could be freely observed . . . at a brick-and-mortar Adam & Eve store." *Id.* (emphasis added). The *DeLong* court further found that the plaintiff had no reasonable expectation of privacy in his "browsing history, search terms, and purchases on [the] adult website," because it is "widely understood that most online activity is not entirely private."[7] *Id.* at *5. And with respect to third-party advertising technology specifically, the court reasoned that "[i]t is fundamental to . . . online shopping that [purchase] information . . . is given to the retailer, and it is reasonable to expect that the retailer could be using third-party tracking tools to collect that same essential data," since "online shopping activities are routinely shared with website operators and third parties during normal browsing." *Id.* at *6. Applied here, the *DeLong* court's sound reasoning shows why

[7] This is precisely the point Google made in pointing out that "the challenged practices are nearly universal" (Mot. at 19); contrary to Plaintiff's characterization (Opp. at 19), Google made no argument that the "ubiquity of a practice . . . render[s] it lawful[.]"

Plaintiffs cannot establish a reasonable expectation of privacy in their online shopping.

**2. Plaintiffs Fail to Establish Any Highly Offensive Intrusion.**

Plaintiffs simply repeat their reasonable expectation of privacy arguments to try to argue that Google's conduct was "highly offensive." But Plaintiffs ignore that "highly offensive" requires more—a highly offensive intrusion must constitute an "***egregious breach*** of the social norms underlying the privacy right." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (citation omitted). Plaintiffs cannot meet this standard, and none of their cited authorities show otherwise. (*See* Opp. at 20 (citing *McDonald v. Kiloo ApS v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019)) (restating the holding in *In re Nickelodeon*, 827 F.3d at 269, 294 hinged on misleading disclosure not alleged here, as argued.)); *supra* Section II.D.1.) As before, Plaintiffs continue to rely on case law that points only to disclosure of sensitive medical information and information revealing sexual orientation, which is not properly alleged here. (*See* Opp. at 20–21 (citing *Greenley v. Kochava*, 684 F. Supp. 3d 1024, 1046 (S.D. Cal. 2023); *In re Meta Pixel Healthcare Litig.*, 713 F. Supp. 3d 650, 654 (N.D. Cal. 2024); *Brown I*, 525 F. Supp. 3d at 1077; *Sussex Publishers*, 2025 WL 948060, at *9).) Finally, Plaintiffs cannot pile on unrelated cases that involve ***different Google products*** to try to establish a highly offensive intrusion here. (Opp. at 21.)

As Google's cases demonstrate, courts routinely dismiss more robust complaints for failing to establish with particularity a highly offensive intrusion. (*See* Mot. at 16–20.)

**E. <u>Count VI: None of Plaintiffs' Theories of Harm Confer UCL Standing.</u>**

Plaintiffs concede (as they must) that they are not alleging a theory of harm based on diminished value. (Opp. at 22.) Their remaining two theories—benefit of the bargain and property interest in personal information—fail to establish economic injury to support UCL standing.

***Benefit of the Bargain***. Relying solely on *Meta Pixel*, Plaintiffs' theory of harm is that they would not have visited Romantix's website had they known of the alleged interception, and therefore, Plaintiffs "acquired less (protection of their data) and surrendered more (of their PPSI) than they otherwise would have[.]" (Opp. at 22.) Even if this theory were viable, Plaintiffs do not allege any ***economic*** loss with respect to Google because the payments were made to Romantix only. (*See* Compl. ¶¶ 91–92 ("Plaintiffs would not have visited Romantix.com, interacted with it,

or purchased any products from the website, if they knew Romantix and Innov8 shared information[.]”).) Plaintiffs cannot allege a benefit-of-the-bargain loss when they neither bargained with nor received services from Google. *See Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (concluding that plaintiffs have not alleged how they lost money or property when they “have not paid [the software provider] any money and have not alleged that they paid PayPal any money for use of [the software provider’s] service”); *see also Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *4 (N.D. Cal. Apr. 3, 2024) (benefit-of-the-bargain theory fails in part because “there is no plausible allegation that this transmission caused [plaintiffs’] information to diminish in value”). In the handful of pixel cases where the benefit of the bargain theory supported a showing of injury, the plaintiffs paid for defendant’s services. *See Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263, at *2 (N.D. Cal. Mar. 19, 2024) (plaintiff purchased defendant’s at-home health test, not that of third parties). Here, in contrast, Plaintiffs do not allege (nor could they allege) that they have paid Google for browsing Romantix’s website or for Romantix’s products.

