UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL PEREZ, et al.,
Plaintiffs,
v.
ROMANTIX ONLINE, INC., et al.,
Defendants.

Case No. 25-cv-02465-NW

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Re: ECF No. 40, 41

Plaintiffs Perez and Bradley bring this putative class action against Defendants Romantix Online, Inc., Innov8 Solutions, Inc., Google LLC, and NextRoll, Inc. alleging that Defendants invaded Plaintiffs' privacy while Plaintiffs browsed Romantix.com. Defendants Innov8 and Google timely moved to dismiss the complaint for lack of standing and for failure to state a claim. ECF Nos. 40, 41. The Court GRANTS Defendants' motions with leave to amend.

## I. BACKGROUND

Defendants Romantix and Innov8 jointly operate Romantix.com, a site that sells adult toys and other adult products. When users visit Romantix.com, trackers in the form of cookies and pixels[1] activate and begin collecting data about users' activity. The trackers, developed and operated by Defendants Google and NextRoll, are embedded directly in the code of the website, and fire upon a user's entrance to the site. According to Plaintiffs, the trackers collect information related to user browsing patterns and product interests, which in turn provides insight into a user's sexual preferences, sexual orientation, sexual practices, and adult product preferences.

[1] Per the complaint, cookies refer to "HTTP cookies" or "internet cookies," which are built specifically for web browsers to track, personalize and save information about each user's session. Tracking pixels (also known as tracking tags, tracking code, and web beacons) are small pieces of code embedded on a website that helps track user behavior.

United States District Court
Northern District of California

Upon entering Romantix.com, users are presented with a message notifying users that the website uses cookies. Compl. ¶ 48. The message, provided as an image below, appears in the bottom righthand corner of the screen when a user enters the site.




Users may "accept all" cookies, "decline all" cookies, or may disregard the popup entirely by continuing to engage with the website without making a selection. The popup clearly states that, "[b]y using [Romantix.com], you consent to all cookies in accordance with our Cookie Policy." Directly following that pronouncement is a link to "[r]ead more," which sends users to the site's Privacy Policy.

According to Plaintiffs, users "reasonably believe Defendants will maintain the confidentiality of" the private information they provide to the site "due to Defendants' affirmative representations," including those representations made within the Privacy Policy. Compl. ¶ 24. Plaintiffs specifically allege that the Privacy Policy fails to "disclose the specific tracking technologies Romantix.com visitors are subjected to," fails to explain that it "uses trackers, or disclose the purpose of those trackers," and "never disclose[s] to visitors that [Romantix.com] permit[s] unidentified third-parties, including Google and NextRoll, to eavesdrop on their" communications. Compl. ¶ 49.

Plaintiffs' allegations regarding their own experiences with the website are scant. Both Perez and Bradley visited the site on several occasions and made at least one purchase. Perez "transmitted to Romantix and Innov8 (and thus, unwittingly to [Google and NextRoll]), not only the searches he ran and items he browsed, but also his personally-identifying information,

including his full name, home address, email address, and credit card information." Compl. ¶¶ 77-78. Bradley did the same. *Id.* ¶ 80-81. In conclusory fashion, Plaintiffs allege that they "did not consent to their messages, reports, or communications on Romantix.com being shared with" Google or NextRoll. *Id.* ¶ 89

Plaintiffs provide no further information regarding their interactions with the website. They do not explain whether they noticed and/or interacted with the cookie banner discussed above, nor do they discuss whether they read the Privacy Policy. At certain points in the complaint, Plaintiffs indicate that they are familiar with the policy, affirmatively representing that their "reasonable expectation of privacy" in the information they provided to Romantix.com "stems from and is reinforced by representations in Romantix.com's Privacy Policy and FAQs." Compl. ¶ 125. Yet Plaintiffs simultaneously allege that the underlying Privacy Policy does not "disclose the specific tracking technologies Romantix.com are subjected to," a contention that is false upon review of the policy itself. Compl. ¶ 49; ECF No. 41-2, Ex. B ("Privacy Policy") ("Through our provider, Google Analytics, data is collected about use of our Website.").

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and are therefore insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend "when justice so requires," keeping in mind Rule 15's underlying purpose is "to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).

