**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public,

Plaintiff,

v.

ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.

Defendants.

Case No: 5:25-cv-02465-NW

CLASS ACTION

**FIRST AMENDED COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, bring this action against Defendants ROMANTIX ONLINE, INC. ("Romantix"), INNOV8 SOLUTIONS, INC. ("Innov8"), GOOGLE LLC ("Google"), and NEXTROLL, INC. ("NextRoll"), and allege the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1. Defendants Romantix and Innov8 own and operate the website located at https://www.romantix.com ("Romantix.com" or the "Website"), a website that sells adult products. Consumers like Plaintiff visit Romantix.com to confidentially shop for such products. Unbeknownst to them, however, and constituting a significant violation of their privacy, Romantix and Innov8 allow undisclosed third-parties—Defendants Google and NextRoll (collectively the "Marketer Defendants")—to intercept, read, and utilize for commercial gain consumers' private information about their sexual practices and preferences, gleaned from their activity on Romantix.com.

2. Plaintiff, on behalf of himself and all others similarly situated, brings this action to enjoin Romantix and Innov8's disclosure and communication of consumers' private and confidential information, without his consent, to the Marketer Defendants, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

3. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Defendants. In addition, more than two-thirds of the members of the Class reside in a state other than the state in which Defendants are citizens, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

4. The Court also has original jurisdiction over this action under 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States (the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*).

5. The Court has personal jurisdiction over Defendants Romantix and Innov8 because they have purposely availed themselves of the benefits and privileges of conducting business activities within

California by making Romantix.com, embedded with the Marketer Defendants' tracking tools, available to California consumers.

6. The Court has personal jurisdiction over Google and NextRoll because they have purposely availed themselves of the benefits and privileges of conducting business activities within California by making Romantix.com, embedded with the Marketer Defendants' trackers, cookies, and pixels, available to California consumers.

7. The Court also has personal jurisdiction over Google and NextRoll because the principal place of those entities' businesses are both in this district (in Mountain View and San Francisco, California, respectively).

8. Venue is proper in this Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Defendants reside in (*i.e.*, are subject to personal jurisdiction in) this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

9. Plaintiff Henry Bradley is a California citizen over 18 years of age who resides in Los Angeles County, California.

10. Defendant Romantix Online, Inc. is a Colorado corporation with its principal place of business in Denver, Colorado.

11. Defendant Innov8 Solutions, Inc. is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

12. Defendant Google LLC is a Delaware corporation with its principal place of business in Mountain View, California.

13. Defendant NextRoll, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

## FACTS

### I. The Romantix Website

14. Defendants Romantix and Innov8 sell adult toys and other adult products through Romantix.com.

15. Defendant Innov8 provides eCommerce solutions to retailers wishing to sell online, and

maintains a number of "partnerships" with adult e-commerce websites. Its role is to operate these websites.

16. Innov8 identifies Romantix as one of its "partners" on its own website.[1]




17. Romantix conducted "due diligence" with respect to Innov8's operations before partnering with Innov8. Romantix's Director of Special Projects has explained:

> We were originally approached by Innov8 Solutions at a trade show. Stating they could provide a better eCommerce solution. We were not entirely comfortable with our current provider and ***after some due diligence made the move to their platform***. After a year and half of [*sic*] working with them, we have seen consistent growth and positive additions to the site. The team at Innov8 Solutions is attentive, creative and forward thinking. We have been very happy with the move, and look forward to long successful relationship.[2]

18. As partners in the online eCommerce business, Romantix and Innov8 are jointly responsible for protecting users' personal information. Innov8 performs its services for Romantix with full knowledge

---

[1] https://innov8sol.com/partners.php.

[2] https://innov8sol.com/partners.php (emphasis added).

of the nature of Romantix's business and assumes responsibilities and legal obligations on behalf of Romantix.

19. For example, both Innov8 and Romantix are listed as entities responsible for the Website and the two entities are referenced interchangeably throughout. In promising "Discreet Shipping" for orders placed on Romantix.com, Defendants note that "All of our packages are shipped discreetly, in a plain box or envelope, displaying the sender's name as Innov8 Solutions."[3] Additionally, Romantix's "Customer Service" contact information is listed as "Innov8 Solutions, Inc.[,] % Customer Service[,] 1390 Market Street, Ste 200[,] OFC#2056[,] San Francisco Ca 94102," immediately below which is a statement that "Romantix reserves the right to refuse service to any person."[4] Payments for Romantix products are to be made to Innov8 and credit card charges for Romantix products show up on statements as "Innov8*RMX 1-(888) 924-6039."[5] Similarly, copyright inquiries and takedown notices for content on Romantix.com are directed to Innov8.[6]

20. Additionally, both Romantix and Innov8 are listed at the bottom of each page of the Website, as shown below.




**II. Consumers Using Romantix.com Communicate Private and Protected Sexual Information**

21. When consumers browse Romantix.com to shop for and purchase sex toys, lingerie, and other adult products, including when clicking on items or using search queries in the built-in search function, they communicate private and extremely personal information to Romantix and Innov8, including sexual preferences, sexual orientation, sexual practices, and adult product preferences, all of which constitute Private and Protected Sexual Information ("PPSI").

