COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
ASHLEY CORKERY (301380)
(acorkery@cooley.com)
KELTON N. MURPHY (340366)
(kbasirico@cooley.com)
JINYOUNG LEE (359885)
(jinyoung.lee@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public,

Plaintiff,

v.

ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,

Defendants.

Case No. 5:25-cv-02465-NW

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: March 11, 2026
Time: 09:00 a.m.
Dept.: 3
Judge: Hon. Noël Wise

Trial Date: Not Yet Set
Date Action Filed: March 11, 2025

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
  A. The Relevant Disclosures ..... 3
  B. This Court's Prior Dismissal Order ..... 4
  C. Plaintiff's Amended Complaint. ..... 4
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 6
  A. Plaintiff's Claims All Fail Because He Consented to the Alleged Conduct. ..... 6
    1. Plaintiff's Few Changes in the FAC Do Not Plead No Consent ..... 6
    2. All Claims Fail Because Plaintiff Consented to the Alleged Conduct. ..... 8
  B. Plaintiff Fails to State a Claim Under CIPA (Count I). ..... 11
    1. Plaintiff Fails to Allege that Google Read or Attempted to Read the Contents of His Communications. ..... 12
    2. Plaintiff Fails to Allege That His Information Was Intercepted in Transit. ..... 14
    3. Plaintiff Fails to Allege that Google Read His Communications While They Were in Transit ..... 16
    4. Plaintiff's Clause Three Claim Fails for Lack of a Viable Predicate Violation and Because Allegations of Use Are Insufficient. ..... 17
    5. Google Is Not a Third-Party Eavesdropper and Cannot Be Held Liable Under CIPA. ..... 17
  C. Plaintiff Fails to State a Claim Under the Federal Wiretap Act (Count II) ..... 20
  D. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion Under California Common Law and Invasion of Privacy Under the California Constitution (Counts III & IV) ..... 21
    1. Information Revealing Sexual Orientation, Practices, or Preferences Is Not at Issue ..... 21
    2. Plaintiff Did Not Have a Reasonable Expectation of Privacy. ..... 22
      a. *No Reasonable Expectation of Privacy Because Plaintiff Consented.* ..... 22
      b. *No Reasonable Expectation of Privacy on Consumer-Facing Websites.* ..... 23
      c. *No Reasonable Expectation of Privacy in Product Preferences.* ..... 23
      d. *No Reasonable Expectation of Privacy in Order Fulfillment Information.* ..... 24
    3. The Alleged Invasion Is Not "Highly Offensive." ..... 25
V. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Cody v. Ring LLC*,
718 F. Supp. 3d 993, 1003 n.3 (N.D. Cal. 2024) ........ 16, 19

*Cody v. Ring LLC*,
2025 WL 240763 (N.D. Cal. Jan. 16, 2025) ........ 6

*Cole v. Sunnyvale*,
2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ........ 8, 11

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ........ 6

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 17, 23

*DeLong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ........ 24

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ *passim*

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 12, 14, 16

*Doe v. Talkiatry Mgmt. Servs., LLC*,
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) ........ 21

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ........ 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 21, 22, 25

*Gadda v. State Bar of Cal.*,
511 F.3d 933 (9th Cir. 2007) ........ 6

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 9

## TABLE OF AUTHORITIES

**Page**

*Good Meat Project v. GOOD Meat, Inc.*,
716 F. Supp. 3d 783 (N.D. Cal. 2024) .......... 6

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 17

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 18, 20

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .......... 17

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 .......... 25

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 8, 9, 10, 23

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 22

*Heaven v. Prime Hydration LLC*,
761 F. Supp. 3d 812 (E.D. Pa. 2025) .......... 23, 24

*Heiting v. athenahealth, Inc.* 2024 WL 3761294 (C.D. Cal. July 29, 2024) .......... 19, 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 25

*Jackson v. Loews Hotels, Inc.*,
2019 WL 6721637 (C.D. Cal. July 24, 2019) .......... 8

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 12

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 19, 20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 20, 21, 22

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002).......... 21

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025).......... 14, 15, 16

# TABLE OF AUTHORITIES

**Page**

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 10, 23

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......... 6

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .......... 18

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 21

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 14, 17

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 25

*Mirmalek v. L.A. Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 14

*Moss v. ResortPass Inc*,
2025 WL 3452360 (Cal. Super. Oct. 30, 2025) .......... 12, 16

*N.Z. v. Fenix Int'l Ltd.*,
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025) .......... 16

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 21

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 24

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 16

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .......... 16

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 23

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 23

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 9

## TABLE OF AUTHORITIES

Page

*Smith v. Sabre Corp.*, 2018 WL 11420538 (C.D. Cal. Jan. 23, 2018) ........ 8, 10

*St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 12

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059 (E.D. Cal. 2011) ........ 8

*Sussman v. Am Broad. Co.*, 186 F.3d 1200 (9th Cir. 1999) ........ 21

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 15, 19

*Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 23, 24, 25

*Tommy Alastra Prods., Inc. v. McDonaugh*, 2025 WL 2427999 (C.D. Cal. July 9, 2025) ........ 8

*Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 12, 13, 17

*Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........ 19

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 15, 16

*Williams v. DDR Media, LLC*, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ........ 13

*Williams v. What If Holdings*, *LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 11

*Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 18

*Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 14

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 25

## TABLE OF AUTHORITIES

**Page**

**Statutes**

18 U.S.C.
§ 2511 ........ 8, 10, 20, 21

Cal. Pen. Code
§ 631 ........ *passim*
§ 632 ........ 8

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ........ 4

Federal Wiretap Act ........ 6

## Notice of Motion and Motion

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, on March 11, 2026, at 9:00 a.m., in Courtroom 3, 5th Floor of the above-entitled Court, located at 280 South 1st Street, San Jose, California, pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Google LLC ("Google") will and hereby does move to dismiss the First Amended Class Action Complaint (Dkt. No. 75 ("FAC")) filed by Plaintiff Henry Bradley ("Plaintiff"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Ashley Kemper Corkery ("Corkery Decl."), the concurrently filed Request for Judicial Notice and Incorporation by Reference, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and arguments as may be presented in connection with the hearing of the motion.

## Statement of Relief Sought

Google seeks an order dismissing with prejudice all causes of action in the FAC for failure to state a claim upon which relief can be granted.

## Issue to be Decided

Whether Plaintiff's FAC should be dismissed because he has failed to state a claim for all causes of action under Federal Rules of Civil Procedure 12(b)(6).

## Memorandum of Points and Authorities

### I. INTRODUCTION

Nothing in Plaintiff Henry Bradley's ("Plaintiff") First Amended Complaint ("FAC") cures the fatal deficiencies this Court identified in Plaintiff's original Class Action Complaint. Plaintiff alleges that, when he visited an adult product website owned and operated by other defendants Romantix Online, Inc. ("Romantix") and Innov8 Solutions, Inc. ("Innov8"), defendant Google LLC ("Google") supposedly violated his right to privacy under various federal and state statutes and common law by receiving certain limited data. Courts in this Circuit have set clear pleading thresholds for Plaintiff to advance challenges to pixel technology, and the amended allegations in Plaintiff's FAC do not clear those hurdles. Each of Plaintiff's claims against Google must be dismissed—this time with prejudice—for at least four reasons.

