James F. Monagle, SBN 236638
Michael W. Jervis, in *Pro Hac Vice*
Edgar F. Navarrete, SBN 322662
MULLEN COUGHLIN LLC
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
Telephone: (267) 930-1529
Email: jmonagle@mullen.law;
mjervis@mullen.law
enavarrete@mullen.law

Attorneys for Defendant
INNOV8 SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC., and NEXTROLL, INC.,<br><br>Defendants. | Case No.: 5:25-cv-02465-NW<br><br>*Assigned for all purposes to the Honorable Noël Wise, Courtroom 3*<br><br>**DEFENDANT INNOV8 SOLUTIONS, INC.'S NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>**Date**: March 11, 2026<br>**Time**: 9:00 am<br>**Location**: San Jose Courthouse, Courtroom 3, 280 South First Street, San Jose, CA 95113<br><br>Date Filed: March 11, 2025<br>Trial Date: None Set |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 11, 2026 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Noël Wise, in Courtroom 3 of the United States District Court for the Northern District of California, located at 280 S. First Street, San Jose, CA

95113, Defendant, INNOV8 SOLUTIONS, INC. ("Innov8") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing Plaintiff's HENRY BRADLEY ("Plaintiff"), claims against Innov8 as stated in their First Amended Complaint, ECF No. 75, for failure to state claims upon which relief may be granted.

The basis for this Motion is that it is clear from the face of the First Amended Complaint, and the documents referenced therein, that Plaintiff, despite being afforded an opportunity to address deficiencies in his pleadings, failed to adequately plead claims under Section 631(a) of the California Invasion of Privacy Act ("CIPA") and for negligence.

The Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all other materials supporting the Motion or the Reply filed in support thereof, and such, evidence, arguments, and authorities which the Court may consider.

Date: January 9, 2026

**MULLEN COUGHLIN**

By: /s/ Edgar F. Navarrete
James F. Monagle
Michael W. Jervis
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ISSUES TO BE DECIDED ..... 1

III. RELEVANT FACTUAL ALLEGATIONS ..... 2

A. Procedural History ..... 2

B. The Privacy Policy Informs Users That Certain Information May Be Shared With Third Parties ..... 3

C. Plaintiff Offers Limited, Vague Allegations Regarding his Own Activity on the Romantix Website ..... 4

D. Plaintiff's Allegations are Based on "Interception" of a Non-Human Readable Meaningless Alphanumeric String ..... 5

IV. LEGAL CONTENTIONS ..... 6

A. Plaintiff's Complaint Should be Dismissed for Failing to State a Claim ..... 6

1. Plaintiff's Mere Removal of References to the Privacy Policy Does Not Suffice to Plead a Lack of Consent ..... 6

2. Plaintiff's CIPA Cause of Action Against Innov8 is not Adequately Pled ..... 7

a) Plaintiff Does Not Allege Any Communication Was "Intercepted" or "Read" While "In Transit" ..... 9

b) Plaintiff Alleges Only That Secondary Record Data Was Transmitted Not the "Content" or Meaning of His Communications ..... 11

3. Plaintiff's Negligence Cause of Action Against Innov8 is Not Adequately Pled ..... 13

a) Innov8 Does Not Owe Plaintiff a Duty Because They Have No Relationship ..... 13

b) Plaintiff Does Not Allege He Suffered Any Damages ..... 16

V. CONCLUSION ..... 17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ........ 13

*Doe v. Eating Recovery Center LLC*,
__ F. Supp. 3d __, No. 23-cv-05561-VC, 2025 WL 2971090
(N.D. Cal. October 17, 2025) ........ Passim

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) ........ 9

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ........ 14, 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1106 (9th Cir. 2014) ........ 12

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........ 9

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 12

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 16

*McGarry v. Sax*,
158 Cal. App. 4th 983 (2008) ........ 13

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 16

*Regents of Univ. of California v. Superior Ct.*,
4 Cal. 5th 607, (2018) ........ 14

*Sallie Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457 (C.D. Cal. Oct. 21, 2020) ..... 16

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..... 14

*Silver v. Stripe*,
2021 WL 3191752 (N.D. Cal. 2021) ..... 6, 7

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ..... 8

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ..... 9

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ..... 9

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ..... 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..... 12

