**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,<br><br>Defendants. | Case No. 5:25-cv-02465-NW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [DKT. NO. 87]**<br><br>Judge: Hon. Noël Wise<br>Date: March 11, 2026<br>Time: 9:00 a.m.<br>Dept.: 3 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ISSUES TO BE DECIDED .......... 1

RELEVANT FACTS .......... 2

ARGUMENT .......... 4

I. PLAINTIFF DID NOT CONSENT TO GOOGLE'S EAVESDROPPING .......... 4

II. PLAINTIFF PLAUSIBLY ALLEGES GOOGLE VIOLATES CIPA SECTION 631(a) .......... 8

A. Clause Two .......... 9

1. Google "Attempts to Read or Learn" the "Contents" of Communications .......... 9

2. Google Intercepts and Reads Communications While They Are "in Transit" .......... 12

B. Clause Three .......... 16

C. Google is an Unauthorized Third-Party Eavesdropper .......... 16

III. PLAINTIFF PLAUSIBLY ALLEGES GOOGLE VIOLATES ECPA .......... 18

IV. PLAINTIFF PLAUSIBLY ALLEGES GOOGLE VIOLATES HIS CALIFORNIA COMMON LAW AND CONSTITUTIONAL PRIVACY RIGHTS .......... 20

A. Interacting with Romantix.com Reveals Sexual Preferences, Practices, and Orientation .......... 21

B. Plaintiff Had a Reasonable Expectation of Privacy .......... 21

C. Google's Invasion of Plaintiff's Privacy is Highly Offensive to the Reasonable Person .......... 24

CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**Cases**

*Ahringer v. LoanDepot, Inc.*,
2024 WL 1135683 (C.D. Cal. Feb. 6, 2024) .... 8

*Ambriz v. Google LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .... 16, 17, 18

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .... 19

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) .... 21

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 5, 19, 21, 25

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .... 5

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .... 5, 8

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .... 5

*Casillas v. Six Flags Ent. Corp.*,
--- F. Supp. 3d ----, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) .... 6

*Cody v. Ring, LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 14, 15

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .... 13

*DeLong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) .... 22

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) .... 11, 12, 18

*Doe I v. Google LLC*,
741 F Supp. 3d 828 (N.D. Cal. 2024) .... 11

*Doe v. Call-On Doc, Inc.*, 2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 14, 18

*Doe v. Cnty. of Santa Clara*, 2024 WL 3346257 (N.D. Cal. July 8, 2024) ........ 6

*Doe v. Eating Recovery Center LLC*, 2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ 14

*Doe v. Eating Recovery Ctr. LLC*, --- F. Supp. 3d ----, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 9, 10, 15, 16

*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 18

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 13

*Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ........ 12

*Esparza v. Gen Digital Inc.*, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ........ 13

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 13

*Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 17

*Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 16

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 21, 25

*Gutierrez v. Converse Inc.*, 2024 WL 3511648 (C.D. Cal. July 12, 2024) ........ 15

*Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ........ 25

*Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ........ 14

*Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812 (E.D. Pa. 2025) ........ 23, 24

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) .......... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 5, 20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 9

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sep. 26, 2013) .......... 5, 8

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 21

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 22, 25

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 9

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .......... 12, 18

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 5

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 16, 17

*Krzyzek v. Openx Techs., Inc.*,
--- F. Supp. 3d ----, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 19

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) .......... 12, 14

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 8

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sep. 16, 2024) ........ 14, 25

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) ........ 20

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 13

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) ........ 5, 19

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ........ 5

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........ 25

*Moss v. Resortpass Inc.*,
2025 Cal. Super. LEXIS 83058 (Cal. Super. Ct. Oct. 30, 2025) ........ 16

*N.Z. v. Fenix Int'l Ltd.*,
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025) ........ 16

*Nguon v. Wolf*,
517 F. Supp. 2d 1177 (C.D. Cal. 2007) ........ 22

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ........ 19

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 24

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........ 6, 9

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) ........ 15

*R.C. v. Sussex Publishers, LLC*,
2026 WL 266450 (N.D. Cal. Feb. 2, 2026) ........ 16

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ........ 19

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 17

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 19

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) .......... 18

*Rodriguez v. Google, LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 14

*Roman Cath. Bishop of San Diego v. Super. Ct.*,
42 Cal. App. 4th 1556 (1996) .......... 21

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .......... 25

*Safari Club Int'l v. Rudolph*,
862 F.3d 1113 (9th Cir. 2017) .......... 24

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 5

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) .......... 20

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 18

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 17, 25

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 23

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 13

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) .......... 17

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 23

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 15

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 6, 7, 8, 17

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 10, 15

*Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927 (C.D. Cal. 2015) .......... 22

*Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 22

*Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) .......... 10, 22

*Wilson v. Google LLC*, 2025 WL 901941 (N.D. Cal. Mar. 25, 2025) .......... 17

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 17

**Statutes**

18 U.S.C. § 2510(8) .......... 9

18 U.S.C. § 2511(2)(d) .......... 18

Cal. Penal Code § 631(a) .......... 9, 12

**Rules**

Fed. R. Evid. 201 .......... 7

## INTRODUCTION

Plaintiff's First Amended Complaint now sufficiently alleges he did not consent to Google intercepting and using for profit personally-identifiable information about his sexual preferences, practices, and orientation, which Google learned by eavesdropping on his confidential communications with Romantix.com, an adult product website. Plaintiff communicated his private information to the website prior to noticing its inconspicuous, small-print, bottom-page disclosure that the website uses cookies to improve users' experience. During that time, Plaintiff was unaware of Google's eavesdropping and therefore did not consent to it, instead believing, due to the nature of the website—involving some of the most intimate and private information about a person—and its repeated much more conspicuous promises of discretion and privacy, that his communications were confidential. When he did finally notice the cookie disclosure, because his privacy is important to him, Plaintiff "Decline[d] All" cookies, and believed that was the end of the matter.[1] Despite his rejection of all cookies even for the limited purpose of improving his website experience, however, Google continued to collect his private and personally-identifiable information, adding it to his user profile, and using it to improve targeted advertising. Google leans on Romantix's Privacy Policy, but even if its reliance on materials outside the pleadings were proper, the unpled Privacy Policy falsely represents the information Google collects is not personally identifiable. It is therefore insufficient to put website users on notice of the challenged behavior. Because Plaintiff plausibly pleads his lack of consent to Google's behavior, and otherwise states California and federal wiretapping claims and violations of common law and constitutional privacy rights, Google's motion should be denied.

## ISSUES TO BE DECIDED

1. Whether Google has proven Plaintiff consented to the specific practices he challenges.

2. Where Plaintiff plausibly alleges Google read or attempted to read his communications with Romantix.com while they were in transit, whether he states claims under clause two of Section 631(a) of the California Invasion of Privacy Act ("CIPA").

3. Where Plaintiff plausibly alleges Google used or attempted to use his intercepted communications, whether he states claims under clause three of CIPA Section 631(a).

[1] Plaintiff thus removed allegations regarding the Privacy Policy, not because it "highlight[s] the weakness in [his] claims," Mot. at 7; *see also id.* at 2, 9, but because such allegations are irrelevant to his claims.

4. Whether Plaintiff plausibly alleges Google intercepted his communications for a tortious purpose, such that consent is not a defense to his Electronic Communications Privacy Act ("ECPA") claim.

5. Where sexual practices are inherently private and traditionally protected, whether Plaintiff plausibly states claims for violations of California's common law and Constitutional privacy rights.

## RELEVANT FACTS

"Romantix and Innov8 sell adult toys and other adult products" through the website, Romantix.com (the "website"). Dkt. No. 75, First Am. Compl. ("FAC") ¶ 14. "When consumers browse Romantix.com to shop for and purchase sex toys . . . including when clicking on items or using . . . the built-in search function, they communicate" their "sexual preferences, sexual orientation, sexual practices, and adult product preferences, all of which constitute Private and Protected Sexual Information ('PPSI')." *Id.* ¶ 21. "For example, . . . Romantix.com users are presented with various product categories," "including 'vibrators,' . . . [and] 'fetish,'" among others, *id.* ¶ 22, and "a 'Love Expert' blog" with "articles covering a variety of adult topics," such as "erectile dysfunction, BDSM tips, masturbation," and sexual orientation, *id.* ¶ 23 & n.7 (article titles include "Girl on Girl" and "Male on Male" topics). Running search queries and "[s]electing among these categories" and topics thus "reveals [sexual] preferences and practices and further has the capacity and tendency to reveal users' sexual orientation." *Id.* ¶ 22.

