**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD (SBN 257370)
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE (SBN 275423)
*mmonroe@fmfpc.com*
TREVOR FLYNN (SBN 253362)
*tflynn@fmfpc.com*
ALLISON FERRARO (SBN 351455)
*aferraro@fmfpc.com*
DANIEL E. SACHS (SBN 361027)
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,<br><br>Defendants. | Case No. 5:25-cv-02465-NW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT INNOV8 SOLUTIONS, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [DKT. NO. 88]**<br><br>Judge: Hon. Noël Wise<br>Date: March 11, 2026<br>Time: 9:00 a.m.<br>Dept.: 3 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ISSUES TO BE DECIDED ..... 2

RELEVANT FACTS ..... 2

ARGUMENT ..... 4

I. PLAINTIFF DID NOT CONSENT TO THIRD-PARTY INTERCEPTION OF HIS CONFIDENTIAL COMMUNICATIONS WITH INNOV8 ..... 4

II. PLAINTIFF PLAUSIBLY ALLEGES INNOV8 VIOLATES THE FOURTH CLAUSE OF CIPA SECTION 631(a) ..... 8

A. Plaintiff's Communications Were "Intercepted" and "Read" While "In Transit" ..... 8

B. Innov8 Aided and Abetted the Interception of the "Contents" of Plaintiff's Communications ..... 11

III. PLAINTIFF PLAUSIBLY ALLEGES INNOV8 WAS NEGLIGENT ..... 14

A. Innov8 Owed Plaintiff a Duty of Care ..... 15

B. Plaintiff Suffered Damages as a Result of Innov8's Breach of Duty ..... 17

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 7

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 16

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) ........ 15

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 18

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 13, 14, 18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 5

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 5

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ........ 15

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 13

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ........ 9, 10

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) ........ 15

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ........ 7

*Doe v. Eating Recovery Ctr., LLC*,
--- F. Supp. 3d ----, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 10, 11, 13

*Doe v. Eating Recovery Ctr., LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ 9, 10

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 8

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 5, 7, 12

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 7, 14

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 9

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ........ 8

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ........ 9

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........ 5, 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024, 1047 (S.D. Cal. 2023) ........ 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 13

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ........ 9

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 11, 12

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ........ 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 11, 14, 18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 5, 16

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sep. 26, 2013) ........ 5, 7

*In re Google RTB Consumer Priv. Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) .......... 14

*In re San Francisco 49ers Data Breach Litig.*,
2024 WL 3849336 (N.D. Cal. Aug. 15, 2024) .......... 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11, 12

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) .......... 15

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .......... 5

*Licea v. Old Navy LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 9

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 8

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sep. 23, 2016) .......... 5

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 5

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 11, 12

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 18

*Roman Cath. Bishop of San Diego v. Super. Ct.*,
42 Cal. App. 4th 1556 (1996) .......... 15

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 17

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 4, 5

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 12

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 9, 14

*Sys. Prods. & Sols., Inc. v. Scramlin*,
2014 WL 3894385 (E.D. Mich. Aug. 8, 2014) ........ 12

*Tanner v. Acushnet Co.*,
2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........ 14

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 7

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 11

*Wiley v. Universal Music Grp., Inc.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ........ 11

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ........ 10

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 10

**Statutes**

18 U.S.C. § 2510(8) ........ 11

Cal. Penal Code § 631(a) ........ 8, 15

**INTRODUCTION**

Plaintiff's First Amended Complaint now sufficiently alleges he did not consent to Google or NextRoll intercepting and using for profit information about his sexual preferences, practices, and orientation, which Google and NextRoll learned by eavesdropping on his confidential communications with Romantix.com, an adult product website. Plaintiff communicated his private information to the website prior to noticing its inconspicuous, small-print, bottom-page disclosure that the website uses cookies to improve users' experience. During that time, Plaintiff was unaware of Google and NextRoll's eavesdropping and therefore did not consent to it. Instead, due to the nature of the website—involving some of the most intimate and private information about a person—and its repeated much more conspicuous promises of discretion and privacy, Plaintiff believed that his communications were confidential. When he did finally notice the cookie disclosure, because his privacy is important to him, Plaintiff "Decline[d] All" cookies, and believed that was the end of the matter. Despite his rejection of all cookies even for the limited purpose of improving his website experience, however, Google continued to collect his private and personally-identifiable information, adding it to his user profile, and using it to improve targeted advertising. Innov8 cannot rely on the Romantix website's Privacy Policy to demonstrate consent, since it is not even mentioned in the operative FAC (and therefore is not incorporated by reference), nor does Innov8 request the court take judicial notice of it. Yet even if Innov8's reliance on materials outside the pleadings were proper, the Privacy Policy falsely represents that information Innov8 collects is not personally identifiable and does not include PPSI. It is therefore insufficient to put website users on notice of the challenged behavior. Plaintiff otherwise states a claim under California Invasion of Privacy Act ("CIPA") Section 631(a), clause four, for Innov8's aiding and abetting Google and NextRoll's wiretapping because he plausibly pleads Google and NextRoll intercept, read, and use the contents of Plaintiff's communications while they are in transit. Finally, Plaintiff states a negligence claim against Innov8 (and Romantix)[1] because they have a duty—arising under CIPA, their affirmative promises of discretion and privacy, and the nature of the website—to protect users' privacy, which they breached by allowing Google and NextRoll's eavesdropping, thereby causing Plaintiff damages. The Court should therefore deny Innov8's motion.

[1] Romantix has answered the FAC, Dkt. No. 80, and Plaintiff's claims against it should therefore proceed.

