COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
ASHLEY CORKERY (301380)
(acorkery@cooley.com)
KELTON N. MURPHY (340366)
(kbasirico@cooley.com)
JINYOUNG LEE (359885)
(jinyoung.lee@cooley.com)
JULIA IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Defendant
Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HENRY BRADLEY, on behalf of himself, all others similarly situated, and the general public,

Plaintiff,

v.

ROMANTIX ONLINE, INC., INNOV8 SOLUTIONS, INC., GOOGLE LLC, and NEXTROLL, INC.,

Defendants.

Case No. 5:25-cv-02465-NW

CLASS ACTION

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: May 6, 2026
Time: 09:00 a.m.
Dept.: 3
Judge: Hon. Noël Wise

Trial Date: Not Yet Set
Date Action Filed: March 11, 2025

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. ALL CLAIMS FAIL BECAUSE PLAINTIFF CONSENTED TO THE ALLEGED CONDUCT ..... 1

1. Plaintiff's Interaction With The Cookie Banner Does Not Refute Consent. ..... 2

2. The Privacy Policy Explicitly Disclosed The Alleged Conduct At Issue. ..... 3

3. Romantix's Privacy Policy Has Not Changed Since 2020. ..... 4

B. COUNT I: PLAINTIFF'S OPPOSITION FAILS TO SALVAGE HIS CIPA CLAIMS. ..... 5

1. Plaintiff Does Not Rehabilitate His Failure To Allege Reading. ..... 5

2. Plaintiff's Position That He Alleged Interception Obviates The Element. ..... 8

3. Plaintiff Cannot Overcome His Failure To Allege Reading In Transit. ..... 9

4. Plaintiff's Clause Three Claim Fails With His Clause Two Claim. ..... 10

5. Plaintiff Fails To Plead Independent Use And His Claims Are Barred By The Party Exception. ..... 10

C. COUNT II: THE CRIME-TORT EXCEPTION DOES NOT SAVE PLAINTIFF'S ECPA CLAIM ..... 11

D. COUNT III AND IV: INVASION OF PRIVACY ..... 12

1. Nothing In Exhibits B-C Reveals Sexual Orientation Or Preferences. ..... 12

2. Plaintiff Fails To Rebut That He Had No Reasonable Expectation Of Privacy. ..... 13

3. Plaintiff's Perfunctory Arguments That Google's Conduct Was Highly Offensive Do Not Withstand Scrutiny. ..... 15

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Dollar Tree Stores, Inc.*,
475 F. App'x 159 (9th Cir. 2012) .......... 10

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) .......... 9

*In re Apple Data Priv. Litig.*,
2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .......... 14

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 12

*Bloch v. Ribar*,
156 F.3d 673 (6th Cir. 1998) .......... 13

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 12, 13

*Brown v. Google LLC*,
685 F. Supp. 3d 900 (N.D. Cal. 2023) .......... 5, 6, 12, 14

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 4

*Casillas v. Six Flags Ent. Corp.*,
--- F. Supp. 3d ----, 2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) .......... 3

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 8

*DeLong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) .......... 14, 15

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 8, 11

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) .......... 4

*Doe v. Eating Recovery Center LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 8, 10

*Doe v. FullStory Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 13

*Drummer v. CoStar Group, Inc.*,
2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......... 7

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 8

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 8

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 13

*Gabrielli*, 2025 WL 2494368, at *6 .......... 13

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 3

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 2

*Goldstein v. Rumble Inc.*,
2025 WL 3691987 (C.D. Cal. Nov. 6, 2025) .......... 10, 11

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 12

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 13, 14, 15

*Griffith v. TikTok, Inc.*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) .......... 14

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 1, 4, 15

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 1, 2

*Jackson v. LinkedIn*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .......... 7

*Krzyzek v. OpenX Techs., Inc.*,
2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 12

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 12

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ........ 10

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023)........ 8

*L.B. v. LinkedIn Corp*.,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)........ 10

*Luminate Home Loans, Inc. v. Better Mortg. Co*.,
2026 WL 102686 (S.D. Cal. Jan. 14, 2026)........ 14

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sep. 16, 2024)........ 8

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........ 13

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)........ 12

*Mata v. Zillow Group, Inc*.,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024)........ 8

*In re Meta Pixel Healthcare Litig*.,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 14

*Moss v. Resortpass Inc.*,
2025 WL 3452360 (Cal. Super. Ct. Oct. 30, 2025) ........ 10

*N.Z. v. Fenix Int'l Ltd.*,
2025 WL 3627591 (C.D. Cal. Dec. 12, 2025) ........ 10

*Nguon v. Wolf*,
517 F. Supp. 2d 1177 (C.D. Cal. 2007)........ 13

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)........ 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ........ 12

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)........ 11

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) ........ 9

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)........ 10, 14

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........................................................................... 12

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....................................................................... 12

*Roman Catholic Bishop v. Superior Court*,
42 Cal. App. 4th 1556 (1996)...................................................................................... 13

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .............................................................. 15

*Safari Club International v. Rudolph*,
862 F.3d 1113 (9th Cir 2017)........................................................................................ 14

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ......................................................................... 14

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).................................................................... 8

*Turner v. Nuance Communications, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .................................................................... 2, 4

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. Aug. 14, 2023)................................................................ 9

*Videkis v. Pepperdine Univ.*,
100 F. Supp. 3d 927 (C.D. Cal. 2015)........................................................................... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................................................ 8

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)................................................................ 13

*Washington v. Flixbus, Inc.*,
2025 WL 1592961 (S.D. Cal. June 5, 2025).................................................................... 1