Plaintiffs’ claim independently fails for inability to allege they would have sold their information in a relevant market. *Roe v. Amgen Inc.*, 2024 WL 2873482, at *8 (C.D. Cal. June 5, 2024) (“[N]umerous courts in this circuit have held that the disclosure of a plaintiff’s personal information, absent allegations that the plaintiff intended to participate in the market to sell such information, does not constitute a monetary or property loss for purposes of UCL standing”); *Lau v. Gen Digit. Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. Sep. 13, 2023) (similar); *see Rodriguez v. ByteDance, Inc.*, 2025 WL 672951, at *12 n.6 (N.D. Ill. Mar. 3, 2025) (“Because plaintiffs have not adequately alleged that their data lost value, any theory that they were deprived the ‘benefit of their bargain’ when they paid to access [defendant’s] additional features also falls short.”).

***Property Interest in Personal Information***. Plaintiffs’ argument that they were deprived of their “[property] right to exclude” Google from Plaintiffs’ personal information is misplaced. First, Plaintiffs rely heavily on *Meta Pixel*, which concluded that the violation of plaintiffs’ right to exclude would “constitute the diminishment of a ‘present or future property interest.’” *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1025 (N.D. Cal. 2024). Yet Plaintiffs already admitted they “are not alleging [the diminished value theory] here” (Opp. at 22), and thus *Meta Pixel* has no

import. Second, courts in this district have rejected *Meta Pixel*'s reasoning, and the longstanding precedent is that digital data is not considered as "money or property" under the UCL standing analysis. *See Hubbard v. Google LLC*, 2025 WL 82211, at *13 (N.D. Cal. Jan. 13, 2025) (disagreeing with *Meta Pixel* because "[a] violation of a right to privacy does not constitute diminishment of a property interest."); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) ("no federal court has wedged individual digital data into the UCL's 'money or property' box"). Indeed, *Meta Pixel* relies on a minority rule articulated in *Calhoun v. Google*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021), but more recent case law establishes that "[t]he weight of the authority in the district and the state . . . point in the opposite direction: that 'the "mere misappropriation of personal information" does not establish compensable damages.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (collecting cases). Third, the *Meta Pixel* decision is inapposite because it pertains to only "certain kinds of personal data," specifically, "sensitive financial information" obtained from users' interactions with third-party tax filing websites, and not the type of commercial shopping information at issue in this case. *Meta Pixel*, 724 F. Supp. 3d at 1024–25. Plaintiffs fail to show why the alleged collection of commercial browsing information on Romantix's website should be entitled to the same treatment as confidential tax filing information in *Meta Pixel*, when the courts in this district have held otherwise. *See Doe I v. Google LLC*, 741 F. Supp. 3d at 844–45 (no UCL standing because it is "[not] clear that there is a property interest in personal information," including "private health information"); *see also Katz-Lacabe*, 668 F. Supp. 3d at 935–36, 943 (no UCL standing where plaintiffs allege that Oracle collected "many types of personal information," including "health and wellness" data). For these reasons, their UCL claim fails.

**F. <u>Count VII: Plaintiffs' Unjust Enrichment Claim Fails.</u>**

Plaintiffs do not dispute that, if their theory of harm under the UCL is not viable, their unjust enrichment claim would also not be viable. (Opp. at 23.) Plaintiffs' unjust enrichment claim must fail because they have not stated a claim against Google for any unlawful conduct. *Doe I v. Google LLC*, 741 F. Supp. 3d at 849. Plaintiffs further fail to address, let alone refute, that they have not alleged Google's receipt of a benefit at their expense. (*See* Mot. at 22.) This too is dispositive.

Dated: September 19, 2025

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorneys for Defendant
GOOGLE LLC