## III. DISCUSSION

### A. Plaintiffs' Failure to Allege Lack of Consent Defeats Counts I – IV, VIII

Plaintiffs' complaint suffers from a simple but fatal flaw: it fails to allege that its named Plaintiffs, Perez and Bradley, *did not consent* to the collection and disclosure of their personal data. Where, as here, consent is an element of at least one claim, "[c]onsideration of consent is appropriate on a motion to dismiss." *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021); *see also Garcia v. Enter Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("[d]efendants may properly challenge [p]laintiffs's allegations regarding lack of consent through the instant motion to dismiss"); *Smith v. Facebook, Inc.*, 745 F.App'x 8 (9th Cir. 2018) (affirming motion to dismiss based on consent). Plaintiffs note (and rely upon) the fact that Romantix.com has a Privacy Policy, and Plaintiffs quote that policy as part of their complaint. "Courts consistently hold that terms of service and privacy policies . . . can establish consent." *Silver*, 2021 WL 3191752, at *4 (citing *Smith*, 745 F. App'x at 8). Consequently, if Plaintiffs had awareness of the Privacy Policy at the time that they made their purchases, the content of the policy may be enough to establish that Plaintiffs consented to the disclosure of their personal data. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 860 (W.D. Wash. 2023), *aff'd*, No. 23-35377, 2024 WL 2206454 (9th Cir. May 16, 2024) ("Plaintiffs' allegations are made against the backdrop of the terms of the policies to which they assented."). As this stage in the case, the Court DISMISSES the claims to allow Plaintiffs to provide additional information about what they knew of the policy, when they knew it, and whether that information had any effect on their decisions related to the site.

Until then, however, Plaintiffs have failed to allege that they did not consent to the collection and disclosure of their personal information, dooming Counts I through IV and Count

United States District Court
Northern District of California

VIII of Plaintiffs' complaint. These causes of action arise under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Count I); the Federal Wiretap Act, 18 U.S.C. § 2511(1) (Count II); the common law right to privacy (Count III); the right to privacy enshrined in the California Constitution (Count IV); and common law negligence (Count VIII). Plaintiffs must do more than merely assert that they did not consent to the tracking devices. *Iqbal*, 556 U.S. at 678; *Washington v. Flixbus, Inc.*, No. 3:25-CV-00212-H-MSB, 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025) (refusing to accept as true the "legal conclusion" that plaintiff "did not consent to the data practices at issue in the complaint.").

Consent is an element of Counts I and II, *see Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (user consent is a defense under CIPA) *and* 18 U.S.C. § 2511(2)(d) (stating that no liability exists where "one of the parties to the communication has given prior consent" to interception), and a total defense to Counts III, IV, and VIII. *Smith*, 262 F. Supp. 3d at 955 (user consent is a defense under privacy protections under the California Constitution as well as common-law tort claims for intrusion upon seclusion); Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it."). Accordingly, the Court GRANTS the motions to dismiss Counts I-IV and Count VIII with leave to amend.

**B. Plaintiffs Fail to Allege a Claim under the California Unfair Competition Law (Counts V-VI)**

To bring a UCL claim, a person must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Thus, a UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Plaintiffs allege that the disclosure of their data can constitute an economic harm; the Court is less certain. As another court recently noted, "courts in [the Northern District] appear split regarding whether privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL." *Libman v. Apple, Inc.*, No. 22-CV-07069-EJD, 2024 WL 4314791, at *18 (N.D. Cal.

United States District Court
Northern District of California

Sept. 26, 2024) (comparing cases). That court ultimately found that a plaintiff failed to allege an economic injury sufficient to sustain a UCL claim where plaintiff merely alleged, without more, that he would not have purchased the underlying products had he been aware of the data collection. The court found those allegations conclusory, calling the claims "untethered in any way to Plaintiffs' experiences." *Id.*; *see also Gerritsen v. FCA US LLC*, No. CV 19-08268-AB (KSX), 2020 WL 3841304, at *1 (C.D. Cal. Mar. 3, 2020) (conclusory allegations of overpayment insufficient to state injury under UCL).

Plaintiffs' allegations here suffer from the same deficiencies. Here, Plaintiffs merely conclude that they "would not have . . . purchased any products from the website" had they not believed their personal information was safe. Compl. ¶ 91. Without more, Plaintiffs have not "plausibly allege[d] that they would not have purchased or would have paid less for their [purchases] had [defendant] properly disclosed its consumer data collection and disclosure practices." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017). This is why Defendant's reference to other potential vendors is not baseless: one way to allege that Plaintiffs would not have bought products from Romantix.com but for their data collection misrepresentations is to allege that Plaintiffs had the interest and opportunity to buy products from a different vendor. Plaintiffs correctly note that they need not make that specific showing, Opp'n to Innov8 Mot. at 2, ECF No. 56, but they must allege something beyond the untethered insistence that they would not have bought the products had they known the truth of Defendants' data collection policies.

### C. Unjust Enrichment is Not A Separate Cause of Action in California (Count VII)

Plaintiffs cannot maintain their unjust enrichment claim because, in California, "[u]njust enrichment is not a cause of action." *De Havilland v. FX Networks*, LLC, 21 Cal. App. 5th 845, 870 (2018) (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)). State and federal "courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020). Defendants' motion to dismiss Count VII is GRANTED.

United States District Court
Northern District of California

## IV. CONCLUSION

For the reasons stated, Defendants' motions to dismiss are GRANTED with partial leave to amend. Claims I-VII are DISMISSED WITH LEAVE TO AMEND. Claim VIII is DISMISSED WITH PREJUDICE. Plaintiffs shall file any amended complaint within 21 days of this order.

**IT IS SO ORDERED.**

Dated: October 27, 2025

Noël Wise
United States District Judge