22. For example, on the homepage, Romantix.com users are presented with various product categories, including "vibrators," "dildos," "lube," "anal," "fetish," and "lingerie." Selecting among these

---

[3] https://www.romantix.com/help.

[4] *Id.*

[5] *Id.*

[6] *Id.*

categories reveals preferences and practices and further has the capacity and tendency to reveal users' sexual orientation.

23. Romantix.com also features a "Love Expert" blog containing articles covering a variety of adult topics. This includes articles discussing different types of sex toys, erectile dysfunction, BDSM tips, masturbation, level of sexual experience, expert advice, and sexual health, all of which, when a user browses that information, reveals PPSI.[7]

**III. Users of the Website Have a Reasonable Expectation of Privacy in their PPSI**

24. When consumers communicate their PPSI to Romantix and Innov8, they reasonably believe those Defendants will maintain the confidentiality of that information, based on a variety of factors.

25. First, Romantix.com users reasonably believe their communications will remain confidential due to the extremely sensitive and private nature of the information involved, which is precisely the type that has historically been safeguarded against disclosure. A person's sexual orientation, preferences, and activities are nearly universally recognized as some of the most private and intimate details about a person.

26. Defendants also made numerous affirmative representations of privacy and discreteness on Romantix.com.

27. When a user arrives at the homepage of the Website, a prominent top banner declares that Defendants ship products in "ALWAYS DISCREET PACKAGING." This banner remains at the top of every page of the Website as a user browses and makes purchases.

28. Defendants further reassure users of their privacy at the bottom of every page of the Website, through multiple eye-catching icons above promises of "Discreet Shopping & Billing for your privacy" and "Free Discreet Shipping."

29. The Romantix.com FAQ further states, "We are committed to protecting your privacy. We NEVER share our customers' personal information with anyone."[8]

---

[7] https://www.romantix.com/love-expert. Examples of articles include "How Penis Sleeves Can Help Men with Erectile Dysfunction," "How Vaginal Sleeves Can Help Women with Vaginal Tightness or Pain During Sex," "How to Safely and Comfortably Use a Big Dildo for Maximum Pleasure," "Girl on girl – lets spice it up ladies," "Fisting 101," "Top 5 Sex Positions To Cut Calories : Male On Male Version," "In The Rim Job Market? Inquire Within," and "How to Anal Douche: Discover the Easiest Way to Anal Douche!"

[8] https://www.romantix.com/help.

30. Additionally, Romantix.com consumers choose to shop online, in private, at least in part because it offers them the privacy they would not have at a more traditional brick and mortar store, where they might be overseen by other patrons or staff or recorded by surveillance equipment.

## IV. Trackers on Romantix.com Allow the Marketer Defendants to Collect and Profit From Romantix.com Users' PPSI

31. When users visit Romantix.com, trackers embedded in the website activate and immediately begin collecting data about the users' activity. These cookies[9] or pixels[10] collect unique identifiers and other data, including browsing patterns and product interests, and ultimately, consumers' PPSI. This data is transmitted to the trackers' owners, usually in real time. The trackers use this data to build detailed user profiles for analytics, targeted advertising, and other marketing purposes. Since several trackers are used across multiple websites, data from different sites is combined to enhance the user profile. When a user enters any website that utilizes the same tracker(s), those cookies or pixels continue to share and gather data.

32. Romantix and Innov8 use two trackers that are the subject of this lawsuit: Google Analytics and NextRoll's AdRoll Pixel. Each is operated by one of the Marketer Defendants. And each allows the Marketer Defendants to eavesdrop on, collect, and use for pecuniary gain the PPSI of Romantix.com visitors, including Plaintiff and other Class Members.

33. Each of these trackers is free in that no money is exchanged between Romantix and Innov8 on one hand and the Marketer Defendants on the other hand for their use on Romantix.com. But each of the Defendants benefit, nonetheless. Romantix and Innov8 use the insights gained from the trackers to optimize content, deliver targeted ads, and generate more site traffic, all of which increase sales. For the Marketer

[9] Cookies refers to "HTTP cookies" or "internet cookies," which are built specifically for web browsers (like Chrome, Edge, Safari, etc.) to track, personalize and save information about each user's session. A "session" is the word used to identify the user and to define the amount of time that user spends on a site. The web server—which stores the website's data—sends a short stream of identifying information to the user's web browser and identifying data is processed and read by "name-value" pairs. These pairs tell the cookies where to be sent and what data to recall.