***First***, Plaintiff failed to cure the "fatal flaw" identified by the Court regarding Plaintiff's consent. As this Court held, Plaintiff could not overcome consent because Romantix's Privacy Policy disclosed the challenged data collection and was displayed and linked in a cookie banner. The Court therefore directed Plaintiff to plead "additional information about what [he] knew of the [Privacy P]olicy, when [he] knew it, and whether that information had any effect on [his] decisions related to the site." (Dkt. No. 72 ("Order") at 4.) Rather than doing so, Plaintiff tries to avoid the problem by deleting all references to Romantix's Privacy Policy in the FAC. This tactic is improper and ineffectual; courts in this Circuit routinely recognize that prior judicial admissions apply to an amended complaint, especially where Plaintiff seeks to excise unhelpful facts. Plaintiff's ostrich-like ploy gets him nowhere. Furthermore, though Plaintiff now claims he, at some point, clicked to "Decline All" cookies, that allegation does not help him either. He consented through agreement to the Privacy Policy, separately from his agreement to receive cookies, and he declined cookies only ***after*** he had already browsed and made purchases on Romantix.com. (Dkt. No. 75 ("FAC") ¶ 87.) Therefore, all claims must fail, as the Romantix Privacy Policy disclosed the use of Google Analytics, and Plaintiff does not allege that he timely took steps to opt-out of the same.

***Second***, Plaintiff's California Invasion of Privacy Act ("CIPA") claim cannot succeed because he does not allege at least three necessary elements: (1) that Google ever read or attempted to read or learn the contents of his communications; (2) that the data were intercepted while they were in transit; and (3) that Google read his communications ***while they were in transit***, as required. Beyond these deficiencies, Plaintiff's claim also fails because Google is a mere analytics service provider that receives information for Romantix's own benefit.

***Third***, Plaintiff's claim under the Electronic Communications Privacy Act ("ECPA" or the "Federal Wiretap Act") also fails because the statute requires only one-party consent, and Romantix willingly embedded Google Analytics on its website, thus providing the requisite statutory consent.

***Lastly***, Plaintiff's claims for intrusion upon seclusion and violation of right to privacy under the common law and California Constitution fail for the added reason that Plaintiff has no reasonable expectation of privacy over information about the goods he browses and purchases on an eCommerce website, particularly where, as here, he has consented to the website's Privacy

Policy and the alleged intrusion is not "highly offensive."

Accordingly, this Court should dismiss Plaintiff's claims with prejudice, as Plaintiff's FAC only confirms that further amendment would be futile.

## II. BACKGROUND

Plaintiff Henry Bradley challenges the alleged transmission of data from Defendants Romantix and Innov8's eCommerce website ("Romantix.com"), which sells adult products. (FAC ¶¶ 21-23.) He alleges he visited and made purchases on Romantix.com on several occasions between November 2021 and October 2024. (*Id.* ¶ 81.) Google Analytics is a web analytics service provided by Google that allows website owners like Romantix to analyze visitors' behavior on their website. (*Id.* ¶¶ 31, 34-35.) This service provides insights that "allow[] Romantix and Innov8 to improve their marketing" and target advertisements to potential customers. (*Id.* ¶¶ 31, 35, 40, 42.) According to Plaintiff, when users browse and make purchases on Romantix.com, the Google Analytics code transmits information about users' sexual practices and preferences to Romantix and to Google, allowing Google to allegedly "eavesdrop on, collect, and use for pecuniary gain" the information for targeted advertising. (*Id.* ¶¶ 32, 70.) Notably, Plaintiff concedes that Romantix willingly embeds Google Analytics code on its website. (*Id.* ¶ 32.) Plaintiff therefore attempts to shift blame to Google for Romantix's choice to embed Google Analytics on Romantix.com by claiming that Romantix unlawfully discloses Plaintiff's and other users' data to Google through cookies and pixels embedded on Romantix.com, which allegedly collects information about a user's browsing patterns and product interests. (*Id.* ¶¶ 21-23, 31.) Specifically, he alleges that when he visited Romantix.com, Google learned information regarding Plaintiff's sexual practices and preferences in violation of his right to privacy under CIPA, ECPA, the California Constitution, and common law. (*See generally id.* ¶¶ 105-137.)

### A. The Relevant Disclosures.

Every user who visits Romantix.com sees a cookie banner prominently displayed on its website, which discloses to the user that the site uses cookies to improve user experience. (Declaration of Ashley K. Corkery ("Corkery Decl.") **Ex. A**.) By continuing to use the website, the user consents to the cookies, even if they do not click "Accept All." (*Id.*) The cookie banner also

links to the Privacy Policy when the user clicks "Read more," which further discloses Romantix's use of "[c]ookies and other Automatic Data Collection Technologies," as well as its use of Google Analytics. (*Id.* **Ex. B**.) That Privacy Policy explicitly discloses that "[t]hrough our provider, Google Analytics, data is collected about use of our Website" "so that Google Analytics can identify a unique user of our Website[.]" (*Id.*) And it provides a precise mechanism to opt-out of Google Analytics by stating "Google Analytics does provide an 'Opt-out' option" and provides a link. (*Id.*) Plaintiff nowhere alleges that he availed himself of this opt-out.

### B. This Court's Prior Dismissal Order.

The operative complaint is Plaintiff's second attempt to plead viable claims against Google. Plaintiffs Paul Perez (now removed from the FAC) and Henry Bradley initiated this action on March 11, 2025. Their original complaint asserted against Google the same claims pled in the FAC, as well as an alleged violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count VI ("UCL")) and Unjust Enrichment (Count VII). (*See generally* Dkt. No. 1 ("Compl.").)[1] On June 2, 2025, Google moved to dismiss the complaint under Rule 12(b)(6), and on October 27, 2025, the Court granted that motion. (Dkt. No. 72 ("Order").)

In its Order, the Court held that "Plaintiffs' complaint suffers from a simple but fatal flaw: it fails to allege that its named Plaintiffs [] *did not consent* to the collection and disclosure of their personal data." (*Id.* at 4 (emphasis in original).) It further observed that "Plaintiffs' allegations regarding their own experiences with the website are scant" and "do not explain whether they noticed and/or interacted with the cookie banner," or "whether they read the Privacy Policy." (*Id.* at 2-3.) This Court stated that "Plaintiffs must do more than merely assert that they did not consent to the tracking devices." (*Id.* at 5.) The Court also dismissed Counts V and VI (UCL), holding Plaintiffs failed to plead economic injury to support standing, and dismissed Count VII (Unjust Enrichment) on the basis that it is not a stand-alone cause of action in California. (*See id.* at 5-6.) The Court granted Plaintiffs leave to amend.