**Statutes**

Cal. Civ. Code § 3515 ..... 6

Cal. Civil Code § 1798.100 ..... 10

Cal. Pen. Code § 631(a) ..... Passim

Cal. Penal Code § 630 ..... 10

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..... 6, 17

Federal Rules of Civil Procedure 12 ..... 2

## I. INTRODUCTION

Plaintiff continues to assert claims based on a manufactured assertion that his deeply personal information was obtained by Co-Defendants Google and NextRoll when he visited the website of Co-Defendant Romantix, despite clearly demonstrating in his own allegations that the information "obtained" consisted of a meaningless and indecipherable alphanumeric string which reveals nothing about him. The Court rejected those claims when it dismissed his initial Complaint, albeit largely without prejudice, on October 27, 2025. The dismissal was primarily based on the Complaint's failure to plead lack of consent to the alleged activity, in part related to the initial Complaint's reliance upon the Romantix.com privacy policy ("Privacy Policy"), thus acknowledging Plaintiff had seen it. However, the Court allowed leave to amend the Complaint to add additional facts about Plaintiff's interactions with the Privacy Policy.

Plaintiff has now filed an Amended Complaint. However, he has not added any additional facts about the Privacy Policy, when he saw it, or other information relevant to the consent issue. Instead, he simply removes any reference to the Privacy Policy, hoping the parties will forget he relied on it in the first place. As a result, Plaintiff still fails to adequately plead that he did not consent to the alleged disclosures. Consent defeats both claims currently pending against Innov8 in the Amended Complaint, an alleged California Invasion of Privacy Act ("CIPA") violation and negligence.

Even ignoring Plaintiff's consent, his claims against Innov8 fare no better. He fails to demonstrate that the alleged interception falls within the statutory parameters of CIPA. They also do not demonstrate that Innov8, as an e-commerce solutions and service provider, owed Plaintiff a common law duty of care or that he suffered any cognizable damages as required to support his negligence claim.

## II. ISSUES TO BE DECIDED

Whether Plaintiff fails to adequately state a claim for relief.

## III. RELEVANT FACTUAL ALLEGATIONS

Innov8 is a Nevada corporation with its principal place of business in Las Vegas, Nevada. FAC ¶ 11. Innov8 offers its business partners eCommerce services which allow its business partners to market and sell their merchandise online. *Id.* ¶ 15.

### A. Procedural History

Plaintiff Henry Bradley initiated this action – along with now non-party Paul Perez – when he filed a putative class action complaint on March 11, 2025. Innov8 and Co-Defendant Google each filed a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. After the Motion was fully briefed, the Court issued its Order granting both Motions on October 27, 2025. Dkt. 72 ("MTD Order"). The MTD Order dismissed the unjust enrichment claim with prejudice, but the dismissal was otherwise without prejudice. The Court found the failure to adequately allege lack of consent defeated the majority of the causes of action in the original Complaint, including both Counts now asserted against Innov8: alleged violation of CIPA and negligence. MTD Order at 5:2-4. The MTD Order noted that lack of consent is an element of a claim under CIPA § 631(a) and is a complete defense to a negligence claim, therefore those claims are not viable unless lack of consent is pled. *Id.* However, in dismissing the claims without prejudice, the Court stated it would allow Plaintiff to plead details sufficient to develop the lack of consent element, i.e. "additional information about what [Plaintiff] knew of the policy, when [he] knew it, and whether they that information had any effect on [his] decisions related to the site." *Id.* at 4:25-26. The MTD Order also explained that Plaintiffs had failed to plead an economic injury as required to assert a claim under the California Unfair Competition Law ("UCL"). *Id.* Finally, the Court noted unjust enrichment is simply not a cause of action in California. *Id.* at 7:2-4. Unjust enrichment was therefore the sole count dismissed with prejudice in the MTD Order.

On November 17, 2025, Plaintiff Henry Bradley filed an Amended Complaint. *See* FAC, Dkt. 75. The FAC makes relatively limited additional allegations. *Id.* Perhaps more notable is what has been removed by the amendments. Paul Perez is no longer a named plaintiff and the (limited) allegations specific to him have therefore been removed, leaving only Plaintiff Bradley. *Id.* In

addition to removing the dismissed unjust enrichment claim, Plaintiff abandoned both counts asserting claims under the UCL. *Id.* Plaintiff also does not add allegations pertaining to any of the additional information about his interaction with the Privacy Policy. *Id.* Instead, he simply removes his prior references to the Privacy Policy or any mention of it. *Id.* For example, he now includes an identical allegation as was in the initial Complaint regarding a statement about privacy on the Romantix website help page but also removes the previously included part of the paragraph which admitted that the page "links users directly to the privacy policy" following the statement. *Id.* ¶ 29. He also no longer alleges that users "reasonably believe" certain information is confidential because of the Privacy Policy, instead now saying that belief is "based on a variety of factors." *Id.* ¶ 24. As discussed in more detail below, Plaintiff's other amendments include allegations about the relationship between Romantix and Innov8 and "discreet packaging" promised on the Romantix website. *Id.* ¶¶ 18-20, 26-28. Plaintiff also adds allegations about the cookie consent banner on the Romantix website. *Id.* ¶¶ 51-53.