"A person's sexual orientation, preferences, and activities are nearly universally recognized as some of the most private and intimate details about a person." *Id.* ¶ 25. "[D]ue to the extremely sensitive and private nature of the information involved," website "users reasonably believe their communications will remain confidential," *id.* "Defendants also made numerous affirmative representations of privacy and discreteness on Romantix.com," including "a prominent top banner" promising "'DISCREET PACKAGING,'" *id.* ¶ 27, and further representations of "'Discreet Sh[i]pping & Billing for your privacy,'" *id.* ¶ 28. The website FAQ further promises Defendants "are committed to protecting your privacy" and will "NEVER share . . . personal information with anyone." *Id.* ¶ 29.

"Unbeknownst to [website users], however, and constituting a significant violation of their privacy, Romantix and Innov8 allow undisclosed third-parties—Defendants Google and NextRoll . . . —to intercept, read, and utilize for commercial gain consumers' private information about their sexual practices and preferences, gleaned from their activity on Romantix.com." *Id.* ¶ 1; *see also id.* ¶¶ 55-56. Google and

NextRoll intercept users' private information using "trackers embedded in the website," namely "Google Analytics and NextRoll's AdRoll Pixel," which "activate and immediately begin collecting data" "[w]hen users visit Romantix.com," *id.* ¶¶ 31-32; *see also id.* ¶ 35 ("Using embedded scripts in the website's code, every interaction on Romantix.com is logged and transmitted to Google servers.").

Google Analytics "track[s] visitors' actions, via cookies" that "include unique identifiers," "allow[ing] Google to recognize returning users and track their behavior across different websites." *Id.* ¶ 35; *see also id.* ¶ 37 (screenshot showing that "the unique identifying information for a user is sent, without the user's permission, from Romantix.com to Google's servers"). This means "Google can associate that individual (through their unique Google ID) with their specific shopping activity on Romantix.com, what parts of the website they visited, and even what they purchased—meaning . . . Google can learn that user's sexual orientation, preferences, kinks, and other PPSI." *Id.* ¶ 38 (demonstrative screenshot showing Google's interception of a user's PPSI). "Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize and improve targeted advertising. . . . leading to higher click-through rates and, thus, more ad revenue." *Id.* ¶ 40; *see also id.* ¶ 31 (Google "use[s] this data to build detailed user profiles for analytics, targeted advertising, and other marketing purposes"). In sum, the information Google intercepts "without permission, can be ***and is*** used to identify . . . specific consumer[s], track their online activity, and monetize that information in the form of advertising." *Id.* ¶ 39 (emphasis added); *see also id.* ("Google Analytics includes a user login session cookie within the tracker's requests to Google's site," which "makes any such information personally identifiable").

Although the website has "a popup window stating 'This website uses cookies to improve user experience' (the 'cookie popup')," it "is in small font at the bottom-right corner of the screen" where users "can and do disregard it and continue engaging with the website without interacting with the popup at all." *Id.* ¶ 50. But even for those that notice the popup, being informed that "*th[e] website* uses cookies *to improve user experience*," *id.* (emphasis added), does nothing to inform them that *third parties* are intercepting and using their personally-identifiable PPSI for financial gain—and have been since the moment they arrived at the website. Moreover, the choice to opt out of cookies is illusory since Google Analytics "continue[s] to . . . eavesdrop" not only "[w]hen a website visitor makes no selection on the cookie popup," but "***[e]ven when a website visitor selects 'Decline All***,'" *id.* ¶¶ 51-52 (emphasis added). Romantix and Innov8 do not "disclose

all of the specific tracking technologies Romantix.com visitors are subjected to[,] [n]or . . . tell visitors the full purpose or extent of those trackers, including that the pervasiveness and nature of such trackers allow Defendants to collect, share, and use for profit visitors' personally identifying data." *Id.* ¶ 53.

Plaintiff "visited Romantix.com on several occasions over the last several years," including in at least January 2021 and October 2024, where he "browsed certain categories of adult products, . . . typed specific search queries into the website's search bar," and "made . . . purchase[s]," *id.* ¶ 81; *see also* Dkt. Nos. 13-5, 13-7, Compl. Exs. B-C (filed under seal and showing the "Categories Browsed," "Search Terms Queried," and one product "Order" placed by Plaintiff on the website). Plaintiff "transmitted to Romantix and Innov8 (and thus, unwittingly to the [Google and NextRoll]), not only the searches he ran and items he browsed, but also his personally-identifying information, including his full name, home address, email address, and credit card information." FAC ¶ 82. Through Google Analytics and NextRoll's AdRoll embedded on the website, "everything Plaintiff browsed or searched . . . was tracked and disclosed without notice or permission to Google and NextRoll instantly and automatically as it occurred." *Id.* ¶ 88.

Plaintiff was entirely unaware of Defendants' eavesdropping and so did not consent to it. *See id.* ¶¶ 86, 92-93. "Plaintiff did not notice the cookie popup when he first visited the Website," and even "browsed and made purchases . . . on multiple occasions before eventually noticing" it. *Id.* ¶ 87. "When he did" finally notice the popup, "he selected the option to 'Decline All' cookies." *Id.* "Plaintiff reasonably believed his . . . communications . . . were confidential" based on his affirmative "choice to 'Decline All' cookies," as well as "the nature of the Website, including that its use reveals users' PPSI, . . . and the fact that he accessed the Website in private, where no one could see his shopping behavior." *Id.* ¶ 85. Because Plaintiff highly values his privacy, he "would not have visited Romantix.com, interacted with it, or purchased any products from the website," had he known about Google and AdRoll's eavesdropping. *See id.* ¶ 94.

## ARGUMENT

### I. PLAINTIFF DID NOT CONSENT TO GOOGLE'S EAVESDROPPING

As an initial matter, although Google argues that "consent defeats *all* of Plaintiff's privacy-related causes of action," Mot. at 8 (citations omitted and emphasis added), it is wrong "as to Plaintiffs' Wiretap Act claim," since "consent is not a defense because Google allegedly intercepted Plaintiff['s] communications for the purpose of violating other laws," *Brown v. Google LLC*, 525 F. Supp. 3d 1049,

1064 (N.D. Cal. 2021) ["*Brown I*"]. *See infra* Section III. As to Plaintiff's remaining claims, Google "bears the burden to establish consent and, on a motion to dismiss, [is] required to show that the allegations of the complaint establish[] consent as a matter of law." *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ["*Calhoun I*"] ("as 'the party seeking the benefit of the exception,' it is Google's burden to prove consent" (quoting *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sep. 23, 2016))). Google has not carried its burden here.

"In determining consent, courts consider 'whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.'" *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (N.D. Cal. July 22, 2025) ["*GoodRx Holdings*"] (quoting *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ["*Calhoun II*"]). Because consent is "limited to the specific conduct authorized," *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021), for a disclosure to establish consent it "must 'explicitly notify' users of the practice at issue," *Calhoun I*, 526 F. Supp. 3d at 620 (quoting *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sep. 26, 2013), and citing *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014) (for consent, disclosures must have given users notice of the "specific practice" at issue)). This means "[t]he disclosures must have only one plausible interpretation for a finding of consent." *Id.* (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019) ["*Facebook*"]). Thus, "if a reasonable user could have plausibly interpreted the contract language as *not* disclosing that the defendant would engage in particular conduct, then the defendant cannot obtain dismissal of a claim about that conduct . . . on the issue of consent." *Id.* (citation modified; emphasis added); *see also McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (If "language at issue is reasonably susceptible to more than one interpretation . . . the Court cannot decide the consent issue in [defendant's] favor at the motion to dismiss stage." (quotation omitted)).