**ISSUES TO BE DECIDED**

1. Whether Innov8 has proven Plaintiff consented to the specific practices he challenges.

2. Where Plaintiff plausibly alleges Innov8 aided and abetted Google and NextRoll's interception, reading, and use of the contents of Plaintiff's communications while they were in transit, whether he states a claim against Innov8 under clause four of Section 631(a) of CIPA.

3. Where Plaintiff was damaged by Innov8's breach of its duty to safeguard his highly sensitive and personally-identifiable information, whether Plaintiff plausibly states a negligence claim.

**RELEVANT FACTS**

"Romantix and Innov8 own and operate the website," Romantix.com. Dkt. No. 75, First Am. Compl. ("FAC") ¶ 1. "When consumers browse Romantix.com to shop for and purchase sex toys . . . including when clicking on items or using . . . the built-in search function, they communicate" their "sexual preferences, sexual orientation, sexual practices, and adult product preferences, all of which constitute Private and Protected Sexual Information ('PPSI')." *Id.* ¶ 21. "[D]ue to the extremely sensitive and private nature of the information involved," website "users reasonably believe their communications will remain confidential," *id.* ¶ 25. "Unbeknownst to [website users], however, and constituting a significant violation of their privacy, Romantix and Innov8 allow undisclosed third-parties—Defendants Google and NextRoll . . . —to intercept, read, and utilize for commercial gain consumers' private information about their sexual practices and preferences, gleaned from their activity on Romantix.com." *Id.* ¶ 1; *see also id.* ¶¶ 55-56. Google and NextRoll intercept users' private information using "trackers embedded in the website," namely "Google Analytics and NextRoll's AdRoll Pixel," which "activate and immediately begin collecting data" "[w]hen users visit Romantix.com," *id.* ¶¶ 31-32; *see also id.* ¶ 35 ("Using embedded scripts in the website's code, every interaction on Romantix.com is logged and transmitted to Google servers.").

Google Analytics "track[s] visitors' actions, via cookies" that "include unique identifiers," "allow[ing] Google to recognize returning users and track their behavior across different websites." *Id.* ¶¶ 34-35; *see also id.* ¶ 37 (screenshot showing that "the unique identifying information for a user is sent, without the user's permission, from Romantix.com to Google's servers"). This means "Google can associate that individual (through their unique Google ID) with their specific shopping activity on Romantix.com, what parts of the website they visited, and even what they purchased—meaning . . . Google can learn that

user's sexual orientation, preferences, kinks, and other PPSI." *Id.* ¶ 38 (screenshot showing Google's interception of a user's PPSI). "Google uses all of the information it collects through Google Analytics and integrates it with Google Ads, allowing Google to utilize and improve targeted advertising. . . . leading to higher click-through rates and, thus, more ad revenue." *Id.* ¶ 40; *see also id.* ¶ 31 (Google "use[s] this data to build detailed user profiles for analytics, targeted advertising, and other marketing purposes"). In sum, the information Google intercepts "is used to identify . . . specific consumer[s], track their online activity, and monetize that information in the form of advertising." *Id.* ¶ 39; *see also id.* ("Google Analytics includes a user login session cookie within the tracker's requests to Google's site," which "makes any such information personally identifiable").

NextRoll's "AdRoll utilizes both a pixel and cookies to monitor user activity, including what pages users view, what products they click on, what they search for, whether they add items to their cart, and what they buy." *Id.* ¶ 43; *see also id.* ¶ 46 ("screenshot show[ing] . . . user's search for a specific category of adult products"). AdRoll "consistently identifies the same user," so that "when a user provides personally-identifying information, like their name, email address, home address, or credit card information, when creating an account or purchasing items, AdRoll will track that person on any other website embedded with AdRoll." *Id.* ¶ 45. NextRoll uses data it collects "to create personalized ad experiences, analyze ad performance to refine ad targeting strategies, and associate user activity across different websites." *Id.* ¶ 47; *see also id.* ¶ 48 ("NextRoll's entire business model is selling its advertising services to third parties, framed as enhancing online advertising strategies. By using cookies and tracking pixels . . . NextRoll gathers this information, including the PPSI associated with unique individuals, for its own pecuniary gain.").

Although the website has "a popup window stating '[t]his website uses cookies to improve user experience' (the 'cookie popup')," it "is in small font at the bottom-right corner of the screen" where users "can and do disregard it and continue engaging with the website without interacting with the popup at all." *Id.* ¶ 50. But even for those who notice the popup, being informed that "*th[e] website* uses cookies *to improve user experience*," *id.* (emphasis added), is not the same as being informed *third parties* are intercepting and using their personally-identifiable PPSI for financial gain—and have been since the moment they arrived at the website. Moreover, the choice to opt out of cookies is illusory since Google Analytics "continue[s] to . . . eavesdrop" not only "[w]hen a website visitor makes no selection on the cookie popup," but "***[e]ven when***

***a website visitor selects 'Decline All***,'" *id.* ¶¶ 51-52 (emphasis added). Romantix and Innov8 do not "disclose all of the specific tracking technologies Romantix.com visitors are subjected to[,] [n]or . . . tell visitors the full purpose or extent of those trackers, including that the pervasiveness and nature of such trackers allow Defendants to collect, share, and use for profit visitors' personally identifying data." *Id.* ¶ 53.