*Wiley v. Univ. Music Grp.*,
2025 WL 3654085 (N.D. Cal. Dec. 17, 2025) ............................................................... 13

*Wilson v. Google*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025)................................................................. 11

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ................................................................. 11

**Statutes**

California Invasion of Privacy Act ........................................................................ *passim*

Federal Wiretap Act ........................................................................................ 1, 6, 11, 12

Health Insurance Portability and Accountability Act ........................................................... 7

**Other Authorities**

Fed. R. Evid. 201(b) ........................................................................................................ 14

Fed. R. Civ. Proc. Rule 12(b)(6) .......................................................................................... 4

## I. INTRODUCTION

Plaintiff's Opposition (Dkt. No. 94 ("Opp.")) confirms that dismissal with prejudice is appropriate. Plaintiff's second attempt to plead lack of consent remains insufficient. Rather than addressing his explicit agreement to the challenged practices, Plaintiff misrepresents prior pleadings and fixates on technicalities to distract from the Privacy Policy he knows precludes all claims against Google. Moreover, Plaintiff's claims cannot proceed for independent reasons: ***First***, Plaintiff fails to rebut that his CIPA claim is barred for failure to circumvent the party exception or plead in-transit reading. Ignoring Google's case law, Plaintiff invokes authorities underscoring the inadequacy of his allegations. ***Second***, as there is no independent tort beyond interception, the crime-tort exception cannot save his ECPA claim from his consent. ***Third***, Plaintiff's invasion of privacy case law confirms that disclosure of shopping data does not clear the high bar for that claim. The Court should dismiss Plaintiff's claims against Google—this time with prejudice.

## II. ARGUMENT

### A. All Claims Fail Because Plaintiff Consented to the Alleged Conduct.

Contrary to Plaintiff's assertion, the burden to plead lack of consent is Plaintiff's. *Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025) ("[T]he plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent.")); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1356 (S.D. Cal. 2024) ("lack of consent is an element of the [ECPA] claim"); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of claims for invasion of privacy because the privacy policy disclosed tracking and collection of data). Plaintiff disputes consent, arguing (1) he did not initially see the cookie banner; (2) the banner did not explicitly disclose the alleged conduct; and (3) he eventually selected to "Decline All" cookies, affirmatively declining consent. None of these arguments refute Plaintiff's consent to the ***Privacy Policy*** hyperlinked within the cookie banner, to which he agreed by making at least one purchase in November 2021 and continuing to use the website. Indeed, the Court already held that Plaintiff's original allegations "indicate that [he is] familiar with the policy," (Dkt. No. 72 ("Order") at 3), a voluntarily alleged fact that Plaintiff cannot now disclaim. Therefore, as a dispositive matter, Plaintiff's claims fail because he has not sufficiently pled lack of consent.

**1. Plaintiff's Interaction with the Cookie Banner Does Not Refute Consent.**

Plaintiff's interaction with the cookie banner cannot cure the fatal defect identified by this Court. ***First***, Plaintiff admits that he "browsed and made purchases from the Website on multiple occasions" before noticing the cookie banner, and argues that because he "did not initially see" the banner, he "[could not] have been on notice" of the alleged interception. (Dkt. No. 75 ("FAC") ¶ 87; Opp. at 5–6.) Applicable law precludes this argument. The standard for notice is whether a "reasonably prudent Internet user would have seen [the banner]," not Plaintiff himself.[1] *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 924 (N.D. Cal. 2024). Plaintiff's single allegation that the banner was "in small font at the bottom-right corner of the screen"—unchanged from the dismissed Complaint—does not show that a reasonably prudent user would not have seen it, especially when browsing the website "on multiple occasions" and making multiple purchases. (FAC ¶¶ 50, 87.) To the contrary, far from holding that the cookie banner was insufficient, the Court held that "[u]pon entering Romantix.com, users are presented with a message notifying users that the website uses cookies," and that the banner "***clearly*** states that '[b]y using [Romantix.com], you consent to all cookies in accordance with our Cookie Policy.'" (Order at 2 (emphasis added).) Plaintiff's reliance on *Price v. Carnival Corp*. is unpersuasive because there, the plaintiff alleged that users can interact with the website "without ever reviewing or agreeing to the terms of any purported privacy policy" in part due to the "text of the [cookie] banner [being] smaller," "the blue of the banner match[ing] the blue of other web panels," and "white text of the banner blend[ing] in[.]" 712 F. Supp. 3d, at 1357-59 (finding no inquiry notice under these facts). Therefore, *Price* is flatly inapposite and Plaintiff's pleading no consent because he "did not initially see" the cookie banner is meritless.[2]

***Second***, Plaintiff's argument that he did not consent because he eventually selected to "Decline All" cookies is equally unavailing because Plaintiff has not alleged ***when*** he clicked and what he did on the website thereafter. (Opp. at 6.) This timing matters because it is unclear what alleged interceptions would have occurred after that point. The FAC merely provides a generalized

[1] It is also irrelevant whether Plaintiff actually ***clicked*** on the Privacy Policy, as the standard is whether a reasonably prudent user would have been on notice of the disclosure.

[2] Without providing any analysis, Plaintiff adds a cite to *Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1180 (N.D. Cal. 2024), but that case does not discuss notice as it is relevant to Plaintiff's arguments here.

allegation that "[e]ven when a website visitor selects 'Decline All' on the cookie popup, at least the Google Analytics tracker continues to operate on the Website," but this is not specific to ***Plaintiff's*** conduct. (*See* FAC ¶ 52.) Even in Plaintiff's case, *Gabrielli v. Haleon US Inc.*, the plaintiff alleged clearly that "only [after declining cookies] did [he] ***continue browsing*** the websites." 2025 WL 2494368, at *2 (N.D. Cal. Aug. 29, 2025) (emphasis added). That allegation is missing here.