[10] A pixel (often called a tracking pixel) is a small piece of code embedded on a website that helps track user behavior. Despite the name, it is not a visible pixel on the screen. Rather, it is a 1x1 transparent image, or small snippet of JavaScript that loads when someone visits a webpage or opens an email. For websites that use tracking pixels, marketers can see if a user completed a specific action, like clicking a link, typing a search query, making a purchase, or filling out a form.

Defendants, the primary advantage lies in capturing user data to optimize ad performance and increase ad spend—the cornerstone of their revenue, which amounts to tens of billions of dollars annually.

### A. Google Analytics

34. Google Analytics is a web analytics service that allows website owners to track visitors' actions, via cookies.

35. Some of these cookies, including those used on Romantix.com, include unique identifiers that can link the browsing data collected to an individual's various Google accounts (e.g. YouTube or Gmail), provided the user is logged into one of those accounts. This allows Google to recognize returning users and track their behavior across different websites. Using embedded scripts in the website's code, every interaction on Romantix.com is logged and transmitted to Google servers.

36. Google's unique identifiers and cookies (3SPSID, 3PAPISID, 3PSIDTS AND 3PSIDCC) can be seen in the red box in the screenshot below.




37. As the screenshot above shows, the unique identifying information for a user is sent, without the user's permission, from Romantix.com to Google's servers, where Google can associate that unique ID with a specific individual.

38. As the following screenshot shows, Google can associate that individual (through their unique Google ID) with their specific shopping activity on Romantix.com, what parts of the website they visited, and even what they purchased—meaning, in the case of Romantix.com, Google can learn that user's sexual orientation, preferences, kinks, and other PPSI.




39. The information Romantix.com discloses to Google, without permission, can be and is used to identify a specific consumer, track their online activity, and monetize that information in the form of advertising. This happens as follows: if an online shopper is logged into a Google account, Google Analytics includes a user login session cookie within the tracker's requests to Google's site. This makes any such information personally identifiable because the cookie value can be associated by Google with the user's account identity.

40. A recent study, for example, found that Google links patients' visits to MyChart portals with user identities using these cookies, demonstrating that the data sent to Google is personally identifiable.[11] Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize and improve targeted advertising. Then, by tracking user behavior across different

[11] Huo, M., et al., *All Eyes On Me: Inside Third Party Trackers' Exfiltration of PHI from Healthcare Providers' Online Systems*, WPES'22: Proceedings of the 21st Workshop on Privacy in the Electronic Society, at 197-211 (Nov. 7, 2022).

websites, Google can improve its targeted advertising, leading to higher click-through rates and, thus, more ad revenue.

41. Even if users are not logged into their Google accounts, their PPSI is still tracked, collected, and tied to a unique profile through Google's NID, 1P_JAR, and ANID cookies. While these cookies may not allow Google to identify a user by name, the unique identifier tied to that user allows Google to track a user's preferences and activities across all of its services (and other websites). Thus, even if a user is not logged into their Google account, for pecuniary gain in the form of targeted ads, Google can, and does, still track a user's browsing behavior, including, in the case of someone shopping on Romantix.com, their PPSI.

42. Romantix and Innov8 also directly benefit from sharing user PPSI. Google Analytics allows Romantix and Innov8 to improve their marketing, by permitting them to track Romantix.com visitors when they go to other websites or open their email, at which time Romantix and Innov8 can send direct, targeted ads.

**B. NextRoll's AdRoll**

43. AdRoll utilizes both a pixel and cookies to monitor user activity, including what pages users view, what products they click on, what they search for, whether they add items to their cart, and what they buy.

44. AdRoll assigns a unique identifier to each user, which allows NextRoll to track activity across other websites that also embed AdRoll's pixel. In doing so, AdRoll can generate and show personalized ads to the same user on other sites. AdRoll also offers email marketing features within its platform. Websites can create and send emails directly through AdRoll, using the same data from targeted web ad campaigns.

45. Because AdRoll functions primarily as an advertising tracker, it is not directly connected to personal user profiles. However, it consistently identifies the same user, and on the same device. Thus, when a user provides personally-identifying information, like their name, email address, home address, or credit card information, when creating an account or purchasing items, AdRoll will track that person on any other website embedded with AdRoll.

46. The below screenshot shows AdRoll's identifiers as an alphanumeric string, coupled with the user's search for a specific category of adult products.




47. NextRoll uses this data to create personalized ad experiences, analyze ad performance to refine ad targeting strategies, and associate user activity across different websites.

48. In fact, NextRoll's entire business model is selling its advertising services to third parties, framed as enhancing online advertising strategies. By using cookies and tracking pixels, like AdRoll Pixel, NextRoll gathers this information, including the PPSI associated with unique individuals, for its own pecuniary gain.