### C. Plaintiff's Amended Complaint.

On November 17, 2025, Plaintiff Bradley filed the FAC. (Dkt. No. 75.) That new pleading

[1] Defendant Innov8 separately moved to dismiss the complaint, which the Court also granted. Defendants Romantix and NextRoll filed their respective Answers. (*See* Dkt. Nos. 40, 42, 45.)

is telling in what it ***omits***. Rather than address the Court's concerns regarding Plaintiff's failure to plead lack of consent, Plaintiff tries to hide from the explicit consent he plainly gave—stripping all references to the Romantix Privacy Policy from his pleading. (*See generally* FAC.) Plaintiff also still does not plead whether he received targeted advertising based on Google's alleged interception of interactions with the Romantix website, nor does he describe sustaining any concrete injury whatsoever. Plaintiff Bradley is also now the sole named Plaintiff, and the FAC no longer asserts UCL and Unjust Enrichment claims against Google. (*Id.*)

Notably, nearly all of Plaintiff's new allegations are irrelevant to Google. Specifically, most amendments merely expand on prior allegations against Google's co-defendants and are wholly immaterial to the consent issues that this Court directed Plaintiff to address. (*See, e.g.*, FAC Redline, Dkt. No. 75-1 ¶¶ 18-20 (adding allegations that Innov8 and Romantix were listed as entities responsible for the website's content); *id.* ¶¶ 24-30 (alleging more detail regarding Innov8 and Romantix's statements as to what it would keep confidential).) Plaintiff only asserts a handful of new allegations to address Plaintiff's review of the Romantix cookie banner. (*See id.* ¶¶ 51-53, 85-87 (adding allegations as to Romantix's website cookie popup banner and Plaintiff's belief that he clicked "Decline All" cookies).) In those allegations, Plaintiff alleges he visited Romantix.com over the last several years, made at least one purchase in November 2021 and possibly more thereafter, and transmitted the same personal information to Romantix and Google. (*Id.* ¶¶ 81-82.) Plaintiff further alleges that he "did not notice" Romantix.com's prominent cookie popup when he first visited the website and admits that he browsed and made purchases "on multiple occasions" ***before*** "eventually noticing the cookie popup," ***after*** which he selected the option to "Decline All" cookies. (*Id.* ¶ 87.) He does not state the timing for his declination of the cookie pop-up and alleges no facts saying what he did on the website after declining cookies.

## III. <u>LEGAL STANDARD</u>

A complaint must be dismissed under Rule 12(b)(6) where the plaintiff fails to state a cognizable legal theory or allege sufficient facts establishing a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive dismissal, "a complaint . . . may not simply recite the elements of a

cause of action"; rather, it must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 796 (N.D. Cal. 2024) (quoting *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). Dismissal without leave to amend is appropriate where the complaint cannot be saved by any amendment. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 939 (9th Cir. 2007). "To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal 'without contradicting any of the allegations of [the] original complaint.'" *Cody v. Ring LLC*, 2025 WL 240763, at *2 (N.D. Cal. Jan. 16, 2025).

## IV. ARGUMENT

Plaintiff's FAC pleads four causes of action against Google. All claims should be dismissed under Rule 12(b)(6) for multiple independent reasons. First, all claims fail because Plaintiff consented to the alleged conduct. Second, Plaintiff fails to allege various other requisite elements to support his CIPA claim, and the claim is barred by the party exception in any event. Third, Plaintiff's Federal Wiretap Act claim fails because the statute only requires single-party consent, and Romantix consented to the alleged interception by embedding Google Analytics on its website. Finally, Plaintiff's privacy claims under the California Constitution and common law fail because Plaintiff did not have a reasonable expectation of privacy given Romantix's Privacy Policy and because the alleged intrusion of privacy is not "highly offensive."

### A. Plaintiff's Claims All Fail Because He Consented to the Alleged Conduct.

Plaintiff failed to remedy the defects that the Court found in the original complaint, and therefore, as an initial and dispositive matter, Plaintiff's claims all fail because he consented to the alleged conduct disclosed through Romantix.com's cookie banner and Privacy Policy.

#### 1. Plaintiff's Few Changes in the FAC Do Not Plead No Consent.

In its prior ruling, the Court pointed out that Romantix explicitly disclosed the use of Google Analytics in its Privacy Policy, and accordingly found several deficiencies in Plaintiff's allegations

regarding consent. (Order at 3.) The Court explained that (1) "Plaintiffs' allegations regarding their own experiences with the website are scant," (2) "Plaintiffs provide no further information regarding their interactions with the website," and (3) "[Plaintiffs] do not explain whether they noticed and/or interacted with the cookie banner discussed above, nor do they discuss whether they read the Privacy Policy." (*Id.* at 2–3.) The Court granted partial leave to amend and instructed Plaintiffs to provide "additional information about what they knew of the policy, when they knew it, and whether that information had any effect on their decisions related to the site." (*Id.* at 4.) Plaintiff has failed to do any of this.

Instead, Plaintiff's FAC largely repeats the same conclusory allegation that he "did not consent to his messages, reports, or communications on Romantix.com being shared with [Google]," without more. (FAC ¶ 86.) And while Plaintiff now alleges that he selected to "Decline All" cookies after seeing Romantix's cookie banner, the (surely intentional) lack of details as to (1) when he clicked to "Decline All" cookies, (2) what he did on the website following that click, (3) whether he also read Romantix's Privacy Policy that disclosed the use of Google Analytics and a separate opt-out mechanism, and (4) whether his knowledge "had any effect on [his] decisions related to the website" speaks volumes. (*Id.* ¶ 87.) The FAC thus ignores the Court's instructions and fails to meaningfully address, much less cure, the defects that required dismissal.

Moreover, it is hardly a valid amendment for Plaintiff to simply remove all references to the Privacy Policy itself in order to pretend that policy—which discloses the use of Google Analytics and a separate opt-out process—does not exist. (*See* Dkt. No. 75-1 (FAC Redline)[2] at 6 (removing Privacy Policy references in ¶¶ 26–27), 12 (same in ¶ 47), 13 (same in ¶ 49).) Not only does this ham-fisted gambit highlight the weakness in Plaintiff's claims, but such selective deletions to avoid unhelpful prior allegations are impermissible under this Circuit's case law. It is well-established that "when a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts." *Tommy Alastra Prods., Inc. v. McDonaugh*, 2025 WL 2427999, at *6 n.7 (C.D. Cal. July 9, 2025) (citation omitted) (dismissing plaintiff's claim with prejudice because amendment would be futile);

[2] Paragraph cites in the FAC Redline refer to the paragraph numbering scheme of the Complaint.

*see also Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) (dismissing, without further leave to amend, in part because the "SAC merely ***omits*** previously-pled material information that harms Plaintiff's case," and finding that those omitted allegations are appropriately characterized as "***judicial admissions that Plaintiff has not cured***") (emphasis added); *Smith v. Sabre Corp.*, 2018 WL 11420538, at *3 & n.2 (C.D. Cal. Jan. 23, 2018) (a plaintiff "cannot selectively delete allegations from a prior complaint to avoid dismissal"). Courts "d[o] not ignore the prior allegations in determining the plausibility of the current pleadings," even when Plaintiff makes inconsistent or even contradictory allegations in the amended pleadings. *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011); *see also Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) (considering an exhibit that was attached to the original complaint but not the Third Amended Complaint, because the "court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*").