### B. <u>The Privacy Policy Informs Users That Certain Information May Be Shared With Third Parties</u>

The Privacy Policy on Romantix.com is accessible via a prominently displayed link at the bottom of every webpage on the Website.[1] Moreover, as discussed above, Plaintiff's own Complaint relies on the Romantix website help page, which includes information about privacy and a link to the Privacy Policy (even though he has removed the part of his allegation acknowledging that link). *Id.* ¶ 29.

The Privacy Policy informs website visitors that Romantix uses "cookies, web beacons, and other tracking technologies to analyze website traffic, personalize your experience, and serve relevant advertisements." The Privacy Policy also informs visitors that Romantix may share information with trusted providers who assist Romantix with several key web business operations including payment processing, shipping and fulfillment of online orders, marketing analytics, and complying with legal obligations. The Privacy Policy also discloses that information is shared with

[1] https://www.romantix.com

Google and other third-party service providers whose software is used on the Romantix website, provides a brief description of their duties on the Website, and includes links to these service providers' privacy policies.

### C. Plaintiff Offers Limited, Vague Allegations Regarding his Own Activity on the Romantix Website

As the Court noted in its MTD Order, the initial Complaint's allegations regarding the named Plaintiffs' interactions with the website were "scant." MTD Order at 2:25. Plaintiff Bradley's allegations in the FAC are largely the same. Plaintiff continues to allege he visited the Romantix website on multiple unspecified occasions over "several years," and that the last time he visited was in October 2024. FAC. ¶ 81. Plaintiff alleges that during these visits he browsed several items on the Romantix website and ran search queries, which are identified in an exhibit to his initial Complaint. *Id.*. Plaintiff alleges he made one purchase from the Romantix site in November 2021.[2] *Id.* He also claims that, although he "did not notice the cookie popup when he first visited" the Romantix website, at some point he interacted with the consent banner. *Id.* ¶ 87. Plaintiff does not allege how many visits he made to the website before he "noticed" the consent banner, when he first noticed it, or the date(s) on which he did interact with it. *Id.* ¶¶ 85-87. Plaintiff additionally includes the same legal allegations as he did previously, to the effect that his information was improperly "shared," he purportedly did not consent to this sharing, and would not have visited the Romantix website if he knew about the alleged "sharing." *Id.* ¶¶ 88-95.

Plaintiff also does not allege that he received any targeted advertising related to his visits to the Romantix website, despite his allegations that Google and NextRoll obtain the data in question specifically for the purpose of "build[ing] detailed user profiles for analytics, targeted advertising, and other marketing purposes." *Id.* ¶¶ 31, 33.

[2] Given the filing date of March 11, 2025, the purchase date would fall outside

**D. Plaintiff's Allegations are Based on "Interception" of a Non-Human Readable Meaningless Alphanumeric String**

Plaintiff's claims are based on his contention that information is sent from Romantix.com to Co-Defendants Google and NextRoll (collectively "Marketing Defendants"). *See id.* ¶ 37. However, Plaintiff's allegations make clear that the information in question is essentially the following:

POST /g/collect?v=26tid=G-EH4TW7TE77&gtm=45je46c0v9114525211za200zb876540081&_p=17187211395036&gcd=13l3l3l3l1&npa=0&dma=@&tag_exp=0&cid=1149507772.1718629705&ul=en-us&sr=1728×1117&uaa=arm&uab=64&uafvl=Google%2520Chrome%3B125.0.6422.142%7CChromium%3B125.0.6422.142%7CNot.A%252FBrand%3B24.0.0&uamb=0&uam=&uap=macOS&uapv=14.5.0&uaw=0&are=1&frm=0&pscdl=noapi&_s=1&cu=USD&sid=1718720359&sct=3&seg=1&dl=https%3A%2F%2Fwww.romantix.com%2Fsex-toys%2Fc%2Fst44%2Fsex-toys%2Fbdsmfetish%2Fcock-ball-play%3Fsort%3D-relevance&dr=https%3A%2F%2Fwww.romantix.com%2F6&dt=Cock20%26%20Ba11%20Torture%20Toys%2C%20Shop%20CBT%20Toys%20Online%20at%20Romantix&en=page_view&_ee=1&ep.src=rmx&ep.ref=rmx&ep-mref=nomref&ep.sref=nosref&ep.securityStatusText=ANONYMOUS&up.src=rmx&up.ref=rmx&up.mref=nomref&up.sref=nosref&up.securityStatusText=ANONYMOUS&tfd=14577&_z=fetch HTTP/2

FAC ¶ 38.