According to Google, the website's cookie popup is "relevant" because it "discloses to the user that the site uses cookies to improve user experience." Mot. at 3 (header capitalization and emphasis omitted) (citing Corkery Decl. Ex. A); *see also id.* at 6, 9. The popup, however, is insufficient to establish consent for at least three reasons. ***First***, Plaintiff did not initially see it, and "browsed and made purchases from the Website on multiple occasions before eventually noticing" it, FAC ¶ 87. Having not seen the popup, Plaintiff

cannot have been on notice that "[b]y continuing to use the website," he was purportedly "consent[ing] to the cookies, even if [he] d[id] not click 'Accept All,'" Mot. at 3. During that time, Google was intercepting, reading, and using Plaintiff's PPSI without his knowledge or consent. *See Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1357 (S.D. Cal. 2024) (rejecting defendant's argument "that it provided Plaintiffs notice of Carnival's recording policy via a 'Cookie Policy' banner displayed at the bottom of [the] website, and that Plaintiffs constructively assented to the terms of that policy through their continued use of the site" because "Plaintiffs allege that the website does not put Plaintiffs on notice of recording," since "users can interact with Carnival's website without ever reviewing or agreeing to the terms of any purported privacy policy" (citation modified)); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1180 (N.D. Cal. 2024).

***Second***, the popup does not inform users *third parties* are collecting and making profitable use of Plaintiff's personally-identifiable PPSI. That "*th[e] website*" "uses cookies *to improve user experience*," FAC ¶ 50 (emphasis added), does not put Plaintiff—or anyone—on notice that the website is permitting third parties to collect and use in perpetuity PPSI for financial gain, *see id.* ¶¶ 31, 40, 51 (Google adds data to user profiles and thereafter uses it for advertising); *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (no consent where "nothing in the provisions . . . disclose the disclosure of PII, much less [personal health information], to third parties for those third parties' own use" (citation omitted)).

***Third***, when Plaintiff finally did notice the cookie popup, "he selected the option to 'Decline All' cookies," and reasonably believed that selection ensured his privacy. FAC ¶¶ 85, 87. Plaintiff thus affirmatively and expressly "did ***not*** consent to his . . . communications on Romantix.com being shared with" Google and NextRoll. *Id.* ¶ 86 (emphasis added); *see also Casillas v. Six Flags Ent. Corp.*, --- F. Supp. 3d ----, 2025 WL 3684543, at *7-8 (C.D. Cal. Dec. 15, 2025) (finding lack of consent where plaintiff "expressly declined to allow Third Parties' . . . cookies" (record quotation and citations omitted)); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *10 (N.D. Cal. Aug. 29, 2025) ("[r]egardless of whether plaintiffs were aware of a 'default' cookie enabling feature, they selected an option that seemingly allowed them to 'reject' that default," which "contradicts any argument that they had notice of [defendant's] alleged wrongdoing as soon as they visited the websites").

Google complains "Plaintiff does not allege when he clicked 'Decline All' in the cookie popup, what he did on the website" afterward, "or how . . . his refusal of cookies influenced his use of the" website. Mot.

at 11; *see also id.* at 5, 7. But Plaintiff alleges he shopped for adult products on the website both before and after his selection and that—due to the nature of the website and Google's extensive data collection—all such shopping revealed his PPSI. FAC ¶¶ 21-23, 53, 82, 85, 87-88. Google gives no reason Plaintiff need allege a more precise date. Google likewise does not explain why Plaintiff must allege how "his refusal of cookies influenced his use of the" website. *See* Mot. at 11. But he does so by alleging it led him to "reasonably believe[] his . . . communications . . . were confidential," *id.* ¶ 85.

In previously arguing consent, Google noted Plaintiff "never assert[ed] that [he] declined to accept cookies," Dkt. No. 41, Google's Mot. Dismiss Compl. ("First MTD") at 7. It now moves the goal post, arguing "that allegation does not help," Mot. at 2, because the website's Privacy Policy supposedly discloses that "there is a separate mechanism to opt out of Google Analytics," *id.* at 9; *see also id.* at 7, 10. But Google cannot rely on the *March 2025* Privacy Policy. It is not incorporated by reference into the FAC, which does not even mention the policy and alleges Plaintiff last visited the website five months earlier, *id.* ¶ 81. And it is not the proper subject of judicial notice, as the policy is not a *fact*, let alone one not subject to reasonable dispute, *see* Fed. R. Evid. 201; *Turner*, 735 F. Supp. 3d at 1180 (it was "not appropriate" to "incorporate documents to find consent when the documents were not even mentioned in the complaint" and where "the current version . . . may not be the same as the version Plaintiffs" read (citations omitted)). Moreover, if the opt-out procedure was as "clear" as Google claims, Mot. at 9, Google would have raised it in its first Rule 12 motion, rather than rely on Plaintiff's failure to "decline all" cookies to establish consent.

Further, a review of the March 2025 Privacy Policy reveals users are (falsely) told "***Google Analytics does not associate [a user's unique identifier] number with [their] personally identifiable information***," Corkery Decl. Ex. C at ECF p. 15 of 21 (emphasis added), when the information Google intercepts "*is used to identify a specific consumer*" and is "personally identifiable," FAC ¶ 39 (emphasis added); *see also id.* ¶¶ 40, 53, 55, 69-70, 82, 94, 129, 140. The Privacy Policy does not explain Google is using personally identifiable and highly sensitive PPSI. *See* Corkery Decl. Ex. C at ECF p. 15 of 21 (stating "Through our provider, Google Analytics, data is collected about use of our Website," but not mentioning *Google's* use of the data).

Moreover, the Privacy Policy begins by telling users "<u>**Your Data is Important**</u>," and that although "we do collect . . . data *in order to deliver the goods and services you request from us*. . . . we DO NOT

resell any data to third parties FOR ANY REASON" *id.* at ECF p. 9 of 21 (second emphasis added), and again (falsely) reassures users that any data the website discloses to third parties is only "aggregated" data "that does not identify any individual," *id.* at ECF p. 14 of 21. Accordingly, [e]ven if the court could take judicial notice of the [Privacy Policy], there is a factual dispute over whether the [policy] sufficiently notified Plaintiff[] of [Google's] conduct," "which is not appropriate for resolution at the pleadings stage." *See Turner*, 735 F. Supp. 3d at 1181 (citations omitted). The Court should therefore "den[y] the motion to dismiss on the issue of consent," *see id.*; *In re Google Inc.*, 2013 WL 5423918, at *14 ("a reasonable Gmail user who read the Privacy Policies would not have necessarily understood that her emails were being intercepted to create user profiles or to provide targeted advertisements").[2]

Google's cases, *see* Mot. at 10, are inapposite. In *Lakes v. Ubisoft, Inc.*, the plaintiffs "had to create an account prior to making any purchase," "had to check the box next to 'I accept Ubisoft's Terms of Use . . . and Privacy Policy,'" and "every time Plaintiffs made a purchase, they were again presented with the Privacy Policy," 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025). Here, website visitors like Plaintiff "can and do disregard" the popup and "engag[e] with the website without interacting with [it] at all," FAC ¶¶ 50, 87. Nor does *Lakes* involve defendant reassurances against sharing personally identifiable information that are present here. *Compare Lakes*, 777 F. Supp. 3d at 1054-57, *with* FAC ¶¶ 26-29. Similarly, "*Smith*, and [the] recent unpublished decision in *Hammerling v. Google, LLC* . . . are inapposite, because plaintiffs in those cases had not argued" the defendant made an "affirmative statement that it would not receive [the] information" plaintiffs were concerned about. *See Calhoun II*, 113 F.4th at 1149.

## II. PLAINTIFF PLAUSIBLY ALLEGES GOOGLE VIOLATES CIPA SECTION 631(a)

CIPA makes liable anyone "(2) who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," or "(3) who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" *See Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1280 (C.D. Cal. 2024) (quoting Cal.

[2] The Privacy Policy is also silent as to Defendant NextRoll. *See generally* Corkery Decl. Ex. B. Because consent is a fact-specific inquiry on which a defendant bears the burden of proof, and NextRoll does not move to dismiss, but has answered, Dkt. No. 86, Plaintiff's claims against NextRoll should proceed.

Penal Code § 631(a)); *see also* FAC ¶¶ 58, 69, 105-19.

**A. Clause Two**

Google argues Plaintiff's claim under "Clause two . . . fails" because he does not "allege that Google . . . 'read[] or attempt[ed] to read, or to learn' the contents of [his] alleged communications . . . while [they were] in transit," Mot. at 11-12 (citing Cal. Penal Code § 631(a)). Google is wrong.