Plaintiff "visited Romantix.com on several occasions over the last several years," including in at least January 2021 and October 2024, where he "browsed certain categories of adult products, . . . typed specific search queries into the website's search bar," and "made . . . purchase[s]," *id.* ¶ 81; *see also* Dkt. Nos. 13-5, 13-7, Compl. Exs. B-C (filed under seal and showing the "Categories Browsed," "Search Terms Queried," and one product "Order"). Plaintiff "transmitted to Romantix and Innov8 (and thus, unwittingly to [Google and NextRoll]), not only the searches he ran and items he browsed, but also his personally-identifying information, including his full name, home address, email address, and credit card information." FAC ¶ 82. Through Google Analytics and NextRoll's AdRoll embedded on the website, "everything Plaintiff browsed or searched . . . was tracked and disclosed without notice or permission to Google and NextRoll instantly and automatically as it occurred." *Id.* ¶ 88.

Plaintiff was unaware of Google and NextRoll's eavesdropping and so did not consent to it. *See id.* ¶¶ 86, 92-93. "Plaintiff did not notice the cookie popup when he first visited the Website," and even "browsed and made purchases . . . on multiple occasions before eventually noticing" it. *Id.* ¶ 87. "When he did" finally notice the popup, "he selected the option to 'Decline All' cookies." *Id.* "Plaintiff reasonably believed his . . . communications . . . were confidential" based on his "choice to 'Decline All' cookies," as well as "the nature of the Website, including that its use reveals users' PPSI, . . . and the fact that he accessed the Website in private, where no one could see his shopping behavior." *Id.* ¶ 85. Because Plaintiff highly values his privacy, he "would not have visited Romantix.com, interacted with it, or purchased any products from the website," had he known about Google and NextRoll's eavesdropping. *See id.* ¶ 94.

## ARGUMENT

### I. PLAINTIFF DID NOT CONSENT TO THIRD-PARTY INTERCEPTION OF HIS CONFIDENTIAL COMMUNICATIONS WITH INNOV8

Innov8 "bears the burden to establish consent and, on a motion to dismiss, [is] required to show that the allegations of the complaint establish[] consent as a matter of law." *See Shah v. Fandom, Inc.*, 754 F.

Supp. 3d 924, 931 (N.D. Cal. 2024); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ["*Calhoun I*"] ("as 'the party seeking the benefit of the exception,' it is Google's burden to prove consent" (quoting *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sep. 23, 2016))). Innov8 has not carried its burden here.

"In determining consent, courts consider 'whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization.'" *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (N.D. Cal. July 22, 2025) ["*GoodRx Holdings*"] (quoting *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ["*Calhoun II*"]). Because consent is "limited to the specific conduct authorized," *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021), for a disclosure to establish consent it "must '*explicitly notify*' users of the *practice at issue*," *Calhoun I*, 526 F. Supp. 3d at 620 (emphasis added) (quoting *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sep. 26, 2013), and citing *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014) (for consent, disclosures must have given users notice of the "specific practice" at issue)). This means "[t]he disclosures must have only one plausible interpretation for a finding of consent." *Id.* (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019) ["*Facebook*"]). Thus, "if a reasonable user could have plausibly interpreted the contract language as *not* disclosing that the defendant would engage in particular conduct, then the defendant cannot obtain dismissal of a claim about that conduct . . . on the issue of consent." *Id.* (citation modified; emphasis added); *see also McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) (If "language at issue is reasonably susceptible to more than one interpretation . . . the Court cannot decide the consent issue in [defendant's] favor at the motion to dismiss stage." (quotation omitted)).

Innov8's consent argument depends entirely on the website's Privacy Policy, *see* Dkt. No. 88, Innov8's Mot. Dismiss ("Mot.") at 6-7, which is not alleged in the FAC, nor does Innov8 request judicial notice of it. For that reason alone, Innov8 has failed to carry its burden to prove Plaintiff's consent. And although *Google* has requested judicial notice of a March 2025 Privacy Policy, that request should be denied for the reasons explained in Plaintiff's opposition to Google's request. *See* Dkt. No. 94-3, Google RJN Opp at 3-7; *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 & n.4 (N.D. Cal. Aug. 22, 2023). Even considering the Policy, however, Innov8 has not come close to carrying its burden of establishing Plaintiff's

consent to Google and NextRoll intercepting and using in perpetuity for financial gain his personally identifiable PPSI.

The Privacy Policy "is accessible via a . . . link at the bottom of" the website in a small popup window, Mot. at 3, at the end of a fine-print paragraph explaining that "[t]h[e] website uses cookies to improve user experience," Dkt. No. 87-2, Corkery Decl. Ex. A, ECF p. 7 of 21. Although Innov8 acknowledges it in an earlier section identifying "relevant factual allegations," Mot. at 2 (header style omitted), in arguing consent, Innov8 ignores entirely that, since the "the cookie popup is in small font at the bottom-right corner of the screen," FAC ¶ 50, "Plaintiff did not notice [it] when he first visited the Website," and even "browsed and made purchases . . . on multiple occasions before eventually noticing" it, *id.* ¶ 87. "When he did" finally notice the popup, "he selected the option to 'Decline All' cookies," *id.*, and believed that was the end of the matter. There was thus no reason for him to click on the link to "Read More" about the "cookie policy," Corkery Decl. Ex. A, ECF p. 7 of 21, since he had already "Decline[d] All" cookies. Likewise, Plaintiff did not "ignore" the "link to the Privacy Policy" on the "website help page," Mot. at 7, but rather believe it irrelevant to him—the same reason he removed the allegations regarding the content of the Privacy Policy from the FAC.