To rebut, Plaintiff's Opposition falsely claims that the FAC alleged that Plaintiff shopped on the website "both before ***and after*** his selection[.]" (*See* Opp. at 7 (emphasis added).) This is baseless and misleading. ***Nowhere*** does the FAC state that he shopped for products ***after*** declining cookies. On the contrary, Plaintiff only alleges that he browsed and shopped "before" noticing the banner. (FAC ¶ 87.) Plaintiff also misrepresents the pleadings when he states that Google "gives no reason Plaintiff need allege a more precise date" and how "his refusal of cookies influenced his use of the website." (Opp. at 6–7.) This is simply untrue: Google's Motion explains that without those specific allegations, "there is no factual basis for the Court . . . to conclude that any violation at all occurred after Plaintiff clicked 'Decline All.'" (Dkt. No. 87 ("Mot.") at 11.) Indeed, ***the Court itself*** held that Plaintiff needed to allege whether the Privacy Policy and other disclosures "had any effect on [his] decisions related to the site." (Order at 4.) Therefore, Plaintiff's new allegations as to his interaction with the cookie banner—either before or after noticing it—do not defeat consent.

**2. The Privacy Policy Explicitly Disclosed the Alleged Conduct at Issue.**

Setting aside the timing issue, Plaintiff's declination of cookies is still insufficient to plead lack of consent because (1) the Privacy Policy disclosed the website's use of Google Analytics and the collection of data, and (2) Plaintiff never alleges that he opted out of Google Analytics.[3]

***First***, Plaintiff argues that the cookie banner "is insufficient to establish consent," because it "does not inform users *third parties* are collecting and making profitable use" of Plaintiff's data. (Opp. at 6.) This ignores the cookie banner's clickable "Read more" hyperlink to the Privacy Policy, which disclosed the website's use of third-party analytics technology, including Google's. (Mot. at

[3] Plaintiff relies on *Casillas v. Six Flags Ent. Corp.*, --- F. Supp. 3d ----, 2025 WL 3684543, at *7–8 (C.D. Cal. Dec. 15, 2025), which is distinguishable from this case, *inter alia*, because there was no separate, unused opt-out available to decline consent as to the specific technology.

9 (quoting Privacy Policy).)[4] These disclosures "explicitly notif[ied]" users of the conduct at issue. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021); *Hammerling*, 2024 WL 937247, at *3 (affirming dismissal on same grounds).[5] Ironically, in defending his choice to excise all references to the Privacy Policy in the FAC, Plaintiff argues that the Privacy Policy is "irrelevant to his claims," yet argues that certain reassurances in the Privacy Policy misleads users and failed to disclose the alleged conduct. (Opp. at 1 & n.1, 7–8.) Plaintiff cannot have it both ways, and that ship has sailed, in any case. The Complaint relied on the Privacy Policy, the Court ruled that he was familiar with it and instructed Plaintiff to clarify how it affected his behavior. (Order at 3–4.)

***Second***, in lieu of alleging that he opted-out of Google Analytics, Plaintiff accuses Google of "mov[ing] the goal post" and conjectures that "if the opt-out procedure was as 'clear' as Google claims, Google would have raised it in its first Rule 12 motion[.]" (Opp. at 7.) But Google did ***exactly*** that in its first Motion to Dismiss. (Dkt. No. 41 at 8 ("The Policy also informed Plaintiffs that they may opt-out of Google Analytics").) Plaintiff's attempt to rewrite the record because it refutes his arguments is entirely improper and can be rejected out-of-hand.

**3. Romantix's Privacy Policy Has Not Changed Since 2020.**

As another maneuver to ignore the Privacy Policy, Plaintiff latches onto a technicality that has no effect on the relevant issues or Court's finding of consent—and more egregiously, contradicts his own prior representations to the Court. Plaintiff asserts that "Google cannot rely on the March 2025 Privacy Policy" because Plaintiff alleged that he last visited the website in October 2024, not March 2025.[6] However, this is a clumsy effort to distract from the real issues, because the same version of the Privacy Policy was in effect during both times (i.e., version last modified

[4] Plaintiff's observation that the Privacy Policy is "also" silent as to Defendant NextRoll (Opp. at 8 n.2), who filed an answer, is plainly wrong. The Privacy Policy is not silent as to Google Analytics.

[5] Plaintiff's reliance on *Doe v. County of Santa Clara* is improper because that case focused on inadequate disclosures about sensitive *healthcare*-related data–which is not the type of information at issue here. 2024 WL 3346257, at *6–7 (N.D. Cal. July 8, 2024).

[6] Plaintiff further argues that Google cannot rely on the March 2025 Privacy Policy because it is not properly incorporated by reference, relying on *Turner*, 735 F. Supp. 3d at 1180. (Opp. at 7.) *Turner* is inapposite because the Deposit Account Agreement at issue there was not hyperlinked in the same way as here inside the cookie banner and was not discussed in the FAC. Google will address the rest of Plaintiff's arguments against judicial notice and incorporation by reference in its separate Reply Brief in support of Google's Request.

on June 15, 2020). Plaintiff, of course, does not (and cannot) contend that the March 2025 version is in any way different from what Plaintiff would have seen during his last visit to the website in October 2024.[7] In fact, Plaintiff himself quoted from and relied on ***the same version*** in his initial Complaint. (Dkt. No. 1 ("Compl.") ¶ 20 & n.3 (providing a live link to "https://www.romantix.com/privacy-policy"); *see* Dkt. No. 102-1 at 4–5.) Accordingly, because Plaintiff has not refuted his consent to the alleged conduct, dismissal of all claims is appropriate.