49. Romantix and Innov8 also directly benefit from the use of AdRoll for the same reasons they benefit from the use of Google Analytics: they are able to track user interaction with Romantix.com and improve and broaden their own marketing, including through targeted ads on other websites, and direct emails.

**V. The Marketer Defendants' Undisclosed Eavesdropping on Romantix.com Users Violates Users' Privacy Rights**

50. Although, upon entering Romantix.com, users are presented with a popup window stating "This website uses cookies to improve user experience" (the "cookie popup"), consumers may "Decline All," and may also continue to browse Romantix.com without choosing "Accept All" or "Decline All." Moreover, because the cookie popup is in small font at the bottom-right corner of the screen, Romantix.com browsers can and do disregard it and continue engaging with the website without interacting with the popup at all.

51. When a website visitor makes no selection on the cookie popup, *i.e.* has not either chosen "Accept All" or "Decline All," the trackers at issue continue to operate as described herein, allowing the Marketer Defendants to eavesdrop and make use of website users' communications, including their PPSI, in real time.

52. Even when a website visitor selects "Decline All" on the cookie popup, at least the Google Analytics tracker continues to operate on the Website as described herein.

53. Nowhere on Romantix.com does Romantix or Innov8 disclose all of the specific tracking technologies Romantix.com visitors are subjected to. Nor do Romantix or Innov8 tell visitors the full purpose or extent of those trackers, including that the pervasiveness and nature of such trackers allow Defendants to collect, share, and use for profit visitors' personally identifying data. Worse, Romantix and Innov8 never disclose to visitors that they permit unidentified third-parties, including Google and NextRoll, to eavesdrop on their PPSI-revealing communications. Finally, no where do Innov8 or Romantix disclose that at least one tracker continues to permit eavesdropping on visitors' confidential communications even when they "Decline All" cookies.

54. The trackers discussed herein track users, collect their data (including PPSI), and transmit that information to the Marketer Defendants, in real time. Thus, the Marketer Defendants are eavesdropping on Romantix.com visitors.

55. Romantix and Innov8 allow this undisclosed eavesdropping, purposely sharing the personally-identifying information and PPSI of Romantix.com visitors with the Marketer Defendants in contravention of their promises to protect user privacy.

56. The Marketer Defendants' interception of Romantix.com users' PPSI exemplifies the utmost invasion of privacy and would be highly offensive to any reasonable person. These invasions of privacy are particularly offensive given that the Marketer Defendants intentionally intercept users' PPSI with the intent to use it for financial gain through better targeting of advertisements; and Romantix and Innov8 allow these invasions of privacy for their own financial gain, through more and better targeted advertising of Romantix products to increase sales.

**A. California Invasion of Privacy Act (CIPA)**

57. The California State Legislature passed CIPA "to protect the right of privacy of the people of this state." Cal. Penal Code § 630.

58. Section 631(a) of CIPA prohibits, *inter alia*:

a. Aiding or permitting a third party to read or learn the contents of any message, report, or communication that is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California, without the consent of all parties to the message, report, or communication;

b. Reading or attempting to read or to learn the contents of any message, report or communication while the same is in transit or passing over any wire line, or cable without the consent of all parties to the message, report or communication;

c. Using or attempting to use, in any manner or for any purpose, any information obtained from any message, report or communication read while the same is in transit or passing over any wire line, or cable without the consent of all parties to the message, report or communication; and

d. Aiding, agreeing with, employing or conspiring with any person or persons to unlawfully do, or permit, or cause the disclosure, learning, reading, and usage of any communications set by wire in California without the consent of all parties to the message, report or communication.

59. In sum, under Section 631 of CIPA ("§ 631"), it is prohibited to aid or permit another person to willfully and without the consent of all parties to a communication, read, attempt to read, or learn the content or meaning of any message, report, or communication, while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

60. Using a website and entering information on a website constitutes messages, reports, and/or communications between the website user and website developer, owner and/or operator. Internet communications pass over a wire, line, or cable. Users' messages, reports, and/or communications on the website are thus transmitted and passed over a wire, line, or cable.

61. Where, as here, a website user is based in California, the message, report, or communication is received in California.

62. When someone uses a website and enters information on that website, the sole parties to that message, report, or communication are the website user and the website developer, owner, or operator.

63. It is a violation of § 631 to allow someone other than the website user or website developer, owner, or operator to read or learn the contents of messages, reports, or communications between those parties without the consent of all parties.

64. It is a violation of § 631 to read, attempt to read, or learn the contents of messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

65. It is a violation of § 631 to use information contained in messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

66. It is a violation of § 631 to aid, agree with, employ, or conspire with another to unlawfully read, learn, or use information contained in messages, reports, or communications between website users and developers, owners, or operators without the consent of all parties.