As a result, as further explained below, Plaintiff's failure to allege when he interacted with the cookie popup banner and how that influenced his behavior, as well as his wholesale omission of the Privacy Policy in the FAC do not save his claims.

**2. All Claims Fail Because Plaintiff Consented to the Alleged Conduct.**

In light of the irrelevance of Plaintiff's amendment, as Google demonstrated in its prior motion to dismiss, consent defeats all of Plaintiff's privacy-related causes of action. *See* Cal. Penal Code §§ 631–632 (CIPA) (imposing liability only for interception "without the consent of all parties"); 18 U.S.C. § 2511(2)(d) (ECPA) (interception of communication "shall not be unlawful . . . where one of the parties to the communication has given prior consent to such interception"); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of claims for invasion of privacy under common law and the California Constitution because plaintiffs had no reasonable expectation of privacy where the privacy policy disclosed tracking and collection of data).[3] Plaintiff's newly alleged statement that he, at some point, clicked to "Decline

[3] The Ninth Circuit has consistently affirmed the dismissal of privacy claims where terms of service,

All" cookies after having browsed the website (FAC ¶ 87) does not alter this.

The Privacy Policy makes clear there is a separate mechanism to opt out of Google Analytics. Specifically, the Privacy Policy states that if the user prefers to "limit or eliminate the data that Google Analytics collects about your use of the Website," then the user should review instructions for a separate opt-out mechanism. (Corkery Decl. **Ex. B**.) In fact, this disclosure stands, even in light of the separate "Decline All" on the separate cookie banner, and nowhere does Plaintiff allege that by clicking "Decline All" did the disclosures state it would separately prevent Google from receiving any of the described information, even crediting Plaintiff's vague allegations that this continued to occur.

Additionally, at all relevant times, Romantix.com showed a persistent cookie banner on the first landing page of the website, with a hyperlink to Romantix's Privacy Policy. (Corkery Decl. **Ex. A**.) Romantix's Privacy Policy in turn disclosed to its users that, "as an eCommerce site, we do collect, use and store data in order to deliver the goods and services you request from us," and that "***[b]y accessing or using this Website, you agree to this privacy policy***." (Corkery Decl. **Ex. B** (emphasis added).) Romantix's Privacy Policy also explicitly stated the following:

> ***Through our provider, Google Analytics, data is collected about use of our Website***. We will not provide Google Analytics with your name, phone number, email address or credit card information. We assign a random number to your usage ***so that Google Analytics can identify a unique user of our Website*** although Google Analytics does not associate that number with your personally identifiable information.

(*Id.* (emphasis added).) Further, the Privacy Policy expressly disclosed that "***data is collected automatically*** as you enter and navigate through the site . . . including cookies ***and other tracking technologies***." (*Id.* (emphasis added).)

Thus, Romantix's Privacy Policy, to which Plaintiff is bound (because he continued to

---

privacy policies, or related disclosures disclose the practices at issue. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (affirming dismissal of California state law claims where the plaintiffs consented to the conduct at issue through "their acceptance of Facebook's Terms and Policies"); *Hammerling*, 2024 WL 937247, at *3 (affirming dismissal due to defendant's disclosure of challenged conduct); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136–37 (N.D. Cal. 2015) (dismissing CIPA claim for failure to adequately allege lack of consent and noting that plaintiff consented to challenged conduct covered by the privacy policy).

access and use Romantix.com), clearly disclosed to visitors Romantix's use of Google Analytics to collect information about visitors' use of the website. (*See* Corkery Decl. **Exs. A–B**.) In particular, Romantix disclosed to Plaintiff that "data is collected about ***use of*** our Website" by "Google Analytics" and "***that Google Analytics can identify a unique user*** of our Website[.]" (*Id.* **Ex. B** (emphasis added).) The Privacy Policy also informed Plaintiff that he may opt-out of Google Analytics and instructed him to review the relevant information about Google Analytics. (*Id.*) These disclosures refute Plaintiff's purported surprise at the alleged transmission of information about his use of the website along with an identifier, as the policy specifically disclosed. (*See*, *e.g.*, FAC ¶ 37 (complaining about "unique identifying information for a user" going to Google).) And, again, Plaintiff never alleges that he opted out of Google Analytics. (*See generally* FAC.)

Courts have repeatedly found this same level of disclosure sufficient to warrant dismissal of an action. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055-56 (N.D. Cal. 2025) (dismissing ECPA and invasion of privacy claims without leave to amend based on plaintiff's consent); *Smith*, 745 F. App'x at 8–9 (dismissing the complaint in part because Facebook's terms and policies contained numerous disclosures related to information collection on third-party websites); *Hammerling*, 2024 WL 937247, at *3 (finding no privacy claim where the policy expressly disclosed Google's intention to track their activity on third-party apps). The recent decision in *Lakes* is particularly instructive. There, a court in this District dismissed the complaint on the ground that "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties." *Lakes*, 777 F. Supp. 3d at 1057. The court emphasized that there was no support in the case law for the high standard of specificity that the plaintiffs had urged. *See id*. (rejecting the plaintiffs' claims that consent required some sort of "highly granular disclosure"). Plaintiff here cannot argue that Romantix's disclosures failed to inform them that Romantix "will collect their information and share it with third parties" (*id.* at 1055); indeed, Romantix's disclosures are ***more*** robust than those at issue in *Lakes*, since they disclose the particular technology deployed.

So while Plaintiff tactically omits all prior references to the Privacy Policy in the FAC, the court can consider it because he relied on and quoted from it in the original complaint. (*See* Compl.

¶¶ 24–26, 47–49.) Such omission does not preclude the Court from considering the Privacy Policy "as part of its 'context-specific' inquiry based on its judicial experience" to consider the disclosures contained in the Privacy Policy. *Cole*, 2010 WL 532428, at *4; *see supra* Section IV.A.1.

What is more, Plaintiff does not allege when he clicked "Decline All" in the cookie popup, what he did on the website following that alleged click, or how (if at all) his refusal of cookies influenced his use of the Romantix. Simply put, Plaintiff has ignored the Court's instruction to provide "additional information about ***what*** they knew of the [Privacy P]olicy, ***when*** they knew it, and ***whether*** that information had any effect on their decisions related to the site." (Order at 4 (emphasis added).) Plaintiff now concedes the presence of this cookie banner that he "did not notice [it] when he first visited the Website" and thus "browsed and made purchase from the Website on multiple occasions before eventually noticing the cookie [banner]." (FAC ¶ 87.) Yet, even crediting his allegations, he does not plead what, if anything, he did on the website after declining its cookies. Thus, there is no factual basis for the Court, reading all the allegations in the light most favorable to Plaintiff, to conclude that any violation at all occurred after Plaintiff clicked "Decline All."

Consequently, nothing in the FAC should alter the Court's prior ruling that, because Plaintiff consented to the very conduct that he criticizes in the FAC, his claims against Google under CIPA, the Federal Wiretap Act, and California law must be dismissed.