Plaintiff includes screenshots of similar strings which he alleges were obtained by Google and NextRoll in other paragraphs. *Id.* ¶¶ 38, 46. Those images clearly demonstrate that what Plaintiff alleges was improperly obtained by Google and NextRoll contain nothing more than meaningless strings of letters and numbers. *Id.* Indeed, Plaintiff seemingly recognizes these strings are undecipherable by a human, as he felt the need to highlight a small portion for the reader. *Id.* at ¶¶ 36, 38. Plaintiff repeatedly refers to this information throughout his FAC as "personal" or "protected." For example, Plaintiff claims that (unidentified) "users" of the Romantix website "reveal[] preferences and practices" and might reveal sexual orientation. FAC ¶ 22. Plaintiff seeks to create the impression that such "preferences and practices" are explicitly shared with Google and NextRoll. *See, e.g.*, FAC ¶¶ 54-56. However, he never squares that implication with the meaningless data that his own allegations show was actually "shared" as shown above. FAC ¶¶ 36, 38, 46.

Finally, Plaintiff's claimed injury is essentially an abstract "privacy harm." His only allegation even approaching a tangible harm is that he would not have purchased products from Romantix had he known about the alleged "disclosures." *Id*. at ¶ 94.

## IV. LEGAL CONTENTIONS

### A. Plaintiff's Complaint Should be Dismissed for Failing to State a Claim

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring more than a "sheer possibility," "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must allege a factual basis for each element of each cause of action. *Id.* at 678-79.

#### 1. Plaintiff's Mere Removal of References to the Privacy Policy Does Not Suffice to Plead a Lack of Consent

As this Court correctly noted in its Order Granting Defendants' Motion to Dismiss Plaintiff's initial Complaint, his consent would defeat both causes of action currently asserted against Innov8. MTD Order at 4-5; Cal. Pen. Code § 631(a); Cal. Civ. Code § 3515. Therefore, consideration of consent on a motion to dismiss, and whether Plaintiff has adequately pled facts showing a lack thereof, is appropriate. *Silver v. Stripe*, 2021 WL 3191752, at *4 (N.D. Cal. 2021). Consent has been given when a "reasonably prudent user" would have been aware of the complained of activity, via a privacy policy or other means. *Id.* This Court thus found that Plaintiff's conclusory allegation of lack of consent, in conjunction with other allegations relying on the Romantix Privacy Policy, meant Plaintiff had not sufficiently alleged lack of consent. MTD Order at 4-5. The Court then stated that to plead a viable claim, Plaintiff must "provide additional information about what [he] knew of the policy, when [he] knew it, and whether that information had any effect on [his] decisions related to the site." MTD Order at 4:24-26.

Plaintiff has made no effort to address any of those items in his Amended Complaint. Instead, he has simply removed the references to the Privacy Policy as a basis for his belief that Defendants would "maintain the confidentiality of [his] information" now instead vaguely alleging that belief was "based on a variety of factors." FAC ¶ 24. In short, rather than adding detail to his Amended Complaint, Plaintiff actually ***removes*** it, making his claims more vague and unspecified. Simply removing that allegation from the Amended Complaint cannot change the fact that Plaintiff previously stated he viewed the Privacy Policy and relied upon it, especially where he has not offered any detail about his viewing of that policy, as Ordered by the Court.

Moreover, even if his attempts to ignore the Privacy Policy were viable, Plaintiff's current allegations still imply reliance on the policy and suggest he was familiar with its contents and the alleged "disclosures" at the time he browsed the site. He now seeks to rely on the help page (www.romantix.com/help) of the Romantix site. FAC ¶ 29. In doing so, he asserts that page states Romantix is "committed to protecting your privacy." *Id.* However, he conveniently ignores the fact a link to the Privacy Policy immediately follows that statement – another fact that was included in the original Complaint, and now simply removed from the Amended Complaint without explanation. *Id.* ¶ 25. Put differently, in alleging he relied on this statement on the Romantix help page, Plaintiff is necessarily admitting he saw the link to the Privacy Policy and thus either read it, or purposefully decided to ignore it. However, to borrow the language of *Silver*, a "reasonably prudent user" who was concerned about his privacy would have followed the link to the Privacy Policy that was right in front of him, and reviewed it. *See Silver*, 2021 WL 3191752, at *4.