**1. Google "Attempts to Read or Learn" the "Contents" of Communications**

Google first argues that Plaintiff "fall[s] short of alleging [Google] read[s] contents" of communications since he "allege[s] only collection . . . of content information . . . such as URLs, which does not imply an effort to understand browsing patterns and product interests" or to "learn . . . PPSI," Mot. at 12 (citation modified and internal record citation omitted). Google's argument mischaracterizes and ignores many of Plaintiff's allegations and is otherwise wrong on the merits.

Plaintiff does not allege Google collects only URLs, but also website users' "specific shopping activity," including "what parts of the website they visited, and even what they purchased." FAC ¶ 38 (screenshot showing Google learns when a user "Shop[s]" for "bdsm[ ]fetish" "sex-toys"). It learns what users read too, *id.*, including articles about sensitive health and sexuality topics. *Id.* ¶ 23 & n.7. Through its eavesdropping, Google thus learns "user's sexual orientation, preferences, kinks, and other PPSI." *Id.* ¶ 38.

Moreover, Google is wrong that URLs can never constitute contents. "Contents" means "information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8).[3] While "contents" generally "does not include record information, such as the name, address, and subscriber number or identity of a subscriber or customer, when such information is merely generated in the course of the communication," what might otherwise be "record information may constitute 'contents' where the record is the subject of a communication . . . ." *Price*, 712 F. Supp. 3d at 1360 (citation modified) (record citation omitted) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is

---

[3] "[T]he term 'contents' of a communication under CIPA has the same meaning as the parallel term in the federal Wiretap Act." *Doe v. Eating Recovery Ctr. LLC*, --- F. Supp. 3d ----, 2025 WL 2971090, at *4 (N.D. Cal. Oct. 17, 2025) ["*Eating Recovery Ctr.*"] (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ["*Facebook Tracking*"]).

'content.'"). Thus, as is the case here, "detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications." *Eating Recovery Ctr.*, 2025 WL 2971090, at *4 (citations omitted); *see also Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) ("tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' could convey, among other things, what users were searching for or what they wanted to do on [defendant's] websites," which would "involve the 'contents' of users' communications").

Further, because, "[o]nce intercepted, Google would know from th[e] communication[s]" what "the user was searching for," the intercepted "information is not like the 'outside of an envelope,' revealing the address and name of the recipient, but instead the contents of a letter." *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ["*Brown II*"] ("contents" intercepted where Google "would know from th[e] communication that the user was searching for updates on Russia's war against Ukraine"); *contra* Mot. at 14 (arguing Plaintiff's allegations "are no more suggestive of reading contents than allegations that a mailman associates individual recipients with their letters through unique addressing information" (citations omitted)). "In *Facebook Tracking*, the Ninth Circuit held . . . full-string detailed URLs are distinct from . . . IP addresses," since "URLs, by virtue of including the particular document within a website that a person views, reveal much more information," including "personal interests, queries, and habits." *Brown II*, 685 F. Supp. 3d at 936 (citing *Facebook Tracking*, 956 F.3d at 605). "So too here." *See id.*; FAC ¶¶ 21-22, 31, 38.

Google is also wrong that Plaintiff does not allege its "effort to understand" the communications it intercepts. *See* Mot. at 12. Plaintiff alleges Google "eavesdrop[s] and make[s] use of website users' communications," FAC ¶ 51, "to build detailed user profiles for analytics, targeted advertising, and other marketing purposes," *id.* ¶ 31. Google would be unable to do so without "learn[ing] the contents" of user communications to determine what information to add to their profiles, and which advertisements to target them with. "Plaintiff[], thus, allege[s] sufficiently" that Google "attempted to learn the contents of [his] communications." *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024) (requirement satisfied where plaintiffs "allege Defendants intercepted the Search Terms . . . and redirected them . . . so that they could be utilized by Defendants"); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023) (finding it plausible defendant "intercepted [plaintiff's] messages and harvested data from them, which would almost certainly constitute reading, or attempting to read").

Finally, Google is wrong that Plaintiff's "allegation . . . related to reading contents" are "entirely speculative" because they are "not tethered to Plaintiff" and therefore only "amount[] to guesswork regarding what Google could do with [a] hypothetical person's communications." Mot. at 13. Plaintiff alleges "Google can, ***and does*** . . . track . . . user[s'] browsing behavior, including[] . . . their PPSI, for pecuniary gain in the form of targeted ads." FAC ¶ 41 (emphasis added); *see also id.* ¶ 40 ("Google uses all of the information it collects through Google Analytics and integrates it with Google Ads," leading to "more ad revenue."). Google's tracking begins the moment a user arrives at the website and continues even when a user "Decline[s] All" cookies, as Plaintiff did. *Id.* ¶¶ 31, 51-52, 87. It captures searches made, articles read, and products viewed and purchased. *Id.* ¶¶ 37-38. Plaintiff used the website on multiple occasions, during which he entered sensitive search terms, viewed products, and made purchases. *Id.* ¶¶ 81, 87-88; Dkt. Nos. 13-5, 13-7, Compl. Exs. B-C (filed under seal). Because Plaintiff alleges Google was intercepting *all* user behavior when he used the website notwithstanding that he "Decline[d] All" cookies, he sufficiently alleges his searching, browsing, and purchasing was intercepted by Google.

Plaintiff also sufficiently alleges that his data was "associate[d]" with him "[]through [his] unique Google ID[.]" *See* Mot. at 13; FAC ¶¶ 34-41. Plaintiff's detailed allegations include "screenshot[s] show[ing]" Google's capability and explain that Google Analytics "makes [a user's] information personally identifiable because the cookie value can be associated by Google with the user's account identity." *See id.* ¶¶ 36-38. Thus, Plaintiff's information "can be and ***is used*** to identify" him, "track [his] online activity, and monetize that information in the form of advertising." *Id.* ¶ 39 (emphasis added); *see also id.* ¶ 82 (Plaintiff "transmitted . . . not only the searches he ran and items he browsed, but also his personally-identifying information, including his full name, home address, email address, and credit card information."); *cf. Doe I v. Google LLC*, 2025 WL 1616720, at *2 (N.D. Cal. June 6, 2025) ["*Doe I II*"] ("certainly it would be reasonable to infer that Google, out of anyone, would be able to use an IP address to connect information to an identifiable person").[4]

[4] Relying on a previous decision in *Doe I v. Google LLC* that dealt with the plaintiffs' original complaint, *see* Mot. at 13 (citing 741 F. Supp. 3d 828 (N.D. Cal. 2024)), Google argues "[a]llegations that Google ***could*** endeavor to understand the contents of web communications," do not "lead to a plausible inference that Google did so[.]" Mot. at 13. Google's argument ignores Plaintiff's allegations that Google "***does***" eavesdrop on all website users, and that the information collected "***is used*** to identify" them, *id.* ¶¶ 39, 41 (emphases added). Moreover, an amended complaint alleging "Google obtains communications between provider and

Finally, Plaintiff need not "allege he saw any targeted advertisements related to his purchases after using Romantix's website" to state a claim under CIPA. *See* Mot. at 13 (citations omitted); *see also id.* at 17 (arguing Plaintiff's allegations that Google used his data are "conclusory" because he "fails to allege any [supporting] facts . . . such as by alleging that [he] received targeted advertisements"). Receipt of targeted advertisements would demonstrate affirmative *use* of the collected data by Google, but only the third clause of CIPA Section 631(a) requires that Plaintiff allege Google "[u]s[ed] or attempt[ed] to use," his communications, *see* FAC ¶ 58. *Requiring* Plaintiff to allege he received targeted advertisements would improperly impose a "use" requirement into *all* of Plaintiff's claims, thereby eliminating both the lower "read[] or attempt[] to read" standard in Section 631(a)'s second clause, and the "attempt[] to use" standard in Section 631(a)'s third clause. *See Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656, at *4 (C.D. Cal. Oct. 22, 2025) ("the harm [p]laintiffs allege—the surreptitious collection and transmission of their economically valuable IP addresses for purposes of targeted tracking—is not dependent on whether they actually received targeted advertisements"); *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) ("allegations regarding the manner in which the Insight Tag operates are sufficient to plausibly allege that LinkedIn at least 'read' or 'learned' the information").