Even if Plaintiff alleged he read the Privacy Policy, however, it still would not have put him on notice of the specific conduct challenged here. First, the Privacy Policy reveals users are (falsely) told "***Google Analytics does not associate [a user's unique identifier] number with [their] personally identifiable information***," Corkery Decl. Ex. B at ECF p. 15 of 21 (emphasis added), when the information Google intercepts "*is used to identify a specific consumer*" and is "personally identifiable," FAC ¶ 39 (emphasis added); *see also id.* ¶¶ 40, 53, 55, 69-70, 82, 94, 129, 140. The Privacy Policy does not explain Google is using personally identifiable and highly sensitive PPSI. *See* Corkery Decl. Ex. B at ECF p. 15 of 21 (stating "Through our provider, Google Analytics, data is collected about use of our Website," but not mentioning *Google's* use of the data or that it is personally identifiable and includes PPSI).

The Privacy Policy is silent regarding NextRoll. The general statement that Innov8 "may disclose . . . aggregated and other information about our users *that does not identify any individual*," Corkery Decl. Ex. B at ECF p. 14 of 21 (emphasis added), does not come close to disclosing the challenged conduct, *i.e.* that Plaintiff's personally identifiable and extremely private sexual information would be intercepted and

used for financial gain by NextRoll. *See Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *7 (N.D. Cal. July 8, 2024) (although "disclosures may . . . indicate that some personally identifiable information might be disclosed 'typically' in aggregated form for defendant's purposes[,] . . . nothing in the provisions . . . disclose the disclosure of PII, much less [personal health information], to third parties for those third parties' own use" (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) ["*Meta Platforms*"])). Notably, NextRoll has not moved to dismiss.

Moreover, the Privacy Policy says "**Your Data is Important**," and that although "we do collect . . . data *in order to deliver the goods and services you request from us*. . . . we DO NOT resell any data to third parties FOR ANY REASON," Corkery Decl. Ex. B at ECF p. 9 of 21 (second emphasis added). "A reasonable user reading these broad disclosures . . . about the general use of the tracking technologies on [Romantix.com], when reading them together with the portions . . . that specifically state that [Innov8 and Romantix] will not share that data, and . . . promises . . . that [Innov8 and Romantix] would not share its users' [personally-identifiable] information . . . would reasonably think they were not consenting to the sharing and interception of sensitive [sexual] information." *See GoodRx Holdings*, 2025 WL 2052302, at *9 (involving medical information) (citation omitted). Accordingly, "[e]ven if the court could take judicial notice of the [Privacy Policy], there is a factual dispute over whether the [policy] sufficiently notified Plaintiff[] of [Google or NextRoll's] conduct," "which is not appropriate for resolution at the pleadings stage." *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1181 (N.D. Cal. 2024) (citations omitted). The Court should therefore "den[y] the motion to dismiss on the issue of consent," *see id.*; *In re Google Inc.*, 2013 WL 5423918, at *14 ("a reasonable Gmail user who read the Privacy Policies would not have necessarily understood that her emails were being intercepted to create user profiles or to provide targeted advertisements"); *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (privacy policy that the defendant argued "clearly informs visitors that [defendant] uses analytics technologies to collect users' information," and "that their information may be shared with third parties for various purposes," but "also promis[ing] that its site and [plaintiff's] entries are '100% secure' and that it will 'never sell your information,'" created "a question of fact that cannot be resolved at th[e] [motion to dismiss] stage" (record quotations omitted)); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (CIPA "claims will not be dismissed . . . based on consent" where the "Privacy Policy disclosed some

use of some tracking features," but other "disclosures and assertions indicate[d] that [defendant] would not disclose (or sell or use for marketing) users' personal information").

## II. PLAINTIFF PLAUSIBLY ALLEGES INNOV8 VIOLATES THE FOURTH CLAUSE OF CIPA SECTION 631(a)

It is a violation of the fourth clause of CIPA Section 631(a) to "aid[], agree[] with, employ[], or conspire[] with any person or persons to," "without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . ." Cal. Penal Code § 631(a); *see also* FAC ¶¶ 58-59, 66. Plaintiff alleges "Innov8 willfully disclosed [Plaintiff's] . . . communications with Google and NextRoll through the [challenged] cookies and trackers" and "[b]y doing so . . . Innov8 willfully aided and permitted" Google and NextRoll, "each a third-party, to read and learn of . . . [the] communications between . . . Innov8, on the one hand, and California Subclass Members, including Plaintiff, on the other," *id.* ¶ 113, "while the messages, reports and communications were in transit," *id.* ¶ 90. Plaintiff thus adequately alleges that Innov8 aided and abetted Google and NextRoll in violating CIPA and therefore states a claim against Innov8 under clause four of CIPA Section 631(a).

In addition to its arguments regarding consent, which fail for reasons discussed, *supra* Section I, Innov8 argues the predicate violation by Google and NextRoll, supporting the clause four claim against Innov8, is insufficiently pleaded for two reasons: (1) "Plaintiff does not allege any communication was 'intercepted' or 'read' while 'in transit,'" Mot. at 9 (header formatting omitted), and (2) "Plaintiff alleges only that secondary record data was transmitted not the 'content' or meaning of his communications,'" *id.* at 11 (same). Both arguments fail.

### A. Plaintiff's Communications Were "Intercepted" and "Read" While "In Transit"

"While a plaintiff must do more than 'merely restate[] the pleading requirement of real time interception,' the standard is not overly burdensome." *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024) (quoting *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (citation modified)). "'[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the "in transit" requirement.'" *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (quoting *Esparza v. UAG Escondido A1 Inc.*,

2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) ["*UAG Escondido*"]); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024) (explaining that "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous" (record citation omitted)). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *UAG Escondido*, 2024 WL 559241, at *3 (quoting *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023)).