### B. Count I: Plaintiff's Opposition Fails to Salvage His CIPA Claims.

#### 1. Plaintiff Does Not Rehabilitate His Failure to Allege Reading.

***First***, in its Motion, Google argued that most of Plaintiff's allegations of "reading" amounted only to "collect[ion]," "transmi[ssion]," or "log[ging]" of contents. (Mot. at 12 (citing FAC ¶¶ 31, 35).) Rather than responding, Plaintiff addresses arguments Google never made. For example, Plaintiff argues that he alleged collection of more than just URLs, (Opp. at 9), but Google never claimed otherwise. (Mot. at 11.) Similarly, Plaintiff claims that Google argued "URLs can never constitute contents," (Opp. at 9); Google again ***never argued this***. Indeed, Google ***acknowledged*** that: (1) detailed URLs can include "content" which (2) may reveal "personal interests, queries, and habits." (Opp. at 10; *see* Mot. at 12 (referencing "content information" "***such as URLs***" (emphasis added).) Google agrees with Plaintiff that URLs are like "a letter," not mere addressing information (i.e., "the outside of an envelope.") (Opp. at 10 (quoting *Brown v. Google LLC*, 685 F. Supp. 3d 900, 936 (N.D. Cal. 2023) ("*Brown II*")).) Google argued that Plaintiff never alleged that it opened the envelope and tried to read the letter, because he pled no facts suggesting that Google attempted to understand the meaning of any URL contents. Take, for example, the URL string in Plaintiff's case:




[7] The Court can confirm that the version of the Privacy Policy that was publicly available prior to Plaintiff's last alleged visit to the website in October 2024 is the same as the version that was publicly available as of March 11, 2025 (Exhibit B), according to the Wayback Machine web capture at https://web.archive.org/web/20240922040001/www.romantix.com/privacy-policy (as of Sep. 22, 2024).

*Brown II*, 685 F. Supp. 3d at 935.[8] The meaning of this URL is that the person who accessed it visited *The Washington Post*'s website and read a February 18, 2022 article in the "World" section on Russia's war against Ukraine. *Id.* at 936. This could reveal that the person gets their daily news from *The Washington Post* (politically liberal?); their interest in global politics, European news, international conflicts; etc. But understanding this from the gibberish URL requires ***reading it to draw inferences***—and ***that*** is what is missing. While Plaintiff argues that "once intercepted," Google could glean from the search terms "what 'the user was searching for,'" nowhere does he allege that Google actually read and tried to understand those terms. (Opp. at 10.)

*Heerde v. Learfield Communications, LLC* and *Valenzuela v. Nationwide Mutual Insurance Co.* do not help Plaintiff. (Opp. at 10.) Neither court offered rigorous analysis of the reading element because neither defendant challenged it. Mot. to Dismiss at 13-18, *Valenzuela v. Nationwide Mut. Ins. Co.*, No. 2:22-cv-06177 (C.D. Cal. Oct. 14, 2022), Dkt. No. 12-1 (failing to argue the defendant did not read the communications); Mot. to Dismiss at 26, *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493 (C.D. Cal. Sept. 21, 2023), Dkt. No. 38-1 (same).

***Second***, Google argued that—at most—Plaintiff alleged reading of non-contents. (Mot. at 14.) Ignoring this, Plaintiff claims that Google must have learned the contents of communications to "build detailed user profiles" from them. (Opp. at 10; FAC ¶¶ 51, 31.) In support, Plaintiff points to his allegation that to build profiles, Google pairs users with their communications using unique identifiers. But as Google argued and Plaintiff does not refute, this suggests reading ***addressing*** information—***not*** contents. (Mot. at 14; *see* FAC ¶¶ 35-38.) Plaintiff's profiling allegations implicate the reading of ***cookies***, which are not content. (FAC ¶ 41 ("[T]heir PPSI is still tracked, collected, and tied to a unique profile through Google's NID, 1P_JAR, and ANID cookies.")

***Third***, Plaintiff's argument that Google must read communications to target ads to specific individuals (Opp. at 10) misstates his allegations that ***Romantix and Innov8*** decide how to target ads ***—not Google.*** (*See, e.g.*, FAC ¶ 33 ("***Romantix and Innov8*** use the insights gained from the trackers to . . . ***deliver targeted ads***[.]" (emphasis added)); *id.* ¶ 42 (alleging that Google Analytics

[8] *Brown*, a summary judgment order, held that there was a dispute of material fact whether such a URL string constituted contents under ECPA. *Brown II*, 685 F. Supp. 3d at 935. Here, Google argues "no reading," ***not*** "no contents." (Opp. at 10 (quoting *Brown II*, 685 F. Supp. 3d at 936).)

allows "***Romantix and Innov8*** [to] send direct, targeted ads." (emphasis added)).) Plaintiff cannot rely on unpled facts, especially where they contradict his allegations.