67. When someone violates § 631, the aggrieved party may bring a civil action for $5,000 per violation, pursuant to section 637.2(a)(1). Pursuant to section 637.2(b), the aggrieved party may also seek injunctive relief to enjoin and restrain the violative conduct. Pursuant to section 637.2(c), "it is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

68. By using the trackers discussed herein on the Romantix.com, Romantix and Innov8 violated and continue to violate § 631 each time they allow the Marketer Defendants to read users' online communications through use of Romantix.com, without notifying users, and without obtaining their consent.

69. The Marketer Defendants violated § 631 each time they read, attempted to read, or learned from or utilized Romantix.com users' personally-identifying information or PPSI without their consent.

70. Each Defendant violated § 631 by operating under an agreement whereby Romantix and Innov8 installed trackers to disclose users' personally-identifying information and PPSI to Google and NextRoll without the users' consent, in exchange for access to and the ability to use the personally-identifying information and PPSI of Plaintiff and other Romantix.com users for their own commercial purposes.

**B. Federal Wiretap Act**

71. "[T]he Wiretap Act's legislative history evidences Congress's intent to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (quoting S. Rep. No. 90-1097, *reprinted in* 1986 U.S.C.C.A.N. 2112, 2154, 2182).

72. The Federal Wiretap Act prohibits, with specified exceptions, both: (1) the intentional interception of "any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a); and (2) the intentional disclosure or use of the contents of any such illegally intercepted communication if the persons who disclose or use it did so "knowing, or having reason to know," the communication was intercepted in violation of the Federal Wiretap Act, *id.* §§ 2511(1)(c), (d).

73. "Intercept" is defined in the statute as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4).

74. Under the Federal Wiretap Act, conduct is intentional when it, or the results thereof, are the person's conscious objective.

75. One exception to the Act's prohibition against interception of communications is the "one-party consent" rule. *See id.* § 2511(2)(d). Under this exception, interception of a communication by or with the consent of one party to the communication is not unlawful, unless the interception is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

76. The Marketer Defendants violated the Federal Wiretap Act by employing trackers and cookies on Romantix.com with the conscious objective of intercepting users' private communications, including PPSI, and by using that intercepted information for financial gain. Moreover, the Marketer Defendants cannot rely on the one party consent rule exception because, although Romantix and Innov8 consented to the data interception, the interception was for the purpose of violating Romantix.com *users'* right to privacy, and they did not consent.

**C. Common Law Invasion of Privacy**

77. "Invasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera v. Google Inc.*, 2016 WL 5339806, at *10 (N.D. Cal. Sept. 23, 2016) (citing Restatement (Second) of Torts §§ 652A-I for the proposition "that the right to privacy was first accepted by an American court in 1905, and 'a right to privacy is now recognized in the great majority of the American jurisdictions that have considered the question'"). "The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." Samuel D. Warren & Louis Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 198 (1890).

78. The Restatement (Second) of Torts recognizes the same privacy rights through its tort of intrusion upon seclusion, explaining that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652B (1977). The Supreme Court has similarly recognized the primacy of privacy rights, explaining that the Constitution operates in the shadow of a "right to privacy older than the Bill of Rights." *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965).

79. The Marketer Defendants violate Romantix.com users' right to privacy every time they eavesdrops and intercept users' PPSI and private communications with Romantix.com, without the users' knowledge or consent.

**D. California Constitution**

80. California amended its constitution in 1972 to specifically enumerate a right to privacy in its first section, and courts have recognized this affords individuals a private right of action for invasions of their privacy. *See* CAL. CONST. ART. I, § 1. The California Supreme Court has recognized the fundamental injuries at stake in privacy violations, explaining:

> [A] measure of personal isolation and personal control over the conditions of its abandonment is of the very essence of personal freedom and dignity . . . . A [person] . . . whose conversations may be overhead at the will of another . . . is less of a [person], has less human dignity, on that account. He who may intrude upon another at will is the master of the other and, in fact, intrusion is a primary weapon of the tyrant.

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (quoting Edward J. Bloustein, *Privacy as an Aspect of Human Dignity: An Answer to Dean Prosser*, 39 N.Y.U. L. REV. 962, 973-74 (1964)); *see also Gill*

*v. Curtis Pub. Co.*, 38 Cal. 2d 273, 276 (1952) ("Recognition has been given of a right of privacy, independent of the common rights to property, contract, reputation and physical integrity . . . . In short, it is the right to be let alone." (internal quotation marks omitted)).