**B. <u>Plaintiff Fails to State a Claim Under CIPA (Count I).</u>**

Plaintiff alleges two theories of liability under Section 631(a) of CIPA arising out of Romantix's use of Google Analytics. First, Plaintiff asserts that Google willfully read or attempted to "read or to learn the contents or meaning of any message, report, or communication" (Clause two). *See* Cal. Penal Code § 631(a); (FAC ¶¶ 113, 117). Second, Plaintiff alleges Google used or attempted to use the obtained information (Clause three). *See* Cal. Penal Code § 631(a); (FAC ¶ 117).[4] Plaintiff's CIPA claims are not viable for various independent reasons. As to Clause two, Plaintiff fails to allege that Google (1) "read[] or attempt[ed] to read, or to learn" the contents of

[4] Plaintiff does not appear to plead a claim under CIPA's first clause, which prohibits "intentionally tap[ping] or mak[ing] any unauthorized connection[.]" Cal. Penal Code § 631(a). In any event, such a claim would be barred in this action, because this provision "prohibits telephonic wiretapping, which does not apply to the internet[.]" *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (citation omitted).

their alleged communications, (2) intercepted them while in transit, or (3) read his alleged communications while in transit. Cal. Penal Code § 631(a). As to Clause three, the claim fails because: (1) it is derivative of his defective Clause two claim, and (2) Plaintiff does not plausibly allege that Google used the challenged communications. Finally, both the Clause two and Clause three claims fail because Plaintiff fails to allege that Google acted as anything more than a service provider to Romantix.com.[5]

### 1. Plaintiff Fails to Allege that Google Read or Attempted to Read the Contents of His Communications.

Plaintiff still pleads no specific facts demonstrating that Google attempted to "read, or to learn the contents" of any purported communications. Cal. Penal Code § 631(a). In drafting CIPA, the legislature elected to use the terms "read" and "learn" rather than "receive," "collect," or "acquire." CIPA thus "requires some effort at understanding the substantive meaning of the message, report or communication." *Torres v. Prudential Fin., Inc*., 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (citation omitted); *Eating Recovery Ctr.*, 2025 WL 2971090, at *5 (same). Yet Plaintiff's FAC is strikingly devoid of any allegations that Google endeavored to understand the substantive meaning of his communications.

***First***, most of Plaintiff's allegations fall short of alleging reading contents because they allege only "collect[ion]," "transmi[ssion]," or "log[ging]" of content information (FAC ¶¶ 31, 35), such as URLs, which does not imply any effort to understand "browsing patterns and product interests" (*id.* ¶ 31), to learn "sexual orientation, preferences, kinks, and other PPSI" (*id.* ¶ 38). *See, e.g.*, *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) (dismissing Section 631 claim and holding that "Plaintiff has [] not alleged Heap read, attempted to read, or to learn the meaning of his communications with Allstate; rather, he merely alleges Heap recorded

---

[5] To the extent the Court determines it is ambiguous whether CIPA applies to Google's conduct, it should construe that ambiguity in Google's favor, because "[i]n the context of a statute that imposes both criminal and civil penalties based on the same statutory term, 'the rule of lenity, not to mention a dose of common sense, favors a strict construction.'" *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) (citation omitted) (applying rule of lenity to CIPA Section 631 claim); *see Moss v. ResortPass Inc*, 2025 WL 3452360, at *1-2 (Cal. Super. Oct. 30, 2025) (agreeing with Judge Chhabria's application of rule of lenity in *Eating Recovery Ctr.*).

the data and stores it on its servers."); *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (same).

***Second***, Plaintiff's only allegation even conceivably related to reading contents fails because it is entirely speculative. Plaintiff states that "Google can associate [an] individual (through their unique Google ID) with their specific shopping activity on Romantix.com, what parts of the website they visited, and even what they purchased—meaning . . . Google can learn that user's sexual orientation, preferences, kinks, and other PPSI." (FAC ¶ 38.) That conjecture falls well short of the requisite plausible allegation that Google attempted to understand Plaintiff's communications in two respects: First, the allegation is not tethered to Plaintiff, but to a hypothetical individual. And second, the allegation amounts to guesswork regarding what Google ***could do*** with that hypothetical person's communications. This is insufficient. On this point, Judge Chhabria's analysis in *Doe I v. Google LLC* is instructive. In that case, the Court reasoned as follows:

> [T]he complaint adequately alleges that providers *could* configure and use the products in a way that would cause personal health information to be transmitted to Google. But instead of offering factual allegations about how the plaintiffs' various providers are *actually* using Google's products, the plaintiffs allege hypothetical examples—based on the generic product descriptions—of how various product features could be used in ways that could result in privacy violations. . . . But there are no allegations that the plaintiffs in this case ever saw advertisements for prescription medications after interacting with their health care provider's website. In fact, there are no allegations that any plaintiff here ever saw any targeted advertisements related to their health at all.

741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (emphasis in original) (granting motion to dismiss); *see also Torres*, 2025 WL 1135088, at *6 (finding that "Plaintiffs demonstrate that ActiveProspect ***could have*** learned the substantive meaning of TrustedForm Certificates by accessing client accounts or viewing event log files" but "what ActiveProspect ***could*** do is not the relevant inquiry here") (emphasis in original). As in *Doe I*, Plaintiff's speculations are not well-pled allegations that Google read Plaintiff's data. Nor do they lead to a plausible inference that Google did so: Allegations that Google ***could*** endeavor to understand the contents of web communications, like allegations that a mailman ***could*** read the letters in his cart, do not raise the specter of actual snooping. That is especially so because Plaintiff fails to allege he saw any targeted advertisements related to his purchases after using Romantix's website. *See, e.g.*, *Doe I*, 741 F. Supp. 3d at 839;

*L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing CIPA Section 631 claim where Plaintiffs failed to "create a 'coherent story' of how LinkedIn read the specific communications," because, "[f]or example, Plaintiffs do not allege that they received any targeted advertising after interacting with the challenged websites, a fact that would strengthen the inference that LinkedIn learned about Plaintiffs from reading their communications.").

***Third***, by the same token, allegations that Google associates individuals with their corresponding data through unique Google identifiers (FAC ¶ 38; *see id.* ¶¶ 37, 38) are no more suggestive of reading ***contents*** than allegations that a mailman associates individual recipients with their letters through unique ***addressing*** information. *Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *3 (S.D. Cal. Nov. 21, 2025) (finding "allegation that [Plaintiff's] Facebook ID was associated with her visits" to be "mere identifying information"); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) (characterizing cookies containing identifiers as containing only addressing information); *Eating Recovery Ctr.*, 2025 WL 2971090, at *5 (processes "better analogized to sorting mail than to reading it . . . can't fairly be characterized as an effort at understanding the meaning of the communication"). These allegations do not suffice because Section 631 of CIPA does not prohibit reading addressing information; it explicitly proscribes only "read[ing], or attempt[ing] to read, or [] learn the ***contents or meaning***" of communications.

Because Plaintiff's FAC lacks the required allegations of reading contents, he states no Section 631 violation and the CIPA claim must be dismissed.