That Privacy Policy explicitly states that Romantix website usage information is shared with certain partners, including Google. Therefore, even if Plaintiff may simply ignore the factual allegations made in his initial Complaint (which he cannot) he still ends up in the same position with regard to his failure to allege lack of consent.

**2. Plaintiff's CIPA Cause of Action Against Innov8 is not Adequately Pled**

Section 631(a) of CIPA is generally treated as having four distinct subparts or "clauses" which are independent bases for liability. *Doe v. Eating Recovery Center LLC*, __ F. Supp. 3d __,

No. 23-cv-05561-VC, 2025 WL 2971090, *3 (N.D. Cal. October 17, 2025). The first three prohibited behaviors are summarized as (1) intentional wiretapping of a telegraph or telephone wire, (2) attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in activities prohibited under (1) or (2). *Id.* The fourth prohibited behavior under section 631(a) is aiding or conspiring with any person in violating one of three previous clauses. *Id.* Here, the Plaintiff alleges that Innov8 "aided and abetted" the Marketing Defendants in violating section 631(a). FAC ¶ 113.

However, the first clause of 631(a) is not applicable because it pertains only to telephone and telegraph communications, and thus courts have universally held it does not apply in the context of Internet or website activity. *Eating Recovery Center*, 2025 WL 2971090, at *3 (citing *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (collecting cases)). Clause three requires first a violation of one of the first two clauses, and then a subsequent misuse of the illegal gained information. Cal. Pen. Code § 631(a). Therefore, here Plaintiff must first establish that Google or NextRoll violated clause two of CIPA, and then second that Innov8 aided and abetted with them in doing so, in order to show liability against Innov8. Clause two, in its entirety, penalizes one "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." *Id.* As discussed above, Plaintiff's allegations fail in the first instance because he has not alleged a lack of consent. Additionally, the allegations show that any information obtained by a third party was simply stored for further reading, and thus were not read or attempted to be read or learned while in transit. Further, the information in question involved a largely non-human readable URL string consisting of technical and encoded information, not the "content" of any communication.

*a) Plaintiff Does Not Allege Any Communication Was "Intercepted" or "Read" While "In Transit"*

In order to support their CIPA cause of action, Plaintiff must plead that the alleged communications were viewed while "in transit." To do so, a plaintiff must show the defendant "***read or learned*** the contents of a communication ***while the communications were in transit***, or in the process of being sent or received." *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (emphasis added). The "in transit" requirement means the interception must occur "in real time," meaning the third party must intercept the communication the instant the Plaintiff transmitted their communication on the Website. *Heiting v. Taro Pharms. USA, Inc.,* 728 F. Supp. 3d 1112, 1125 (C.D. Cal. 2024); *See also B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) (holding allegation that service "intercepted, viewed, analyzed, and used" health information was too "vague" to establish anyone actually viewed data).

Further, the "in transit" requirement also requires that Plaintiff allege Google and NextRoll attempted to *read and learn* the contents of these communications simultaneously as well. "[T]he phrase 'reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication' in CIPA requires some effort at understanding the substantive meaning of the message, report or communication." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024). Mere allegations that "data is stored or can be accessed" is insufficient to support a plausible interference that the website operator "attempted to read or learn the contents of the communication while in transit." *James v. Allstate Ins. Co.,* 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023).

The Court recently gave careful analysis to the interpretation of this requirement and held the kinds of website analytics tools in question here do not capture information while "in transit." *Eating Recovery Center,* 2025 WL 2971090, at *5-*6. As an initial matter, the Court expressed skepticism as to whether CIPA applies to Internet communications and websites at all:

> [T]here is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated by this case at all. Recall that CIPA was enacted in 1967. Its language—with words like "read" and "intercept" and "in transit"—is ill-

> suited for application to internet communications. The Legislature has never, in over four decades, amended Section 631 to adapt its language to the digital age.[10] And California has since adopted other statutes that more clearly speak to the practice of data sharing. *See* Cal. Civil Code § 1798.100 *et seq.* (California Consumer Privacy Act). To be sure, as Doe notes, CIPA was intended to protect Californians' privacy rights in the face of "the development of new devices and techniques for the purpose of eavesdropping upon private communications." Cal. Penal Code § 630. But using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping. Did the Legislature really intend to subject companies like ERC to criminal liability for using third-party software to track website activity? Did it really mean to criminalize the use of web traffic data? Given the statute's ambiguity and its imposition of criminal liability, perhaps courts should not be so quick to assume that the answer is yes.