Google's cases do not hold otherwise. The *Doe I v. Google* court later upheld plaintiffs' CIPA claims despite that "none of the plaintiffs allege[d] that they received any ads related to their browsing activity." *Doe I II*, 2025 WL 1616720, at *3-4. And in *L.B. v. LinkedIn Corp.*, the court noted that alleging receipt of targeted ads "would *strengthen* the inference that LinkedIn learned about [p]laintiffs from reading their communications," but did not go so far as to require such allegations. *See* 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (emphasis added).[5]

**2. Google Intercepts and Reads Communications While They Are "in Transit"**

"To state a claim under the second clause of [CIPA] Section 631(a), a plaintiff must allege that the

---

patient by collecting URLs, cookies, and substantive events that occur on the providers' webpages and sending them to Google-owned endpoints," and "always collects the Internet Protocol (IP) address of the user when it captures a communication on a webpage," survived dismissal in *Doe I v. Google*, *see Doe I II*, 2025 WL 1616720, at *2. The court concluded "all of the information at issue . . . was identifiable," meaning there was "a reasonable basis to believe the information can be used to identify the individual[s]." *Id.* (quotation and quotation marks omitted). So too here. *See* FAC ¶¶ 35-41.

[5] If necessary, Plaintiff could amend to allege he received targeted ads following his use of the website.

third party listens to a communication 'while the same is in transit . . . ." *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ["*Tenet Healthcare*"] (citation omitted). "While a plaintiff must do more than 'merely restate[ ] the pleading requirement of real time interception,' the standard is not overly burdensome." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (quoting *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (citation modified)). "'[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the "in transit" requirement.'" *Tenet Healthcare*, 789 F. Supp. 3d at 838 (quoting *Esparza v. UAG Escondido A1, Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) ["*UAG Escondido*"]); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024) ("the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous"). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *UAG Escondido*, 2024 WL 559241, at *3 (quoting *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023)).

Plaintiff alleges his "communications on Romantix.com were *instantly available to Google*" because "everything [he] browsed or searched on the website was tracked and disclosed without notice or permission to Google . . . *instantly and automatically as it occurred*." FAC ¶ 88 (emphasis added); *see also id.* ¶ 54 (Google Analytics "track[s] users, collect[s] their data (including PPSI), and transmit[s] that information to [Google] *in real time*." (emphasis added)).[6] And though Google argues Plaintiff's allegations "do not suffice" because he "must plead facts as to ***how*** Google 'simultaneously' intercepted Plaintiff's communications," Mot. at 15, he alleges Google did so "[u]sing embedded scripts in the website's code," FAC ¶ 35, as shown in the FAC's demonstrative screenshot, *see id.* ¶ 38. *Contra D'Angelo*, 2023 WL 7006793, at *8 ("at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured" (citing *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017))). "Because Plaintiff's messages, reports and communications were intercepted

[6] Google's Motion ignores these two key paragraphs in the FAC that are specific to the Defendants, cookies, and pixels at issue here and instead selectively quotes from an introductory paragraph describing how cookies and pixels operate more generally. *See* Mot. at 15 (quoting FAC ¶ 31).

simultaneously as they were being communicated, [Google's] interceptions occurred while the messages, reports and communications were in transit." FAC ¶ 90; *see also id.* ¶ 124 (Google's "interceptions . . occurred concurrently as [Plaintiff] used Romantix.com.").

Contrary to Google's assertion Plaintiff's allegations are a "cursory recitation of the statutory element," Mot. at 15, many courts evaluating similar allegations have found "more than a conclusory allegation" that "communications were intercepted while 'in transit.'" *See Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) ["*Call-On Doc*"] ("The complaint alleges . . . Google Analytics' tracking code . . . sent a simultaneous transmission of [plaintiif's] information to Google" and "that Google . . . intercepted Plaintiff's PII and PHI in real time" (record citations and quotation omitted)); *see also Doe v. Eating Recovery Ctr. LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) ("allegations that Meta's 'transmission of information through the Pixel is instantaneous'" pleaded interception in transit); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) ("in transit" requirement met where "Plaintiffs allege[d] that [defendant's] software 'records consumer interactions with a website in real time'"); *Licea v. Old Navy LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) (rejecting "argu[ment] that Plaintiff's allegations are conclusory" where plaintiff alleged a "'third party . . . secretly intercept[ed] in real time . . . transcripts of Defendant's chat communications with unsuspecting website visitors'" (record citation omitted)).

Plaintiff's allegations distinguish this case from *L.B.*, on which Google relies, *see* Mot. at 14-16, since the plaintiffs in that case "d[id] not explicitly allege th[eir] 'real time' [interception] theory in their complaints," but instead only "argue[d]" it in opposing the defendant's motion to dismiss. *See* 2025 WL 2899514, at *16. And in contrast to Plaintiff's allegations that Google "contemporaneously . . . intercept[s], and transmit[s] the contents" of communications, FAC ¶ 122, the plaintiffs in *Rodriguez v. Google, LLC*, alleged that defendant "log[ged] the data, and *then transmit[ted] a copy later*," *see* 2022 WL 214552, at *1 (N.D. Cal. Jan. 25, 2022) (emphasis added); *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *4 (N.D. Cal. Sep. 16, 2024) (distinguishing *Rodriguez* where plaintiff "alleges that Google simultaneously intercepted class members' data in real time" with Google Analytics (record citations omitted)). And *Cody v. Ring, LLC*, *see* Mot. at 16 (citing 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024)), relied on *Rodriguez* and dealt with far more "vague allegations" than those at issue here, which are supported by a screenshot

showing "how the interception occurs," *see Cody*, 718 F. Supp. 3d at 1001; *see also* FAC ¶ 38.

Google separately argues that "Plaintiff does not allege that any reading or learning occurred ***contemporaneously*** while the challenged information was in transit." Mot. at 16. Not so. Plaintiff alleges Google "make[s] use of website users' communications . . . in real time," FAC ¶ 51, to "utilize and improve targeted advertising," *id.* ¶ 40. "These allegations, drawing all reasonable inferences in Plaintiff['s] favor, plausibly plead Google performs 'some effort at understanding the substantive meaning of the message.'" *See R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *4 (N.D. Cal. June 23, 2025) ["*Sussex Publishers*"] (citation omitted) (plaintiffs alleged "that as users input information into the website, Google 'interpret[s] and select[s] specified portions of the user's interactions and communications to be used for advertising and analytics, all while the transmissions are in transit'" (record quotation omitted)); *see also Valenzuela*, 686 F. Supp. 3d at 977 ("embed[ded] code . . . enables [defendant] to secretly intercept [communications] in real time," and defendant's "business model is to harvest data from communications," "which would almost certainly constitute reading, or attempting to read"); *Ambriz v. Google, LLC*, 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025) ("Plaintiffs have adequately alleged that Google learned the content of their communications while they were in transit," where they "allege that Google . . . 'grabs context of the conversation [to suggest] real-time . . . guidance.'" (citation and record quotations omitted)).

Three of Google's cases are inapposite summary judgment decisions that survived the pleading stage and involve different tracking technologies—an important distinction at the fact intensive stage of summary judgment. *See Eating Recovery Ctr.*, 2025 WL 2971090, at *1 (Meta Pixel); *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *1 (N.D. Cal. Apr. 17, 2025) (TrustedForm's "software tool called 'event listeners'"); *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *2 (C.D. Cal. July 12, 2024) ("Service Cloud . . . [an] application, from Salesforce"); *see also Sussex Publishers*, 2025 WL 1735994, at *5 ("Defendants' reliance on *Torres*" was "not persua[sive]" because "[t]here, the court . . . concluded there was no genuine dispute" that the intercepted information was "collected and stored as a series of *undeciphered* 'events,'" whereas "[h]ere, by contrast, Plaintiffs allege Google—while users are inputting information—'analyzes and interprets the contents of a user's transmissions . . . for its analytics and advertising purposes.'" (citation and record quotations omitted)). The allegations in *N.Z. v. Fenix Int'l Ltd.* were "insufficient" because, unlike here, the plaintiffs did "not adequately allege that [defendants] are reading the[] messages 'in transit,' but

rather . . . after they were received and mirrored from the [platform user]'s inbox." 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025) (citations omitted). Finally, the San Diego Superior Court's Minute Order in *Moss v. Resortpass Inc.*, merely "incorporates [*Eating Recovery Center*'s] analysis into [its] ruling" without analysis, *see* 2025 Cal. Super. LEXIS 83058, at *2 (Cal. Super. Ct. Oct. 30, 2025), but in *Eating Recovery Center*, unlike here, the conduct at issue "indisputably t[ook] place *after* the communication ha[d] already traveled from the website visitor to the website operator," 2025 WL 2971090, at *5 (emphasis added).[7]

**B. Clause Three**

Google's only independent challenges to Plaintiff's claim under clause three of Section 631(a) are to recycle arguments addressed elsewhere, namely, that Plaintiff does not state a "predicate" claim under clause two, and does not allege "how Google 'used' any of the specific information" intercepted. *See* Mot. at 17 (citation omitted). Both should be rejected. *See supra* Section II.A; *infra* pp. 17-18.