Plaintiff alleges "everything [he] browsed or searched on the website was tracked and disclosed without notice or permission to Google and NextRoll instantly and automatically as it occurred." FAC ¶ 88; *see also id.* ¶¶ 54 (Google Analytics and AdRoll "track users, collect their data (including PPSI), and transmit that information to [Google and NextRoll] *in real time*." (emphasis added)); *id.* ¶ 122 (Google Analytics and AdRoll are "design[ed] and program[ed] . . . to *contemporaneously* monitor, intercept, and transmit the contents of electronic communications that Plaintiff and Class Members sent to Romantix.com" (emphasis added)); *id.* ¶ 124 (Google and NextRoll's "interception of [website visitors'] private communications with Romantix.com. . . . occurred concurrently as [visitors] used Romantix.com.") "Because Plaintiff's messages, reports and communications were intercepted simultaneously as they were being communicated, [Google and NextRoll's] interceptions occurred while the messages, reports and communications were in transit." *Id.* ¶ 90.

Contrary to Innov8's assertion that Plaintiffs' allegations are "conclusory" *see* Mot. at 11, many courts have found such "allegations . . . sufficiently ple[a]d that [the defendant] intercepted . . . communications 'in transit' as required under § 631(a)." *See Doe v. Eating Recovery Ctr., LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024) ["*Eating Recovery Ctr. I*"] (citation omitted) (finding "multiple allegations that Meta's 'transmission of information through the Pixel is instantaneous'" sufficient to allege communications were intercepted in transit); *see also Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) ("in transit" requirement met where "Plaintiffs allege[d] that [defendant's] software 'records consumer interactions with a website in real time'" (record citation omitted)); *Licea v. Old Navy LLC*, 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023) (rejecting "argu[ment] that Plaintiff's allegations are conclusory and require more factual support" where plaintiff alleged "'at least one third party . . . secretly

intercept[ed] in real time, eavesdrop[ped] upon, and retain[ed] transcripts of Defendant's chat communications with unsuspecting website visitors'" (record citation omitted)); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953 (N.D. Cal. 2024) ("in transit" requirement met when "[t]he reasonable inference here, because Salesforce 'apparently receives the chat messages either before or simultaneously with' its clients—the intended recipients, is that Salesforce intercepts these messages" (quoting *D'Angelo*, 2023 WL 7006793, at *8)).

None of the allegations Innov8 cites "undermine[] the conclusion that [Plaintiff's data] was 'intercepted' while 'in transit,'" as it claims, Mot. at 11. Data being "tracked," *see id.*, does not preclude it from simultaneously being disclosed as it is communicated. Google and NextRoll are tracking the data in real time, as it is being transmitted. Moreover, that Innov8 and Romantix are "disclos[ing]" the data to Google and NextRoll, is a reference to their role in installing the offending Google Analytics and AdRoll on the website, *i.e.* in aiding and abetting Google and NextRoll's eavesdropping, not a reference to the timing or order of events, as Innov8 argues, *see* Mot. at 11.

Innov8's reliance on *Doe v. Eating Recovery Center, LLC*, is misplaced. *See* Mot. at 9-11 (citing --- F. Supp. 3d ----, ----, 2025 WL 2971090, at *5-6 (N.D. Cal. Oct. 17, 2025) ["*Eating Recovery Ctr. II*"]). That decision was at summary judgment, based on the *undisputed* fact that "event data [wa]s transmitted to Meta about 0.2 seconds after the visitor's action is transmitted to the website." *Id.*, at *5. At the motion to dismiss stage, the *Eating Recovery Center* court upheld allegations substantively identical to those in Plaintiff's FAC. *See Eating Recovery Ctr. I*, 2024 WL 2852210, at *1 (alleging "Meta's 'transmission of information through the Pixel is instantaneous'"). The case also involved a different tracking technology (Meta's Pixel), *id.*, and so its factual findings are irrelevant here.

Innov8 is also wrong that Plaintiff does not allege "some effort at understanding the substantive meaning of the message, report, or communication." Mot. at 9 (quoting *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024)). Google and NextRoll do not merely store data to be accessed later, *see id.*, but instead intercept and use that data in real-time to send users targeted advertising. FAC ¶¶ 31, 40, 47. Google and NextRoll would be unable to do so without "learn[ing] the contents" of user communications to determine which advertisements to target them with. "Plaintiff[], thus, allege[s] sufficiently" that Google and NextRoll "attempted to learn the contents of [his] communications." *See Heerde v. Learfield Commc'ns,*

*LLC*, 741 F. Supp. 3d 849, 863 (C.D. Cal. 2024) (requirement satisfied where plaintiffs "allege Defendants intercepted the Search Terms . . . and redirected them . . . so that they could be utilized by Defendants"); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023) (finding it plausible defendant "intercepted [plaintiff's] messages and harvested data from them, which would almost certainly constitute reading, or attempting to read").

**B. Innov8 Aided and Abetted the Interception of the "Contents" of Plaintiff's Communications**

"Contents" means "information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8).[2] Thus, while "contents" generally "does not include record information, such as the name, address, and subscriber number or identity of a subscriber or customer, when such information is merely generated in the course of the communication," "record information may constitute contents where the record is the subject of a communication . . . ." *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1360 (S.D. Cal. 2024) (citation modified) (record citation omitted) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) ["*Zynga*"]). Thus, for example, "detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications." *Eating Recovery Ctr. II*, 2025 WL 2971090, at *4 (citations omitted); *see also Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (the "tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' could convey, among other things, what users were searching for or what they wanted to do on UMG's websites," which "would likely entail queries or clicks from users and as a result involve the 'contents' of users' communications with UMG's websites" (citation omitted)).