***Fourth***, Google argued that Plaintiff's allegations related to reading contents were speculative, e.g., "Google ***can*** learn [a] user's sexual orientation[.]" (Mot. at 13 (quoting FAC ¶ 38) (emphasis added).) Plaintiff argues in response that he has pled his website interactions were "***intercepted*** by Google." (Opp. at 11 (emphasis added).) This is a non-sequitur: Allegations about "interception" are irrelevant to reading. Plaintiff also argues he alleged that ***his*** data were associated with him through his unique Google ID.[9] This is false; Plaintiff ***never alleged this***. Plaintiff alleged that Google "can associate" a hypothetical individual with their shopping activity if they are logged into a Google account. (FAC ¶¶ 35, 38.) Plaintiff misleadingly attempts to rewrite his allegations to reference himself, rather than a hypothetical user. (*Compare, e.g.*, FAC ¶ 37 (alleging that "Google can associate ***that*** unique ID with ***a specific individual***" (emphasis added)), FAC ¶ 38 (alleging that "Google can associate ***that individual*** (through ***their*** unique Google ID) with ***their*** specific shopping activity" (emphasis added)), *and* FAC ¶ 39 (alleging that the challenged information permits identification of "a specific consumer" or "an online shopper"); *with* Opp. at 11 (claiming he alleged "that his data was 'associate[d]' with him '[]through **[his]** unique Google ID[.]'") (emphasis added).) Plaintiff cannot defeat dismissal by misquoting his pleading.

***Finally***, Plaintiff argues that he is not required to allege that he received targeted advertisements related to his browsing on Romantix's website to plead reading. (Opp. at 12.) Google never argued such a showing was required, but offered this as ***one example*** of a fact that could have made inference of reading plausible. (Mot. at 13-14.) Plaintiff fails to allege that he received such a targeted advertisement, ***or anything else*** supporting an inference of reading. Neither of Plaintiff's cited cases suggest otherwise.[10] He thus fails to state a claim.

[9] Plaintiff also cites *Doe I. v. Google LLC*—which analyzed the definition of personally identifiable data under HIPAA—for the similarly undisputed and irrelevant proposition that Google could use IP addresses to identify persons. (Opp. at 11.)

[10] *Drummer v. CoStar Group, Inc.* is a CIPA Section 638.51 (pen register provision) case that did not even discuss the separate "reading" requirement under Section 631; it only considered the import of allegations related to targeted advertising in evaluating Article III injury. 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025); *Jackson v. LinkedIn* is an outlier in its cursory treatment of the "reading" requirement; its two paragraphs of analysis did not explain why it found reading on the facts alleged. 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024).

**2. Plaintiff's Position that He Alleged Interception Obviates the Element.**

Google argued Plaintiff's allegations of in-transit interception were fatally conclusory and lacked specific facts concerning "*when* the interception occurs." (Mot. at 14.) Plaintiff attempts to clear the hurdle by lowering the bar to the ground, arguing that he need only allege that the communications "are intercepted in real time through the use of computer code[.]" (Opp. at 13.) But even Plaintiff's authorities acknowledge a "split on whether [conclusory] allegations are sufficient" to plead in-transit interception. *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024). The majority rule is that conclusory allegations are ***not*** sufficient. Most of Plaintiff's own cited cases support ***Google's*** position, holding that Plaintiff must do more than parrot the statute; indeed, two ***dismiss*** on this basis. *Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing because the plaintiff "merely restated the pleading requirement of real time interception"); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (similar).[11] And in *Hazel*, *Tenet Healthcare*, *St. Aubin*, *Eating Recovery Center*, and *Penny OpCo*, the plaintiffs described their theories of interception in substantially more detail than Plaintiff does here. Complaint ¶¶ 25-32, *Hazel v. Prudential Fin, Inc.*, No. 4:22-cv-07465 (N.D. Cal. Nov. 23, 2022), Dkt. No. 1 (explaining how ActiveProspect's server monitors webpages and transmits live snapshots when mouse movements are detected); Complaint ¶¶ 75-100, *Doe v. Tenet Healthcare Corp.*, 1:23-cv-01106 (E.D. Cal. July 24, 2023), Dkt. No. 1 (describing in detail the timing of the sequenced processes through which the Meta Pixel triggers exchanges of data using GET and POST requests); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (similar allegations describing each step in the series of data transmissions triggered by the Meta Pixel); Complaint ¶¶ 29-55, *Doe v. Eating Recovery Ctr.*, No. 3:23-cv-05561 (N.D. Cal. Oct. 27, 2023), Dkt. No. 1 (similar description of Meta Pixel); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023)

[11] The only citations supporting Plaintiff's position are *Mata v. Zillow Group, Inc.*, 2024 WL 5161955, at *5 (S.D. Cal. Dec. 18, 2024) (permitting conclusory allegations of interception to survive dismissal); *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) (same); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) (same); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *4 (N.D. Cal. Sep. 16, 2024) (same). None of these orders reconcile their holdings with the federal plausibility standard.

(similar sequenced description of sequence of events comprising chatbot functionality).

Plaintiff attempts to distinguish *Rodriguez* on the basis that there, the plaintiffs' allegations contradicted in-transit interception, but cites no authority suggesting that the absence of contradictory allegations entails sufficiency. (Opp. at 14.) Plaintiff also tries to distinguish *L.B.* based on the *L.B.* plaintiffs' failure to explicitly allege their interception theory. (*Id.*) But that case did not hold that mere recitation of the standard would have been sufficient. The Opposition points to ***only a single <u>fact</u>*** explaining his theory of in-transit interception: that Google "did so using embedded scripts in the website's code." (Opp. at 13 (cleaned up).) ***Every other allegation*** he cites is a conclusory assertion of simultaneity using a different word for "simultaneous"—which other Courts have repeatedly held is not enough. (Opp. at 13-14 (citing interchangeable allegations that the communications were captured "instantly," "automatically," "in real time," "simultaneously," and "concurrently").) The standard is not so toothless as to permit five vague synonyms to proceed.