**VI. Plaintiff's Use of Romantix.com**

81. Plaintiff Henry Bradley visited Romantix.com on several occasions over the last several years, and last visited the website in approximately October 2024. During these visits, Mr. Bradley both browsed certain categories of adult products, and typed specific search queries into the website's search bar. The specific categories of products Mr. Bradley browsed and the search queries he ran are identified in Exhibit B to the Complaint, which was filed under seal to protect Mr. Bradley's privacy. Dkt. Nos. 1-2, 13, 29. On November 30, 2021, Mr. Bradley made a purchase from Romantix.com, and believes he may have made additional purchases thereafter. Evidence of Mr. Bradley's 2021 purchase was attached as Exhibit C to the Complaint, and filed under seal to protect Mr. Bradley's privacy. Dkt. Nos. 1-3, 13, 29.

82. Mr. Bradley transmitted to Romantix and Innov8 (and thus, unwittingly to the Marketing Defendants), not only the searches he ran and items he browsed, but also his personally-identifying information, including his full name, home address, email address, and credit card information.

83. Plaintiff's uses of Romantix.com constitute internet messages, reports, and communications between him, on one hand, and Romantix and Innvo8 on the other, which were transmitted and passed over a wire, line, or cable.

84. Plaintiff's messages, reports, and communications were sent from California.

85. Plaintiff reasonably believed his messages, reports, and communications, including the PPSI therein, were confidential. This belief was based on the nature of the Website, including that its use reveals users' PPSI, his choice to "Decline All" cookies, and the fact that he accessed the Website in private, where no one could see his shopping behavior.

86. Plaintiff did not consent to his messages, reports, or communications on Romantix.com being shared with the Marketer Defendants.

87. Plaintiff did not notice the cookie popup when he first visited the Website. He browsed and made purchases from the Website on multiple occasions before eventually noticing the cookie popup. When he did, he selected the option to "Decline All" cookies. Notwithstanding his selection to "Decline All"

cookies, his confidential messages, reports, and communications, including his PPSI, continued to be intercepted and used for profit by at least Google.

88. Plaintiff's messages, reports, and communications on Romantix.com were instantly available to Google and (until he declined cookies) NextRoll; everything Plaintiff browsed or searched on the website was tracked and disclosed without notice or permission to Google and NextRoll instantly and automatically as it occurred.

89. Each time Plaintiff used Romantix.com, Romantix and Innov8 allowed the Marketer Defendants to intercept, learn the contents of, and use for commercial gain Plaintiff's messages, reports and communications.

90. Because Plaintiff's messages, reports and communications were intercepted simultaneously as they were being communicated, the Marketer Defendants' interceptions occurred while the messages, reports and communications were in transit.

91. The Marketer Defendants were never a party to the messages, reports or communications between Plaintiff, on one hand, and Romantix and Innov8 on the other.

92. Plaintiff did not know that his messages, reports, or communications on Romantix.com would be intercepted or used by the Marketer Defendants.

93. Plaintiff did not know that his PPSI combined with his individual identifiers would be shared, used, sold, or otherwise disclosed to the Marketer Defendants.

94. Plaintiff would not have visited Romantix.com, interacted with it, or purchased any products from the website, if he knew Romantix and Innov8 shared information that personally identified him and the kinds of adult products he was interested in purchasing.

95. Plaintiff would not have been willing to pay what he did for the products he purchased had he known Romantix and Innov8 would allow the Marketer Defendants to eavesdrop on and use for financial gain his personal information, including his PPSI.

## CLASS ACTION ALLEGATIONS

96. While reserving the right to redefine or amend the class definitions prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States who, at any time from four years preceding the date of the filing of

this Complaint to the time a class is notified (the "Class Period"), interacted with Romantix.com while it was embedded with Google Analytics or NextRoll AdRoll (the "Class"); and a subclass of all persons in California who, at any time during the Class Period, interacted with Romantix.com embedded with Google Analytics or NextRoll Adroll (the "California Subclass").

97. The members in the proposed Class (including its Subclass) are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class in a single action will provide substantial benefits to the parties and Court.

98. Questions of law and fact common to Plaintiff and the Class include but are not limited to:

a. Whether Romantix.com, through embedded trackers and cookies, collected information about Class Members;

b. Whether that information constitutes PPSI;

c. Whether that information constitutes messages, reports, or communications under CIPA § 631;

d. Whether Romantix and Innov8 disclosed to any of the Marketer Defendants the PPSI and/or messages, reports or communications between Class Members who accessed Romantix.com on the one hand, and Romantix and Innov8 on the other;

e. Whether Romantix and/or Innov8, on the one hand, and any of the Marketer Defendants on the other, had an agreement whereby trackers and cookies were utilized on Romantix.com to collect and disclose the Class Members' search history and other information in exchange for consideration;

f. Whether any of the Marketer Defendants read, attempted to read, learned, or used the information they obtained from their trackers and cookies on Romantix.com;

g. Whether any of the Marketer Defendants intentionally intercepted Class Members' wire or electronic communications;

h. Whether any of the Marketer Defendants invaded Class Members' privacy by intercepting their PPSI;

i. How Class Members' messages, reports, communications, and PPSI were disclosed, and to whom; and

j. Whether Romantix or Innov8 obtained consent or authorization before disclosing to the messages, reports, communications, or PPSI of Class Members.