### 2. Plaintiff Fails to Allege That His Information Was Intercepted in Transit.

"[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); Cal. Penal Code § 631(a). This means that to state a claim under CIPA's second clause, the plaintiff must allege specific facts including "***when*** the interception occurs." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (emphasis in original). "While Plaintiff[] need not prove

[his] theory of interception on a motion to dismiss, Plaintiff[] must provide fair notice to Defendant[] of when [he] believe[s] [Defendant] intercepts [his] communications." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *see also Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims involving pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place").

Here, the Complaint offers only conclusory allegations regarding interception "in transit." Plaintiff (1) makes a vague, indeterminate assertion that the challenged "data is [sic] transmitted . . . ***usually*** in real time" (FAC ¶ 31 (emphasis added)), (2) asserts a tautological, statute-parroting allegation that "[b]ecause Plaintiff's . . . communications were intercepted simultaneously as they were being communicated, the Marketer Defendants' interceptions occurred while the . . . communications were in transit" (*id.* ¶ 90), and (3) peppers his FAC with the word "intercept[ion]" (*id.* ¶¶ 1, 56, 76, 79, 87, 89-90, 92, 122-124). The first two allegations plainly do not rise to the level of plausibility, and as to the third, courts have routinely held that such cursory recitations of the statutory element do not suffice. Instead, Plaintiff must plead facts as to ***how*** Google "simultaneously" intercepted Plaintiff's communication. *L.B. v. LinkedIn* is instructive. There, Judge Davila found similarly generic allegations insufficient to allege interception in transit, reasoning:

> Here, Plaintiffs argue LinkedIn intercepted communications with the websites in "real time," or at the time users input said communications into the websites. Notably, however, they do not explicitly allege this "real time" theory in their complaints. Instead, Plaintiffs generally allege that the Insight Tag sends LinkedIn data "[w]hen a user who has signed in to LinkedIn ... is browsing a website" and that LinkedIn begins "tracking their activity the moment they entered [the websites]." Without more specificity, these allegations do not provide fair notice of exactly when or how LinkedIn intercepted the communications and are therefore insufficient to plausibly plead that LinkedIn intercepted communications while "in transit." As such, the "in transit" requirement is another basis for dismissing Plaintiffs' Clause Two claims.

*L.B.*, 2025 WL 2899514, at *16 (alternations in original) (internal citations omitted).[6] This Court

[6] *See, e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("Plaintiffs must provide fair notice to [d]efendants of when they believe [the defendant] intercepts their communication."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27,

should follow the sound reasoning in *L.B.* and dismiss Plaintiff's CIPA claim for failure to allege interception in transit. *See, e.g.*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) ("Cody's conclusory allegations restating the pleading requirement of real-time interception . . . fail to explain how the software works or how the interception occurs"); *Rodriguez*, 2022 WL 214552, at *2 ("Using the word 'intercept' repeatedly is simply not enough" to "make it plausible Google is intercepting [Plaintiff's] data in transit").

**3. Plaintiff Fails to Allege that Google Read His Communications While They Were in Transit.**

Even assuming *arguendo* that Plaintiff adequately pled (1) that Google intercepted their communications while in transit, and (2) that Google ever attempted to read or learn the contents thereof, his claims fail for an independent reason: Plaintiff does not allege that any reading or learning occurred ***contemporaneously*** while the challenged information was in transit. CIPA Section 631(a) proscribes "***read[ing], or attempt[ing] to read, or to learn*** the contents or meaning of any message . . . ***while the same is in transit***[.]" Cal. Penal Code § 631(a) (emphasis added). By the statute's plain text, intercepting data in transit for subsequent perusal is not grounds for liability.

Courts have repeatedly confirmed that the statute means what it says, dismissing CIPA claims for failure to allege in-transit reading. *See, e.g.*, *Eating Recovery Ctr.*, 2025 WL 2971090, at *5-6 (noting trend in case law and agreeing with other courts that to state a Section 631 violation, a defendant must "'read' the communication while it's in transit—that is, [it has] to do something more than just intercept the contents of the communication" while in transit); *Moss*, 2025 WL 3452360, at *1-2 (endorsing and incorporating Judge Chhabria's interpretation of the reading in transit requirement in *Eating Recovery Center*); *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025) ("The court finds such allegations insufficient because Plaintiffs do not adequately allege that Chatters are reading these messages 'in transit,' but rather that Chatters are viewing the messages after they were received and mirrored from the Creator's inbox."); *Torres*, 2025 WL 1135088, at *5 (granting defendant's motion for summary judgment because plaintiff

---

2020) (finding allegations that "Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit" too conclusory to support in-transit interception); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts[.]").

failed to allege reading or attempting to read communications while they were in transit); *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024) (same). Thus, in addition to being deficient for failure to allege Google read his communications or intercepted them in transit, Plaintiff's CIPA claim must be dismissed for his further failure to allege Google read his communications while in transit.

**4. Plaintiff's Clause Three Claim Fails for Lack of a Viable Predicate Violation and Because Allegations of Use Are Insufficient.**

A claim brought under CIPA's third clause for "use" of unlawfully obtained data must be predicated on a violation of either of the first two clauses. The claim fails because Plaintiff does not assert a claim under CIPA's first clause or state a viable claim under its second clause. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish . . . a violation of the first or second clauses. Because Plaintiffs have not done so, they [] have failed to plead a violation of the third clause[.]"); *Mastel*, 549 F. Supp. 3d at 1137 (finding no derivative liability under third clause without predicate). Even if Plaintiff's claim under Clause two was adequate, Plaintiff still did not plausibly allege any facts showing how Google "used" any of the specific information allegedly intercepted. The FAC includes only generic allegations that the information from Romantix.com "is used to identify a specific consumer, track their online activity, and monetize that information in the form of advertising" (FAC ¶ 39), but fails to allege any facts rendering this conclusory statement plausible—such as by alleging that Plaintiff received targeted advertising from Google. Nor does the FAC plausibly allege Google's use of data for independent purposes (*see infra* Section IV.B.5), as is required. *See, e.g.*, *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *9 (S.D. Cal. Oct. 24, 2023) ("Plaintiffs do not successfully plead JC Penney has violated CIPA under Clause Three because they do not sufficiently allege Vergic . . . uses the chat data for its own purposes.").

Accordingly, Plaintiff's claims under CIPA's Clause three should be dismissed.

**5. Google Is Not a Third-Party Eavesdropper and Cannot Be Held Liable Under CIPA.**

Finally, both Plaintiff's Clause two and Clause three claims are also barred by the party exception because Google is a vendor that merely provided an analytics tool to assist Romantix

with its marketing and advertising efforts. Thus, Google is a "party" to Plaintiff's alleged communications with Romantix, not a third-party "eavesdropper," and there can be no CIPA violation. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021).

Courts in this district widely recognize that the party exception, which allows a "party to a communication" to record or intercept its own communications, applies to third-party vendors like Google that provide analytics tools. *See, e.g.*, *id.* at 831-33 (holding that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself."); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims where "Plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (similar). Here, none of Plaintiff's allegations suggest that Google acts as anything but a service provider. Indeed, documents incorporated by reference into the Complaint confirm that Google "***act[s] as a data controller/processor*** in relation to data that they obtain or receive[.]" (Corkery Decl. **Ex. B** (emphasis added).)