*Id.* at *6.[3]

Despite those reservations, the Court assumed CIPA could apply generally and proceeded to analyze the "in transit" requirement, but also noted that the statute must be construed narrowly and generally be read in the Defendant's favor under the rule of lenity, because it is a criminal statute. *Id.* Though it was (and this is) a civil case "the interpretations courts adopt while adjudicating those actions could affect the extent to which people or companies are subject to criminal liability" and therefore require strict construction. *Id.* (collecting cases). Following that principle, the Court first determined that to be "in transit" the communication must be intercepted while traveling "from the person sending the communication to its intended recipient" i.e. between the user and website owner. *Id.* at *5. Thus even data transmitted almost instantaneously to a third party is not captured "in transit" if it is after receipt by the website owner. *See id.* (finding that 0.2 seconds of difference destroys the "in transit" requirement). Perhaps more importantly, the Court also determined that a defendant "must to something more than intercept the communication while it is in transit to be held liable." *Id.* That is, even if a communication is intercepted while "in transit," section 631(a) is not violated if the communication is merely stored to later be read or interpreted. *Id.* Rather, the reading must also take place contemporaneously. *Id.* The analytics tool involved in *Eating Recovery Center* (the Meta Pixel) only initially logged the data received and did not attempt to read it until some time

---

[3] *Eating Recovery Center* ruled on a motion for summary judgment. However, the Court's interpretation of the statutory language

later. *Id.* Therefore the Court held that the "in transit" requirement was not met and dismissed the CIPA claim. *Id.* at *7.

Following the logic of *Eating Recovery Center,* Plaintiff's claim here similarly fails. He alleges only that his communications were made "instantly ***available***" to the third parties. FAC ¶¶ 88-89 (emphasis added). Plaintiff states that when users visit the website third parties "immediately begin ***collecting***" data. *Id.* ¶ 31. He also asserts the conclusory allegation the information is transmitted "in real time." *Id.* ¶ 54. These allegations do not even support a conclusion that the communications were intercepted while in transit, as they do not establish that any third party collected them while between the user and Romantix. More importantly, they do not establish the communications were ***read*** by a third party at all, let alone while "in transit."

Moreover, much of the Complaint undermines the conclusion that anything was "intercepted" while "in transit." For example, Plaintiff asserts that his browsing activity was "tracked" and ***then*** disclosed. *Id.* ¶ 88. Plaintiff also repeatedly makes references to Romantix's alleged "disclosure" of information – which necessarily can occur only after it has been received by Romantix and not still "in transit" to it - rather than an interception by a third party. Plaintiff also repeatedly focuses on what he believes Google "can" do with the information at some unspecified later time – i.e. demonstrating that it does ***not*** view or read the information "in real time" while it is "in transit." *E.g. Id.* ¶¶ 34, 38. Therefore, Plaintiff has not adequately alleged the Marketing Defendants intercepted the communications while these were "in transit" and for this reason too their claim should be dismissed.

*b) Plaintiff Alleges Only That Secondary Record Data Was Transmitted Not the "Content" or Meaning of His Communications*

Section 631(a)'s second clause prohibits "read[ing], or attempt[ing] to read, or to learn the contents or meaning" of a communication. Cal. Penal Code § 631(a). The Northern District has held that "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions, are conceded to be record information

that does not constitute 'content.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023).[4]

Instead, "content" includes "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey.'" *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). *See also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" not content); *Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *3 (S.D. Cal. Nov. 21, 2025) (holding visitors' searches, contacts, and page views, even when associated with a Facebook ID, are not "content").

Plaintiff's allegations fail to demonstrate that the allegedly intercepted information was "content" of a communications with the Romantix site. Plaintiff includes in his Amended Complaint the exact information he claims was "intercepted" via his screenshots. FAC ¶¶ 36, 38, 46. As discussed previously, on their face these screenshots show that the "intercepted" information is a string of encoded text, meaningless to the human eye. *Id.* Plaintiff recognizes this, having felt the need to outline in a red box the part of this string of text he views as readable and interesting. *Id.* Even those isolated items include ASCII HTTP escape codes (e.g. %20 for a space). *Id.* That is, the data Plaintiff himself points to are the exact kind of information *Katz-Lacobe* and *Zynga* held **not** to be content: IP addresses, website titles, page visits, dates and times. Even indulging Plaintiff's highlighting and focusing solely on his preferred part of the largely meaningly string, these are either page titles (i.e. page visits) or search terms – again items *Zynga*, *Katz-Lacobe*, and others have held not to be content.

---

[4] *Katz-Lacabe* addressed the federal wiretap statute, the Electronic Communications Privacy Act ("ECPA"). However, the Ninth Circuit has determined the term "contents" there has identical meaning as in CIPA. *Id.*; *Eating Recovery Center*, 2025 WL 2971090, at *4.