**C. Google is an Unauthorized Third-Party Eavesdropper**

CIPA prohibits third parties from eavesdropping on communications between others. There are two lines of cases addressing how to determine whether a software vendor such as Google is a third-party eavesdropper, or is instead a party to the communication. "Some courts require plaintiff to allege that the software vendor actually used the data it obtained for its own, independent purpose. This requirement is usually described as the 'extension test,'" because its aim is to determine whether an entity was "acting as an extension of [a party to the communication], and not as a third party." *Ambriz*, 2025 WL 830450, at *3.

These cases include *Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), on which Google primarily relies. *See* Mot. at 18-20. *Graham*, however, has been heavily criticized because "[t]here are two problems with . . . reading . . . Section 631" to require independent use of the intercepted information by a software vendor. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

> The first is that it interprets the second prong of the statute . . . based on the intentions and usage of the prospective third party. But the third prong of the statute already penalizes "use"—"us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Thus, reading a use requirement into the second prong

[7] Given that *Eating Recover Ctr.* was decided at summary judgment, 2025 WL 2971090, at *1, and the *Moss* court gave no explanation for its adoption of that analysis at the demurrer stage, 2025 Cal. Super. LEXIS 83058, at *2, the Court should ignore Google's undeveloped footnote argument that these decisions support dismissal under the rule of lenity. *See* Mot. at 12 n.5; *see also R.C. v. Sussex Publishers, LLC*, 2026 WL 266450, at *6 (N.D. Cal. Feb. 2, 2026) (refusing to "apply[] the rule of lenity" to CIPA claim).

> would add requirements that are not present (and swallow the third prong in the process). The second problem with this view is that it was not the California Supreme Court's stated rationale in *Ribas*: The *Ribas* Court did not consider the [eavesdropping] wife's friend's intentions or the use to which they put the information they obtained. Instead, it emphasized the privacy concerns at issue with having an "unannounced second auditor" listening in on the call, when Section 631 concerns "the right to control the nature and extent of the firsthand dissemination of [their] statements."

*Id.* (citations omitted) (discussing *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985)); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) ("*Graham* and its progeny are based on a misinterpretation of Section 631 and [the California Supreme Court's decision in] *Ribas* . . . ."). A "'growing number of district courts . . . have reached the same conclusion,'" *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (quoting *Turner*, 735 F. Supp. 3d at 1184 (collecting cases)), and "require only that plaintiff allege the software vendor has the *capability* to use the data for its own purposes." *Ambriz*, 2025 WL 830450, at *3. This "capability test is the better application of the statute and the California Supreme Court's precedent . . . and the Court [should] apply it here." *Id.*; *see also*, *e.g.*, *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 954-55 (E.D. Cal. 2025). Regardless, Plaintiff's allegations are sufficient.

Plaintiff pleads not only that Google had the capability to use Plaintiff's PPSI, but that it does in fact use and independently benefit from it. *See* FAC ¶¶ 31-41, 70, 87, 111, 117. He alleges "[t]he information Romantix.com discloses to Google, without permission . . . ***is used to identify a specific consumer, track their online activity, and monetize that information in the form of advertising***." *Id.* ¶ 39 (emphasis added); *see also id.* ¶ 40 ("Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize, and improve, targeted advertising . . . . leading to . . . more ad revenue."); *id.* ¶ 33 (Google "captur[es] user data to optimize ad performance and increase ad spend").[8]

Google's reliance on the extension test articulated in *Graham* thus "fails because Plaintiff alleges that Google intercepted and used [his] personal information for its own advertising services." *See Wilson v. Google LLC*, 2025 WL 901941, at *5 (N.D. Cal. Mar. 25, 2025) (in case involving Google Analytics,

[8] Google's assertion that Plaintiff's allegations are too "generic[]" and "conclusory" because they "are not individualized by each defendant's practices and/or tethered to Romantix.com," Mot. at 19, ignores entire portions of the FAC that separately detail the practices of each "Marketer Defendant," *see* FAC ¶¶ 34-42 (allegations relating to Google); *id.* ¶¶ 43-49 (allegations relating to NextRoll), and screenshots showing that Google is in fact engaging in the alleged practice on Romantix.com, *id.* ¶¶ 36, 38.

rejecting "Google['s] argu[ment] that it cannot be liable under CIPA because Google is the DMV's vendor, and thus acted as a party to the communications between Plaintiff and the DMV"). Other California district courts considering similar allegations regarding the use of Google Analytics have reached the same conclusion. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1197-98 (N.D. Cal. 2024) ("the complaint alleges that Google *does* read and use Google Analytics data" because "[i]t asserts . . . that Google 'benefits (and profits from)' the use of Google Analytics and 'can use the data it gleans . . . to compile a 'detailed dossier, or digital fingerprint' for each of its users" (record citations omitted)); *Call-On Doc*, 2025 WL 1677632, at *14 (use sufficiently alleged where "Google aggregates the intercepted information . . . which it then uses as a service offered to other companies" (record citation omitted)); *Doe I II*, 2025 WL 1616720, at *3 (plaintiffs "plausibly allege that Google uses the data collected . . . for its own purposes, including by using the information to improve its products" (record citation omitted)).[9] Notably, Google does not dispute its capability to use Plaintiff's PPSI in the manner alleged. *See generally* Mot.; *cf. Ambriz*, 2025 WL 830450, at *3 ("Google does not dispute that it is technologically capable of using the call data for an independent purpose, and this is what the capability test measures." (citation omitted)).

## III. PLAINTIFF PLAUSIBLY ALLEGES GOOGLE VIOLATES ECPA

Google argues Plaintiff's ECPA claim fails because his "allegations and judicially noticeable documents establish that . . . []Romantix[] voluntarily installed Google Analytics on its website," and "no claim can withstand dismissal where 'one of the parties to the communication has given prior consent to such interception,'" Mot. at 20 (citations omitted). As Google acknowledges, however, there is a "crime-tort exception" to the Act's "one-party consent" rule, *see id.*, which provides that a party's consent does not defeat a wiretapping claim where a communication "is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). That exception applies here because Google "employ[ed]

---

[9] Courts have found allegations regarding use of data gathered by other website pixels for purposes of targeting advertising to be sufficient. *See, e.g.*, *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (plaintiff "alleges . . . that LinkedIn received [her] sensitive data and read and used it for its own marketing services"); *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1227 (C.D. Cal. 2024) (plaintiff "alleges that Zendesk 'profit[s] from secretly exploiting the chat data through targeted social media advertising'" (record citation omitted)); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *7 (W.D. Wash. Dec. 19, 2023) ("Plaintiff adequately alleges that Qualtrics used her data for its own benefit" by alleging "'revenue and profits result[ed] from the targeted advertising and other uses of such data by Defendants'").

. . . cookies on Romantix.com with the conscious objective of intercepting users' private communications, including PPSI," FAC ¶ 76, and "[i]nvasion of privacy has been recognized [in California] as a common law tort for over a century." *Matera*, 2016 WL 5339806, at *10 (citation omitted). Google thus "cannot rely on the one party consent rule exception because . . . [its] interception was for the purpose of violating Romantix.com users' right to privacy," FAC ¶ 76. Plaintiff therefore states an ECPA claim. *See Brown I*, 525 F. Supp. 3d at 1068 ("consent is not a defense to Plaintiffs' Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal or tortious act in violation of the Constitution"); *Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) ("defendants' subsequent disclosure of the contents of the intercepted conversations for the alleged purpose of further invading the privacy of plaintiffs' staff satisfies" the exception (emphasis omitted)); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-902 (C.D. Cal. 2024) (applying crime-tort exception where plaintiffs "stated a claim for invasion of privacy"); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (applying crime-tort exception where plaintiffs "allege that Defendants disclosed [intercepted] communications to Meta in violation of various state tort claims and state and federal laws" (internal record citations omitted)).