Plaintiff alleges "everything [he] browsed or searched on the website was tracked and disclosed without notice or permission to Google and NextRoll instantly and automatically as it occurred," FAC ¶ 88, including his "specific shopping activity . . . what parts of the website [he] visited, and even what [he] purchased," *id.* ¶ 38; *see also id.* ¶ 43 ("AdRoll utilizes both a pixel and cookies to monitor user activity,

[2] As Innov8 acknowledges, "[a]ccording to the Ninth Circuit, the term 'contents' of a communication under CIPA has the same meaning as the parallel term in the federal Wiretap Act." *Eating Recovery Ctr. II*, 2025 WL 2971090, at *4 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ["*Facebook Tracking*"]); *see also* Mot. at 12 n.4 (citing *Eating Recovery Ctr. II*, 2025 WL 2971090, at *4).

including what pages users view, what products they click on, what they search for, whether they add items to their cart, and what they buy."); *id.* ¶ 81 (Plaintiff browsed product categories, ran search queries, and made purchases on the website); Dkt. Nos. 13-5, 13-7 (unredacted copies of exhibits filed under seal showing product categories browsed, search queries ran, and a product purchased by Plaintiff). Due to the nature of the website, these recorded activities reveal consumers' "sexual preferences, sexual orientation, sexual practices, and adult product preferences," FAC ¶ 21; *see also id.* ¶¶ 22-23 & n.7. Further, in completing his purchases, Plaintiff conveyed "his personally-identifying information, including his full name, home address, email address, and credit card information." *Id.* ¶ 82. Because Plaintiff communicated this information directly to Innov8—it was not just stored record information "generated in the course of the communication," *see Price*, 2024 WL 221437, at *6 (quotation omitted), akin to "[m]etadata associated with electronic communications," *see Sys. Prods. & Sols., Inc. v. Scramlin*, 2014 WL 3894385, at *8 (E.D. Mich. Aug. 8, 2014)—the information was "contents" within the meaning of CIPA. *Cf. Zynga*, 750 F.3d at 1106 ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information *regarding the characteristics of the message* that is *generated in the course of the communication*." (emphasis added)).

For example, Plaintiff's "[s]earch terms constitute 'contents' of a communication." *See Heerde*, 741 F. Supp. 3d at 859 (citing *Zynga*, 750 F.3d at 1108-109). Further, because Plaintiff alleges the website activity being intercepted reveals "PII, [protected] information, [and] other sensitive data" he shared with the website, he has sufficiently alleged that the contents of his communications were intercepted. *See GoodRx Holdings*, 2025 WL 2052302, at *15 (record citations omitted); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) ("sensitive financial information about tax filings [transmitted] to Google" constituted "content"); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1047, 1052 (S.D. Cal. 2023) (allegations "fall on the 'contents' of communication side of the line," where plaintiff "allege[d] that Defendant monitors and intercepts communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices," and this "information . . . could reveal" his "religious affiliation, sexual orientation, and medical condition" (citation modified) (record quotations omitted); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare

providers and treatments for medical conditions—and therefore plausibly conveyed content[.]" (citations omitted)); *Gershzon*, 2023 WL 5420234, at *13 (plaintiffs sufficiently alleged "contents" were communicated by alleging the "Pixel [wa]s embedded on and throughout the DMV website" and that "Meta obtained information showing that [plaintiff] communicated with the DMV in order to apply for a disability parking placard," since "[t]his type of information is substantive and personal").

Innov8's astounding argument that the FAC's screenshots demonstrate Google and NextRoll are intercepting only "a string of encoded text, meaningless to the human eye," Mot. at 12, is demonstrably false. *See also id.* (calling information a "largely meaningly [sic] string"); *id.* at 5 ("what Plaintiff alleges was improperly obtained by Google and NextRoll contain nothing more than meaningless strings of letters and numbers" that "are undecipherable by a human"). Even a cursory glance at the supposedly "meaningless and indecipherable alphanumeric string," *id.* at 1, reveals the website visitor was "Shop[ping]" for "sex-toys" in the "bdsm[ ]fetish" category. *See id.* at 5; FAC ¶ 38. That the strings use "%20 for a space," Mot. at 12, hardly makes them "undecphirable by a human," Mot. at 5, or "meaningless," *id.* The Court should reject this disingenuous argument. For example, in *Brown v. Google LLC*, a court in this District concluded at summary judgment that the following intercepted information constituted "contents," notwithstanding intervening numbers and symbols, because "Google would know from th[e] [following] communication that the user was searching for updates on Russia's war against Ukraine on the Washington Post's 'World' section":




685 F. Supp. 3d 909, 935-36 (N.D. Cal. 2023) ["*Brown II*"]. In fact, California District Courts consistently hold that such information constitutes "contents" when, as here, it "reproduce[s] a person's personal search engine queries," *Cousin*, 702 F. Supp. 3d at 976 (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (citations omitted)), or "reveal[s] the specific document, product, or service that a user is viewing," *Eating Recovery Ctr. II*, 2025 WL 2971090, at *4 (citations omitted); *see also St. Aubin*, 2024 WL 4369675, at *4 ("Descriptive URLs that reveal specific information about a user's queries

reflect the 'contents' of a communication." (citing *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022) ("referrer URL that caused navigation to the current page" and "details about the content within the site or app . . . constituted 'content'"))); *Brown II*, 685 F. Supp. 3d at 936 ("In *Facebook Tracking*, the Ninth Circuit held" that "'full-string detailed URLs'" can constitute contents because "'URLs, by virtue of including the particular document within a website that a person views, reveal much more information . . . divulg[ing] a user's personal interests, queries, and habits.'" (quoting 956 F.3d at 605)).