**3. Plaintiff Cannot Overcome His Failure to Allege Reading in Transit.**

Because he fails to allege reading or interception, Plaintiff necessarily has not pled Google read his communications while they were in transit. In rebuttal, Plaintiff relies on the conclusory allegation that "Google makes use of website users' communications in real time." (Opp. at 15 (quoting FAC ¶ 51) (cleaned up).) Plaintiff's own authorities establish that this is not enough. Following dismissal for failure to allege reading in transit, the *Sussex Publishers* plaintiffs bolstered their third amended complaint with allegations that the Google used "JavaScript code [to] interpret[] and select[], in real time," specific "portions of the user's interactions and communications to be used for advertising and analytics, all while the transmissions are in transit to the Psychology Today website servers." *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *4 (N.D. Cal. June 23, 2025). Both of Plaintiff's other authorities are irrelevant.[12]

Plaintiff has no answer to Google's arguments other than to fault Google for citing—among numerous dismissal orders—three summary judgment orders that "involve different tracking

[12] As noted, (*supra* Section II.B.1), the defendant in *Valenzuela v. Nationwide Mutual Ins. Co.* did not even forward any argument about reading, let alone about the timing of any reading. *See Valenzuela*, 686 F. Supp. 3d at 977. *Ambriz v. Google, LLC* did not address reading while in transit, but instead rejected Google's argument, irrelevant here, that it was not the one who read the communications in transit. 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025).

technologies[.]" (Opp. at 15.) ***First***, Plaintiff's vague allegation that "Google makes use of website users' communications in real time" is not tethered to any particular technology. ***Second***, Google's citation to three summary judgment cases was appropriate to establish that regardless of the posture of the case, the rule is the same: A defendant "must do something more than just intercept the communication while it is in transit." *Doe v. Eating Recovery Center LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025). For this reason, Courts routinely dismiss similar claims at the pleadings stage for failure to allege reading in transit. *See, e.g.*, *N.Z. v. Fenix Int'l Ltd.*, 2025 WL 3627591, at *14 (C.D. Cal. Dec. 12, 2025); *Moss v. Resortpass Inc.*, 2025 WL 3452360, at *1 (Cal. Super. Ct. Oct. 30, 2025); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025); *see also L.B. v. LinkedIn*, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025). Plaintiff does not try to respond, merely noting that the *N.Z.* plaintiff pled the communications were read after receipt. (Opp. at 15-16.) Just because Plaintiff has not contradicted his theory does not mean he has sufficiently pled it.

#### 4. Plaintiff's Clause Three Claim Fails With His Clause Two Claim.

Plaintiff does not dispute—and thus concedes—that without a viable Clause Two claim, his Clause Three claim fails. *See Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x 159, 159 (9th Cir. 2012) (district court properly dismissed unrebutted claims). Both claims must be dismissed.

#### 5. Plaintiff Fails to Plead Independent Use and His Claims Are Barred by the Party Exception.

Plaintiff spills much ink arguing that this Court should ignore *Graham* and apply the more plaintiff-friendly *Javier* standard. His FAC fails under *Javier* too, because Plaintiff's flimsy allegations do not establish that Google was capable of independently using the data. Plaintiff invokes fsgeneral allegations such as that Google "captur[es] user data to optimize ad performance and increase ad spend." (Opp. at 17 (quoting Compl. ¶ 33).) "Without additional factual detail," it is impossible "to place [Google Analytics] along the line between *Rogers* and *Ribas* as either an instrument or a true third-party eavesdropper." *Goldstein v. Rumble Inc.*, 2025 WL 3691987, at *4 (C.D. Cal. Nov. 6, 2025) (holding that party exception barred Section 631(a) claims related to the Meta Pixel). Plaintiff's allegations support an equally plausible inference that Google can only

reflect captured data back to Romantix and Innov8 to support ***their*** advertising efforts. (*See, e.g.*, FAC ¶ 42 ("Google Analytics allows Romantix and Innov8 to improve their marketing.").) Plaintiff "cannot state a claim by relying on allegations that are merely consistent with liability when they are also consistent with an alternative, lawful explanation." *Goldstein*, 2025 WL 3691987, at *4.

Plaintiff's citation to *Wilson v. Google* does not help him. The *Wilson* court did not identify any allegations or offer analysis supporting its conclusion that "[p]laintiff alleges that Google intercepted and used her personal information for its own advertising services." 2025 WL 901941, at *5 (N.D. Cal. Mar. 25, 2025). Plaintiff's other authorities analyzed ***specific*** allegations showing independent use and are hence distinguishable. For example, the *Smith v. Google* plaintiffs alleged that Google kept a "detailed dossier, or digital fingerprint" on tax website visitors and, for its own benefit, integrated the challenged data into a host of other Google data products. Complaint ¶ 29, *Smith v. Google LLC*, No. 5:23-cv-03527-PCP (N.D. Cal. Oct. 9, 2023), Dkt. No. 35. Likewise, *Call-on-DOC* analyzed allegations that defendants shared information with ***other advertisers***. *Call-On DOC*, 2025 WL 1677632, at *10 (finding capability of independent use). And the *Doe I* plaintiff specifically alleged that Google independently leveraged the challenged data for its Target Cost-Per-Action bidding program and artificial intelligence tools. Second Am. Complaint ¶¶ 134-144, *Doe I v. Google LLC*, No. 3:23-cv-02431 (N.D. Cal. Aug. 12, 2024), Dkt. No. 158.