99. These common questions of law and fact predominate over questions that affect only individual members of the Class.

100. Plaintiff's claims are typical of the Class's claims because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same violation of privacy and other unlawful and unfair business practices as a result of using Romantix.com.

101. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, who will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiff and the Class.

102. Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for each Class Member to redress the wrongs done to them.

103. Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

104. As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## <u>CAUSES OF ACTION</u>

### FIRST CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act (CIPA)

### (Against all Defendants, on behalf of the California Subclass)

105. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

106. Plaintiff and other California Subclass Members are located in California.

107. Google is the owner and operator of Google Analytics, a web analytics service that allows website owners to track visitors' actions, via cookies, and which collects data from websites to create reports that provide insights into a website's business.

108. NextRoll is the owner and operator of AdRoll, a service that utilizes both a pixel and cookies to monitor user activity, and which collect data from websites to create reports that provide insights into a website's business.

109. Romantix and Innov8, through Romantix.com, are engaged in the business of selling adult products to Plaintiff and other California Subclass Members.

110. Plaintiff and other California Subclass Members used Romantix.com to browse, search for, and purchase adult products.

111. Romantix and Innov8, on the one hand, and the Marketer Defendants and the other hand, formed agreements to install cookies and trackers onto Romantix.com in exchange for access to and use of the PPSI of Plaintiff and other California Subclass Members, for their mutual financial benefit, and at the expense of consumers' privacy and data.

112. When Plaintiff and other California Subclass Members used Romantix.com, they were messaging, reporting, and communicating with Romantix and Innov8. Those messages, reports and communications were transmitted or passed over a wire, line, or cable, and were sent and/or received within California.

113. Romantix and Innov8 willfully disclosed the messages, reports and communications with Google and NextRoll through the cookies and trackers discussed herein. By doing so, Romantix and Innov8 willfully aided and permitted the Marketer Defendants, each a third-party, to read and learn of messages, reports and communications between Romantix and Innov8, on the one hand, and California Subclass Members, including Plaintiff, on the other.

114. The Marketer Defendants willfully obtained the messages, reports and communications of Plaintiff and other California Subclass Members via the cookies and trackers discussed herein, without their knowledge or consent.

115. Plaintiff and other California Subclass Members were not aware Romantix or Innov8 were disclosing their messages, reports and communications to the Marketer Defendants.

116. Plaintiff and other California Subclass Members did not consent to Romantix and Innov8 sending or permitting the Marketer Defendants to read or learn about the messages, reports, and communications they made on Romantix.com.

117. The Marketer Defendants read, attempted to read, learned from, and used the messages, reports, and communications of Plaintiff and other California Subclass Members made on Romantix.com via the cookies and trackers discussed herein, which informed the Marketer Defendants of their identities and PPSI, without their knowledge or consent.

118. Romantix and Innov8 are liable to Plaintiff and other California Subclass Members for statutory damages of $5,000 for each time they disclosed without consent a California Subclass Member's message, report, or communication to any of the Marketer Defendants.

119. The Marketer Defendants are liable to Plaintiff and other California Subclass Members for statutory damages of $5,000 for each time they, without consent, read, learned from, or used a message, report, or communication originated from Romantix.com.

**SECOND CAUSE OF ACTION**

**Violation of the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq*.**

**(Against the Marketer Defendants on behalf of the Class)**

120. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

121. The Wiretap Act prohibits the intentional "interception" of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

122. By designing and programming the cookies and pixel trackers described herein to contemporaneously monitor, intercept, and transmit the contents of electronic communications that Plaintiff and Class Members sent to Romantix.com, including those containing PPSI, the Marketer Defendants intentionally intercepted or endeavored to intercept the contents of electronic communications, in violation of 18 U.S.C. § 2511(1).

123. Further, the Marketer Defendants intentionally used, or endeavored to use, the contents of such electronic communications while knowing or having reason to know that the data was obtained through the interception of an electronic communication.

124. Plaintiff and other Class Members did not consent to the Marketer Defendants' interception of their private communications with Romantix.com. Nor could they have, as they were unaware of the Marketer Defendants' interceptions, which occurred concurrently as they used Romantix.com. Moreover, the Marketer Defendants were never a party to any of the communications sent and received by Plaintiff and other Class Members.

125. Plaintiff and the Class suffered harm as a result of the Marketer Defendants' violations of the Wiretap Act, and therefore seek (a) preliminary, equitable and declaratory relief as may be appropriate, (b) the sum of the actual damages suffered and the profits obtained by the Marketer Defendants as a result of their unlawful conduct, or statutory damages as authorized by 18 U.S.C. § 2520(2)(B), whichever is greater, (c) punitive damages, and (d) reasonable costs and attorneys' fees.