One of the leading cases on this topic, *Graham v. Noom*, analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d at 832. Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data***[.]" *Id.* (emphases added). The same analysis necessitates dismissal here. Plaintiff has not pled that Google acted as anything more than an extension of Romantix. Indeed, his pleading establishes that Google Analytics is ***embedded by website owners***. (FAC ¶ 70 (alleging that "Romantix and Innov8 installed [the] trackers[.]").) Further, his Complaint focuses on the benefits that this tool provides to website owners such as Romantix—i.e., by ***allowing Romantix and Innov8*** to "improve their marketing" (*id.* ¶ 42) by "us[ing] the insights gained from the trackers to optimize content, deliver targeted ads, and generate more site traffic" (*id.* ¶ 33), "directly benefit[ting] from

sharing [their] PPSI." (*Id.* ¶¶ 33, 41, 42; *see id.* ¶ 49.)

Plaintiff vaguely alleges that the "Marketer Defendants" (including NextRoll) "benefit" from "capturing user data to optimize ad performance and increase ad spend" by "monetiz[ing] that information in the form of advertising" and generically point out that "by tracking user behavior across ***different websites***, Google can improve its targeted advertising[.]" (FAC ¶¶ 33, 39-40 (emphasis added).) That such allegations are not individualized by each defendant's practices and/or tethered to Romantix.com shows that they fall below applicable standards requiring pleading with sufficient specificity. *See, e.g.*, *Cody*, 718 F. Supp. 3d at 1002-03 & n.3 (allegations of use were "conclusory" where they were based on public reporting that the analytics provider "exploited" chat data for "targeted advertising" but said "nothing about Ring [the defendant website] or about Meta or Kustomer using Ring data to create targeted advertising"); *Doe I*, 741 F. Supp. 3d at 839 (dismissing CIPA claims where the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to the use of Google Analytics by the healthcare websites at issue); *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024) (rejecting reliance on marketing materials as a basis for finding capability of use under *Javier* because "[n]one of these materials relate to Salesforce's use of Defendant's data specifically").

Plaintiff may invoke another line of cases holding that an analytics provider is not an extension of a defendant if it has the "capability to use" alleged communications for any independent purpose. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Plaintiff's claims fail under this rubric as well for the same reason—they are conclusory and fail to plead eavesdropping with the requisite specificity. *See, e.g.*, *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (finding an allegation that a chat vendor had "capability to use its record of [w]ebsite users' interaction[s]" for data analytics and marketing/advertising to consumers was "conclusory and insufficient" (citation omitted)); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 737–38, 745 (N.D. Cal. 2023) (holding that allegations that defendant "analyz[ed] the data and provid[ed] [] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use); *Heiting*, 2024 WL 3761294, at *4 (allegations that Salesforce "may record, store,

and use" the underlying data and "use[d] chat data to enhance its own business" were "too general and conclusory to support a reasonable inference that Salesforce had the capability to use the communications for any purpose beyond providing it to Defendant." (citations omitted)).

Irrespective of whether the Court applies *Graham* or *Javier*, Plaintiff's speculative and hypothetical allegations are not sufficient to state a claim. Because Plaintiff fails to allege specific facts showing that Google was a third-party eavesdropper that has used or is capable of using Romantix's data for Google's own purposes, his CIPA claim must be dismissed.

### C. Plaintiff Fails to State a Claim Under the Federal Wiretap Act (Count II).

Plaintiff's claim under the Federal Wiretap Act fails again, even beyond Plaintiff's consent as a complete defense. The Federal Wiretap Act is a one-party consent statute: no claim can withstand dismissal where "one of the parties to the communication has given prior consent to such interception[.]" 18 U.S.C. § 2511(2)(d) (the "ECPA"). Plaintiff's own allegations and judicially noticeable documents establish that the alleged recipient of Plaintiff's communications (Romantix) voluntarily installed Google Analytics on its website. (FAC ¶ 70.) As "[Google's] customers must have chosen to deploy [Google's] tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (citation omitted) (collecting authorities); *see also Doe I*, 741 F. Supp. 3d at 842 (dismissing Federal Wiretap Act claims based on one-party consent; "[t]he alleged interception of private health information only occurs because the health care providers choose to install Google source code on their web properties. This must mean the providers consented to the operation of Google source code.").

Plaintiff cannot rely on the crime-tort exception under the statute by alleging that the interception was "for the purpose of violating Romantix.com users' right to privacy." (FAC ¶ 76.) The Ninth Circuit has rejected this type of circular reasoning and made clear that the crime-tort exception fails where there is no "further impropriety" that is "separate and independent" from the alleged interception. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (crime or tort exception did not apply when the purpose of the recording was the same as the purpose of the criminal or tortious act); *Sussman v. Am Broad. Co.*, 186 F.3d 1200,

1202–03 (9th Cir. 1999) (no wrongful purpose beyond the recording, so no viable ECPA claim); *see, e.g.*, *Doe v. Talkiatry Mgmt. Servs., LLC*, 2025 WL 3190813, at *4 (C.D. Cal. Oct. 1, 2025) ("Various courts have held that a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording or interception itself.") (dismissing ECPA claim).

Even then, Plaintiff fails to adequately plead the other elements of his Federal Wiretap claim, including that the alleged interception took place while "in transit," and that Google did not act as a party to the underlying communication. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (Federal Wiretap Act requires interception during "transmission"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("*Facebook Tracking*") ("Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption."). For these reasons as well, Plaintiff's Federal Wiretap Act claim should be dismissed.

### D. Plaintiff Fails to State a Claim for Intrusion Upon Seclusion Under California Common Law and Invasion of Privacy Under the California Constitution (Counts III & IV).

Because the tests for intrusion upon seclusion under California common law and invasion of privacy under the California Constitution "involve[ ] similar elements," courts apply a common test requiring (1) a reasonable expectation of privacy, and (2) a highly offensive intrusion. *Katz-Lacabe*, 668 F. Supp. 3d at 941 (alteration in original) (quoting *Facebook Tracking*, 956 F.3d at 601). The inquiry about the offensiveness of an intrusion involves examining "all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's motives and objectives." *Doe I*, 741 F. Supp. 3d at 844 (citation omitted). The California Constitution "set[s] a high bar for an invasion of privacy claim." *Id.* (quoting *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)). Here, Plaintiff cannot clear this high bar.

#### 1. Information Revealing Sexual Orientation, Practices, or Preferences Is Not at Issue.

As an initial matter, the Court should ignore Plaintiff's allegations that "sexual preferences, sexual orientation, [and] sexual practices" are at issue in these alleged disclosures. (FAC ¶ 21.) As Romantix.com is alleged to be an adult products store, not a dating app or other means of connecting

potential sexual partners, nothing about what plaintiffs allegedly did on Romantix.com reveals their sexual orientation or practices. Moreover, as argued, Plaintiff's FAC contains ***zero*** allegations that Google reads the challenged browsing and shopping data to understand the contents of information allegedly relayed. (*See supra* Section IV.B.1.) But reading browsing and transaction data to understand their contents is necessary to bridge the inferential gap between visiting the website on the one hand, and the visitor's sexual practices and preferences on the other. Because Plaintiff's FAC therefore fails to suggest that the latter is at issue, the inquiry does not concern Plaintiff's sexual proclivities, but merely the product and order fulfillment information that Google allegedly received from a consumer-facing website.