Indeed, Plaintiff's own repeated allegations regarding what Google and NextRoll "can" or "could" do with this information only further demonstrates that the information is not "content." Plaintiff alleges that Google "can link" the information to a user profile if logged in. FAC ¶ 35. He says this "allows" Google to recognize returning users. *Id.* Similarly, "Google can learn" a user's preferences by analyzing the information. *Id.* ¶ 38. That is, Plaintiff concedes the information "captured" by Google is not itself substantive content, but instead metadata which must be further combined with other information and analyzed to determine the "meaning conveyed" in the language of *Zynga*. Accordingly, the FAC fails to demonstrate that Innov8 aided and abetted Google or NextRoll in reading the "content" of Plaintiff's communications.

**3. Plaintiff's Negligence Cause of Action Against Innov8 is Not Adequately Pled**

To state a claim for negligence, a plaintiff must plausibly allege: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett,* 567 F.3d 554, 572 (9th Cir. 2009) (*quoting McGarry v. Sax,* 158 Cal. App. 4th 983, 994 (2008)). Plaintiff fails to allege either that Innov8 specifically has breached any duty owed to him, or that he has any tangible damages – i.e. something beyond his abstract "privacy injury" - which could support his negligence claim.

*a) Innov8 Does Not Owe Plaintiff a Duty Because They Have No Relationship*

In determining whether a duty of care exists between a defendant and a plaintiff, California courts consider:

> "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

*Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 628, (2018).

This position is supported by a recent ruling in the Northern District of California which found that website ***owners*** owe website visitors a duty of care in the context of analytics software installed on websites. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1045 (N.D. Cal. 2025) (emphasis added). In *Shah,* plaintiffs were credit card customers or applicants who brought a class action against Capital One, alleging Capital One unlawfully disclosed their personal and financial information to third parties through tracking technologies on its website. *Id.* at 1041. The Court determined that pursuant to plaintiffs' allegations which alleged they "placed trust in [Capital One] to protect their personal information" were sufficient to demonstrate Capital One owed plaintiffs a duty of care. *Id.* at 1046.

Though in the slightly different context of a data breach, the Northern District has indicated that a third-party owes a duty with respect to protection of personal information only in the context of a "special relationship." *In re Accellion, Inc. Data Breach Litig.,* 713 F. Supp. 3d 623 (N.D. Cal. 2024). *Accellion* involved a class action lawsuit against Accellion, Inc., a cloud software company which developed a file sharing transfer software "used by hundreds of companies, private organization, and government entities," following two data breaches. *Id.* at 630. The plaintiffs alleged their personal information was exposed as a result of the breaches. *Id.* The plaintiffs thus claimed Accellion owed them a duty of care in large part "ar[ising] from Accellion's commitments to its clients." *Id* at 631. In addressing whether a duty existed, the court emphasized that Accellion's "entire business model was built on promising its clients that it provided a platform to securely transfer files." *Id.* at 633. Thus, due to that business model and the fact the plaintiffs and Accellion's customers specifically relied on it to safeguard personal information, the Court found a "special relationship" existed between Accellion and the plaintiffs. *Id.* at 633. Therefore, it held a duty existed. *Id. Cf. Shah*, 768 F. Supp. 3d at 1046 (finding that a consumer lending company owed a duty to its direct customers who used its website).

Plaintiff's allegations here do not substantiate a relationship with Innov8 at all, let alone a "special relationship." Plaintiff's allegations attempts to frame Romantix and Innov8 as the same

entity – despite suing and serving them separately. Plaintiff asserts the legal conclusion that "Romantix and Innov8 own and operate the website" but their actual factual allegations do not explain how they reached that conclusion or provide a support for it. FAC ¶ 1. Plaintiff concedes that he browsed and brought products from a website called "Romantix." *Id.* ¶¶ 1, 81, 88-89, 94-95. Plaintiff also concedes that "Innov8 provides eCommerce solutions to retailers" – i.e. that Innov8 itself is not a retailer. *Id.* ¶ 15. While Plaintiff accurately asserts that Romantix is identified as one of Innov8's "partners" on its website, they agree that Innov8 has several such partners and identifies two other such partners in the image embedded right in their Complaint – both of which also sell adult toys and are therefore clearly competitors of Romantix. *Id.*. ¶¶ 15-16. That is, Plaintiff's own factual allegations demonstrate that Innov8 is an "eCommerce solutions" provider and Romantix is a retailer with whom they have a relationship as consumers and purchasers of products.