Google argues "the crime-tort exception fails where there is no 'further impropriety' that is 'separate and independent' from the alleged interception," Mot. at 20 (quoting FAC ¶ 76; case citations omitted). But Plaintiff alleges Google engages in "further impropriety," violating users' privacy by using their confidential information "to build detailed user profiles" and sell "targeted advertising," FAC ¶ 31. Many courts have found such allegations invoke the crime-tort exception. *See Brown I*, 525 F. Supp. 3d at 1067 ("The association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies th[e] [crime-tort] exception." (citation omitted)); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) (plaintiffs "alleged that LiveRamp intercepted their communications for the purpose of 'associating their data with preexisting [identity] profiles' and then preparing that data for sale on LiveRamp's data marketplace," thereby "triggering the crime-tort exception and rendering consent an inapplicable defense" (citations omitted)); *Krzyzek v. Openx Techs., Inc.*, --- F. Supp. 3d ----, 2026 WL 206855, at *4, *8 (N.D. Cal. Jan. 27, 2026) (applying exception where "defendant allegedly amasses information allowing it to compile detailed profiles to sell to advertisers"); *Marden v. LMND Med. Grp.,*

*Inc.*, 2024 WL 4448684 (N.D. Cal. July 3, 2024) (complaint "plausibly alleges tortious intent" where it alleged defendant "purposefully configured its website to intercept individually identifiable information about highly sensitive health issues (such as . . . erectile dysfunction) and intentionally programmed the websites to send the information to Google" (record citations omitted)).

Finally, as already discussed, Google is wrong that "Plaintiff fails to adequately plead" that Google's "interception took place while 'in transit,' and that Google did not act as a party to the underlying communication," Mot. at 21 (citations omitted). *See supra* Sections II.A.2, II.C.

## IV. PLAINTIFF PLAUSIBLY ALLEGES GOOGLE VIOLATES HIS CALIFORNIA COMMON LAW AND CONSTITUTIONAL PRIVACY RIGHTS

"Claims for intrusion upon seclusion and invasion of privacy under the California Constitution have 'similar elements,' and courts therefore 'consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.'" *Gabrielli*, 2025 WL 2494368, at *8 (quoting *Facebook Tracking*, 956 F.3d at 601); *accord Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (intrusion upon seclusion); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994) (invasion of Constitutional right to privacy). "A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 7 Cal. 4th at 35. The first element is thus satisfied by alleging a defendant "obtained unwanted access to data about[] the plaintiff," so long as "the plaintiff had an objectively reasonable expectation of seclusion or solitude in the . . . data source." *Shulman*, 18 Cal. 4th at 232. Moreover, "the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." *Hill*, 7 Cal. 4th at 37. As for the second, "determining offensiveness requires consideration of all the circumstances of the intrusion, including its degree and the intruder's motives and objectives." *Shulman*, 18 Cal. 4th at 236 (internal quotation omitted). "[C]ourts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Gabrielli*, 2025 WL 2494368, at *8 (quoting *Facebook*, 402 F. Supp. 3d at 797). Only if allegations "show no reasonable expectation of privacy" can offensiveness "be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40. Google argues Plaintiff's invasion of privacy claims fail because "information revealing sexual orientation, practices, or preferences is not at issue," Mot. at 21 (header

capitalization and emphasis omitted), and because he inadequately alleges both a reasonable expectation of privacy and a sufficiently serious intrusion, *id.* at 21-25. Google is wrong on all points.

**A. Interacting with Romantix.com Reveals Sexual Preferences, Practices, and Orientation**

Plaintiff alleges browsing Romantix.com reveals private information related to sexuality. *See* FAC ¶¶ 21-23 & n.7; *supra* p.2. He also alleges what he searched for, browsed, and purchased, bolstering those allegations. *See* Dkt. Nos. 13-5, 13-7, Compl. Exs. B-C (filed under seal). And Plaintiff *does* allege Google "read" his communications and "underst[ood] the contents," Mot. at 22, too. *Supra* pp. 10-11, 15.

**B. Plaintiff Had a Reasonable Expectation of Privacy**

The "[p]rivacy . . . guaranteed under the California Constitution . . . . encompasses privacy in one's sexual matters," *Roman Cath. Bishop of San Diego v. Super. Ct.*, 42 Cal. App. 4th 1556, 1567 (1996) (citations omitted); *see also Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) ("information regarding private sexual matters warrants constitutional protection" (citations omitted)); *cf. Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1041 (S.D. Cal. 2023) (finding sufficient threat of future injury to confer standing for injunctive relief where alleged "injury[] include[ed] tracking consumers to 'sensitive locations,' like . . . 'places inferring LGBTQ+ identification'" (record quotation omitted)). Plaintiff alleges he and others using the website expected privacy, FAC ¶¶ 24-30, and that their "reasonable expectation of privacy in their PPSI is" both "intrinsic," and "stems from and is reinforced by [Defendants'] representations," *id.* ¶ 127.[10] These allegations are sufficient. *See Brown I*, 525 F. Supp. 3d at 1076-79 (reasonable expectation of privacy where Google collected "users' Internet activity" that "may reveal[] a user's dating history, [and] a user's sexual interests and/or orientation," and "made representations that could suggest . . . the data would not be shared . . . while the user was in private browsing mode" (record quotation and citation omitted)); *Facebook Tracking*, 956 F.3d at 604 n.7 ("individuals have a reasonable expectation of privacy in . . . 'familiar, political, professional, religious, and sexual associations'" (quotation and citations omitted)); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) (denying motion to dismiss where Google sold "web-browsing information, search terms, and sensitive websites that plaintiffs visited relating

[10] Google claims allegations regarding Defendants' promises of discreet shipping are "a red herring" because a "promise to discretely ship products is not at issue," Mot. at 22 n.7. But they demonstrate Defendants acknowledge the expectation website users have for discretion while shopping online for adult products.

to . . . sexual orientation[] and health"); *Videckis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 934 (C.D. Cal. 2015) ("Plaintiffs had a reasonable expectation of privacy as to their sexual orientation and their intimate activities."); *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal. 2007) (recognizing "a legally protected privacy interest under the California Constitution in information about [one's] sexual orientation" (citation omitted)); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269, 294 (3d Cir. 2016) ["*Nickelodeon*"] (where website stated, "HEY GROWN-UPS: We don't collect ANY personal information about your kids. Which means we couldn't share it even if we wanted to!," but defendant allegedly still "used cookies to track children's web browsing and video-watching habits," a "reasonable factfinder could conclude that Viacom's promise . . . created an expectation of privacy with respect to browsing activity").

Moreover, "courts in this Circuit have repeatedly held that plaintiffs . . . have a reasonable expectation of privacy . . . when they expressly reject . . . the tracking, collection, and/or disclosure of that data." *See Gabrielli*, 2025 WL 2494368, at *6; *see also Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025) (defendant "***itself*** creates a reasonable expectation of privacy when it presents customers with a Cookie Banner permitting them to 'Reject Advertising Cookies'" (record quotation and citations omitted)); *Wiley*, 2025 WL 3654085, at *4 ("Because [defendant] told users that they could opt out of such forms of information collection . . . users of [defendant's] website had a reasonable expectation of privacy with respect to that information."). That's what Plaintiff did. FAC ¶ 87.

Notably, in a similar case involving the use of Microsoft cookies to track user behavior on a different adult product website, goodvibes.com, *Tatola v. Barnaby Ltd.*, No. 3:24-cv-3789-JD (N.D. Cal.), the Honorable James Donato stated, "There's no question in my mind that the sexual practices and proclivities communicated by the user to [the website owner] and then to Microsoft are well within our concepts or traditional notions of privacy." Monroe Decl. Ex. 1 at 3.[11] And because *Tatola* is a California District Court applying California law, the Court should give it more weight than Google's case applying Pennsylvania law. *See* Mot. at 24 (citing *DeLong v. PHE, Inc.*, 2025 WL 2447787, at *1, *5-6 (E.D. Pa. Aug. 25, 2025)).