Moreover, "[t]he boundaries of what transferred information is content under the Act is better determined on a full evidentiary record," making dismissal at this stage inappropriate. *See Meta Platforms*, 690 F. Supp. 3d at 1077; *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *3 (C.D. Cal. Nov. 20, 2023) (finding allegations "more than sufficient for pleading purposes" where "[a]lthough perhaps not all of th[e] [captured] information is 'content' under CIPA, much of what is captured certainly is" (citations omitted)).

Finally, Innov8 argues Plaintiff's "allegations regarding what Google and NextRoll 'can' or 'could' do with" the intercepted information "demonstrate[] that the information is not 'content[,]' . . . but instead metadata which must be further combined with other information and analyzed to determine the 'meaning conveyed,'" Mot. at 13. Not so. As already discussed, the meaning conveyed is readily apparent. That Google and NextRoll have ways of connecting those contents to individuals, *see id.*, thereby making them personally identifiable, does not render the intercepted information non-contents. And Innov8's selective quoting of the FAC as alleging only that "'Google *can* learn' a user's preferences," *id.* (emphasis added) (quoting FAC ¶ 38), ignores allegations that "Google can, *and does* . . . track . . . user[s'] browsing behavior," FAC ¶ 41 (emphasis added), and that the information it intercepts "can be *and is* used to identify . . . specific consumer[s], track their online activity, and monetize that information in the form of advertising," *id.* ¶ 39 (emphasis added); *see also id.* ("Google Analytics includes a user login session cookie within the tracker's requests to Google's site," which "makes any such information personally identifiable . . . .").

## III. PLAINTIFF PLAUSIBLY ALLEGES INNOV8 WAS NEGLIGENT

"For negligence, a plaintiff must plausibly allege: (1) the defendant had a duty, or an 'obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks,' (2) the defendant breached that duty, (3) that breach proximately caused the plaintiff's injuries, and (4) damages." *In re San Francisco 49ers Data Breach Litig.*, 2024 WL 3849336, at *2 (N.D. Cal. Aug. 15, 2024) (quoting

*Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009)). Innov8 challenges only the first and fourth elements—duty and damages.

**A. Innov8 Owed Plaintiff a Duty of Care**

"'A duty of care may arise through statute or by contract,'" or "may also be based on 'the general character of the activity in which the defendant engaged.'" *Dent v. Nat'l Football League*, 902 F.3d 1109, 1118 (9th Cir. 2018) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979)). Here, as discussed above, *supra* Section II, CIPA establishes Innov8's duty not to aid another in reading, attempting to read, using, or attempting to use the contents or meaning of any communication in transit. *See* Cal. Penal Code § 631(a); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *22-23 (N.D. Cal. Apr. 11, 2024) (denying motion to dismiss negligence claim based on violation of "state wiretapping laws").

Additionally, the character of the activity in which Innov8 is engaged—operating a website that sells adult products and offering adult content that implicate consumers' sexual preferences, relationships, health, and orientation—gives rise to a duty to safeguard the sensitive, highly-personal, and constitutionally-protected information it collects. "A person's sexual orientation, preferences, and activities are nearly universally recognized as some of the most private and intimate details about a person." FAC ¶ 25. "[T]he extremely sensitive and private nature of the information involved," means it "is precisely the type that has historically been safeguarded against disclosure." *Id.*; *see also Roman Cath. Bishop of San Diego v. Super. Ct.*, 42 Cal. App. 4th 1556, 1567 (1996) ("Privacy . . . guaranteed under the California Constitution . . . . encompasses privacy in one's sexual matters" (citations omitted)); *Bloch v. Ribar*, 156 F.3d 673, 685 (6th Cir. 1998) (

> Our sexuality and choices about sex . . . are interests of an intimate nature which define significant portions of our personhood. Publicly revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private. Indeed, for many of these reasons, a number of our sister circuits have concluded that information regarding private sexual matters warrants constitutional protection against public dissemination. (collecting cases)).

"Innov8 performs its services for Romantix with full knowledge of the nature of Romantix's business and assumes responsibilities and legal obligations on behalf of Romantix." FAC ¶ 18. Innov8 holds itself out as an "entit[y] responsible for the Website" and its content, is listed as the contact for Romantix's customer service department, and credit card charges for website purchases list both "Innov8" and "RMX."

*Id.* ¶ 19. Thus, "[a]s partners in the online eCommerce business, Romantix and Innov8 are jointly responsible for protecting users' personal information." *Id.* ¶ 18; *see also Facebook*, 402 F. Supp. 3d at 799 ("Facebook had a responsibility to handle its users' sensitive information with care." (citing *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1038-39 (N.D. Cal. 2019) (finding plaintiff "plausibly plead[ed] duty of care" because "the information . . . was private," "plaintiff plausibly placed trust in Facebook to employ appropriate data security" and "[t]he lack of reasonable care in the handling of personal information can foreseeably harm the individuals providing the information"))). Innov8 further assumes and acknowledges this duty when it promises discretion and privacy, and to "NEVER share [its] customers' personal information with anyone," FAC ¶¶ 26-29 (quotation omitted); *see also id.* ¶¶ 55, 127.