### C. Count II: The Crime-Tort Exception Does Not Save Plaintiff's ECPA Claim.

Plaintiff's ECPA claim fails because one party's consent forecloses liability, and Romantix consented when it voluntarily installed Google Analytics. (Mot. at 20–21.) The crime-tort exception does not apply because Google did not allegedly intercept Plaintiff's communications for an independent "criminal or tortious purpose . . . separate from the purpose of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022). Plaintiff's contrary argument is circular: "[Google's] interception was for the purpose of violating Romantix.com users' right to privacy," and the interception violated users' right to privacy. (Opp. at 18-19); *see Planned Parenthood*, 51 F.4th at 1136 (dismissing ECPA claim on same basis). A plaintiff could argue that in ***every*** case, and it proves nothing. The allegation that Google "us[ed] that intercepted information for financial gain" (FAC ¶ 76) is inadequate. *Zocco v. Nelnet, Inc.*,

2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (Wise, J.) ("More is needed."); *see also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money"); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (same).

Plaintiff's cited cases do not persuade. While two involve allegations of building user profiles, those pleadings offered far more detail than pled here. *Cf. Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1068 (N.D. Cal. 2021) & Am. Complaint ¶¶ 154–165 (containing detailed allegations concerning Google's association of plaintiffs' data with user profiles), *Brown*, No. 4:20-cv-03664 (N.D. Cal. Sep. 21, 2020), Dkt. No. 68; *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) & Am. Complaint ¶¶ 253–57 (describing "pervasive identity surveillance and the facilitation of the purchase and sale of [plaintiffs' information]" to invoke the crime-tort exception), *Riganian*, No. 4:25-cv-00824 (N.D. Cal. Apr. 18, 2025), Dkt. No. 32. Plaintiff's other cases are also inapplicable. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (subsequent public release of intercepted videos constituted "the further tortious act"); *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) (defendant "purposefully configured its website to intercept individually identifiable information about ***highly sensitive health issues***" (emphasis added)).[13,14]

### D. Counts III and IV: Invasion of Privacy.

#### 1. Nothing in Exhibits B-C Reveals Sexual Orientation or Preferences.

Plaintiff's only response to Google's point that the information alleged does not reveal sexual preferences is a hand-waving reference to the items he perused and purchased (Compl., Exs. B-C) and an unexplained assertion that they reveal sexual preferences, practices, and orientation. A quick perusal of the items only confirms that nobody could guess Plaintiff's sexual orientation,

[13] Moreover, if the plaintiff fails to state a claim for invasion of privacy or any violation under state law, as is the case here, the exception cannot apply. *See* Section D, *infra*. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (applying crime-tort exception only after finding that plaintiff adequately stated a claim for invasion of privacy); *Krzyzek v. OpenX Techs., Inc.*, 2026 WL 206855, at *8 (N.D. Cal. Jan. 27, 2026) (same). *B.K. v. Desert Care Network* is also inapposite because there, the court applied the crime-tort exception as to the website's conduct, not the analytics provider's. 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024).

[14] While Plaintiff argues he adequately pled other elements of ECPA, those arguments fail for reasons stated above. (*See* Section II.B.3. & B.5, *supra*.)

or even his sexual preferences, based on these items.[15] At most, they reveal that Plaintiff has an interest in sex—a banal and virtually universal feature of the post-pubescent human experience.

**2. Plaintiff Fails to Rebut That He Had No Reasonable Expectation of Privacy.**

In response to Google's arguments showing why he could not have reasonably expected privacy while shopping on public webpages, Plaintiff inundates the Court with unhelpful cases ranging from distinguishable to puzzlingly inapposite. (Opp. at 21-22.) Plaintiff's opening citations fall into the latter camp. *Roman Catholic Bishop v. Superior Court* is a 30-year-old case addressing whether a church's duty as an employer requires it to inquire into prospective hires' "problems with vows of celibacy[.]" 42 Cal. App. 4th 1556, 1566 (1996). *Bloch v. Ribar* analyzes whether "a rape victim has a fundamental right of privacy in . . . the intimate details of the rape[.]" 156 F.3d 673, 686 (6th Cir. 1998). Similarly irrelevant are *Videckis* and *Nguon*, challenging on-campus policing of students' sexuality. *Videkis v. Pepperdine Univ.*, 100 F. Supp. 3d 927, 934 (C.D. Cal. 2015); *Nguon v. Wolf*, 517 F. Supp. 2d 1177, 1196 (C.D. Cal. 2007). Since Plaintiff does not allege that he has had problems with vows of celibacy, is a victim of sex crimes, or has been harassed or outed to his mother by a school official, these cases are not instructive. Plaintiff's citations to cases involving misrepresentations of data practices (Opp. at 22-23)[16] are likewise inapposite since here, as argued (*supra* Section II.A), Plaintiff ***consented*** to a Privacy Policy ***expressly disclosing*** the conduct. Other citations only highlight the holes in Plaintiff's FAC. *Greenley*, *Brown I*, *Facebook Tracking*, and *Google RTB*, (Opp. at 21),[17] all involved pervasive, cross-platform tracking across websites or apps that, taken together, could reveal dating history, sexual associations, and/or sexual

---

[15] And this is assuming, *arguendo*, that anytime a person shops or browses for an item, it is for their own personal use. At least one recent authority has questioned this dubious notion. *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (agreeing with defendant that "anyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings could enter these searches" for "sensitive health related items.").

[16] Citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294 (3d Cir. 2016); *Gabrielli*, 2025 WL 2494368, at *6; *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *14 (N.D. Cal. Oct. 16, 2025); *Wiley v. Univ. Music Grp.*, 2025 WL 3654085, at *4 (N.D. Cal. Dec. 17, 2025); *Doe v. FullStory Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020).