**THIRD CAUSE OF ACTION**

**Intrusion Upon Seclusion**

**(Against the Marketer Defendants on behalf of the Class)**

126. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

127. Plaintiff and other Class Members have reasonable expectations of privacy in using Romantix.com and in their PPSI, generally. The reasonable expectation of privacy in their PPSI is intrinsic and further stems from and is reinforced by representations on the Website. That they held such an expectation, moreover, is demonstrated by their decision to forego shopping at brick and mortar Romantix or other adult product stores where they would risk their shopping behavior being observed and recorded.

128. Plaintiff and other Class Members also have a reasonable expectation that their PPSI will not be captured by the Marketer Defendants without their consent and subsequently used for the Marketer Defendants' economic gain.

129. The Marketer Defendants' intrusions, by viewing and utilizing for economic gain Class Members' PPSI, are highly offensive to a reasonable person. This is evidenced by, *inter alia*, Romantix and Innov8 making clear efforts to assure Romantix.com users that their personally-identifying information and PPSI will not be shared. It is also self-evident from the highly personal and protected nature of the information being taken and utilized without consent, including users' sexual orientation and preferences.

130. Plaintiff, other Class Members, and the public were harmed by the intrusion of the Marketer Defendants into their private affairs as detailed herein. The Marketer Defendants' actions and conduct complained of were a substantial factor in causing the harm suffered by Plaintiff, other Class Members, and the general public.

131. As a result, Plaintiff, on behalf of himself and other Class Members, seeks injunctive relief prohibiting any further intrusions into their privacy by the Marketer Defendants, the destruction of any information obtained as a result of their past intrusions, and damages in a sum to be determined at trial.

**FOURTH CAUSE OF ACTION**

**Violation of California's Constitutional Right to Privacy, Cal. Const. Art. 1, § 1**

**(Against the Marketer Defendants on behalf of the California Subclass)**

132. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

133. Plaintiff and other California Subclass Members' private affairs include their PPSI that the Marketer Defendants capture from eavesdropping on Plaintiff and California Subclass Members' private communications with Romantix.com.

134. The Marketer Defendants, with the cooperation of Romantix and Innov8, intentionally intruded on and into Plaintiff's and other California Subclass Members' private affairs by intentionally capturing their PPSI as described herein. These intrusions are highly offensive to a reasonable person.

135. Societal expectations and laws created a duty the Marketer Defendants owed to Plaintiff and other California Subclass Members, to protect and respect their privacy and PPSI. The Marketer Defendants breached that duty by implementing a system that eavesdrops on private communications and captures the PPSI of Plaintiff and other California Subclass Members without their consent, and without legitimate justification, as described herein.

136. The Marketer Defendants' conduct described herein violated Plaintiff's and other California Subclass Members' right to privacy, as guaranteed by ART. 1, § 1 of the California Constitution. The Marketer Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and other California Subclass Members.

137. As a result, Plaintiff seeks injunctive relief prohibiting any further intrusions into his and other Class Members' privacy by the Marketer Defendants, destruction of any information obtained as a result of past intrusions, and damages in a sum to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Negligence**

**(Against Romantix and Innov8 on behalf of the Class)**

138. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

139. Societal expectations and laws created a duty Romantix and Innov8 owed to Plaintiff and other California Subclass Members, to protect and respect their privacy.

140. In violation of that duty, Romantix and Innov8 negligently, carelessly, recklessly or unlawfully transmitted to and permitted the Marketer Defendants to access Plaintiff's and other Class Members' personally-identifying information and PPSI.

141. As a direct and legal result of Romantix's and Innov8's wrongful conduct and omissions, Plaintiff and other Class Members have sustained damages in a sum to be determined at trial.

**PRAYER FOR RELIEF**

142. Wherefore, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

a. An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

b. An Order requiring Defendants to bear the cost of Class Notice;

c. An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

d. An Order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice;

e. An Order requiring Defendants to pay statutory, compensatory and punitive damages as permitted by law;

f. An Order enjoining the Marketer Defendants from intercepting, learning the contents of, and profiting from private communications between Romantix and Innov8 and users of Romantix.com without the users' consent;

g. An Order enjoining Romantix and Innov8 from allowing the Marketer Defendants to intercept, learn the contents of, and profit from private communications between users and Romantix.com without the users' consent;

h. An Order compelling the Marketer Defendants' destruction of all data obtained from communications made by Class Members on Romantix.com without Class Members' consent;

i. A judgment awarding any and all further equitable, injunctive, and declaratory relief as may be appropriate;

j. Pre- and post-judgment interest, as permitted by law;

k. An award of attorney fees and costs; and

l. Such further relief as the Court deems necessary, just, or proper.

**JURY DEMAND**

143. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 17, 2025

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***