**2. Plaintiff Did Not Have a Reasonable Expectation of Privacy.**

In the online context,[7] a reasonable expectation of privacy can exist where a defendant gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601–02 (citation omitted). This determination entails a consideration of the customs, practices, and circumstances surrounding the data collection, such as "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Katz-Lacabe*, 668 F. Supp. 3d at 941 (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022)).

***a. No Reasonable Expectation of Privacy Because Plaintiff Consented.***

Plaintiff did not have a reasonable expectation of privacy because he consented to Romantix's Privacy Policy when browsing and purchasing products on its website. (*See supra* Section IV.A.) Romantix explicitly represented to website visitors that it uses Google Analytics to collect data about its website usage, along with unique identifiers. Because the Privacy Policy "expressly disclosed Google's intention to track their activity on third-party apps," Plaintiff has no reasonable expectation of privacy in that data. *Hammerling*, 2024 WL 937247, at *3; *see also Lakes*, 777 F. Supp. 3d at 1058 (dismissing plaintiffs' invasion of privacy claims under common law and the California Constitution because consent represents a defense to those claims).

[7] Though Plaintiff's FAC adds allegations about promises of discrete packaging, (FAC ¶¶ 27-28), this is a red herring. Whether Romantix fulfilled its promise to discretely ship products is not at issue; the privacy violations Plaintiff alleges solely concern ***online*** conduct.

**b. *No Reasonable Expectation of Privacy on Consumer-Facing Websites.***

In general, internet users do not have a reasonable expectation of privacy on consumer-facing websites. Because virtually all commercial websites track web visitors, we "understand that what we do on the Internet is not completely private." *Thomas v. Papa Johns Int'l, Inc*., 2024 WL 2060140, at *2-3 (S.D. Cal. May 8, 2024) (noting that the proliferation of litigation in this area "suggest[s] Defendant is not alone in this practice," and finding that this is "a factor to consider"); *see also D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-11 (S.D. Cal. Oct. 24, 2023) (no reasonable expectation of privacy on public website owned and operated by a private company); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524-25 (C.D. Cal. 2021) (same); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (stating that, *inter alia*, "URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities" are not information in which plaintiffs could have "a reasonable expectation of privacy"). Given that the challenged practices are nearly universal, Plaintiff could not have reasonably expected that his actions were completely private.

**c. *No Reasonable Expectation of Privacy in Product Preferences.***

"Product preference information is not personal information," because such information would be plainly observable were Plaintiffs to have shopped in the physical world rather than online. *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819-20 (E.D. Pa. 2025) (citation omitted). Plaintiff does not allege that he has maintained secrecy in his shopping for adult products, such as by alleging that he has never purchased such products in a brick-and-mortar store. Plaintiff's allegation that in this instance, he ***happened to*** "access[] the Website in private, where no one could see his shopping behavior," (FAC ¶ 85), cannot avoid the growing consensus among courts—including the Ninth Circuit—that because plaintiffs do not have "a reasonable expectation of privacy in this kind of public shopping behavior in the physical world . . . [they do not] have it in the digital world[.]" *Heaven*, 761 F. Supp. 3d at 819–20; *see, e.g.*, *Popa v. Microsoft Corp*., 153 F.4th 784, 791 (9th Cir. 2025) (affirming dismissal because alleged tracking of interactions on a

retail website was comparable to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales").

Nor is there any exception to this general rule for adult products. The recent decision in *DeLong v. PHE, Inc.*, analyzing parallel allegations of privacy violations by another online adult products retailer, is squarely on point. 2025 WL 2447787, at *1, *5-6 (E.D. Pa. Aug. 25, 2025). There, the court held that "[w]ithout more, ***preference for certain products, including those sexual in nature, is not private information***," because such preference "could be freely observed . . . at a brick-and-mortar Adam & Eve store." *Id.* (emphasis added). The *DeLong* court further found that the plaintiff had no reasonable expectation of privacy in his "browsing history, search terms, and purchases on [the] adult website," because it is "widely understood that most online activity is not entirely private."[8] *Id.* at *5-6. With respect to third-party advertising technology specifically, the court reasoned that "[i]t is fundamental to . . . online shopping that [purchase] information . . . is given to the retailer, and it is reasonable to expect that the retailer could be using third-party tracking tools to collect that same essential data," since "online shopping activities are routinely shared with website operators and third parties during normal browsing." *Id.* at *6. This sound reasoning shows why Plaintiff had no reasonable expectation of privacy in his online shopping.

**d.** ***No Reasonable Expectation of Privacy in Order Fulfillment Information.***

Plaintiff alleges that his "full name, home address, email address, and credit card information" is also transmitted to Romantix and Google. (FAC ¶ 82.) "Reading that information in context, it appears Plaintiff entered this information on Defendant's website in connection with ordering" products. *Thomas*, 2024 WL 2060140, at *5 (inferring that uncontextualized disclosure of plaintiff's "name, address, credit card number(s), and billing information" happened in connection with the alleged online orders). This "is not information over which society is prepared to recognize a reasonable expectation of privacy 'because "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."'" *Id.*; *see also Yoon v.*

[8] This is precisely the point Google made in pointing out that "the challenged practices are nearly universal" (Dkt. No. 41 at 19); contrary to Plaintiff's characterization (Dkt. No. 55 at 19), Google made no argument that the "ubiquity of a practice . . . render[s] it lawful[.]"

*Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) (no privacy interest in shipping and billing information). Plaintiff therefore fails to allege any reasonable expectation of privacy.

**3. The Alleged Invasion Is Not "Highly Offensive."**

Determining whether a defendant's actions were "highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive. *Facebook Tracking*, 956 F.3d at 606 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)).

Far from being sufficiently egregious to count as highly offensive, disclosure of ***shopping information*** is quintessential "routine commercial behavior." *Compare, e.g.*, *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 654 (N.D. Cal. 2024) (allowing invasion of privacy claims involving disclosure of "patient status—which falls within the ambit of information protected under HIPAA" to survive a motion to dismiss), *and id.*, No. 3:22-cv-03580-WHO, First Amended Compl., Dkt. No. 22, ¶¶ 32–35 (alleging, *inter alia*, disclosure of patient portal logins, patient-physician communications, lab results, and medical records via the Meta Pixel), *with Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022) (finding Google's tracking of the plaintiffs' commercial searches on third-party apps for "a foot massager, slippers, meal subscriptions, coconut oil, and use of a photo editor" to be "routine commercial behavior"), *aff'd*, 2024 WL 937247. While it may be true that Plaintiff was shopping for items designed for private use, the case law makes clear that online shopping is not a strictly private activity. Therefore, this alleged disclosure of that does not qualify as highly offensive.

Accordingly, Plaintiff has not stated a claim for an invasion of privacy violation.

## V. <u>CONCLUSION</u>

This Court should dismiss Plaintiff's First Amended Complaint without leave to amend.

Dated: January 9, 2026

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
Google LLC