Equally as relevant is what Plaintiff does ***not*** allege. He does not assert, as was the case in *Accellion* that Innov8's business is specifically built on protecting the security of personal information. Nor does he allege that Romantix was specifically relying on Innov8 to provide it with privacy protections, the way *Accellion*'s customers were relying on it to provide security. Plaintiff also does not assert that Innov8 ever had possession of information about them or played a role in "disclosing" it to third parties as alleged. Plaintiff's additional allegations in the Amended Complaint are no more availing than those pled in his initial Complaint. He now emphasizes that Innov8 and Romantix are "partners" and are both "responsible" for the website. FAC ¶¶ 18-19. He also alleges Innov8 performs services "with full knowledge of the nature of Romantix's business." *Id.* ¶ 18. That may well be true, but it still does not impose a duty on Innov8 to protect Plaintiff's information. Consider a property owner who leases space to a doctor. The property owner and doctor are undoubtedly partners in the sense they have a business relationship. So too is the property owner responsible for the condition of the office space. However, if an employee of the property owner is mopping the floor and hears a patient say "I am really glad I only have a cold and not something worse," the property owner has no duty to protect that medical information, even though

he is well aware of his tenant's business. Therefore, Innov8 did not owe Plaintiff any duty with respect to the privacy of his information, and for that reason his negligence claim should be dismissed.

*b) Plaintiff Does Not Allege He Suffered Any Damages*

A negligence claims must result in actual damages from the complained of conduct to be viable. *Sallie Holly v. Alta Newport Hosp., Inc.,* 2020 WL 6161457, at *3 (C.D. Cal. Oct. 21, 2020). Thus Plaintiff must allege an "appreciable, nonspeculative, present injury" in order to state a negligence claim. *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012). A Central District Court concluded the alleged disclosure of information by a website owner does not result in compensable damages with respect to a negligence claim. *R.C. v. Walgreen Co.,* 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024). There, the plaintiffs' claims were to the same as those brought by Plaintiff here – they claimed defendant disclosed information about their prescriptions and medical conditions by using analytics tools on its website. *Id.* The plaintiffs alleged a variety of injuries, most notably the loss of privacy itself, being subjected to targeted advertisements, and loss of benefit of the bargain (in the form of purported) overpayment for services obtained from the defendant). *Id.* at 897-98. Looking at each of the plaintiffs' alleged harms in turn, the Court held they were insufficient to support a negligence claim at the pleading stage. *Id.* at 899. Therefore, the Court dismissed the claim. *Id.*

Plaintiff here offers even less as to his supposed damages, seemingly conceding he suffered no real harm outside of an abstract privacy injury, and also that he is simply relying on the statutory damages provision of CIPA. In his negligence count, Plaintiff states only generically that he "sustained damages in a sum to be determined at trial." FAC ¶ 141. Plaintiff's only allegation even close to alleging cognizable harm is that he would not have paid as much for the items he purchased from the Website had he known his information would be "disclosed." *Id.* ¶¶ 94-95. At best, these are the same kind of "loss of benefit of the bargain" allegations that were rejected in *Walgreen.* Accordingly, Plaintiff has no tangible economic damages and for this reason too, this cause of action should be dismissed.

## V. CONCLUSION

For all the foregoing reasons, Innov8 respectfully requests that the Court grant the motion to dismiss Plaintiff's claims against Innov8 pursuant Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff consented to the alleged interceptions and disclosures and therefore cannot assert any claim based on that conduct. Regardless, even if he had not consented, he has failed to show he has viable negligence or CIPA claims for the reasons discussed above. Moreover, Plaintiff has already had his claims dismissed once and was given leave to amend. The fact that his First Amendment Complaint largely ***removes*** relevant factual detail as opposed to adding it demonstrates that Plaintiff is incapable of pleading viable claims. Therefore, Innov8 respectfully requests Plaintiff's First Amended Complaint and all claims against Innov8 be dismissed with prejudice.

Date: January 9, 2026

**MULLEN COUGHLIN**

By: /s/ Edgar F. Navarrete
James F. Monagle
Michael W. Jervis
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 9, 2026, I electronically filed the foregoing **DEFENDANT INNOV8 SOLUTIONS, INC.'S NOTICE OF MOTION & MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** with the United States District Court for the Northern District of California by using the CM/ECF system, which will send a notice of filing to all registered users, including counsel for all parties.

Date: January 9, 2026

**MULLEN COUGHLIN**

By: /s/ Edgar F. Navarrete
James F. Monagle
Michael W. Jervis
Edgar F. Navarrete
Attorneys for Defendant,
INNOV8 SOLUTIONS, INC.