Moreover, this Court has already recognized the traditionally private nature of the subject matter at

[11] Judge Donato ultimately dismissed the complaint on other grounds not applicable here but granted leave to amend. *See* Monroe Decl. Ex. 1 at 3-5. Following amendment, both defendants answered, presumably as a result of Judge Donato's conviction at the hearing that the plaintiff had viable claims. *See id.* ¶ 3.

issue in permitting Plaintiff to file under seal what he browsed, searched for, and purchased from the website. *See* Dkt. No. 29; *see also* Dkt. No. 13, Seal Mot. at 2-3 (arguing it is "highly-personal information, of the exact type Plaintiff seeks to protect via the lawsuit," the "release of [which] . . . could cause Plaintiffs substantial embarrassment or harassment"). Google did not oppose Plaintiff's seal motion.

None of Google's four arguments warrant a different conclusion. ***First***, Google's assertion that Plaintiff consented, Mot. at 22, fails for reasons already discussed, *supra* Section I. *See Doe v. FullStory Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) ("argu[ment] that an intrusion on seclusion claim" failed "because plaintiff could not have had a reasonable expectation of privacy, given her agreement to the . . . Privacy Policy," was "a gloss on the consent argument addressed above," and was "rejected for the same reasons"). Instead, "[c]ase law supports" finding "that users maintain[] a reasonable expectation of privacy in browsing histories when," as it did here, "Google track[s] URLs after the users denied consent for such tracking," *see Facebook Tracking*, 956 F.3d at 603 (citations omitted); *see also* FAC ¶ 52.

***Second***, Google is wrong that "internet users do not have a reasonable expectation of privacy on consumer-facing websites," Mot. at 23. Case law does "not reflect a blanket presumption that no reasonable expectation of privacy exists when engaging in commercial transactions over the Internet." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024) (citing *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024)). Even Google's case regarding ordering pizza online, Mot. at 23, notes, "[t]his is not to say there can never be a reasonable expectation of privacy over internet activity." *Thomas*, 2024 WL 2060140, at *2. "Google's . . . argument, that California courts have developed a presumption that users do not have an expectation of privacy over internet communications," thus "fails on examination." *See Brown II*, 685 F. Supp. 3d at 937. Instead, "Ninth Circuit law indicates that users . . . have a reasonable expectation of privacy . . . over URLs that disclose either unique 'search terms' or the 'particular document within a website that a person views.'" *Brown II*, 685 F. Supp. 3d at 941 (quotation omitted). That is precisely what Plaintiff alleges here. FAC ¶¶ 35-38, 82, 88.

***Third***, that "such information would be plainly observable were Plaintiff[] to have shopped in the physical world rather than online," Mot. at 23 (citing *Heaven v. Prime Hydration LLC*, 761 F. Supp. 3d 812, 819-20 (E.D. Pa. 2025)), ignores that "Romantix.com consumers choose to shop online, in private, at least in part because it offers them the privacy they would not have at a more traditional brick and mortar store,"

FAC ¶ 30; *see also id.* ¶ 85 ("Plaintiff reasonably believed his . . . communications . . . were confidential," based in part on "the fact that he accessed the Website in private, where no one could see his shopping behavior."). Google argues this is insufficient to "avoid the growing consensus among courts—including the Ninth Circuit—that because plaintiffs do not have 'a reasonable expectation of privacy in this kind of public shopping behavior in the physical world . . . [they do not] have it in the digital world[.]'" Mot. at 23 (quoting *Heaven*, 761 F. Supp. 3d at 819-20; citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)). But there is no such bright-line rule. Instead, the Ninth Circuit has made clear "privacy is relative and, depending on the circumstances, *one can harbor an objectively reasonable expectation of privacy in a public location*." *See Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126 (9th Cir. 2017) (emphasis added); *see also Facebook Tracking*, 956 F.3d at 603 (plaintiffs "adequately alleged a reasonable expectation of privacy" based on "Facebook's allegedly surreptitious and unseen . . . collection" of "a comprehensive browsing history of an individual, no matter how sensitive the websites visited"). Thus, "[t]he nature of the allegedly collected data is . . . important," *Facebook Tracking*, 956 F.3d at 603. Because his communications with Romantix.com involved sensitive PPSI, Plaintiff's expectation of privacy was reasonable.

***Fourth***, Google misses the import of Plaintiff's allegation that his "full name, home address, email address, and credit card information" were intercepted. *See* Mot. at 24 (quoting FAC ¶ 82). Even if, standing alone, this might be considered "order fulfillment information," *id.* (header capitalization and emphasis omitted), Plaintiff alleges it was collected alongside information about his sexual preferences, making such information personally identifiable.

**C. Google's Invasion of Plaintiff's Privacy is Highly Offensive to the Reasonable Person**

Plaintiff also alleges Google's "intrusions . . . are highly offensive to a reasonable person," which is both "evidenced by," Defendants "assur[ing] Romantix.com users that their personally-identifying information and PPSI will not be shared," and "self-evident from the highly personal and protected nature of the information being taken and utilized without consent, including users' sexual orientation and preferences." FAC ¶ 129; *see also id.* ¶¶ 25-29, 56, 134.

Moreover, courts have recognized that "an affirmative misrepresentation" about the privacy of information collected is "significant," and acts as a "'plus' factor . . . in establishing an expectation of privacy or making a privacy intrusion especially offensive," *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036

(N.D. Cal. 2019) (citing *Nickelodeon*, 827 F.3d at 269, 295). That "plus factor" is particularly strong here. Not only do Defendants promise "[d]iscrete [s]h[i]pping . . . for [user] privacy," and that they "NEVER share [their] customers' personal information with anyone," FAC ¶¶ 28-29, but, even if Plaintiff nevertheless read the inconspicuous popup stating "*[t]his website* uses cookies to improve user experience," *id.* ¶ 50 (emphasis added), as disclosing that the cookies allow *third-party* eavesdropping, he expressly "Decline[d] All" such cookies to ensure his privacy, *id.* ¶¶ 85, 87. Yet "[e]ven when a website visitor selects 'Decline All' on the cookie popup, . . . the Google Analytics tracker continues to operate on the Website," *id.* ¶ 52. Continuing to surreptitiously eavesdrop and gather information about users' sexual preferences even after a user declines cookies, particularly when Defendants promise discretion, is plausibly highly offensive. *See Gabrielli*, 2025 WL 2494368, at *9 ("highly offensive" invasion plausible where, "even after [Plaintiff] rejected all cookies, [Defendant] continued to . . . . permit[] the Third Parties to track and collect Plaintiff's private communications" (record citation omitted; citation modified)); *McDonald*, 385 F. Supp. 3d at 1034-35.

Contrary to cases involving the gathering of mere "routine commercial behavior," such as searches for "a foot massager, [or] slippers," *see* Mot. at 25 (quoting *Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022)), courts find allegations of the type of sensitive information intercepted here plausibly pleads a highly offensive intrusion. *See Brown I*, 525 F. Supp. 3d at 1077 (finding Google's tracking and collection of user data while in private browsing mode highly offensive because users "often enable [it] in order to visit especially sensitive websites," such as those that "may reveal: . . . 'a user's sexual interests and/or orientation'" (record quotation omitted)); *Greenley*, 684 F. Supp. 3d at 1047 ("Far from the 'routine collection of personally identifiable information,' Plaintiff alleges the surreptitious collection information that could reveal . . . sexual orientation" (citation and record quotation omitted)); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *10 (N.D. Cal. May 15, 2019) ("one's sexual behavior is of an entirely different character than . . . one's gaming or web browsing history"). In any event, "whether an intrusion is 'highly offensive' requires a fact-intensive inquiry that 'examine[s] all of the surrounding circumstances,'" and is therefore "not susceptible to determination at the pleadings stage." *See Rack Room Shoes*, 2025 WL 1085169, at *3 (quotation omitted); *see also GoodRx Holdings*, 2025 WL 2052302, at *15; *M.G.*, 2024 WL 4219992, at *6.

## **CONCLUSION**

The Court should deny Google's motion.

Dated: February 13, 2026

Respectfully Submitted,

/s/ Melanie R. Monroe
**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***