Citing a data breach case, Innov8 argues Plaintiffs' negligence claim fails because "a third-party owes a duty with respect to protection of personal information only in the context of a 'special relationship,'" and "Plaintiff's allegations here do not substantiate a relationship with Innov8 at all, let alone a 'special relationship.'" *See* Mot. at 14 (quoting and discussing *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024) ["*Accellion*"]). But Innov8, as the website operator that held itself out as responsible for ensuring website users' privacy, has not established it even *is* a "third party" to begin with, and Plaintiffs allegations, which must be accepted as true, are to the contrary. *See*, *e.g.*, FAC ¶ 18 ("As partners in the online eCommerce business, Romantix and Innov8 are jointly responsible for protecting users' personal information."); *id.* ¶ 83 ("Plaintiff's uses of Romantix.com constitute . . . communications between him, on one hand, and Romantix and Innvo8 on the other").

Yet, even if, contrary to its own representations on the website, Innov8 were considered a "third party," its reliance on *Accellion* is still misplaced. As Innov8 acknowledges, the "third party" in *Accellion* was found to have plausibly "owed . . . a duty of care in large part 'ar[ising] from Accellion's commitments to its clients,'" including "'promising its clients that it provided a platform to securely transfer files.'" Mot. at 14 (quoting *Accellion*, 713 F. Supp. 3d at 631, 633). Here too, Innov8 "promises to protect user privacy," FAC ¶ 55, and to "NEVER share [its] customers' personal information with anyone," *id.* ¶ 29 (quotation omitted); *see also id.* ¶¶ 26-28, 55, 127.

Innov8's attempted analogy to "a property owner who leases space to a doctor" but has "no duty to protect [overheard] medical information," Mot. at 15, is inapt. Innov8 is not like "an employee of the

property owner" that "is mopping the floor and hears a patient" talking about their health. *See id.* Instead, Innov8 is like a property owner that promises the leasing doctors the building is secure and will allow them to provide confidential healthcare to their clients, but nevertheless installs recording devices that transmit patients' communications with their doctors to undisclosed third parties. Having told the doctors that the building was secure for their intended and known purpose of providing confidential healthcare, it cannot then shirk—or, worse, act contrary to—that duty.

Innov8 also claims its "position is supported by" *Shah v. Capital One Fin. Corp.*, *see* Mot. at 14 (citing 768 F. Supp. 3d 1033, 1045 (N.D. Cal. 2025) ["*Capital One*"]). But *Capital One* found "website owners *owe website visitors a duty of care* in the context of analytics software installed on websites," Mot. at 14 (emphasis added; original emphasis removed) (citing 768 F. Supp. 3d at 1045), and Innov8 offers no reason why a duty applied to websites owners should not apply equally to website operators, particularly ones that hold themselves out as responsible for consumer's privacy on the website. Further, like the plaintiffs in *Capital One*, Plaintiff alleges he "placed trust in [Innov8] to protect [his] personal information," *see id.* (quoting 768 F. Supp. 3d at 1046), which the court found "sufficient to demonstrate [the defendant] owed plaintiffs a duty of care," *id.* (citing 768 F. Supp. 3d at 1046). *See* FAC ¶¶ 25-30, 85, 127.

### B. Plaintiff Suffered Damages as a Result of Innov8's Breach of Duty

Innov8 argues Plaintiff's negligence claim "should be dismissed" because his allegations "as to his supposed damages" are insufficient, "seemingly conceding he suffered no real harm outside of an abstract privacy injury, and . . . is simply relying on the statutory damages provision of CIPA." Mot. at 16. Plaintiff pleads his negligence claim in the alternative, in the event he cannot meet the technical requirements or heightened scienter requirement under CIPA. Innov8 may still be liable for negligently allowing Google and NextRoll's collection and use of website users' personally identifiable PPSI, even if it did not intentionally aid and abet that conduct while the information was in transit. Evidence of the *amount* of Plaintiff's damages will be developed in discovery and may require consumer survey evidence or expert testimony. The evidence will then be presented and damages awarded "in a sum to be determined at trial." FAC ¶ 141. Additionally, though not currently alleged, if granted leave, Plaintiff could add allegations regarding the value of his data. *See*, *e.g.*, *Brown II*, 685 F. Supp. 3d at 920 ("The value of this data can be quantified; for example, Google itself has piloted a program to pay users $3.00 per week to track them."

(record citation omitted)); *Brown v. Google LLC*, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021) ("a recent study found that internet users are willing to pay up to $52.00/year to keep their browsing histories private" (record citation omitted)); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (finding it plausible "Plaintiffs suffered damage or loss because Google failed to pay for their data despite the existence of a market," since "'under California law, [a] stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable'" (quoting *Facebook Tracking*, 956 F.3d at 600)). Plaintiff therefore respectfully requests leave to add such allegations should the Court deem them necessary to allege the damages component of Plaintiff's negligence claim.

## CONCLUSION

The Court should deny Innov8's motion, but if the Court is inclined to grant the motion in any respect, Plaintiff requests dismissal be without prejudice and with leave to amend.

Dated: February 13, 2026

Respectfully Submitted,

/s/ Melanie R. Monroe

**FITZGERALD MONROE FLYNN PC**
JACK FITZGERALD
*jfitzgerald@fmfpc.com*
MELANIE R. MONROE
*mmonroe@fmfpc.com*
TREVOR FLYNN
*tflynn@fmfpc.com*
ALLISON FERRARO
*aferraro@fmfpc.com*
DANIEL E. SACHS
*dsachs@fmfpc.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***