[17] Citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1041 (S.D. Cal. 2023); *Brown I*, 525 F. Supp. 3d 1076-79; *Facebook Tracking*, 956 F.3d 604 n.7; *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022).

orientation. That is worlds away from browsing and a few purchases ***on one website***.

Plaintiff responds to Google's on-point citation to a case dismissing claims against a sex toy website with a statement Judge Donato made at oral argument in *Tatola v. Barnaby*. (Opp. at 22.) There is no order in *Tatola* from which this Court could evaluate the court's reasoning. And Plaintiff does not explain why off-the-cuff musings in an oral argument transcript deserve more weight than the thorough, final ruling in *DeLong v. PHE, Inc.*, simply because the latter is out-of-circuit. 2025 WL 2447787, at *1, *5-6 (E.D. Pa. Aug. 25, 2025). Plaintiff next disputes the presumption that online activities are not private, citing two cases that defy the great weight of authority holding otherwise.[18] That there may, in specific cases, be a reasonable expectation of privacy over internet activity (Opp. at 23) is consistent with the presumption, only suggesting that it is rebuttable. And in response to Google's citations establishing a growing consensus that there is no reasonable expectation of privacy in public shopping, whether in a brick-and-mortar store or online, Plaintiff asserts that Romantix.com customers choose to shop online to avoid being observed shopping for sex toys in public. (*See* Opp. at 23-24.) This unsupported assertion about shoppers' general motives is irrelevant in the face of Plaintiff's own exhibit showing that he himself shipped at least one online order from Romantix ***to its storefront[19] for in-person pickup***. (Compl., Ex. C at 4, Dkt. 13-6.) And *Safari Club International v. Rudolph* is irrelevant; that case found that the plaintiff had a reasonable expectation of privacy in a conversation in a public space "[b]ecause [he] believed he was talking to . . . a long-time friend[.]" 862 F.3d 1113, 1125 (9th Cir 2017).

Finally, Plaintiff asserts that his order fulfillment information "was collected alongside information about his sexual preferences, making such information personally identifiable." (Opp. at 24.) But Plaintiff's FAC is devoid of any allegations that Google identified him, and Plaintiff has

---

[18] *Compare* Opp. at 23 (citing *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024) and *Brown II*, 685 F. Supp. 3d at 941); *with, e.g.*, *Luminate Home Loans, Inc. v. Better Mortg. Co.*, 2026 WL 102686, at *22 (S.D. Cal. Jan. 14, 2026) ("In California, courts have developed a presumption that Internet communications do not reasonably give rise to the reasonable expectation of privacy"); *accord In re Apple Data Priv. Litig.*, 2026 WL 146025, at *5 (N.D. Cal. Jan. 20, 2026); *Sussex Publishers*, 2025 WL 948060, at *9; *Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *7 (C.D. Cal. Dec. 24, 2024); *Greenley*, 684 F. Supp. 3d at 1052; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 798 (N.D. Cal. 2022).

[19] A Google search shows a variety of sources not "subject to reasonable dispute," confirming that 45 E. Colorado Blvd, Pasadena, CA 91105-1901 is a Romantix storefront. Fed. R. Evid. 201(b) (establishing propriety of judicial notice of such documents).

also failed to adequately allege that Google reads contents of the alleged communications to draw inferences from the information therein. (*Supra* Section II.B.1.) Moreover, Plaintiff cites no authority establishing that a reasonable expectation of privacy in all personally identifiable data.

None of Plaintiff's explanations of how he had a reasonable expectation of privacy in the challenged data hold water, and his invasion of privacy claim must be dismissed.

#### 3. Plaintiff's Perfunctory Arguments That Google's Conduct was Highly Offensive Do Not Withstand Scrutiny.

Attempting to show why Google's alleged receipt of his online shopping information was highly offensive, Plaintiff's primary argument is to repeat, for the third time, his untenable arguments about affirmative misrepresentations. (Opp. at 24-25.) Google has already explained why this argument is unavailing. (*Supra* Section II.A.) Plaintiff also attempts to distinguish *Hammerling* as involving less sensitive information while refusing to contend with Google's citation to *Delong v. PHE, Inc.*, in which the court held that collection of information about online shopping for sex toys is "typical in the digital world, and . . . not highly offensive." *Delong*, 2025 WL 2447787, at *6. Plaintiff also repeats his same appeal to *Brown I* and *Greenley*, which, as Google already explained, are distinguishable because they analyzed the inferences that can be drawn from pervasive cross-platform tracking. (*See Supra* Section II.D.2.) In *S.D. v. Hytto Ltd.*, the plaintiff alleged that she paired her vibrator with a mobile application that covertly captured real-time data about the intensity of the device's vibrations during its use. 2019 WL 8333519, at *1 (N.D. Cal. May 15, 2019). The *Hytto* court sensibly distinguished the particular invasiveness of data constituting real-time representations of a person's live sexual activity from the kind of "web browsing history" at issue here. *Id.* at *10. Finally, Plaintiff cites several cases in which courts found that the allegations implicated factual issues unsuitable for resolution at the pleadings stage. (Opp. at 25.) That those courts refused to dismiss on the pleadings while others have found dismissal appropriate (*see* Mot. at 22-25) has no bearing on the propriety of dismissal on the facts before ***this*** Court—which, for all the reasons above, establish that Plaintiff's FAC cannot proceed.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's FAC should be dismissed with prejudice.

Dated: March 6, 2026

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorneys for Defendant
Google LLC